E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorneys
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:    ian.yanniello@usdoj.gov
                gregory.staples@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>DURK BANKS,<br>  aka "Lil Durk,"<br>  aka "Mustafa Abdul Malak,"<br>  aka "Blood,"<br><br>          Defendant. | No. CR 24-621(A)-MWF-6<br><br>GOVERNMENT'S BRIEF IN SUPPORT OF<br>PRETRIAL DETENTION FOR DEFENDANT<br>DURK BANKS; EXHIBITS 1-2 |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its brief in support of pretrial detention for defendant DURK BANKS based on the significant risk of flight, ongoing danger to the community and witnesses, and risk that defendant will obstruct of justice.

This filing is based upon the attached memorandum of points and authorities, the attached Exhibit 1 and Exhibit 2 (under seal), the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 12, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

          _/s/_
IAN V. YANNIELLO
GREGORY W. STAPLES
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      This murder case presents a straightforward detention analysis:

4  no condition or combination of conditions can ensure defendant Banks'

5  appearance or protect the community, including vital witnesses in

6  this case.  Because defendant cannot rebut the presumption of

7  detention merely by offering a small portion of his wealth in a bond

8  package, he must be detained pending his murder trial where he faces

9  a mandatory life sentence.

10     Defendant has offered millions of dollars to secure pretrial

11  release, claiming that his money and a private security company hired

12  and controlled *by defendant* will somehow ensure his compliance with

13  the law and his bond conditions.  The proposed terms are woefully

14  inadequate to protect the community and vital witnesses from harm and

15  to mitigate defendant's risk of flight.  Indeed, within hours of law

16  enforcement arresting his co-conspirators, defendant was booked on

17  three international flights, including at least one destined to a

18  non-extradition country.  (Dkt. 1 [Complaint] at 9-10.)

19     The proposed bond package makes clear defendant has access to

20  vast resources, but his conduct in this case and others shows that he

21  has and will use those resources to endanger the community, influence

22  witnesses, and wield his power for violence.  As the First

23  Superseding Indictment alleges, defendant orchestrated and funded a

24  brazen murder plot that turned a busy intersection in Los Angeles

25  into an urban warzone.  His co-conspirators fired multiple guns ---

26  including a machinegun --- to target one of defendant's rivals,

27  resulting in a murder in broad daylight at a gas station.  Just as he

28

1

offers money to secure his release here, defendant had offered his
money to secure the death of his rival that afternoon in Los Angeles.
Attempting to collect on defendant's promise of a monetary reward,
the shooters opened fire on defendant's rival, killing the rival's
family member S.R.  Defendant showed no remorse following the murder,
and instead mocked his rival and sought to commercialize S.R.'s death
by rapping about his revenge.  (See Dkt. 27 [FSI], ¶ 6.)

But even if the allegations in this case weren't enough to
detain defendant (they are), a separate federal case in Chicago also
underscores why defendant cannot be released pending this trial.  As
alleged in a recently unsealed search warrant affidavit in the
Northern District of Illinois, defendant "offer[ed] money for people
to kill those responsible for his brother's murder, and more
specifically, offering to pay money for any Gangster Disciple that is
killed."  (Ex. 1 at 12.)  Evidence collected in this case also shows
defendant has allegedly placed monetary bounties to solicit other
murders, including a family member of a witness.  (See Ex. 2 [Under
Seal] at 12, 14-15.)  Defendant's modus operandi is clear: he will
use his power, his money, his influence, and any pretrial release to
endanger anyone who he perceives as a threat, including witnesses in
this case.

## II.  ARGUMENT

### A.  Defendant Is Presumed to Be a Flight Risk and Danger

A defendant must be detained pending trial where "no condition
or combination of conditions will reasonably assure the appearance of
the person as required and the safety of any other person and the
community."  18 U.S.C. § 3142(e)(1).  Detention is thus appropriate

2

for a defendant who is either a danger to the community or a flight risk.  <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir. 1985).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  <u>United States v. Diaz-Hernandez</u>, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are:

> (1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence;
>
> (2)  the weight of the evidence against the defendant;
>
> (3)  the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history; and
>
> (4)  the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

<u>United States v. Winsor</u>, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam) (citation omitted).

In cases involving certain violent offenses, including the firearms count set forth in Count Three, the Bail Reform Act established a presumption that a defendant is both a flight risk and a danger to the community.  18 U.S.C. § 3142(e)(3)(B).  Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption.  <u>United States v. Hare</u>, 873 F.2d 796, 798 (5th Cir. 1989); <u>United States v. King</u>, 849 F.2d 485, 488 (11th Cir. 1988).  Congress intended that the statutory presumptions would have a practical effect.  <u>United States v. Jessup</u>, 757 F.2d 378, 382 (1st Cir. 1985), abrogated on other grounds, <u>United States v. O'Brien</u>, 895 F.2d 810 (1st Cir. 1990).  The presumptions do

3

1    not disappear when a defendant meets his or her burden of producing

2    rebuttal evidence.  United States v. Perez-Franco, 839 F.2d 867, 870

3    (1st Cir. 1986); United States v. Dominguez, 783 F.2d 702, 707 (7th

4    Cir. 1986); United States v. Ward, 63 F.Supp.2d 1203, 1209 (C.D. Cal.

5    1999); United States v. Clark, 791 F. Supp. 259, 260 (E.D.W.A. 1992).

6    The presumptions remain in the case as evidentiary findings

7    militating against release, to be weighed along with other evidence

8    relevant to the factors listed in § 3142(g).  Dominguez, 783 F.2d at

9    707.

10        B.    **Defendant's Murder and Firearms Charges Justify Pretrial**

11              **Detention**

12        Defendant's offenses are serious, brazen, and deadly.  Defendant

13   caused six hitmen to travel to Los Angeles to commit a machine-gun-

14   murder in broad daylight.  Defendant allegedly financed the murder

15   plot and offered to reward the killers by paying a bounty for the

16   murder of his rival.  As discussed above, this bounty was not an

17   isolated event; it was how defendant led his organization and

18   conducted his business.  Defendant used his power, influence, and

19   vast resources to promote and perpetuate violence --- with deadly

20   consequence.  The fact that defendant is charged with orchestrating

21   the murder plot, taken together with the strong evidence establishing

22   his guilt, is alone sufficient to warrant his detention in this case.

23   See United States v. Liebowitz, 669 F. App'x 603, 604 (2d Cir. 2016)

24   (affirming detention order even though murder-for-hire defendant "had

25   never previously been charged with a violent crime" because the

26   "record contains compelling evidence of [defendant]'s participation

27   in the charged crimes and his knowledge and acquiescence in the use

28

                                        4

of violence to commit them" which "admits a clear and compelling finding that he posed a threat of future harm"); United States v. Barone, 387 F. App'x 88, 89-90 (2d Cir. 2010) (affirming detention order for defendant whose danger to the community "was clearly and convincingly evidenced by . . . his readiness to commit the charged murder-for-hire").

As one would expect given the nature of the charges, defendant faces a lengthy prison sentence --- mandatory life imprisonment.  The severity of the potential penalty underscores defendant's risk of non-appearance and the threat of danger defendant poses to those persons involved in his prosecution.  See Liebowitz, 669 F. App'x at 605 ("The lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee."); see also United States v. Brennerman, 705 F. App'x 13, 15 (2d Cir. 2017) (affirming denial of bail based on risk of non-appearance where defendant facing fraud charges that exposed him to a "range of 57 to 71 months' imprisonment").  As noted above, even before defendant was charged in this case, he booked three international flights and attempted to leave the country on the same day that his co-conspirators were arrested.  See Liebowitz, 669 F. App'x at 605 (affirming risk of flight finding where "the record shows [defendant's] access to substantial resources to finance flight").  No amount of money --- or conditions of release --- will adequately protect the community or prevent the defendant from fleeing prosecution.

C.    **Defendant Presents a Significant Danger to the Community**

Defendant's release would pose a grave risk to the safety of the public, and witnesses and potential witnesses in this case.

Defendant has already shown he is willing to put his wealth behind pursuing violence, including allegedly offering a bounty to kill a family member of a witness.  (See Ex. 2 [Under Seal] at 12, 14-15; see also Ex. 1 at 12.)  No condition or combination of conditions can ensure the safety of witnesses or others involved in the prosecution if defendant were to be released.  Indeed, defendant could have committed every overt act in this case while on supervision as he was operating in a clandestine fashion, largely through criminal intermediaries.

At bottom, defendant's proposed bail resources do not mitigate his danger to the community or sufficiently reduce his risk of flight.  His funding and orchestration of the murder conspiracy shows that his proposed bail resources are woefully inadequate to mitigate the danger he poses.  See United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (affirming district court's denial of proposed $600,000 secured bail package based on risk defendant posed to the community).  And although he proposes a surrender of his passport, location monitoring and/or curfew, and intensive pre-trial supervision, any such limitations would all suffer from the "critical flaw" in that "they depend on [defendant]'s good faith compliance" in order to be effective.  Hir, 517 F.3d at 1092.  In particular, "electronic monitoring does not prevent a defendant from committing crimes within the monitoring radius" and "there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions," id. at 1092 n.11, or use social media to give instructions to intermediaries.  Moreover, defendant has already shown that he cannot

abide by even the simplest of conditions imposed upon him while he's already been in custody at the MDC --- despite clear instructions to not engage in three-way calls, defendant has repeatedly abused the phone system at MDC to engage in such conduct.  His actions in an already-restrictive condition of confinement show that there is a potent risk that he cannot and will not abide by bond conditions on his own accord, outside the purview of the USMS and BOP.

**III.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court order defendant detained pending trial in this matter.