DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite #1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DURK BANKS, <br><br> Defendant. | Case No. 2:24-cr-00621-MWF <br><br> **DEFENDANT DURK BANKS'S MEMORANDUM IN SUPPORT OF HIS APPLICATION FOR RECONSIDERATION OF DETENTION ORDER** |

Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files the following memorandum in support of his application for reconsideration of the Order of Detention dated December 16, 2024. (Doc. 116.)

This application is based on the files and records in this case, the attached Memorandum, and any other arguments and evidence the Court deems appropriate.

Respectfully submitted,

DATED: April 18, 2025

By /s/ *Drew Findling*
DREW FINDLING
MARISSA GOLDBERG
JONATHAN M. BRAYMAN
CHRISTY O'CONNOR
Attorneys for Durk Banks

# MEMORANDUM

Mr. Banks requests reconsideration of the order detaining him pretrial. Since his December 12, 2024 detention hearing, new information has come to light that impacts not only the veracity of the evidence presented to the grand jury, but of government counsel's representations to the Court at the first detention hearing. In light of these developments, Mr. Banks presents the Court with a substantial bond package that mitigates against any risk posed by Mr. Banks's release on conditions.

## I. Fan Page Edits with "Wonderful Wayne" Lyrics and News Footage

In arguing for Mr. Bank's detention, the government has attempted to hold Mr. Banks responsible for video clips that YouTubers and Instagram users have edited, produced, and posted to social media, but with whom Mr. Banks has no affiliation. At the initial detention hearing in this case, the defense called into question the accuracy of paragraph 6 of the Superseding Indictment, which references lyrics from a song by a recording artist named Babyface Ray that features Mr. Banks, "Wonderful Wayne & Jackie Boy." The Superseding Indictment charges:

> Following the attempted murder of T.B. and the murder of S.R., defendant BANKS sought to commercialize S.R.'s death by rapping about his revenge on T.B. with music that explicitly references audio from a news clip taken shortly after S.R.'s murder where T.B. screamed, "no, no!" after seeing S.R.'s dead body:
>
>> Told me they got an addy (go, go)
>>
>> Got location (go, go)
>>
>> Green light (go, go, go, go, go)
>>
>> Look on the news and see your son,
>>
>> You screamin', "No, no" (pussy)
>
> (Doc. 27, p. 3.)

Defense counsel produced an affidavit from sound engineer and music producer Justin Gibson, wherein Gibson attested that approximately seven months before the

August 2022 shooting death of S.R. (*See* Doc. 111.) Thus, the song could not have been a "commercialization" of Mr. Banks's participation in the murder and could not have "referenced audio from a news clip taken shortly after S.R.'s murder," as the government led the grand jury to believe. (*See also* Doc. 134 (Def. Durk Banks's Mot. to Dism.)).

When addressing the Gibson Affidavit at the detention hearing, the government referenced a music video, not yet produced to the defense, containing the "Wonderful Wayne" lyrics alongside news footage of the shooting at issue. The government told the Court: "Your Honor, we actually object to this proffer, this line of argument [about Mr. Banks's lyrics being recorded several months *before* the murder and, thus, *not* a "celebration" and "commercialization" of the murder as alleged in the Superseding Indictment]. ***The bottom line is there was a video that was filmed showing defendant's rival screaming, "No. No," that was placed over these lyrics.***" Ex. A. (12-12-2024 Detention Hearing Transcript), p. 27 (emphasis added). The government then speculated that, alternatively, perhaps the "Wonderful Wayne" lyrics could be a reference to some *other* uncharged murder:

> So independent of when the lyrics were actually written and whether this was about Mr. Banks sanctioning some other murder – which the Government submitted evidence showing that there were other monetary bounties placed on rivals and to solicit murder. So independent of who this was ultimately about, the commercialization and this allegation is nonetheless valid.

*Id*.

Finally, government counsel argued that, even if the lyrics were recorded many months before the charged murder, they could still somehow be a reference to it: "There's nothing in paragraph 6 that talks about when it was produced or written. So the government, again, objects with that – or objects to that characterization and disagrees with it." *Id.* at 29.

4

Following the hearing, on January 28, 2025, the defense sought clarification by email about exactly what video the government was referencing that featured both the TMZ news footage and the "Wonderful Wayne" lyrics. The government responded that additional discovery would be forthcoming, but provided two links to "examples" of the referenced video. The first was posted by a user with the handle @otf_edit.[1] The second was posted by a user with the handle @mymixtapez.[2] These videos do, in fact, contain audio and video from news coverage of the shooting, in which T.B. can be heard screaming, superimposed over the "Wonderful Wayne" lyrics. The government made a discovery production to the defense on February 7, 2025 that contains these and similar videos, along with "screenshots" of the videos.[3]

The critical flaw for the government, however, is that Mr. Banks did not *create* these videos, and the government has failed to show any nexus between these manufactured video clips and Mr. Banks. These videos were not created nor posted at Mr. Banks's direction. The internet users who posted the videos, including @otf_edit and @mymixtapez, are apparent "fan pages" maintained by people with no affiliation to

---

[1]   @otf_edit, YOUTUBE (Aug. 14, 2023), https://www.youtube.com/shorts/AOwEMNg1v2s (last visited Apr. 16, 2025). The YouTube profile page associated with @otf_edit contains a "Description" for the profile that states, "Follow my insta dee_oblock300." *See* @otf_edit, YOUTUBE, https://www.youtube.com/@otf_edit (last visited Apr. 16, 2025). The corresponding Instagram account for @dee_oblock300 identifies the account as a "Fan page for @kingvonfrmdao [the Instagram handle for Dayvon "King Von" Bennett]. @dee_oblock300, INSTAGRAM, https://www.instagram.com/dee_oblock300/ (last visited Apr. 16, 2025).

[2]   @mymixtapez, YOUTUBE (Aug. 14, 2023), https://www.youtube.com/shorts/rVCdjb5Vk_Zo (last visited Apr. 16, 2025). This YouTube "Short" appears to blend at least two videos together, including the TMZ video clip of T.B. screaming and video/audio from the song "Same Side" by Lil Durk featuring Rob49. *Id*.

[3] The date and time stamps on some of the produced materials reveal that the government captured them from the internet on January 28, 2025, after defense counsel raised the issue via email, and just minutes before the government responded with the above-referenced YouTube links.

Mr. Banks or Only the Family, Inc. It is unfair, misleading, and just flat-out wrong for the government to suggest that Mr. Banks is responsible for these video/audio edits or that they evidence his purported commercialization of a murder that he supposedly ordered. "Wonderful Wayne" has nothing to do with the shooting at issue in this case.

Rather than just concede this at the initial detention hearing, the government instead chose to speculate about an alternative theory of criminal liability connecting the videos to Mr. Banks—despite the explicit and specific language of the allegations contained in the Superseding Indictment. Moreover, after the initial detention hearing, the government double-downed on this debunked allegation, searching the internet for anything that might support their chosen narrative that Mr. Banks was the driving force and reason for S.R.'s murder. This should not be given this Court's imprimatur. Instead, this Court should grant Mr. Banks pretrial release on a secured bond with the conditions set forth below.

## II. Mr. Banks' Proposed Bond Package.

Mr. Banks, a devoted husband, father, and son, as well as an internationally-renowned musician and recording artist, should be granted pretrial release on reasonable conditions that include the following: (1) a bond secured, partially or in full, by approximately $900,000 in equity in real properties, $1 million in cash tendered by Alamo Records, and $150,000 in cash tendered by Nizar Alibhai, Mr. Banks's business associate; (2) home detention with electronic monitoring; (3) around-the-clock security services ensuring compliance with all conditions imposed by this Court; (4) reporting to Pretrial Services; and (5) additional third-party sureties and guarantors to satisfy a bond amount that the Court determines to be reasonable under 18 U.S.C. § 3142.

## III. Conclusion.

For the foregoing reasons, Mr. Banks respectfully requests that the Court reconsider its previous detention order, and permit his release secured by a robust bond package and subject to substantial conditions.