BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorneys
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:   ian.yanniello@usdoj.gov
               gregory.staples@usdoj.gov
               daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DURK BANKS, <br>  aka "Lil Durk," <br>  aka "Mustafa Abdul Malak," <br>  aka "Blood," <br><br> Defendant. | No. CR 24-621(A)-MWF-6 <br><br> <u>GOVERNMENT'S OPPOSITION TO DEFENDANT BANKS' APPLICATION FOR RECONSIDERATION OF DETENTION ORDER</u> |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its opposition to defendant's application seeking reconsideration of this Court's detention order.

//

//

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 28, 2025             Respectfully submitted,

                                          BILAL A. ESSAYLI
                                        United States Attorney

                                        LINDSEY GREER DOTSON
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                        */s/*
                                        IAN V. YANNIELLO
                                        GREGORY W. STAPLES
                                        DANIEL H. WEINER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant is charged with directing six hitmen to travel across the country to hunt and kill his rival, T.B.  Defendant allegedly orchestrated and financed the brazen murder plot that culminated with shooters ambushing T.B.'s vehicle at a busy gas station in broad daylight, killing S.R.

Following a detention hearing in December 2024, the Court ordered defendant detained based on flight risk and ongoing danger.  It reasoned that no conditions of release would reasonably assure the safety of the community, finding that defendant "uses his money, influence and power to endanger individuals whom he perceives as a threat."  (Dkt. 116 at 4.)  The Court also found that defendant was a flight risk based on his attempt to flee the country immediately after learning of his co-conspirators' arrests.  (Id.)

Defendant now seeks reconsideration of that order.  But defendant's application fails to address any facts the Court relied on when it made its flight risk and danger findings, and fails to present "information [] that was not known to [defendant] at the time of the hearing ***and that has a material bearing***" on his dangerousness and flight, 18 U.S.C. § 3142(f)(2) (emphasis added).  Instead, he offers essentially the same bond package the Court already rejected, and seeks to relitigate an immaterial issue about when certain of his violent rap lyrics were written.  Indeed, the crux of defendant's application is that he did write lyrics about green lighting someone's murder, just that it wasn't this murder.

1

But the timing of defendant's lyrics and whether or not he "commercialized" his violence through rap (which he did) has little to no bearing on the detention analysis before the Court. The issue here is a narrow one: has defendant presented new information, not known to him in December 2024, that has a material bearing on whether he should be detained pending trial? The answer is no. The government respectfully requests that the Court summarily deny defendant's application for reconsideration.

**II. BACKGROUND**

**A. The Indictment and Defendant's Attempt to Flee**

On October 17, 2024, a grand jury sitting in the Central District of California returned an indictment charging five of defendant's co-conspirators with crimes arising from the murder, including Murder-for-Hire and Conspiracy to Commit Murder-for-Hire Resulting in Death, in violation of 18 U.S.C. § 1958(a). (See Dkt. 1.) Defendant was identified as Co-Conspirator 1 throughout the indictment, which listed defendant's involvement in the murder scheme --- including the allegation that he told co-conspirators that he would pay a bounty for T.B.'s murder. (See id. at Overt Act 1.)

In the early hours of October 24, 2024, federal and local law enforcement executed multiple search warrants at locations associated with members of defendant's organization "Only the Family," or "OTF" in the Chicago area, and arrested the five charged co-conspirators. (See Criminal Complaint[1] at 4.)

---

[1] The Criminal Complaint charging defendant Banks was filed in Case No. 2:24-MJ-065, which has since been merged into the criminal case.

2

Soon after law enforcement executed the warrants, the FBI learned that defendant had been booked on three international flights, including at least one to a non-extradition country. Defendant skipped the first two flights, and was arrested when he showed up to board a private jet scheduled to leave the United States a short time later. (Id. at 9-10.)

On November 7, 2024, the grand jury returned the First Superseding Indictment ("FSI") against defendant and his co-conspirators. (Dkt. 27.) The FSI identified defendant as Co-Conspirator 1 and alleged that he formed and was the leader of OTF --- a group of "individuals who engaged in violence, including murder and assault, at the direction of defendant BANKS and to maintain their status in OTF." (Id. at Introductory Allegations, ¶ 1.) The FSI also included an allegation that defendant commercialized his violence through rap lyrics. (Id. at Introductory Allegations, ¶ 6.)[2]

### B. Defendant Is Ordered Detained

In December 2024, the Court held a detention hearing and considered evidence and argument submitted by the parties. Among other things, defendant made the same argument he now raises in his application to reopen: a claim that the lyrics cited in an introductory allegation in the FSI about "green lighting" violence could not be about S.R.'s murder because defendant wrote the lyrics before the murder occurred. (Dkt. 124 at 26-27 (hearing transcript); Dkt. 137 at 4-6 (application for reconsideration).) During the

---

[2] Defendant filed a motion to dismiss the FSI based on false and/or misleading grand jury evidence related to Paragraph 6 of the FSI's Introductory Allegations. (Dkt. 135.) The motion lacks merit and will be addressed in a separate filing before the District Court.

3

hearing, the Court addressed the matter, finding that "the consistency and timing of the lyrics has some relevance but marginal to the dangerousness issue, which is the issue before me today." (Dkt. 124 at 29:1-8.)

After considering the evidence, the Court ordered defendant detained based on flight risk and ongoing danger to the community. (Id. at 43:19-23.) The Court subsequently issued a thorough written detention order. (See Dkt. 116.) As to danger, the Court detailed the allegations against defendant, including that the "co-conspirators, acting at Defendant's direction, traveled to Los Angeles, tracked, stalked, and attempted to kill [T.B.] by gunfire, including a fully automatic firearm, in broad daylight in a busy Los Angeles intersection, and did kill a family member of the target who was traveling with him." (Id. at 4.) The Court also relied on evidence that this was not defendant's first murder-for-hire plot, noting "[i]n a separate matter in Chicago, Defendant is alleged to have engaged in similar conduct, that is he 'offer[ed] money for people to kill those responsible for his brother's murder, and more specifically, offering to pay money for any Gangster Disciple that is killed.'" (Dkt. 116 at 4; see Dkt. 105 [Government's Detention Brief], Ex. 1.) As a result, the Court found "[t]he material proffered by the government supports the conclusion that Defendant uses his money, influence and power to endanger individuals whom he perceives as a threat." (Id.; see Dkt. 105 [Government's Detention Brief], Ex. 2 [Under Seal] at 12, 14-15.)

As to flight, the Court rejected the argument that defendant's significant bond package mitigated his risk of nonappearance. Among

4

other things, the Court found that defendant "attempted to leave the United States upon learning of the arrests of his co-conspirators." (Dkt. 116 at 3-4.)

**III. ARGUMENT**

    **A.    Defendant's Application Fails to Offer Any New Evidence, Much Less Evidence that is Material to the Detention Analysis**

A detention hearing may be reopened only if the "judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has *a material bearing* on the issue whether there are conditions of release that will reasonably assure that appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2) (emphasis added). Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing. See United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991) (per curiam) (affirming district court's refusal to reopen hearing where defendant's evidence consisted of information from people who knew him attesting to his likelihood of appearing and non-dangerousness; "this information was available to appellant at the time of the [original] hearing"); United States v. Hare, 873 F.2d 796, 799 (5th Cir. 1989) (same). As to materiality, "[t]o reopen a detention hearing, ... a defendant must proffer evidence that, if true, affects the outcome of the Court's pre-trial detention inquiry ...." United States v. Chansley, No. 21-CR-3 (RCL), 2021 WL 2809436, at *3 (D.D.C. July 6, 2021).

Here, defendant's only proffer of new information is that viral

5

videos --- which overlayed the news clip of S.R.'s death on top of defendant's songs, including lyrics about green lighting a murder --- were made by defendant's fans (some of which have millions of views)[3], not defendant.  (Dkt. 137 at 5.)[4]  But defendant's claim about the timing of his rap lyrics and the fan-made videos is neither new, nor does it have a "material bearing" on the Court's detention analysis, § 3142(f)(2).

Tellingly, defendant's application does not even reference the Court's analysis on danger or flight.  It does not explain how defendant's lyrics or fan-made videos undermine "the inference that Defendant, who has considerable resources, attempted to leave the United States upon learning of the arrests of his co-conspirators," or "that Defendant uses his money, influence and power to endanger individuals whom he perceives as a threat."  (Dkt. 116 at 3-4.)  Nor could it.  At the hearing, defense counsel raised this exact issue of the timing of defendant's lyrics.  The Court made clear that the lyrics were not material to its detention analysis.  (Dkt. 124 at 29:1-8.)  The lack of materiality is confirmed by the Court's oral

---

[3] See, e.g., "Lil durk - diss quando rondo in a new song 🔥😱 #kingvon #lildurk #quandorondo", *available at* https://www.youtube.com/shorts/AOwEMNg1v2s (approximately 544,000 views as of April 28, 2025); "Lil Durk really sampled Quando Rondo crying 😳", *available at* https://www.youtube.com/shorts/yDgsUXj43yg (approximately 4.6 million views as of April 28, 2025); "#lildurk sampled the "Noooo" #QuandoRondo said when He lost his homie 😮😱" *available at* https://www.youtube.com/shorts/rVCdjb5VkZo (approximately 2.6 million views as of April 28, 2025).

[4] The lyrics defendant challenges are contained in Paragraph 6 of the FSI, which states: "Following the attempted murder of T.B. and the murder of S.R., defendant BANKS sought to commercialize S.R.'s death by rapping about his revenge on T.B. with music that explicitly references audio from a news clip taken shortly after S.R.'s murder where T.B. screamed 'no, no!' after seeing S.R.'s dead body." (Dkt. 27 at Introductory Allegations, ¶ 6.)

6

and written explanation of its detention order, neither of which considers (or even mentions) defendant's lyrics or the above-referenced videos.

Moreover, defendant's proffer that his fans --- rather than defendant himself --- created the videos linking him to S.R.'s murder is immaterial to defendant's danger or flight. Defendant was not detained because of videos his fans created: he was detained because he is alleged to be the leader of a violent organization; because he orchestrated and funded an execution-style murder with machineguns at a busy gas station; and because he tried to flee the country after his co-conspirators were arrested.

But even if the lyrics or the videos had some bearing on the detention analysis, they corroborate defendant's danger. Defendant has repeatedly used his pulpit as a voice of violence, publicly rapped about paying for murders, hunting opponents with machineguns, "bounty hunters" in Beverly Hills --- and other lyrics that have a striking similarity to the modus operandi used to kill S.R.[5]

As the Court found in ordering defendant's detention, "defendant uses his money, influence and power to endanger individuals whom he perceives as a threat." Defendant is wrong to suggest he is charged

---

[5] For example, defendant was featured on another artist's song in which he raps, "I don't want no niggas who you catch, **I want the one I paid for** ... Trollin' ass, **we shot your homie**." "Gucci Mane – Rumors feat. Lil Durk [Official Video]", *available at* https://www.youtube.com/watch?v=QVn1DGgqBNo (emphasis added); see also "Scoom his Ass (ft. Boonie Moe) (Official Video)", *available at* https://www.youtube.com/watch?v=HXUDCW4wECY ("Popping traffic, we in Cali', ride through Beverly Hills with choppers ... dying to see the oppas"; "Bounty hunter, he ready to crack that lil' bitch down to get her off"). Although "Scoom his Ass" does not appear to have been officially released by defendant, the lyrics are authentic as the government seized the audio file from a co-conspirator's cellular phone pursuant to a federal search warrant, which has been produced to the defense. See Bates_Media_638.

7

in this case, or is being detained pending trial, because of his lyrics. It's true that words have power, and that defendant's words about "green lighting" violence and placing bounties may be admissions of criminal conduct. That is for a jury to decide. But this case is not about how defendant made his money; it is about how he allegedly chose to spend his money and wield his power in August 2022 --- on death and violence.

**IV. CONCLUSION[6]**

For the foregoing reasons, the government respectfully requests that this Court deny the application and maintain its order detaining defendant pending trial in this matter.

---

[6] As set forth above, the government submits that defendant has failed to meet the threshold showing to establish he is entitled to re-open the detention hearing. To the extent the Court permits the hearing, the government will be prepared to submit additional evidence showing defendant's dangerousness and willingness to disregard conditions imposed upon him, including ongoing violations of BOP rules.

8