DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DURK BANKS,<br><br>　　　　Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' BRIEF IN SUPPORT OF HIS REQUEST FOR REVIEW/ RECONSIDERATION OF THE DETENTION ORDER**<br><br>**Hearing**<br><br>Date:　　　June 2, 2025<br>Time:　　　1:30 p.m.<br>Courtroom:　5A<br>Judge:　　　Hon. Michael W. Fitzgerald |

　　　　Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this brief in support of his

application for this Court to review/reconsider the magistrate judge's detention order in this matter.

Dated: May 20, 2025

Respectfully submitted,

BY:  /s/ *Marissa Goldberg*
Drew Findling
Marissa Goldberg
Jonathan M. Brayman
Christy O'Connor
*Attorneys for Durk Banks*

2

## I. PROCEDURAL HISTORY

Law enforcement arrested Mr. Banks on October 24, 2024, after which members of the United States Attorney's Office and the Federal Bureau of Investigation filed a criminal complaint charging him. (ECF Doc. 1). The first iteration of the indictment in this matter named and charged Mr. Banks' five co-defendants, but did not name or charge him. The government added Mr. Banks as a defendant in the First Superseding Indictment, returned on November 7, 2024. (ECF Doc. 27). The original detention hearing commenced before Magistrate Judge Patricia Donahue on December 12, 2024. Immediately preceding this hearing, the government filed their brief in support of detention, as did Mr. Banks opposing the same. (ECF Docs. 105 and 107). Judge Donahue ordered Mr. Banks detained, after a contested hearing, citing dangerousness and risk of flight. (ECF Doc. 116).

Per their obligations, the government began providing discovery to Mr. Banks through his undersigned counsel, which is still not yet complete. On April 18, 2025, Mr. Banks filed a Motion to Dismiss the Indictment on the same day that he filed an *Ex Parte* Application to Review/Reconsider the Detention Order, which was approved on April 23, 2025. (ECF Docs. 135 and 136). After Mr. Banks filed these motions, the government went back to the grand jury and re-indicted the case in a Second Superseding Indictment on May 1, 2025. (ECF Doc. 147). A hearing on the reconsideration of the detention order was held on May 8, 2025 and Magistrate Judge Donahue again ordered Mr. Banks detained based on dangerousness and risk of flight. (ECF Doc. 157) This Court granted the Application for Review of the Detention Order before the District Court on May 14, 2025 and set a hearing for June 2, 2025 at 1:30 p.m.

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3145(b), if a defendant is ordered detained by a magistrate judge, they may file a motion for review and revocation of the detention order and the issue shall be promptly determined by the district court. This Court's review is *de novo*

3

and is not bound by the findings of the lower court. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate." *Id.* (citing *United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985)). "[T]he ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusions." *Koenig*, 912 F.2d at 1193.

### III. REASONABLE CONDITIONS EXIST THAT WILL SECURE THE APPEARANCE OF MR. BANKS AND ENSURE THE SAFETY OF THE COMMUNITY.

The government has repeatedly asserted that Mr. Banks is both a flight risk and a danger to the community. To show that he is a flight risk, the government has pointed to the fact that Mr. Banks was arrested prior to boarding a flight to the United Arab Emirates (UAE). To show that he is a danger to the community, the government has pointed to the general allegations contained in the language of the indictment, broadly and veiled statements contained in affidavits of law enforcement, and repeatedly to public media and music. Despite now being seven months into the pendency of this case, the government continues to ignore direct contradictory evidence while providing minimal specific details to support their claims for Mr. Banks' continued detention.

The Pretrial Report notes that Mr. Banks has no criminal convictions and does not deem him to be a flight risk. While the allegations in the Second Superseding Indictment are no doubt serious, Mr. Banks is presumed innocent of the charges against him. Moreover, the government's repeated parroting of its conclusory allegations does not change that bedrock legal principle and constitutional guarantee, especially in light of the

paucity of evidence connecting Mr. Banks to the shooting at issue in this case *or in any case*. In this case, Mr. Banks has already demonstrated that the government's investigation and prosecution has been based, in whole or in part, on unreliable, inauthentic, and manufactured "evidence." To this end, the government re-indicted this matter to remove two of its marquee factual allegations against Mr. Banks: (1) that after the shooting at the center of this case, Mr. Banks commercialized and celebrated S.R.'s death "by rapping about his revenge" with lyrics and music that was essentially a musical confession; and (2) that at Mr. Banks' direction, another co-defendant would pay the purported "bounty" for the alleged murder-for-hire. *Compare* Doc. 27 *with* Doc. 147 (removing ¶ 6 of the "Introductory Allegations" and ¶ 9 of the "Means By Which the Object of the Conspiracy was to be Accomplished" Allegations).

The government's reliance on the additional "Stalking Resulting In Death" charge, which it added to the Second Superseding Indictment in Count Three, simultaneous with the omission and scrubbing of the two major factual allegations recited above, is a complete diversion in terms of the case being purportedly "more serious." It is quite the opposite. The re-indictment of this case is a concession that allegations the government previously included and emphasized are, in fact, not viable or reliable. Allegations of "stalking," "tracking," and "following"[1] were widespread from the very first indictment and molding them into a formal charge only provides cover for the government during their clean-up of the indictment. The Second Superseding Indictment is a watered-down version of its predecessor and acknowledges the diminishing weight of the evidence against Mr. Banks.

Mr. Banks is a devoted husband, father, and son, as well as an internationally-renowned musician and recording artist. His dedication to uplifting his community

---

[1] *See, e.g.,* Doc. 27, ¶ 5 of the Introductory Allegations (allegation that all defendants and Co-Conspirator 2 "used two vehicles to track, stalk, and attempt to kill T.B."); Overt Acts 19 and 20 ("followed and tracked T.B.'s black Escalade"); ¶¶ 2-7 of the "Means by which the Object of the Conspiracy was to be Accomplished" and Overt Acts 16-18 (different actions alleged to have been taken by defendants to "find, track, and kill T.B.")

5

1 through his personal charity, Neighborhood Heroes, and through his additional outreach
2 in the Chicago area, is commendable and undeniable. The Pretrial Report did not find
3 that Mr. Banks was a flight risk. He will be offering up a robust bond package that far
4 exceeds the norm, in part, because he does have the resources, but also, as an
5 acknowledgement that this Court will consider allowing pretrial release in this matter
6 with the utmost seriousness and scrutiny. This should be sufficient to overcome the
7 presumption that does exist under 18 U.S.C. § 3142(e)(3)(B).

8         a. **<u>Mr. Banks is Not a Flight Risk</u>**

9       The main reason that the government has contended that Mr. Banks is a flight risk
10 is that law enforcement arrested him on October 24, 2024 on his way to board a private
11 flight destined for the UAE. First and most importantly, at the time of his arrest, Mr.
12 Banks was not under indictment and was not aware of any imminency of an indictment
13 against him. With any modicum of due diligence, the case agents and government would
14 have known that Mr. Banks traveled extremely frequently as is routine for performers of
15 his caliber. It was also not unusual for Mr. Banks to travel on a private flight nor was it
16 unusual for Mr. Banks to travel to the UAE. Instead, when the agents saw that Mr. Banks
17 was booked for international travel, they jumped the gun and ordered his immediate
18 arrest, despite the fact there was no probable cause to arrest or charge him just seven days
19 prior when the government sought an indictment charging Mr. Banks' co-defendants.

20       The best predictor of a person's future conduct is how they have acted in the past
21 under similar circumstances. The Court does not need to speculate in this respect since
22 Mr. Banks had a similar previous case, where he was granted pretrial release on
23 conditions. Mr. Banks followed that Court's instructions to the letter, with no noted
24 infractions. Due to his sterling record on pretrial release in that state case in Fulton
25 County, Georgia, the judge in that matter—Superior Court Judge Kevin Farmer—saw fit
26 to ease Mr. Banks' conditions of release over time, removing electronic monitoring,
27 allowing him to travel internationally to work and perform, until the prosecution decided
28

to dismiss all charges against Mr. Banks. In this case, Mr. Banks will comply with any conditions of pretrial release, just as he did when Judge Farmer entrusted him to follow the Court's rules in the Fulton County matter.

### b. Mr. Banks is Not a Danger to the Community

Mr. Banks is the exact opposite of a danger to the community. He has supported his community through his charitable work in impoverished communities, and shown his good character through acts of service over his life. The record is replete with his devoted and ongoing service to various communities, including in Chicago, Atlanta, and around the world. Mr. Banks is deeply committed to his Muslim faith and to his family. Despite the government's attempts to malign him with allegations from an unrelated case in Chicago and from under seal affidavits, Mr. Banks has no connection to the violence in the Chicago case, or to any purported "threats" *in this case*. If any other jurisdiction believed they had probable cause that Mr. Banks committed any crimes they would have charged him, yet they did not. Unsupported allegations in third-party affidavits for which no charges were brought should be given no consideration, they are merely diversions from the government's lack of evidence here.

The government asserts that Mr. Banks is a danger to the community based on its own conclusory allegations contained in the Second Superseding Indictment and on unreliable sources of information. For example, the government alleges that witnesses and their family members have been subjected to "threats" in this case. They also assert that Mr. Banks is involved in a "similar murder-for-hire" case, which have been referred to as "the Chicago allegations." If the Court looks closely at the underlying materials that the government relies upon, it will see that there little to no connection between these salacious allegations and Mr. Banks. Rumor, innuendo, and unreliable sources do not and cannot support detaining a man in custody pending trial, especially given the lack of compelling evidence against him in the instant matter for which he will soon go on trial.

This Court should order Mr. Banks' pretrial release on reasonable conditions that include the following: (1) a bond secured, partially or in full, by $700,000 in equity in a home in Georgia, $1 million in cash from Alamo Records, and $1 million in cash from Mr. Banks; (2) home confinement with electronic monitoring; (3) around-the-clock security services ensuring compliance with all conditions imposed by this Court; (4) reporting to Pretrial Services; (5) additional third-party sureties and guarantors to satisfy a bond amount that the Court determines to be reasonable under 18 U.S.C. § 3142; and (6) any other conditions that the Court deems appropriate and necessary under the circumstances.