UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No.  2:24-CR-00621-MWF-6                                    Date: May 20, 2025

Present: The Honorable: Patricia Donahue, United States Magistrate Judge

Interpreter N/A

| Isabel Verduzco | Court Smart 05/08/2025 | Daniel Weiner, Gregory Staples, Ian Yanniello |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | Appt. |
|---|---|---|---|---|---|---|
| Durk Banks | X | X |  | Christy O'Connor<br>Drew Findling<br>Jonathan M. Brayman | X |  |

**Proceedings:   Order Denying Application for Reconsideration of Detention Order**

On May 8, 2025, the Court held a hearing on the Application by Defendant Durk Banks for Reconsideration of the Order of Detention (the "Application"). The Court considered the Application, Memorandum of Law in Support of the Application and the Exhibit thereto, the Opposition to the Application, the Second Superseding Indictment ("SSI"), which was filed on May 1, 2025, the Supplemental Memorandum in Opposition to the Application, the Reply in Support of the Application and the Exhibits thereto [Docket Numbers 136-138, 140-141, 147, 155-56][1], as well as the Pretrial Services Reports dated October 25, 2024, November 14, 2024, December 12, 2024, and May 8, 2025, along with the arguments at the hearings on December 12, 2024 and May 8, 2025.

On December 12, 2024, the Court ordered detention on the grounds that no condition or combination of conditions will reasonably assure (1) the safety of any other person and the community and (2) the appearance of Defendant as required. [Docket Number 116.] By his Application, Defendant seeks release on (1) a bond secured partially or in full by approximately $900,000 in equity in real property; $1,000,000 in

---

[1] The Court granted Defendant's request for additional time to file his reply in support of the Application. [Docket Numbers 142, 146.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

cash tendered by Alamo Records, and $150,000 in cash tendered by Niza Alibhai, Defendant's business associate; (2) home detention with electronic monitoring; (3) around-the-clock security services, including around-the-clock surveillance by security services; (4) reporting to Pretrial Services; and (5) additional third-party sureties and guarantors to satisfy a bond amount the Court determines to be reasonable under 18 U.S.C. § 3142. [Docket Numbers 136, 137 at 6.][2]

Defendant seeks reconsideration of the detention order pursuant to 18 U.S.C. § 3142, which states in pertinent part:

> The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). Defendant argues the new information that has a material bearing on dangerousness and flight risk is as follows: (1) the SSI does not contain the allegations in paragraph 6 of the Introductory Allegations in the FSI that Defendant sought to commercialize S.R.'s death by rapping about his revenge on T.B.; and (2) the SSI does not contain the allegations in paragraph 9 of the Means By Which The Object Of The Conspiracy [alleged in Count One] Was To Be Accomplished in the FSI that at Defendant's direction, a co-defendant would pay the bounty and/or cause payment to be made for the killing of S.R. to the conspirators hired to kill T.B. [see Dkt. No. 27, FSI at 3, 6.] Defendant argues the absence of these allegations from the SSI shows that the evidence against him is significantly weaker than it was at the December 2024 detention hearing, and in light of the significant bond package and stringent release conditions that he proposes, there is now a combination of conditions that will reasonably assure the safety of any other person and the community and his appearance as required.

---

[2] The Court uses the page number placed on the document by the electronic docketing system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Paragraph 6 of the FSI Introductory Allegations states that following the attempted murder of T.B. and the murder of S.R., Defendant sought to commercialize S.R.'s death by rapping about his revenge on T.B. with music explicitly referencing audio from a news clip taken shortly after S.R.'s murder where T.B. screamed "no, no!" after seeing S.R.'s dead body." [FSI, Docket Number 27, p. 3.] The FSI quotes the song lyrics. [Id.] At the December 2024 detention hearing, Defendant proffered the declaration of a music producer that the song was recorded approximately eight months before the murder and attempted murder alleged in the FSI. [See Dkt. No. 138-1 at 27-28.] The government countered that regardless of when the song was recorded, a video of Defendant's rival T.B. screaming "no, no!" was placed over the lyrics. [Id. at 28.]

Defendant states that after the December 2024 hearing, the government produced videos containing audio and video from news coverage of the shooting of T.B. and S.R. in which T.B. can be heard screaming, superimposed over Defendant's lyrics. Defendant emphasizes that he did not create those videos, and the government has failed to show any nexus between Defendant and those videos. Defendant explains that the internet users who posted the videos have no affiliation with Defendant or Only the Family and it is misleading to suggest that he is responsible for these videos or that they evidence his commercialization of the murder alleged in this case. However, the December 2024 detention order does not rely upon the allegations in Paragraph 6 of the FSI, as they have minimal relevance to dangerousness and flight risk. In any event, accepting Defendant's argument that no evidence connects him to the videos does not change the analysis regarding dangerousness.

Paragraph 9 of the means of the conspiracy in Count One of the FSI alleges that Defendant directed others to pay a bounty for killing S.R. to the conspirators hired to kill T.B. At the December 2024 detention hearing, the Court stated that "although the allegations [in the FSI] are not that defendant personally pulled the trigger, the allegations are that the defendant exercised a significant amount of control over other individuals and that those individuals were acting at his direction." [Dkt. No. 138-1 at 44-45.] Defendant argues that because the SSI does not contain Paragraph 9, the information proffered by the government no longer supports the above-referenced statement by the Court. Defendant correctly states that the Court's December 2024 finding regarding dangerousness relied on part on the allegations in that paragraph of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

the FSI. However, the SSI contains allegations that Defendant formed Only the Family ("OTF"), which "acted as an association-in-fact of individuals who engaged in violence, including murder and assault, at the direction of [Defendant] and to maintain their status in OTF"; that Defendant was the leader of OTF; that Defendant made clear he would pay a bounty to anyone who took part in killing T.B. for T.B.'s role in killing a high-ranking OTF member and close associate and friend of Defendant, and that as part of the bounty, Defendant and co-defendant Wilson would pay anyone who took part in the killing of T.B. and/or reward individuals with lucrative music opportunities with OTF; that Defendant and Wilson would recruit others to find, track and kill T.B.; that at Defendant's direction, co-defendant Grant would procure cars, ski masks, and firearms to be used to find, track and kill T.B.; that at Defendant's direction, his co-defendants in this case traveled from Chicago to Los Angeles for the purpose of murdering T.B., after Defendant had directed them not to book their flights under names associated with him; that Defendant and co-defendant Grant flew on a private jet from Miami to Los Angeles so they could help coordinate T.B.'s murder; that at Defendant's direction, his co-defendants tracked, stalked, and attempted to kill T.B. [See generally Docket Number 147, SSI.] The allegations in the SSI, along with the allegations discussed at the December 2024 hearing that in a separate matter in Chicago, Defendant is alleged to have engaged in conduct similar to that alleged here, See Dkt. No.116, continue to support the conclusion that Defendant uses his money, influence and power to endanger individuals whom he perceives as a threat. The absence from the SSI of the FSI's paragraphs 6 and 9 allegations does not change that conclusion.

Defendant also submitted a letter from Arsec Group Security Services in support of the Application.[3] [Dkt. No. 156-1.] As discussed above, the new information upon which Defendant relies under § 3142(f) are the differences between the FSI and the SSI. At the May 8 hearing, Defendant acknowledged that the bond package is similar to that offered in December. However, the Arsec Group letter states that it is written in response to the Court's concerns regarding potential risks associated with allowing a high-profile individual to have freedom of movement while under bond. [Id.] It describes recommended procedures Arsec would implement, including a protocol for responding to attempts to violate release terms. [Id.] That protocol includes documenting the incident

---

[3] The letter is unsigned and does not contain the last name of its author.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

thoroughly, notifying law enforcement if necessary, and immediately informing the court of any violations observed. [Id.] The Court is not persuaded that supervision by a third-party security company paid by Defendant addressed either the dangerousness or the serious risk of flight. Indeed, the government advised Pretrial Services that Defendant has repeatedly used at least 13 other inmate phone accounts to make phone calls from MDC and continues to violate BOP's prohibition of engaging in three-way calls. Defendant also has the means and influence to circumvent private security and not appear in court as required. As set forth in the initial detention order, Defendant attempted to leave the United States upon learning of the arrest of his co-conspirators in this case.

Accordingly, for all of these reasons and as stated at the hearing, the Application is denied.

IT IS SO ORDERED.