DREW FINDLING (GA Bar No. 260425)
MARISSA GOLDBERG (GA Bar No. 672798)
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com;
marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN (IL Bar No. 6302461)
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (CA Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>DURK BANKS,<br><br>Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPLY IN SUPPORT OF HIS MOTION TO DISMISS SUPERSEDING INDICTMENT AND FOR DISCLOSURE OF GRAND JURY MINUTES AND EVIDENCE** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this reply in support of his Motion to Dismiss the Superseding Indictment and for Disclosure of Grand Jury Materials. (Doc. 135.) Although Mr. Banks' request to dismiss the First Superseding

1  Indictment is moot, his request for the disclosure of grand jury materials remains
2  warranted under Fed. R. Crim. P. 6(e)(3)(E)(i).
3        This reply is based on the attached memorandum of points and authorities, the files
4  and records in this case, and such further evidence and argument as the Court deems
5  appropriate.

                                                Respectfully submitted,

Dated: May 27, 2025         BY:   /s/ Christy O'Connor
                                                         Drew Findling
                                                         Marissa Goldberg
                                                         Jonathan M. Brayman
                                                         Christy O'Connor

                                                         *Attorneys for Durk Banks*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

Mr. Banks' motion originally requested alternative reliefs: dismissal of the First Superseding Indictment ("First Superseding"), or alternatively, disclosure of the evidence presented and arguments made to the grand jury in support of the First Superseding. Since Mr. Banks filed his motion to dismiss on April 18, 2025, circumstances have changed significantly. On April 21, the government requested from the defense a native copy of the audio recordings of "Wonderful Wayne & Jackie Boy," including the metadata that would definitively prove when the song was recorded. After reviewing the file, which showed that the song was recorded on January 25, 2022—seven months before S.R.'s murder—the government took preemptive action. Instead of waiting for the Court to rule on whether the false statements to the grand jury about "Wonderful Wayne" warrant dismissal, on May 1, 2025, the government abandoned the First Superseding, replacing it with the Second Superseding Indictment ("Second Superseding") that notably omits any inaccurate claim about Mr. Banks' lyrics. (Doc. 147.) Because the government renounced reliance on the false evidence contained in the First Superseding, the defense agrees that its motion to dismiss is moot.

What has not changed, however, is that Mr. Banks is entitled to disclosure of the false evidence and misleading arguments about the song lyrics that the government presented to the grand jury that issued the First Superseding. Only now, the disclosure is warranted under Rule 6(e)(3)(E)(i) (because they are in connection with judicial proceedings) instead of under Rule 6(e)(3)(E)(ii) (covering materials related to potential dismissal of an indictment).[1]

---

[1] In its original motion, the defense cited Rule 6(e)(3)(E)(ii), which authorizes disclosure "where a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." *Id.* To be clear, because the government voluntarily abandoned the First Superseding, the defense agrees that Rule 6(e)(3)(E)(ii) is no longer

1

It is apparent from the First Superseding that at least one government witness—most likely a federal law enforcement agent—testified falsely under oath. This false testimony impeaches and undermines the credibility not only of the witness(es) who testified to the untruths, but also of the entire prosecution team that failed to do its due diligence before pursuing extremely serious charges against Mr. Banks. Such recklessness by the government and its agents exposes a fundamental bias that has tainted every stage of the investigation and prosecution of this case. Disclosure will therefore bear on the merits of pretrial motions and trial defenses alike.

Because it is a certainty (not mere speculation) that the government presented false evidence to the grand jury that issued the First Superseding; because the government has already tacitly conceded that concerns about government agent/affiant safety can adequately be addressed by protective order; and because Mr. Banks seeks disclosure of only the pertinent portions of the grand jury proceedings, disclosure is warranted here.

## II.   LEGAL STANDARD.

A request for grand jury transcripts is within the sound discretion of the trial court. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (citing *United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1985)); *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) (the district court is "infused with substantial discretion"). A court "may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter preliminarily to or in connection with judicial proceedings." Fed. R. Crim. P. 6(e)(3)(E)(i).

As long as Rule 6(e)(3)(E)'s threshold is met, a trial judge should order disclosure of grand jury transcripts when the party seeking them has demonstrated that a "particularized need exists . . . which outweighs the policy of secrecy." *Walczak*, 783 F.2d at 857 (characterizing Supreme Court precedent as a "general suggestion in favor

---

implicated. Regardless of the subsection invoked, the "particularized need" analysis in which the Court must engage is the same.

2

of disclosure"); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966) (citing the "variety of circumstances" in which lower federal courts have made grand jury testimony available to defendants as evidence of the "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice"). A particularized need exists where the court determines that three prerequisites are met: "(1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (citing *Douglas Oil*, 441 U.S. at 222).

The prototypical "particularized need" is where a ground exists to believe that grand jury materials would undermine the reliability of some portion of the government's case. As the Supreme Court has emphasized more than once:

> [T]he typical showing of particularized need arises when a litigant seeks to use the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like. Such use is necessary to avoid misleading the trier of fact. Moreover, disclosure can be limited strictly to those portions of a particular witness' testimony that bear upon some aspect of his direct testimony at trial.

*Douglas Oil*, 441 U.S. at 222 n.12; *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958); *United States v. Fischbach and Moore, Inc.* 776 F.2d 839, 845 (9th Cir. 1985) ("particularized need" not limited to impeachment at the trial stage).

III. **ARGUMENT.**

Under Rule 6(e)(3)(E)(i) and the three-factor test outlined by *Plummer* and *Douglas Oil*, disclosure is appropriate here. Rule 6's threshold requirement is met, because the requested disclosure is in connection with judicial proceedings, the continuing prosecution of Mr. Banks. Each of the three *Plummer* factors is also satisfied. First, not just a "possible injustice," but a certain one would occur if Mr. Banks was

3

forced to litigate this case without access to impeachment materials that are known to exist by the defense, as evidenced by the face of the First Superseding. Second, the need for disclosure outweighs the government's professed safety concerns. As the government has implicitly conceded by producing similar, sworn agent statements in discovery, a protective order adequately assuages any potential concern that the federal agent(s) who testified at the grand jury would be subject to intimidation. And third, Mr. Banks' request here is narrowly tailored, extending only to those portions of the grand jury materials that touch on Mr. Banks' song lyrics.

### A. The Disclosure is in Connection with Judicial Proceedings.

As a threshold matter, Rule 6(e)(3)(E)(i) is easily satisfied: this disclosure request is "preliminarily to or in connection with judicial proceedings." The proceedings against Mr. Banks are ongoing.

### B. There is a Particularized Need that Outweighs the Need for Secrecy.

Having satisfied Rule 6, the next question is whether, under *Plummer*'s three-part test, there is a "particularized need" that outweighs the general "policy of secrecy" surrounding grand jury proceedings. *Walczak*, 783 F.2d at 857. Each of the three factors is met here.

#### 1. Disclosure of grand jury materials will avoid a possible injustice.

The Supreme Court has made clear that the disclosure of grand jury material that would "impeach a witness . . . test his credibility and the like" is "necessary to avoid misleading the trier of fact." *Douglas Oil*, 441 U.S. at 222 (citing *Procter & Gamble Co.*, 356 U.S. at 683). Where a party can allege facts to support its belief that the materials sought would constitute impeachment or test a witness's credibility, this prong is satisfied. *Accord Walczak*, 783 F.2d at 857; *United States v. Ferreboeuf*, 632 F.2d 832, 845 (9th Cir. 1980) (distinguishing as a "fishing expedition" a request based upon "unsubstantiated, speculative assertions of improprieties in the proceedings"); *United*

4

*States v. Reid*, 477 F. Supp. 3d 1174, 1185 (W.D. Wash. 2020) (disclosure appropriate where defendant "identified a concrete example of misconduct on the Government's behalf").[2]

This disclosure request is a far cry from a fishing expedition. The First Superseding itself is proof that a government witness and/or a government lawyer misled the grand jury. From the face of the First Superseding, it is evident that the government led the grand jury to believe that Mr. Banks' song, "Wonderful Wayne," refers to the news coverage of the shooting incident at issue here, and that in the song, Mr. Banks raps about

---

[2] *See, e.g., In re Special Grand Jury 89-2*, 143 F.3d 565, 571 (10th Cir. 1998) ("The reality of the [particularized] need [for grand jury testimony] can be shown by pointing to actual inability to recall relevant information or examples of inconsistent testimony on material issues."); *In re Grand Jury Testimony*, 832 F.2d 60, 63 (5th Cir. 1987) ("We and other courts have read Douglas Oil to require that a party seeking disclosure for impeachment or refreshment of recollection of witnesses first demonstrate actual inability to recall or inconsistent testimony."); *In re Federal Grand Jury Proceedings*, 760 F.2d 436, 439 (2d Cir. 1985) ("Appellant argues that he needs the grand jury testimony of those grand jury witnesses who are scheduled to be called in the disciplinary hearings in order to refresh their recollections or impeach and otherwise test their credibility in the course of the hearings. The Supreme Court has indeed recognized that a petitioner's desire to use grand jury transcripts in subsequent proceedings for these purposes may constitute the particularized need required for disclosure."); *see also In re Petition to Inspect & Copy Grand Jury Materials*, 576 F. Supp. 1275, 1280 (S.D. Fla. 1983) ("[L]itigants in a 'judicial proceeding,' will occasionally have a 'particularized need,' for grand jury material to prevent an injustice in that proceeding. Thus, disclosure has been deemed proper to impeach a witness or test his credibility, or to refresh a witness' recollection." (internal citations omitted)), aff'd, 735 F. 2d 1261 (11th Cir. 1984); *Pakistan Int'l Airlines Corp. v. McDonnell Douglas Corp*., 94 F.R.D. 566, 569 (D.D.C. 1982) ("[W]here there is some showing of a need to refresh recollection or a basis for impeaching a witness, a grand jury transcript may be produced to be used at the deposition of that witness or in cross-examination at the trial."); *id*. at 569 n.7; *Doe v. Cabrera*, 126 F. Supp. 3d 160, 163-64 (D.D.C. 2015) ("If justice is to be done, these conceivable inconsistencies must be assessed by a jury.").

the revenge he exacted on T.B. by the murder of S.R.³ The implication, of course, is that "Wonderful Wayne" is evidence of Mr. Banks' guilt. But the metadata of the song's recording, which the government reviewed before abandoning its reliance on the lyrics, proves otherwise beyond a shadow of a doubt. Open-source YouTube versions of "Wonderful Wayne" containing audio from the news coverage of S.R.'s shooting, which the government had previously attributed to Mr. Banks, were actually "fan edits," *i.e.* altered, fabricated, and inauthentic versions of the original song. (*See* Doc. 135 at 5-6 and Ex. 2).

The government's continued insistence that these statements are true is puzzling, even troubling. (*See* Doc. 161 at 9-10) (denying that the First Superseding's allegations were false or reckless). Having reviewed the metadata itself, how can the government claim that it is true that "Wonderful Wayne" explicitly references audio from a news clip taken shortly after S.R.'s murder? Or that in the song, Mr. Banks is rapping about his involvement in a shooting that had not even happened yet? It is beyond dispute that the government and its grand jury witness(es) got it wrong. The government should be candid with the Court and acknowledge its error.⁴

But even if the government never admits its mistake, the defense is entitled to disclosure of the evidence. That the prosecution team jumped to conclusions about the

---

³ The First Superseding reads: "Following the attempted murder of T.B. and the murder of S.R., defendant BANKS sought to commercialize S.R.'s death by rapping about his revenge on T.B. with music that explicitly references audio from a news clip taken shortly after S.R.'s murder where T.B. screamed 'no, no!' after seeing S.R.'s dead body . . ." (Doc. 27, ¶ 6.)

⁴ California Rule of Professional Conduct 3.3 imposes two pertinent duties on attorneys: first, a lawyer may not knowingly make a false statement of fact to a tribunal or fail to correct a false statement of material fact previously made to the tribunal by the lawyer; and second, where a lawyer or a witness the lawyer calls has offered material evidence, and the lawyer "comes to know of its falsity," the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. Cal. Rules Prof. Conduct, Rule 3.3(a)(1), (a)(3).

6

meaning of "Wonderful Wayne," without doing its homework, is indicative of a disturbing bias against Mr. Banks that he is constitutionally entitled to explore both in pretrial litigation and at trial. And because it pervades the case, this is an issue that cannot be excised by a new indictment. For example, the "Wonderful Wayne" misstatement at issue here also appears in sworn affidavits supporting search warrants that the defense intends to challenge pretrial. *See Franks v. Delaware*, 438 U.S. 154 (1978) (requiring a pretrial hearing where a search warrant rests on an affidavit containing a false statement, whether reckless or intentional). Since its "Wonderful Wayne" mistake became apparent, the government has doubled down, orally and in writing, on its intention to use Mr. Banks' lyrics against him at trial and to interpret Mr. Banks' artistic expression as evidence that he induced S.R.'s murder, is dangerous person, and is "a voice of violence." (*See, e.g.,* Doc. 140 at 7; Doc. 161 at 9). Its filings and in-court statements are replete with similar false and misleading interpretations of other song lyrics and public statements. (*See, e.g, id.* at 7 & n.5); (Doc. 161 at 9 & n.6, 10 & n.7). The defense is entitled to show the jury that the government is viewing Mr. Banks' words and actions through the lens of its own implicit bias, and the "Wonderful Wayne" debacle is proof. (*See also* Doc. 135 at 10-11, n.1) (summarizing the academic research and scholarship demonstrating that rap lyrics face genre-specific bias). The grand jury evidence and the government's argument to the grand jury about that evidence speak directly to this potential defense.

## 2. The Need for Disclosure is Greater than the Need for Continued Secrecy.

The Court must next weigh the need for disclosure against the need for continued secrecy. *Plummer*, 941 F.2d at 806. The purposes of grand jury secrecy are: (1) to ensure that potential witnesses come forward and testify fully and truthfully; (2) to prevent the target of a grand jury investigation from fleeing; and (3) to protect the reputation of wrongfully accused individuals. *Douglas Oil*, 441 U.S. at 219.

7

1  In its opposition, the government relies exclusively on the first purpose, the need
2  to incentivize full and frank witness testimony, to justify continued secrecy. It cites, in
3  support, second and third-hand accounts of alleged threats against civilian witnesses and
4  their associates. (*See* Doc. 161 at 13; Doc. 105, Ex. 2 [Under Seal] at 18-19) (describing
5  witness' third-hand account of alleged "bounty," while also noting witness' credibility
6  issues); *id.* at Ex. 1 at 12 (uncorroborated statement by unidentified individual); *id*. at 18-
7  19 (alleged intimidation by somebody other than Mr. Banks).[5]

8  Disclosure of the "Wonderful Wayne" grand jury evidence would not endanger
9  the availability of future witness testimony. The testimony and evidence at issue almost
10 certainly came from a witness who was a government agent, not a civilian. After all, if
11 the government subpoenaed a civilian witness with personal knowledge about the
12 recording or meaning of "Wonderful Wayne," that witness would have quickly corrected
13 the government's misunderstandings. When a witness is a government agent, the first
14 justification for secrecy, to ensure that prospective witnesses are not "hesitant to come
15 forward voluntarily," *see Douglas Oil*, 441 U.S. at 219, is diminished, if not eliminated.
16 *Accord Reid*, 477 F. Supp. 3d at 1186 (where indictment is based on defendant's
17 statements to law enforcement and to grand jury, "it is unlikely that there will be many
18 relevant witnesses who need the protection that grand jury secrecy provides"). That
19 government agent witnesses have a diminished need for secrecy or anonymity is evident
20 from the government's handling of its own discovery. While the government has yet to
21 produce to the defense discovery regarding civilian cooperators, it has had no such
22 reservation about producing the statements of government witnesses and affiants,
23 including affidavits containing the same "Wonderful Wayne" (sworn) misstatements that

---

[5] Because the government has declined to produce any evidence in support of these anonymous allegations, it is impossible to fully and meaningfully defend against them here.

8

were repeated to the grand jury.[6] A protective order was sufficient there, and so it should be sufficient here. *Accord Douglas Oil*, 441 U.S. at 223 ("if disclosure is ordered, the court may include protective limitations on the use of the disclosed material").

### 3. Mr. Banks Seeks Only Relevant Portions of the Grand Jury Materials.

Mr. Banks seeks only those portions of the grand jury materials—testimony, evidence, and government argument—related to his song lyrics. The case law affirms a district court's ability to tailor disclosures appropriately. "When the defense shows a particularized need for grand jury transcripts that outweighs the need for secrecy, the trial judge's function is reduced to eliminating only extraneous material or issuing protective orders in unusual situations." *Plummer*, 941 F.2d at 806 (citing *Dennis*, 384 U.S. at 874-75). To this end, the defense suggests an *in camera* review of the entire grand jury record to ensure that the only information disclosed is that necessary to avoid a "possible injustice." *E.g., Reid*, 477 F. Supp. 3d at 1186-87.

### IV. CONCLUSION.

For the foregoing reasons, Mr. Banks respectfully requests the disclosure of grand jury materials related to his song lyrics. Mr. Banks further requests and agrees that these materials be produced subject to whatever protective measures the Court deems appropriate.

---

[6] Further, "cases have emphasized that where some disclosure has already happened, the ongoing need for secrecy is diminished." *United States v. Lichewski*, 2023 U.S. Dist. LEXIS 48709, **20-21, 2023 WL 2600451 (N.D. Cal. Mar. 22, 2023); *In re Grand Jury Investigation of Uranium Industries*, 1980 U.S. Dist. LEXIS 11944, 1980 WL 1854 at *2 (D.D.C. June 6, 1980) (holding that, because the judge overseeing the civil action already disclosed the names of those subpoenaed by the grand jury, it is unnecessary to withhold the transcripts on the ground that they might reveal allegations against third parties or identify witnesses).

9