DREW FINDLING (GA Bar No. 260425)
MARISSA GOLDBERG (GA Bar No. 672798)
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com;
marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN (IL Bar No. 6302461)
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (CA Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>  v.<br><br>DURK BANKS,<br><br>    Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPLY IN SUPPORT OF HIS APPLICATION FOR REVIEW/ RECONSIDERATION OF DETENTION ORDER** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this reply in support of his Application for Review/Reconsideration of the Detention Order. (Docs. 159, 162.) As described more fully below, Mr. Banks should be released on bond with conditions.

This reply is based on the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated: May 31, 2025        BY:   /s/ Jonathan M. Brayman
Drew Findling
Marissa Goldberg
Jonathan M. Brayman
Christy O'Connor

*Attorneys for Durk Banks*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION.

The government cannot carry its burden of showing either of the following: that by clear and convincing evidence, Mr. Banks is a danger to the community, or that by a preponderance, he is a flight risk.[1] Its attempts to paint him as a dangerous man fall short, resting largely on allegations of other acts of violence that are unsupported by evidence sufficient to sustain criminal charges. It points to flight records that show a planned trip to Dubai that is wholly consistent with Mr. Banks' history of international travel, including multiple visits to the United Arab Emirates. And finally, it makes much hay out of Mr. Banks' use of other inmates' phone minutes to speak to his wife and children, his father, and his long-time manager—a rule violation that wasn't even severe enough to warrant formal disciplinary action by the Bureau of Prisons. Those phone calls have no bearing on the issues the Court is called upon to decide here: flight risk and danger to the community.

For his part, Mr. Banks offers an enhanced bond package that demonstrates a vested interest in appearing for trial: $4.5 million in cash, including $3 million of his own money and $1 million from Alamo Records, and $700,000 of equity in his mother's home. He volunteers to be confined to his home with his wife and children, surveilled around the clock by a reputable security company that will report directly to the Court. Pursuant to the Bail Reform Act's mandate that the Court release Mr. Banks subject to the "least restrictive . . . combination of conditions" necessary to ensure his appearance and the community's safety, this Court should release Mr. Banks on bond.

---

[1] Although the Bail Reform Act's presumption of detention shifts a burden of production to the defendant, the burden of persuasion remains with the government. *See United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008).

1

## II. ARGUMENT.

Mr. Banks is neither a danger to the community nor a flight risk, and should be released on conditions. Little to no weight should be placed on the unreliable allegations put forward in the government's papers. In looking at the objective record in this matter, the Court will conclude that Mr. Banks should be released. He offers a robust bond package to mitigate against any concerns that the Court may have about his release on bond.

### A. The Government's Reliance on Unsubstantiated Allegations from "the Chicago Case" is Misplaced and Does Not Square with the Government's Position in that Case.

The government repeatedly cites to allegations from a federal case out of Illinois where Mr. Banks has never been charged and never will be charged, despite the passage of over three years since the underlying incident. The government's own exhibit reveals that the allegations pertaining to Mr. Banks are based primarily on information from a cooperating human source, "CHS 1," described in the affidavit as a paid FBI informant and former gang member with a criminal history. Most importantly, the U.S. Attorney's Office for the Northern District of Illinois has confirmed that they do not plan to supersede the charges there to indict Mr. Banks in connection with the ongoing case in *United States v. Anthony Montgomery-Wilson and Preston Powell*. *See* Exhibit (Exh.) 1, Transcript from 8-5-2024 Status Hearing, p. 4 (when asked by Judge Thomas M. Durkin whether the case would be superseded, the government affirmed that it would not be).

This Court should give no weight to these uncharged and uncorroborated allegations. If the AUSAs in Chicago—who have had over three years to evaluate the evidence—have determined not to charge Mr. Banks or even name him as a Co-Conspirator (like they have with two other individuals), this Court should not rely on these same non-meritorious allegations to justify, in whole or in part, Mr. Banks' continued detention.

### B. Mr. Banks' Travel to Dubai is Consistent with His International Travel History.

As Pretrial correctly found, Mr. Banks is not a flight risk. As part of his life and career as a recording artist, performer, and entertainer, Mr. Banks traveled extensively—both domestically and internationally. Touring is an integral part of the job. Traveling to Dubai was not unusual or irregular for Mr. Banks. He has performed at concerts and recorded there. As a devout Muslim, traveling to the Middle East is also deeply important to Mr. Banks' faith.

Mr. Banks was not trying to flee in this case. He was traveling to Dubai, as he had done many times before, as part of his professional and spiritual life. If he had been made aware of criminal charges against him and had been provided the opportunity in this case, Mr. Banks would have done exactly what he did when he faced serious criminal charges in Fulton County, Georgia: (1) voluntarily turned himself in with counsel; (2) entered a plea of not guilty; (3) addressed the allegations in court; and (4) if granted bond, like he was in Georgia, comply with the terms of that bond so that the Court would hopefully allow him to continue to work and provide for his family (as Judge Farmer did on the Georgia case until Mr. Banks was ultimately cleared of all charges).

### C. Violations of MDC's Phone Rules Have Little Bearing on Dangerousness or Risk of Flight.

The MDC violations relied upon by the government have little to no bearing on whether he poses a danger to the community or is a flight risk. In the attached Declaration of Stephanie L. Forrest, who has over 20 years of experience working for the Federal Bureau of Prisons, Ms. Forrest concludes that, while Mr. Banks' phone infractions did violate BOP policy, they appear to involve personal family communications rather than criminal activity. Exh. 2, Declaration of Stephanie L. Forrest. Such violations commonly occur in prison facilities due to detainees' desire to maintain family contact under restrictive communication limits. *Id*. These violations could have been addressed by

3

BOP, if they were deemed important enough, and remedied with notice to Mr. Banks and a disciplinary hearing, explaining the seriousness of the infraction and imposition of sanctions. *See id.* Ms. Forrest does not, however, believe that these infractions are an indicator that Mr. Banks will engage in future non-compliant behavior. *Id.*

### D. **Mr. Banks' Enhanced Bond Package Mitigates Against Any Concerns about his Pretrial Release on Conditions.**

Mr. Banks now proposes an enhanced bond package that addresses concerns about flight risk and demonstrates his absolute commitment to appearing for trial. He offers $3 million in personal assets as security, representing a substantial portion of his wealth. This amount is significantly higher than his previous proposal and reflects his commitment to the legal process and defending these charges in court. Additionally, Alamo Records, a division of Sony Music, offers $1 million in cash as security on any bond that this Court may fashion. A business associate also pledges $500,000 towards Mr. Banks' bond. What is more, he offers $700,000 in equity in a Georgia residence. Significantly, this is not just any residence; this is the home where his mother lives. Mr. Banks would never risk his entire family's safety and security. Nor would he be able to, given that he is volunteering to be surveilled 24 hours a day, seven days a week by an established security company, Arsec Group Security Services. Although Mr. Banks would bear the costs associated with this surveillance, Arsec would remain answerable to the Court, not to Mr. Banks. It would report regularly to the Court and/or Pretrial Services, as well as implement an incident response protocol in the event of any attempted violation, including prompt law enforcement notification where necessary.

This enhanced package far exceeds typical bond amounts and creates a powerful financial incentive for compliance. The government's argument that Mr. Banks' wealth makes him a flight risk ignores the basic principle that substantial security reduces flight risk by creating overwhelming financial consequences for non-appearance (on top of the

personal consequences that would result if he abandoned his wife, children, parents, and entire support system).

### III. CONCLUSION.

Mr. Banks' enhanced bond package adequately addresses any legitimate concerns about flight risk or public safety. For these reasons, this Court should grant Mr. Banks' application and set reasonable conditions that will ensure his appearance at trial while allowing him to assist in his defense and maintain his family and professional obligations.