# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 2:24-cr-00621-MWF-6 |
| ) | |
| v. ) | Hon. Michael W. Fitzgerald |
| ) | United States District Judge |
| DURK BANKS, ) | |
| ) | |
| Defendant. ) | |

I, Stephanie L. Forrest, hereby declare under penalty of perjury, that the following is true and correct:

### STATEMENT OF EXPERTISE

1. I previously worked for the Federal Bureau of Prisons (BOP) for 21 years. After retiring from the BOP, I founded Carolina Recovery and Reentry Consultants, LLC. I have worked with federal offenders for over 20 years and assessed the needs of persons related to addiction, social services, and the justice system for over 30 years.

2. I have expertise in interpreting BOP records, as well as identifying release/re-entry needs to aid in successful reintegration into society. I have been employed within the field of addiction for more than 33 years, with 21 years employed by the BOP working in classification, correctional programs, and treatment. During my career, I managed a caseload of individuals as a Correctional Treatment Specialist. In that capacity, I was responsible for inmate counseling, security classification, program placement/evaluation, re-entry, and residential treatment. This involved managing

inmates with diverse types of sentences as well as D.C. Superior Court offenders. I have worked in Minimum (camp), Medium, and High security units.

3. I hold a Bachelor of Arts in Psychology, an Associate's Degree in Criminal Justice, and a Master of Education in Community and Occupational Programs. I am a Certified Criminal Justice Specialist and Certified Employability Specialist, along with a Licensed and Master Addiction Counselor, Advanced Alcohol and Drug Counselor, and Certified Drug Treatment Specialist. A true and correct copy of my curriculum vitae is attached as Exhibit A.

## **SCOPE OF DECLARATION**

4. I was contacted by Drew Findling, an attorney representing Durk Banks. Mr. Findling requested this document for my opinion of the disciplinary infractions involving the use of a prison telephone to make unsanctioned calls.

5. This declaration provides:
   - Overview of Bureau of Prisons Disciplinary Policy
   - Specific Policy regarding illegal calls
   - Review of the incident reports on Banks
   - Offer an opinion on the severity of Banks' violations
   - Offer an opinion on what calls are referred to the FBI and which are handled internally
   - Conclusion that while this was a violation, inmates often circumvent for reasons that are personal in nature and not criminally motivated. One easy or common way to remedy this would be to temporarily suspend Banks' phone privileges, which the BOP may

2

      have already done.

6. The document I reviewed for this declaration was the FD-302a notes by FBI Special Agent Sarah J. Corcoran dated April 25, 2025.

**INSTITUTION ADJUSTMENT/DISCIPLINARY INFRACTIONS**

7. The BOP gets guidance from Program Statement Number 5270.09, Inmate Discipline Program, dated July 8, 2011, as a guide for enforcing rules at all its institutions.  The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).  This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts.

8. The Inmate Discipline Program applies to sentenced and unsentenced inmates in BOP custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the BOP.

9. The list of prohibited acts is divided into four separate categories based on severity: Greatest; High; Moderate; and Low.  There are four levels of severity the BOP utilizes to categorize misconduct reports. Those categories are: Greatest (100), High (200), Moderate (300), and Low Moderate (400). Examples of Greatest severity prohibited acts are rioting, taking hostage(s), possession of narcotics, and possession of weapons. High severity incident reports would include fighting, extortion/bribery, and threatening conduct. Moderate severity level misconduct may be for refusal to obey an order, insolence toward staff, lying, or being in an unauthorized area. The least severe misconduct violations are low moderate severity level and include acts like using abusive language, unauthorized physical contact with a visitor,

3

possessing another inmate's property, or conducting a business.

10. There are a variety of sanctions available to the BOP to enforce their rules, including loss of privileges (phone, visitation, commissary, email, etc.) and possible loss of Good Conduct Time. Since Mr. Banks is in pretrial, he has no Good Conduct Time that could be taken away for any infraction. However, any incident will be noted, and, in the event of a conviction, the BOP could impose sanctions upon commitment for a sentence.

## MR. BANKS' ALLEGED INFRACTION

11. Detainees are provided access to phone and, in some cases, email, when the detainee is at a BOP facility. MDC Los Angeles is a BOP facility used to house those awaiting trial, who have a hearing at the federal courthouse or have been sentenced to a term of incarceration and are awaiting designation. Detainees are given a Phone Access Code Number (PAC number), which is unique to every detainee. The detainee must compile a list of those with whom he/she will correspond and only those approved by the BOP can be on that list. Once approved, the inmate can make calls of 15-minute duration and limited to 300 minutes of call time each month. Detainees are not allowed to share their PAC number with other detainees.

12. In addition, detainees must only communicate by phone with the person on their BOP approved phone list and no three-way calls are allowed, even if the person being brought into the call is also on the approved phone list.

13. I was not provided with a copy of the incident report and relied upon the notes / report provided by Special Agent Sarah Corcoran. In March 2025, FBI Special Agent Corcoran stated in her report that Mr. Banks placed

4

several calls from the inmate phone system at MDC Los Angeles using the PAC numbers of other inmates to contact his own family members. Further, she also noted in the calls that there were third party calls added to the conversation with Mr. Banks.

14. The infractions described by Special Agent Corcoran would be violations of the phone privileges of the institution. Again, I have not seen the incident reports and am going off the Agent's report. There are three possible disciplinary infractions that the BOP could impose on Mr. Banks depending on the level of severity.

15. The BOP uses codes with an associated description to define the infraction and to determine a disciplinary action. In this case, I believe the appropriate infraction is either a Code 397, which is defined by the BOP as "Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act," or a Code 328, which is defined by the BOP as "Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization."

16. It is possible that this level of infraction could be resolved without a formal hearing and that the disciplinary officer could inform the detainee of the seriousness of the offense and repercussions if it occurred again. As of today, May 30, 2025, BOP staff disclosed to Mr. Banks' counsel that Mr. Banks has not received an incident report concerning the alleged phone violations. Since no incident report has been filed, this could be an indication that BOP staff view the incident as not being a serious offense.

17. There is a higher level of phone incident, Code 297, that has the same

definition and thus more severe, but I saw no aggravating circumstances to warrant a higher level of violation. An aggravating circumstance might involve obtaining contraband, which may not be illegal, but certainly compromises the institution.

18. The violation described by Special Agent Corcoran would, in my opinion and based on the information I reviewed, be a Moderate Level Prohibited Act of a Code 397-Phone Abuse, or Code 328-Giving or Receiving Something of Value. BOP policy states that the sanctions for such violations could include the following:

   A. Recommend parole date rescission or retardation.
   B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
      B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
   C. Disciplinary segregation (up to 3 months).
   D. Make monetary restitution.
   E. Monetary fine. P5270.09 7/8/2011 Federal Regulations are shown in this type. Implementing instructions: this type.
   F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
   G. Change housing (quarters).
   H. Remove from program and/or group activity.
   I. Loss of job.
   J. Impound inmate's personal property.
   K. Confiscate contraband.
   L. Restrict to quarters.
   M. Extra duty.

## **PRISON CULTURE AND ABUSES**

19. When a person is remanded into custody, they have no means to communicate other than those means provided by the BOP at the facility. Those available means are 1) written letters, 2) phone, 3) email and 4) in-person visitation. There is no Internet and no personal phone use. Even when these means are available, they are limited.

20. Detainees or inmates have means to get contraband into a facility. If a detainee or inmate wanted a cell phone, even at MDC Los Angeles, I am confident that they could obtain one. The BOP has such a problem with contraband cell phones that U.S. Senator Jon Ossoff introduced legislation last year to crack down on cell phone use, one of the highest disciplinary infractions in the BOP (a 100-Level infraction).[1]

21. Those held in prison, detainees or inmates, are under immense pressure to get information about their personal life, their case and the situation with their family in their absence. The limits on cell phone timing, frequency and total minutes per month add to that. While I enforced disciplinary infractions, context is important, and I do not have the details to determine what Mr. Banks was discussing nor did Special Agent expound on what was discussed in the calls she monitored. My assumption is that the recorded conversations did not present information that created an alarm as to violence, drugs or another crime.

22. These types of infractions are serious, but they also occur frequently in BOP facilities. People wanting to communicate with those on the outside is not uncommon and many inmates use cell phones, a very serious infraction, to make calls. When someone is caught making calls with other inmate PAC numbers, the recorded conversations are listened to in

---

[1] PRESS RELEASE: Jon Ossoff U.S. Senator for Georgia, "Sens. Ossoff, Grassley Introduce Bipartisan Bill to Crack Down on Contraband in Federal Prisons, April 18, 2024.

order to determine the seriousness of the infraction. Some of these violations involve the inmate detainee conducting business or some other unauthorized type of communication but they also include innocuous conversations with family, which appears to be the case based on the notes from Special Agent Corcoran.

23. If a serious incident or other criminal act was discovered on the phone, a more in-depth investigation would be pursued and, if required, the recordings would be passed from the BOP to the FBI. I am unaware of why the calls in the case were passed to the FBI.

24. There are many disciplinary infractions within the BOP that are monitored and enforced. While phone infractions are serious, context of the call is the presiding factor on determining the seriousness of the infraction. There are also appropriate remedies to prevent the infraction from occurring again, such as loss of phone privileges and loss of Good Conduct Time if appropriate.

## **CONCLUSION**

25. Based on the information I reviewed, these infractions did violate BOP policy. I believe these could have been remedied with a disciplinary hearing, explaining the seriousness of the infraction and imposing a sanction for loss of privileges. Steps such as these have been used in the past and inmates are typically responsive to the punishment.

26. I have reviewed many disciplinary reports for inmates over my years and have also cited inmates for violations as part of my job. While a phone violation can be a very serious incident, the report I reviewed did not indicate that there was anything of a serious nature discussed on the calls.

27. As Mr. Banks is a detainee, I do not see such an infraction being an indicator of future deviant behavior but one that could have been properly

    dispensed with common disciplinary measures.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Executed on this 30th day of May 2025.

_____
Stephanie U. Forrest

# EXHIBIT A
## Curriculum Vitae

Stephanie Landers Forrest
Email: stephanie@prisonology.com
Telephone: 803-480-0588

## Employment History

November 2020 - Current: **Prisonology, LLC**, Consultant**, www.Prisonology.com**

October 2019 - Current: **Carolina Recovery and Reentry Consultants, LLC**, Founder and Consultant**,** North Augusta, South Carolina

March 2017 - Current: Cornerstone Treatment Center**, Clinical Counselor,** Greenwood-Edgefield-Abbeville-McCormick, South Carolina.

- Provide counseling services to an identified population for Adult/Adolescent group counseling
- Work closely with agencies such as Probation and Parole, Department of Juvenile Justice, Law Enforcement, School Districts, and Department of Social Services
- Develop and Update client's treatment plans for 90-day reviews.
- Write weekly treatment notes in client's service records
- Perform alcohol and drug screens to monitor client's sobriety
- Provide Biopsychosocial assessments to determine treatment protocol and provide treatment

April 1998 - May 2019: Department of Justice/Federal Bureau of Prisons, **Case Manager/Residential Drug Treatment Specialist,** (Retired), Edgefield, South Carolina

- Case Management related duties responsible for the counseling, classification, and preparation of inmates for reentry.

- First staff member selected to establish and provide services for the Residential Drug Abuse Program (RDAP) at FCI Edgefield/Satellite Camp
- Special expertise with RDAP and 3641(e) early release such as determining eligibility and administering Biopsychosocial assessments.
- Selected to train Southeast Regional staff in the process of providing (RDAP) Modified Therapeutic Community (MTC) treatment
- Coordinated and Implemented presentations and skill-based instruction/groups on the following topics: Stages of Change, Rational Thinking, Criminal Lifestyle, Living with Others, Lifestyle Balance, Recovery Maintenance, and Transition/Reentry
- Developed and provided an inmate training program concentrating on employment skills and reentry
- Developed and implemented an award-winning juvenile awareness program (WAKE-UP) which collaborated with the South Carolina Department of Juvenile Justice and various youth services and group homes around the state
- Provided individual and group counseling/therapy to inmates with DSM-5 alcohol
  and drug use disorder diagnosis; as well as dual diagnosed individuals
- Responsible for working various correctional corrections posts through the prison including inmate housing units, compounds, towers, and perimeter in High/Medium security (USP/FCI) and Minimum security (SPC) capacity
- Worked closely with federal and state agencies in an effort to assist with a smooth transition of inmates into their communities and families
- Worked in minimum, medium, and high security units

September 1989 - April 1998: <u>Saluda Alcohol and Drug Abuse Commission/ Saluda School District</u>, **Child & Adolescent Services Director / Intervention Specialist**, Saluda, South Carolina

- Coordinated, developed, and implemented intervention services for at risk youth
- Wrote and implemented the district discipline plan and Hearing Officer Enforcement policies for district schools

11

- Coordinated and implemented summer behavior management training program and maintained yearly grant for South Carolina Drug Free School and Communities grant.
- Coordinated and assisted in the implementation of the district's alternative school and D.A.R.E. program
- Liaison for Department of Juvenile Justice

Education

University of South Carolina-Aiken

Bachelor of Arts: December 1984
  Major: Psychology
  Minor: Sociology

**Associate of Science: December 1984**
  Criminal Justice

University of South Carolina-Columbia

Masters of Education: December 1997
   Community and Occupational Counseling Programs

Licensure/Certifications

*Licensed Addiction Counselor*
*SC Board of Examiners #149*

*Advanced Alcohol and Drug Counselor*
*SCAADAC #1807265*

*Certified Addiction Counselor II*
  SCAADAC #1807265

*Master Addiction Counselor*
  NAADAC  #510518

*Certified Criminal Justice Specialist*

American College of Certified Forensic Counselors

Certified Employability Specialist
  Department of Justice

**Certified Drug treatment Specialist**
  Department of Justice

*Certified Trauma Informed Care Professional*
   South Carolina Commission on Alcohol and Drug Abuse

<u>*Awards/Recognition*</u>

***Resolution of Recognition, South Carolina House of Representatives*** (June 4th, 1992) for "outstanding contributions as a member of the Commission on Alcohol and Drug abuse, dedicated to helping citizens overcome problems caused by alcohol and drug abuse: commending this skilled professional working unselfishly and caring manner to help solve the serious and persistent problems of abuse of alcohol and drugs that contribute to the dissolution of families, increased crime, death on our streets and highways, and untold suffering both by those who abuse and those whom they come in contact with".

***Honor Graduate*** (1998), FLETC, Federal Law Enforcement Center, Glynco, Georgia

***Outstanding Employment Performance***, Federal Correctional Institution, FCI Edgefield, SC (1999-2019)

***Outstanding Employee of the Month***, Federal Correctional Institution, FCI Edgefield, SC (1999, 2009, 2011)

***Champion for Children Award*** from the South Carolina Department of Juvenile Justice (2008)

13