DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>             Plaintiff,<br><br>     v.<br><br>DURK BANKS,<br><br>             Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' MOTION FOR TO DISMISS FOR VAGUENESS OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**<br><br><u>Hearing</u><br>Date:        Nov. 18, 2025<br>Time:        10:00 a.m.<br>Courtroom:   5A<br>Judge:       Hon. Michael W. Fitzgerald |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this Motion to dismiss the Second Superseding Indictment (the "Indictment") or, in the alternative, for a bill of

particulars. Mr. Banks makes this motion under Federal Rule of Criminal Procedure 7(c)(1) and (f) and under the Fifth and Sixth Amendments to the Constitution.

This Motion is based on the attached memorandum, the files and records in this case, and any other such evidence or argument that the Court may permit.

Respectfully submitted,

Dated: October 6, 2025          BY:    /s/  Christy O'Connor
                                       Drew Findling
                                       Marissa Goldberg
                                       Jonathan M. Brayman
                                       Christy O'Connor
                                       *Attorneys for Durk Banks*

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND: THE INDICTMENT. ..................................................... 2

    A.    THE "BOUNTY" LANGUAGE. ................................................................ 3

    B.    THE "AT THE DIRECTION OF" LANGUAGE. ..................................... 4

III. LEGAL STANDARD ........................................................................................... 5

    A.    THE PLEADING STANDARDS AN INDICTMENT MUST MEET. ...... 5

    B.    A BILL OF PARTICULARS IS APPROPRIATE TO PROVIDE
            OPERATIVE FACTS ABOUT THE GOVERNMENT'S THEORY
            OF GUILT. ............................................................................................ 6

IV. ARGUMENT ..................................................................................................... 7

    A.    THE INDICTMENT'S "BOUNTY" AND "AT THE DIRECTION
            OF" ALLEGATIONS FORM THE HEART OF THE CASE
            AGAINST MR. BANKS. ....................................................................... 7

    B.    THE INDICTMENT'S LACK OF SPECIFICITY AS TO ALLEGED
            BOUNTY AND DIRECTIONS IN FURTHERANCE OF MURDER. ...... 9

    C.    THE INDICTMENT SHOULD BE DISMISSED AS VAGUE. ............. 11

    D.    AT THE VERY LEAST, THE COURT SHOULD ORDER A BILL
            OF PARTICULARS. ............................................................................ 14

V. CONCLUSION ................................................................................................. 16

1
2

# TABLE OF AUTHORITIES

3

**Cases**

4   *Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................... 8

5   *Russell v. United States*, 369 U.S. 749 (1962)............................................5, 6, 11, 13, 14

6   *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1971)............................................. 7

7   *United States v. Apex Distributing Co.*, 148 F. Supp. 365 (D.R.I. 1957)...................... 14

8   *United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ............................................. 7

9   *United States v. Barket*, 380 F. Supp. 1018 ....................................................... 15

10  *United States v. Bougie*, 118 F. Supp. 359 360 (S.D. Cal. 1954)................................ 14

11  *United States v. Burt*, 765 F.2d 1364 (9th Cir. 1985).............................................. 7

12  *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) .............................. 5, 6, 12, 14-15

13  *United States v. Chong*, 419 F.3d 1076 (9th Cir. 2005) ............................................8, 13

14  *United States v. Choy*, 309 F.3d 602 (9th Cir. 2002) ............................................. 10

15  *United States v. Cruikshank*, 92 U.S. (2 Otto) 542 (1876)........................................ 5

16  *United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974)........................................... 14

17  *United States v. Davis*, 330 F. Supp. 899 (N.D. Ga. 1971)........................................ 15

18  *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) ........................................... 6

19  *United States v. Fried*, 450 F. Supp. 90 (S.D.N.Y. 1978)......................................... 14

20  *United States v. Griffin*, 215 F.3d 866 (8th Cir. 2000)........................................... 10

21  *United States v. Honneus*, 508 F.2d 566 (1st Cir. 1974).......................................... 15

22  *United States v. Inryco, Inc.*, 642 F.2d 290 (9th Cir. 1981) ..................................... 7

23  *United States v. Keith*, 605 F.2d 462 (9th Cir. 1979)............................................. 6

24  *United States v. Krasovich*, 819 F.2d 253 (9th Cir. 1987) ........................................ 5

25  *United States v. Long*, 706 F.2d 1044 (9th Cir. 1983)............................................. 6

26  *United States v. Manetti*, 323 F. Supp. 683 (D. Del. 1971)....................................... 15

27  *United States v. Mills*, 32 U.S. (7 Pet.) 138 (1833) ............................................. 5

28

*United States v. Murphy*, 762 F.2d 1151 (1st Cir. 1985).... 5, 123*United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976)..................................................................................13

*United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976) ..........................................13, 14

*United States v. Pickett*, 209 F.Supp.2d 84 (D.D.C. 2002) ............................................12

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) ........................................................5

*United States v. Resedez-Ponce*, 127 S. Ct. 782 (2007) ..................................................5

*United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993)............................................8

*United States v. Rogers*, 617 F. Supp. 1024 (D. Colo. 1985)..........................................7

*United States v. Smith*, 65 F.R.D. 464 (N.D. Ga. 1974) .................................................7

*United States v. Solnin*, 81 F. Supp. 3d 193 (E.D.N.Y. 2015) .......................................16

*United States v. Thevis*, 474 F. Supp. 117 (N.D. Ga. 1979), *aff'd*, 665 F.2d 616 (5th Cir. 1982)....................................................................................................................7

*United States v. Trumpower*, 546 F.Supp.2d 849 (E.D. Cal. 2008) .........................15-16

*United States v. Wicklund*, 114 F.3d 151 (10th Cir. 1997)..............................................8

*United States v. Wilbur*, 674 F.3d 1160 (9th Cir. 2012)................................................10

*United States v. Yejo*, 634 F. Supp. 630 (D.P.R. 1986) .................................................13

*United States v. Zeehandelaar*, 498 F.2d 352 (2d Cir. 1974)..........................................6

*Wong Tai v. United States*, 273 U.S. 77 (1927)...............................................................6

*Yeargain v. United States*, 314 F.2d 881 (9th Cir. 1963) .............................................15

**Statutes**

18 U.S.C. § 1958...................................................................................................................1

**Rules**

Fed. R. Crim. P. 7(c)(1), (f) .....................................................................................1, 5, 6, 7

# I. INTRODUCTION

This Indictment is impermissibly vague. It leaves the defense to guess as to the government's theory of guilt, and it leaves the government free to change that theory as its cooperators' stories morph over time to meet the demands of a conviction. Because the Indictment omits the factual particulars necessary to give Mr. Banks notice of the charges against him and to permit him to prepare his defense at trial, it fails to satisfy Fed. R. Crim. P. 7(c)(1) and the Fifth and Sixth Amendments. Dismissal is warranted. As an alternative to dismissal, this Motion seeks a bill of particulars under Fed. R. Crim. P. 7(f), along with the Fifth and Sixth Amendments.

Counts One and Two allege that Mr. Banks conspired to and participated in murder-for-hire—in other words, a murder "as consideration for the receipt of, and consideration for the promise and agreement to pay, anything of pecuniary value," or what the government calls a "bounty." *See* 18 U.S.C. § 1958(a), (b)(1) (defining "anything of pecuniary value" to include "anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage").

The problem with Counts One and Two is that while they do allege in general terms that Mr. Banks offered a "bounty" for T.B.'s murder, they do not provide the specifics necessary for him to adequately prepare his defense, to prevent surprise at trial, to protect against double jeopardy, or to prevent the government from shifting its legal theory or straying from its grand jury presentation. The Indictment only alleges that Mr. Banks used unspecified "coded language" that (oxymoronically) "made clear" that T.B's killer would be rewarded with money or "lucrative music opportunities with OTF." But according to the government, what was the "coded language" he used, upon which the grand jury based its charging decision? When, where, and how was the "coded language" bounty allegedly conveyed? What were the monetary rewards and music opportunities that were supposedly promised or delivered as consideration for the murder? Without

more, there is a real danger of a constructive amendment and/or fatal variance at trial, in violation of the Constitution.

A similar deficiency plagues the "at the direction of" language that affects every Count in the Indictment. While the Indictment alleges that the co-conspirators carried out various acts "at the direction of" Mr. Banks'-- flying to Los Angeles; tracking, stalking, and attempting to kill T.B. by gunfire; and procuring the firearms and equipment used to do so-- it fails to give any specifics. When, where, how, and to whom did Mr. Banks' give these alleged directions? To ensure the basic fairness of this trial, the defense is entitled to know.

Given the vagueness of the Indictment's "bounty" and "at the direction of" allegations, if the Indictment is permitted to stand, a bill of particulars is warranted. Mr. Banks requests a bill of particulars that reflects the theory upon which the grand jury rested its charging decision, and that gives Mr. Banks fair notice of the allegations against him. Specifically, we request the following information:

1. The language that Mr. Banks allegedly used to convey his offer of a pecuniary bounty in exchange for the murder of T.B.;

2. The nature of the item of pecuniary value (the monetary reward or music opportunity) that Mr. Banks is alleged to have offered and/or delivered in exchange for the murder;

3. The date/time, audience, and circumstances of the alleged bounty offer;

4. The language used, date/time, audience, and circumstances related to the "at the direction of" allegations in the Indictment.

This request is made under Federal Rule of Criminal Procedure 7(f), and the Fifth and Sixth Amendments.

## II. FACTUAL BACKGROUND: THE INDICTMENT.

The Indictment contains allegations that in order to induce T.B.'s murder, Mr. Banks used "coded language" to offer a pecuniary bounty in the form of a monetary

2

reward or music opportunities with OTF. It also avers that co-conspirators took the following actions "at the direction of" Mr. Banks: flying to Los Angeles; tracking, stalking, and attempting to kill T.B. by gunfire; and procuring the cars, ski masks, and firearms to do so.

## A.    THE "BOUNTY" LANGUAGE.

The Indictment's "Introductory Allegations" contain the following language with respect to alleged bounty:

- "After the murder [of D.B.], defendant BANKS made clear, in coded language, that he would pay a bounty or monetary reward, and/or make payment to anyone who took part in killing T.B. for his role in D.B.'s murder." (Indictment, p. 2.)

As to Count One, which charges Mr. Banks with conspiring to use interstate facilities to commit murder-for-hire, the Indictment alleges:

- Defendants conspired and agreed to use facilities of interstate and foreign commerce with the intent to murder T.B., "as consideration for the receipt of, and consideration for a promise and agreement to pay, anything of pecuniary value, namely, money and lucrative music opportunities with OTF . . ." (*Id.* at 4.)
- "Defendant BANKS would place bounties on individuals that he and other OTF members wanted to kill, including T.B.[1] As part of the bounty, co-conspirators known and unknown, including defendant BANKS and WILSON, would pay anyone who took part in the killing of T.B. and/or reward individuals with lucrative music opportunities with OTF." (*Id.* at 5.)

---

[1] This paragraph appears to reference alleged 404(b) evidence. To the extent that the government seeks admission of this or any other similar allegation under Fed. R. Evid. 404(b), the defense objects to such admission, and in the alternative, requests a government supplement mirroring the bill of particulars requested here as to each "other bad act."

3

- "Overt Act No. 1:    Following the killing of D.B. on or about November 6, 2020, defendant BANKS, using coded language, told defendant WILSON, Co-Conspirators 2, 4, and 5, and others that he would pay a bounty or monetary reward to anyone who took part in the killing of T.B." (*Id.* at 6.)

The language supporting Count Two is similar. That Count charges Mr. Banks with substantive murder-for-hire and aiding and abetting the same, and alleges:

- Defendants used facilities of interstate and foreign commerce with the intent to murder T.B., "as consideration for the receipt of, and consideration for a promise and agreement to pay, anything of pecuniary value, namely, money and lucrative music opportunities with OTF . . ." (*Id.* at 13.)

## B.    THE "AT THE DIRECTION OF" LANGUAGE.

The Indictment's "Introductory Allegations" state that Mr. Banks directed the actions of his co-conspirators as follows:

- " . . . after learning of T.B.'s location, at the direction of defendant BANKS, defendants WILSON, JONES, LINDSEY, and HOUSTON, and Co-Conspirator 2 traveled from Chicago, Illinois, to Los Angeles, California, for the purpose of murdering T.B." (*Id.* at 2-3.)
- "As alleged in Counts One through Three, on August 19, 2022, at the direction of defendant BANKS, defendants GRANT, WILSON, JONES, LINDSEY, and HOUSTON, and C-Conspirator 2 used two vehicles to track, stalk, and attempt to kil T.B. by gunfire . . ." *Id.* at 3.

With respect to Count One, conspiracy to commit murder-for-hire, the Indictment alleges:

- At the direction of defendant BANKS, defendant GRANT would procure cars, ski masks, and firearms that would be used by co-conspirators to find, track, and kill T.B. (p. 5)

4

# III. LEGAL STANDARD

## A.    THE PLEADING STANDARDS AN INDICTMENT MUST MEET.

The Sixth Amendment declares that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusations [against him]." The Fifth Amendment provides that "[n]o person shall be held to answer for . . . [an] infamous, unless on a presentment or indictment of a Grand Jury." Rule 7(c)(1) of the Federal Rules of Criminal Procedure implements these constitutional guarantees; it requires that an indictment contain "a plan, concise, and definite written statement of the essential facts constituting the offense charges." Fed. R. Crim. P. 7(c)(1); *see United States v. Resedez-Ponce*, 127 S. Ct. 782, 788 (2007).

In keeping with these provisions, courts have long recognized that an indictment must state the alleged offense "with clearness, and all necessary certainty, to apprise the accused of the crime with which he stands charged." *United States v. Mills*, 32 U.S. (7 Pet.) 138, 142 (1833); *see, e.g., United States v. Krasovich*, 819 F.2d 253, 254-55, (9th Cir. 1987); *United States v. Cecil*, 608 F.2d 1294, 129 (9th Cir. 1979) (per curiam). It is not enough for an indictment to plead mere legal conclusions. As the Supreme Court declared more than a century ago, "[F]acts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." *United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 558 (1876); *see, e.g., United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000); *United States v. Murphy*, 762 F.2d 1151, 1154 (1st Cir. 1985). When the statute under which the offense is charged "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,--it must descent to particulars." *Cruikshank*, 92 U.S. (2 Otto) at 558 (quotation omitted); *see, e.g., Russel v. United States*, 369 U.S. 749, 765 (1962); *Pirro*, 212 F.3d at 99.

5

A vague indictment poses four principal dangers. First, it does not permit the defendant "to prepare an adequate defense [or] to address himself to the relevant questions of fact and law." *United States v. Zeehandelaar*, 498 F.2d 352, 356 n.1 (2d Cir. 1974); *see Russel*, 369 U.S. at 766-67; *Cecil*, 608 F.2d at 1296. Second, it creates the risk that the defendant will be tried for an offense other than the one for which he was indicted by the grand jury. *See Russell*, 369 U.S. at 770; *United States v. Du Bo*, 186 F.3d 1177, 1179-80 (9th Cir. 1999); *Cecil*, 608 F.2d at 1296; *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). Third, it permits the government to shift its legal theory as the case progresses. *See Russell*, 369 U.S. at 768; *Zeehandelaar*, 498 F.2d at 356 n.1. And fourth, it creates the risk that the defendant will be deprived of the protection against being tried twice for the same offense. *See Cecil*, 608 F.2d at 1296; *Zeehandelaar*, 498 F.2d at 356 n.1.

## B.    A BILL OF PARTICULARS IS APPROPRIATE TO PROVIDE OPERATIVE FACTS ABOUT THE GOVERNMENT'S THEORY OF GUILT.

Federal Rule of Criminal Procedure 7(f) governs the filing of a bill of particulars. The relevant subsection states:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Under Rule 7(f), this Court has broad discretion to order the government to provide a bill of particulars. *See Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The 1966 amendment to Rule 7(f), which eliminated the good-cause requirement for a bill of particulars, was "designed to encourage a more liberal attitude by the courts for bills of particulars without taking away the discretion which courts must have in dealing with such

6

motions in individual cases." Federal Rule of Criminal Procedure 7(f) advisory committee note. *See also United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971); *United States v. Smith*, 65 F.R.D. 464, 468 (N.D. Ga. 1974). In accordance with the spirit of the 1966 amendment, defendants should "be given the benefit of the doubt in gray areas." *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979), *aff'd*, 665 F.2d 616 (5th Cir. 1982); *accord United States v. Rogers*, 617 F. Supp. 1024, 1028 (D. Colo. 1985).

A bill of particulars has three separate purposes: (1) "[t]o inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial"; (2) "to avoid or minimize the danger of surprise at the time of trial"; and (3) "to enable [the defendant] to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purpose." *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (citation and quotation marks omitted). *See also United States v. Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985) (same). A bill of particulars "is intended to supplement the indictment by providing more detail of the facts upon which the charges are based." *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981).

## IV. ARGUMENT

## A.    THE INDICTMENT'S "BOUNTY" AND "AT THE DIRECTION OF" ALLEGATIONS FORM THE HEART OF THE CASE AGAINST MR. BANKS.

What the Indictment fails to tell us are the very things the defense is entitled to know: the "operative facts" underlying the government's theories of Mr. Banks' guilt. There is no allegation here that Mr. Banks physically participated in the stalking and shooting at issue. The crux-- the entirety, even-- of the government's case, then, is first, that he somehow offered and/or paid some sort of unspecified "bounty" in exchange for the murder, and second, that he directed in some unspecified way the stalking, the firearm

7

possession, the murder, and perhaps also the murder bounty's payment.[2] Those are the only two links-- the "bounty" and Mr. Bank's direction of others-- alleged to connect him to the charged crimes.

Indeed, if the government cannot prove up these links beyond a reasonable doubt, its case against Mr. Banks fails. As to the bounty offer, it is an element of the murder-for-hire charged in Counts One and Two that Mr. Banks "gave or promised something of pecuniary value in exchange for seeking [the] murder." *See United States v. Chong*, 419 F.3d 1076, 1081 (9th Cir. 2005) ("[t]he intent to pay someone to commit murder is . . . a critical element of 'murder-for-hire'") (citing *United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993)). *See also United States v. Wicklund*, 114 F.3d 151, 154 (10th Cir. 1997) (rejecting government's claim that pecuniary consideration element could be met where the defendant merely expected a benefit). According to the legislative history of § 1958:

> [T]he murder must be carried out or planned as consideration for the receipt of 'anything of pecuniary value.' This term is defined to mean money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage....

*Chong*, 419 F.3d at 1081 (citing S. Rep. 98-225, at 306 (1983)). With respect to every other count in the Indictment, the "at the direction of" language is the only thing

---

[2] Between the First Superseding Indictment and the Second Superseding Indictment, the government deleted the following language: "At the direction of defendant BANKS, defendant WILSON would pay the bounty or monetary reward, and/or cause payment to be made for the killing of S.R., on behalf of co-conspirators known and unknown, to the conspirators hired to kill T.B." Dkt. No. 27, p. 6 at ¶ 9. If the government disavows the allegation that Mr. Banks directed co-defendant Wilson to pay the bounty and does not intend to offer proof of this at trial, the defense deserves to know that for trial preparation purposes. If evidence on this point was presented to the government or to a grand jury, and the government later deduced that evidence to be unreliable, the defense requests discovery under *Brady v. Maryland*, 373 U.S. 83 (1963).

1    connecting Mr. Banks to these crimes.[3] As these two subject matters are at the heart of

2    the government's prosecution of Mr. Banks, so too are they at the heart of his

3    Constitutionally-guaranteed ability to mount a defense.

4    **B.    THE INDICTMENT'S LACK OF SPECIFICITY AS TO ALLEGED**

5    **BOUNTY AND DIRECTIONS IN FURTHERANCE OF MURDER.**

6        Despite the centrality of the "bounty" and "at-the-direction-of" allegations, the

7    Indictment lacks the specifics of the government's theory on those points. By way of

8    example, we have the issue of the "coded language" supposedly used to convey the

9    bounty. The Indictment alleges that Mr. Banks "*made clear, in coded language*, that he

10   would pay a bounty or monetary reward, and/or make payment to anyone who took part

11   in killing T.B. for his role in D.B.'s murder." (Indictment, p. 2.) (emphasis added.) *See

12   also, id.* at 6 ("Following the killing of D.B. on or about November 6, 2020, defendant

13   BANKS, using coded language, told defendant WILSON, Co-Conspirators 2, 4, and 5,

14   and others that he would pay a bounty or monetary reward to anyone who took part in

15   the killing of T.B.") Let's consider some potential defenses to this allegation: 1) that Mr.

16   Banks never used the alleged coded language (e.g., he was not present when the words

17   are alleged to have been uttered, or there is no record of a corresponding phone call or

18   text message); and 2) that the language at issue does not mean what the government says

19   it means. How can Mr. Banks be prepared to present either or both of these defenses if

20   he does not know the specific circumstances of this alleged "coded language" bounty?

21   What code words did he supposedly use, that are alleged to mean what the government

22   says they mean? Was the "bounty offer" conveyed in person, over the phone? Where and

23   when? Mr. Banks is entitled to know what "coded language" the government presented

24

25        [3] The government alleges aiding and abetting liability as to Counts Two through
26   Four. To the extent that it intends to show that Mr. Banks aided/abetted in some way
     other than by directing his co-conspirators to murder (Count Two), stalk (Count Three),
27   and possess firearms in relation to murder and stalking (Count Four), the defense requests
     the specifics of those allegations as well.
28

                                          9

to the grand jury[4] and will thus rely upon at trial, and the circumstances surrounding this alleged communication.

The same holds true for the nature of the pecuniary consideration Mr. Banks supposedly offered or gave. The Indictment avers that the murder was undertaken "as consideration for the receipt of, and consideration for a promise and agreement to pay, anything of pecuniary value, *namely, money and lucrative music opportunities with OTF* . . ." (*Id.* at 13.) (emphasis added.) But what sum of money is alleged to have been offered as bounty? In cash, via a wire transfer, or a written check? What were the "lucrative music opportunities" that served as the alleged consideration for the T.B.'s murder? Was it a feature on one of Mr. Banks' songs that the government claims was offered and/or furnished as consideration for the murder? If so, which song? The defense is entitled to know.

And finally, the Indictment alleges in general terms that various acts in furtherance of the charged crimes were undertaken "at the direction of" Mr. Banks. *See* Indictment at 2-3 (co-conspirators traveled to Los Angeles after learning of T.B.'s location); *id.* at 3 (co-conspirators used to vehicles to track, stalk and attempt to kill T.B. by gunfire); *id.* at 5 (defendant Grant procured cars, ski masks, and firearms used to track and kill T.B.). At trial, Mr. Banks intends dispute that any such actions were undertaken at his direction.

---

[4] The government is not permitted to prosecute Mr. Banks based on allegations other than those presented to and approved by the grand jury. *See, e.g., United States v. Wilbur*, 674 F.3d 1160, 1177-7 (9th Cir. 2012) (reversible constructive amendment where the charging terms of an indictment are altered, either literally or in effect, by the prosecutor or court after the grand jury has passed upon them); *United States v. Choy*, 309 F.3d 602, 608 n.5 (9th Cir. 2002) (fatal variance where a defendant "is charged with one set of facts constituting a crime but is convicted of another set of facts constituting a crime"); *United States v. Griffin*, 215 F.3d 866, 868 (8th Cir. 2000) (reversal required where variance prejudices defendant by "depriving him of adequate notice of the charges he must defend"). It would be reversible error for the government, at trial, to ask the jury to rest its conviction upon an alleged bounty offer not presented to and relied upon by the grand jury.

He cannot adequately do so, however, without knowing the government's theory on this point: how, when, and to whom is he alleged to have conveyed these directions? Without a bill of particulars, the specifics of these accusations will come as a surprise to the defense at trial.

## C.   THE INDICTMENT SHOULD BE DISMISSED AS VAGUE.

The Indictment here, on both the "bounty" and "at the direction of" points, presents all the dangers of a vague indictment. It does not permit Mr. Banks to "prepare an adequate defense," because the defense must guess what aspect of Mr. Banks' alleged interactions with purported co-conspirators during the time period between on or before November 6, 2020 (D.B.'s murder) and August 22, 2022 (the shooting at issue here) the government will claim at trial constituted 1) an offer of bounty, and 2) directions in furtherance of the murder. The Indictment creates a substantial risk that Mr. Banks will be tried based on conduct other than the conduct the grand jury found when it returned the Indictment. It permits the government to shift its theories to meet the vagaries of trial, including the stories of cooperating witnesses whose very lives depend upon pleasing the prosecution. And the Indictment affords Mr. Banks scant protection against being tried twice for the same offense.

Courts have repeatedly dismissed indictments far more detailed than this one. In *Russell*, for example, the Supreme Court dismissed indictments purporting to charge offenses under 2 U.S.C. § 192 for failing to answer questions before a congressional committee. The Court found the indictment inadequate-- even though they stated the date, place, and circumstances of the questioning and identified the questions each defendant had refused to answer-- because they failed to identify the subject under inquiry when the defendant was questioned. *See* 369 U.S. at 752-53, 765-72. The Indictment here has the reverse of the defect in *Russell*; it identifies in general terms what

11

Mr. Banks is alleged to have done, but it gives no specifics about Mr. Banks' alleged conduct that amounted to 1) a bounty offer, and 2) directions in furtherance of murder.

In *Cecil*, the Ninth Circuit found insufficient an indictment for conspiracies to import and distribute marijuana. The indictment tracked the language of the relevant statutes, identified two locations where the conspiracies occurred, gave the names of the co-conspirators, and identified the objects of the alleged conspiracies. But the indictment did not "state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof." 608 F.2d at 1296-97. And, although the indictment identified a four-month period for each conspiracy, it did not limit the conspiracies to that period; instead, the dates were "open ended in both directions." *Id.* at 1297. The court of appeals found that "the indictment fails to allege sufficient facts to facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on facts presented to the Grand Jury." *Id.*   The Indictment here is even less specific than the indictment found defective in *Cecil*. It covers at least 18 months, with an open-ended conspiracy start date, and contains no location where the Mr. Banks was alleged to have offered a bounty or directed others. And while it does contain a recitation of overt facts in furtherance of the conspiracy, none of those facts speak to the only two alleged links truly tying Mr. Banks to these crimes: the abounty and directions in furtherance of murder.

In *United States v. Pickett*, 209 F.Supp.2d 84 (D.D.C. 2002), Judge Thomas Penfield Jackson dismissed an obstruction count less bare-bones than our Indictment's treatment of the alleged bounty and directions in furtherance of murder. That count alleged that on November 7, 2001, the defendant knowingly and willfully obstructed and interfered with the Capitol Police in the performance of their protective functions. Judge Jackson found those allegations insufficient under Rule 7(c)(1), because they did not fairly inform the defendant of his allegedly unlawful conduct. *See* 209 F.Supp.2d at 88-89. Mr. Banks' Indictment--which does not even confine the "bounty" and "at the

12

direction of" allegations to a single day, as the count at issue in *Pickett* did--should similarly be dismissed. *See also, e.g., Murphy*, 762 F.2d at 1154 (witness intimidation indictment deficient for failing to specify the "official proceeding" at issue); *United States v. Yejo*, 634 F. Supp. 630, 634 (D.P.R. 1986) (false claims and conversion charges dismissed, despite tracking statutory language, because the counts contained "conclusory statement which are insufficient to inform the defendant with, at least, minimal particularity of what conduct constituted the alleged false claim or the conversion in order for him to prepare an adequate defense").

Indictments are rare that purport to charge offenses committed in part through a defendant's statements but fail to identify either the alleged statements or the respect in which they meet the requirements of conviction. When such indictments have appeared, however, courts have not hesitated to dismiss them. In *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976), for example, the indictment alleged fraud through false pretenses and tracked the language of the relevant statute, but it failed to specify the allegedly false representations. *See id.* at 701-02. The court of appeals reversed the false pretenses conviction. Rejecting the government's contention that the district court could have ordered a bill of particulars, the court observed that "absent any allegation whatsoever in the indictment as to what the false pretenses were, the United States Attorney would have a free hand to insert the vital part of the indictment without reference to the grand jury. The law does not vest him with such authority." *Id.* at 701. It added that "'[w]here guilt depends so crucially upon . . . a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.'" *Id.* (quoting *Russell*, 369 U.S. at 764). The *Nance* reasoning applies squarely to this Indictment, which omits any allegation whatsoever as to what statements or actions constitute either a bounty offer or gift, *see Chong*, 419 F.3d at 1081 (a gift or promise of something of pecuniary value in exchange for seeking murder is an essential element of §1958) or directions in furtherance of murder.

13

The Tenth Circuit's decision in *United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974), similarly demonstrates the insufficiency of the Indictment. The *Curtis* indictment charged a scheme and artifice to defraud through "false and fraudulent pretenses, representations and promises," but as in *Nance*--and like the Indictment here--it did not identify the statements alleged to constitute an element of the offense (there, the false representations). The court of appeals reversed the conviction and ordered the indictment dismissed. The court declared that a proper charge must identify "the particular pretenses, representations or promises claimed to have been false," and it reiterated that "it is not sufficient in this regard to merely plead the statutory language." *Id.* at 990; *see also, e.g., United States v. Fried*, 450 F. Supp. 90, 93-94 (S.D.N.Y. 1978) (dismissing false statement counts, even though they tracked the language of the statute and specified the documents and the dates at issue, because "there is no allegation in any of these counts of the specific respect or respects in which the [document] referred to on any particular line was false"); *United States v. Apex Distributing Co.*, 148 F. Supp. 365, 371-72 (D.R.I. 1957) (dismissing false claim counts because they lack "any description of said false, fictitious or fraudulent claim" and "any particular or particulars wherein said claim was false, fictitious and fraudulent"); *United States v. Bougie*, 118 F. Supp. 359 360 (S.D. Cal. 1954) (false statement count defective for failing to allege respect in which statement was false).

These cases stand for the fundamental and decisive point: an indictment charging a federal crime committed in part through statements must identify both the statements and the respect in which they satisfy the requirements of guilt. Because the Indictment does not satisfy even that minimal pleading standard, it must be dismissed.

**D.    AT THE VERY LEAST, THE COURT SHOULD ORDER A BILL OF PARTICULARS.**

To be clear, even a bill of particulars cannot save a defective indictment. *See, e.g., Russell*, 369 U.S. at 770-71; *Cecil*, 608 F.2d at 1295. Thus, although Mr. Banks moves

14

1    for a bill of particulars in the alternative, those particulars will not remedy the defects

2    identified here.

3         Nevertheless, many courts have granted a request for a bill of particulars when the

4    request, as this one does, seeks the operative facts related to the charged offense missing

5    from an indictment. *See United States v. Honneus*, 508 F.2d 566, 570 (1st Cir. 1974)

6    (allowing particulars on where alleged offense took place); *United States v. Barket*, 380

7    F. Supp. 1018, 1020 (W.D. Mo. 1974) (allowing particulars "fully and fairly" advising

8    defendant of bank fraud charges); *United States v. Manetti*, 323 F. Supp. 683, 696 (D.

9    Del. 1971) (allowing particulars for all "central facts" such as the names of participants

10   in conversations and time and place of all transactions central to charge); *United States

11   v. Davis*, 330 F. Supp. 899, 902-03 (N.D. Ga. 1971) (allowing particulars as to exact

12   dates and places relating to all alleged offenses). And while a defendant is not entitled to

13   know every piece of *evidence* the government will rely upon at trial, he is entitled to

14   know the government's *theory* of the case. *E.g. Yeargain v. United States*, 314 F.2d 881

15   (9th Cir. 1963) (in a counterfeit currency case, information on the bills' denominations,

16   that they were Federal Reserve Notes, the date and time of passing, and the exact street

17   location of the passing was sufficient to apprise defendant of the government's theory).

18        *United States v. Trumpower* is instructive. 546 F.Supp.2d 849 (E.D. Cal. 2008).

19   There, the defendant was charged with laundering the proceeds of a mail and wire fraud

20   scheme. Although the indictment's money laundering charges contained specific factual

21   pleadings describing the time, place and circumstances of the monetary transactions, the

22   indictment "did not plead the factual circumstances of the specific mail or wire fraud that

23   produced those funds." *Id.* at 851-852. The only description of the fraud was "in

24   completely generic terms." *Id.* The court reasoned that "[a] defense cannot be marshaled

25   unless the defendant knows both the statute allegedly violated and the conduct which

26   allegedly violates the statute." *Id.* at 852. The court evaluated the need for a bill of

27   particulars by considering what the government would be required to prove at trial,

28

15

noting that in a money laundering case, "the government must ultimately prove that the specific funds can be related to a specific crime." *Id.* Thus, "[w]ithout any pleading as to the factual context for that specific crime . . . a serious question as to adequate notice has been raised." *Id.* The court held that even a bill of particulars providing "specific descriptions of the type of misrepresentations Trumpower had used to carry out his fraudulent scheme" was insufficient. *Id.* In order to allow for adequate trial preparation and prevent surprise at trial, the court ordered a bill of particulars containing "(1) the circumstances of the crime or crimes from which the laundered money was derived, including how and when those crimes were accomplished, (2) in the case of mail or wire fraud, the particular false material representations and particular mailings or wire transactions; (3) who committed the crimes; (4) who were the victims of the crimes; and (5) . . . how the allegedly laundered money can be identified as the proceeds of criminal conduct to the extent that it was ever commingled with legitimately derived funds." *Id. See also United States v. Solnin*, 81 F. Supp. 3d 193, 208-09 (E.D.N.Y. 2015) (requiring disclosure of identities of mail fraud victims, and corresponding emails and/or items underlying charged counts). As was the case in *Trumpower*, our Indictment fails to plead the factual context for the specific crimes charged. A bill of particulars, at a minimum, is warranted.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss the Indictment against Mr. Banks. In the alternative, the Court should order the bill of particulars described above.

16