BILAL A. ESSAYLI
Acting United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
        1400/1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3667/3535/0813
        Facsimile: (213) 894-0142
        E-mail:    ian.yanniello@usdoj.gov
                   greg.staples@usdoj.gov
                   daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(B)-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT DURK BANKS' MOTION TO DISMISS FOR VAGUENESS OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS |
| v. | |
| DURK BANKS, et al., | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its Opposition to Defendant Durk Banks' Motion to Dismiss for Vagueness or in the Alternative for a Bill of Particulars (Dkt. 227) in the above-captioned case.  The Motion has been joined by defendants Deandre Dontrell Wilson, David Brian Lindsey, and Asa Houston.

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 27, 2025          Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

_/s/_
IAN V. YANNIELLO
GREGORY W. STAPLES
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................ii

TABLE OF AUTHORITIES (CONT'D.)......................................iii

TABLE OF AUTHORITIES (CONT'D.)......................................iv

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   STATEMENT OF FACTS...........................................1

      A.    The Murder-for-Hire and Conspiracy to Commit Murder-
            for-Hire Charges.......................................1

      B.    The SSI Explicitly Lists the Elements of the Charged
            Offenses and Provides Ample Details of the Murder
            Plot, Including Facts About Each Defendant's Role......2

      C.    The Government Has Produced Substantial Discovery
            Underlying These Allegations...........................4

III.  ARGUMENT.....................................................5

      A.    The SSI Sets Forth the Elements of the Offenses and
            Provides More Than Adequate Notice of the Nature of
            the Offenses Charged...................................5

            1.    Legal Standard...................................5

            2.    The SSI is Plainly Valid on its Face.............6

      B.    A Bill of Particulars Is Not Warranted Because the
            Indictment and Discovery in This Case Are Sufficient
            to Allow Defendants to Prepare Their Defense, Avoid
            Surprise at Trial, and Avoid Double Jeopardy..........10

            1.    Defendants' Requests Are Improper And, in Any
                  Event, Underlying Facts Have Already Been
                  Produced in Discovery...........................11

            2.    Defendants' Request for a Bill of Particulars is
                  Improper........................................12

IV.   CONCLUSION..................................................16

**<u>TABLE OF AUTHORITIES</u>**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

<u>CASES</u>:

<u>Cooper v. United States</u>,
  282 F.2d 527 (9th Cir. 1960) ..................................... 14

<u>United States v. Apex Distributing Co.</u>,
  148 F. Supp. 365 (D.R.I. 1957) .................................... 9

<u>United States v. Ayers</u>,
  924 F.2d 1468 (9th Cir. 1991) ........................... 7, 11, 14

<u>United States v. Barket</u>,
  380 F. Supp. 1018 (W.D. Mo. 1974) ............................... 16

<u>United States v. Boren</u>,
  278 F.3d 911 (9th Cir. 2002) ..................................... 7

<u>United States v. Brodie</u>,
  326 F. Supp. 2d 83 (D.D.C. 2004) ................................ 13

<u>United States v. Cecil</u>,
  608 F.2d 1294 (9th Cir. 1979) .................................... 9

<u>United States v. Curtis</u>,
  506 F.2d 985 (10th Cir. 1974) .................................... 9

<u>United States v. Davis</u>,
  330 F. Supp. 899 (N.D. Ga. 1971) ............................... 15

<u>United States v. Feola</u>,
  651 F. Supp. 1068 (S.D.N.Y. 1987) .............................. 12

<u>United States v. Giese</u>,
  597 F.2d 1170 (9th Cir. 1979) .............................. 12, 13

<u>United States v. Hinton</u>,
  222 F.3d 664 (9th Cir. 2000) ..................................... 5

<u>United States v. Honneus</u>,
  509 F.2d 566 (1st Cir. 1974) ................................... 14

**TABLE OF AUTHORITIES (CONT'D.)**

DESCRIPTION                                                              PAGE

United States v. Long,
  706 F.2d 1044 (9th Cir. 1983) .................................. 12

United States v. Mancuso,
  718 F.3d 780 (9th Cir. 2013) ................................... 7

United States v. Manetti,
  323 F. Supp. 683 (D. Del. 1971) ........................ 13, 14, 15

United States v. Morlan,
  756 F.2d 1442 (9th Cir. 1985) ................................... 6

United States v. Murphy,
  762 F.2d 1151 (1st Cir. 1985) ................................... 9

United States v. Nance,
  533 F.2d 699 (D.C.C. 1976) ..................................... 9

United States v. Ojeikere,
  299 F. Supp. 2d 254 (S.D.N.Y. 2004) ........................... 12

United States v. Pickett,
  209 F.Supp.2d 84 (D.C.C. 2002) ................................. 9

United States v. Resendiz-Ponce,
  549 U.S. 102 (2007) ............................................ 5

United States v. Robertson,
  15 F.3d 862 (9th Cir. 1994) ................................... 13

United States v. Rodriguez,
  360 F.3d 949 (9th Cir. 2004) ................................... 6

United States v. Rogers,
  617 F. Supp. 1024 (D.C. Colo. 1985) ........................... 13

United States v. Russell,
  82 S. Ct. 1038 (1962) .......................................... 8

United States v. Ryland,
  806 F.2d 941 (9th Cir. 1986) .................................. 12

United States v. Thevis,
  474 F. Supp. 117  (N.D. Ga. 1979) ............................. 13

## <u>TABLE OF AUTHORITIES (CONT'D.)</u>

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

<u>United States v. Trumpower</u>,
    546 F. Supp.  (E.D. Cal. 2008) ................................... 15

<u>Wilson v. Belleque</u>,
    554 F.3d 816 (9th Cir. 2009) ................................... 10

<u>Wong Tai v. United States</u>,
    273 U.S. 77 (1927) ................................................ 5

<u>STATUTES</u>:

18 U.S.C. § 1958(a) .............................................. 2, 6

<u>RULES</u>:

Fed. R. Crim. P. 7(c)(1) .......................................... 5

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

## I.    INTRODUCTION

The Second Superseding Indictment ("SSI") contains robust allegations about the motive for the murder, details about how the defendants stalked the murder victim's vehicle for hours leading up to the killing (including photographs), and details about each defendant's role in the murder plot.  Defendants nonetheless move for dismissal of Counts One and Two due to purported vagueness, or in the alternative, seek an order directing a bill of particulars.  As detailed below, the SSI sets forth the elements of the charged offenses, a point not challenged by defendants, and sufficient factual allegations to apprise defendants of the nature of the charges they face.  The SSI is valid, and defendants offer no legal basis for its dismissal.

In addition, defendants' claim that they are entitled to know how the government will prove its case at trial is beyond the scope of a bill of particulars.  Defendants are entitled to know the theory of the government's case, not the details of how it will prove its case at trial.  The SSI and the government's discovery materials provide more than sufficient notice to defendants of the charges they face, and do not create any Double Jeopardy issues.  The motion should be denied in full.

## II.    STATEMENT OF FACTS

### A.    The Murder-for-Hire and Conspiracy to Commit Murder-for-Hire Charges

The SSI charges defendant with, among other crimes, Conspiracy to Commit Murder-for-Hire Resulting in Death in Count 1, and a substantive count of Murder-for-Hire in Count 2, both in violation of

1

18 U.S.C. § 1958(a).

The SSI begins with detailed introductory allegations identifying defendant Banks and his co-conspirators, and the motive for the stalking and murder plot charged in this case.  (Dkt. 147 [SSI] at Introductory Allegations.)  Specifically, the SSI alleges that defendant Banks is the leader of a Chicago-based organization called "Only the Family," or OTF.  (Id. at ¶ 1.)  The SSI alleges that in addition to producing hip hop music, OTF is comprised of individuals who engaged in violence, including murder and assault, at defendant Banks's direction.  (Id.)  In November 2020, Deyvon Bennett aka "King Von" --- a high-ranking OTF member and close friend of defendant --- was shot and killed following a physical altercation with T.B. at a nightclub in Atlanta, Georgia.  (SSI at ¶ 3.)  It was this murder that prompted defendant to offer a bounty for the murder of T.B., making clear, in coded language, that he would pay a bounty to anyone who took part in killing T.B.  (Id.)  These Introductory Allegations were incorporated by reference into the conspiracy charge in Count 1.  (Id. at Count 1.)

**B.    The SSI Explicitly Lists the Elements of the Charged Offenses and Provides Ample Details of the Murder Plot, Including Facts About Each Defendant's Role**

Count 1 explicitly sets forth the object of the charged conspiracy as the use of facilities of interstate commerce --- namely commercial airlines to fly to California from Chicago and Florida, rented and stolen cars, cell phones, and the internet --- with intent to murder T.B. in exchange for a promise and agreement to pay money or lucrative music opportunities with defendant's record label, OTF. (Id. at Count 1, ¶ A.)  Count 1 then describes how the conspiracy was accomplished, plainly stating that defendant Banks told multiple co-

2

conspirators that he would pay a bounty or monetary reward to anyone
who took part in the killing of T.B.  (Id. at Count One, Overt Act
1.)  The section setting forth the manner and means of the conspiracy
further alleges that co-conspirators, including defendants Banks and
Wilson, would recruit others including defendants Jones, Lindsey, and
Houston, and Co-Conspirator 2, to find, track, and kill T.B.  Count 1
goes on to list 27 overt acts naming specific acts committed by the
co-conspirators.

Specifically, on August 18, 2022, defendant Banks and his
co-conspirators learned that T.B. was in Los Angeles.  (Id. at Overt
Act 2.)  In response, defendant Banks allegedly orchestrated and
financed his co-conspirators' travel to Los Angeles to kill T.B., id.
at Overt Acts 3-7, including by recruiting others to join in the
scheme, id. at ¶ B.2.  Indeed, around the time that a Chicago-based
co-conspirator booked flights for five of the hitmen to travel from
Chicago to California for the murder, defendant Banks attempted to
conceal his involvement by telling the co-conspirator, "Don't book no
flights under no names involved wit me."  (Id. at Overt Act 6.)

As those five co-conspirators traveled to Los Angeles,
defendants Banks and Grant traveled on a private jet to the Los
Angeles area.  (Id. at Overt Act 3.)  The SSI then alleges that, at
defendant Banks's direction, a co-conspirator obtained the cars, ski
masks, and firearms that the killers used to stalk and attempt to
kill T.B.  (Id. at ¶ B.3.)

After arriving in Los Angeles, six of the co-conspirators used
two cars to track, stalk, and kill T.B., as T.B. drove around Los
Angeles with his entourage, including S.R.  (Id. at Overt Acts
15-22).  After hours of stalking T.B. and his companions, three of

the co-conspirators cornered T.B. at a crowded gas station on the afternoon of August 19.  (Id. at Overt Act 23).  There, the co-conspirators ambushed T.B.'s vehicle and fired multiple rounds towards T.B.'s car, striking and killing S.R.  (Id.)  Later that afternoon, five of the co-conspirators --- including defendants Wilson, Houston, and Lindsey --- flew back to Chicago.  (Id. at Overt Act 27.)

Like Count One, Count Two (the substantive murder-for-hire charge) plainly sets forth the elements of the crime: that the defendants "each aiding and abetting the other, knowingly used facilities of interstate and foreign commerce, namely, airplanes, cars, cell phones, and the internet with intent that the murder of T.B. be committed . . . as consideration for the receipt of, and consideration for a promise and agreement to pay, anything of pecuniary value, namely, money and lucrative music opportunities with OTF, resulting in the death of S.R."  (Id. at Count 2.)

### C.    The Government Has Produced Substantial Discovery Underlying These Allegations

To date, the government has provided substantial discovery to defendants, consisting of, among other things: approximately 37,000 pages of reports and records (including over 250 of pages of Jencks materials from multiple cooperating witnesses), 310 GB of audio and video recordings, and materials from extractions of over 30 digital devices and accounts, including social media.  With each production, the government also provided a detailed index listing the discovery being produced.

//

//

**III. ARGUMENT**

    **A.   The SSI Sets Forth the Elements of the Offenses and Provides More Than Adequate Notice of the Nature of the Offenses Charged**

Defendants' request to dismiss Counts One and Two for alleged vagueness is not supported in fact or law.  The Court should deny his request.

        1.   <u>Legal Standard</u>

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  It must provide enough information so the defendant can understand the charges, prepare a defense, and claim double jeopardy where appropriate.  See <u>United States v. Resendiz-Ponce</u>, 549 U.S. 102, 108 (2007).  An indictment achieves this by "setting forth each element of the crime that it charges."  <u>Id.</u> at 107 (cleaned up); <u>United States v. Hinton</u>, 222 F.3d 664, 672 (9th Cir. 2000) (a legally sufficient indictment "state[s] the elements of the offense charged with sufficient clarity to apprise a defendant of the charge").

An indictment, however, need not describe the government's evidence, plead evidentiary detail, or identify all of the facts supporting the allegations.  See <u>Wong Tai v. United States</u>, 273 U.S. 77, 82 (1927).  This is because "the Federal Rules were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure."  <u>Resendiz-Ponce</u>, 549 U.S. at 110 (cleaned up).  Therefore, an indictment may track the statutory language, or adopt other language, as long as the indictment sets forth the essential elements of the charged offense.  See <u>United States v. Rodriguez</u>, 360 F.3d 949, 958-59 (9th Cir. 2004).

1    **2.    The SSI is Plainly Valid on its Face**

2        The Motion fails to cite any recognized legal basis to dismiss

3    the SSI as invalid.  This is unsurprising, as the SSI plainly sets

4    forth what is required under the rules and caselaw.  Indeed,

5    defendants do not (and cannot) argue that the SSI is missing any

6    elements of the offenses of Conspiracy to Commit Murder-for-Hire

7    Resulting in Death (Count 1) or the substantive charge of Murder-for-

8    Hire Resulting in Death (Count 2).

9        As charged in this case, the substantive murder-for-hire count

10   requires the government to prove: (i) defendant used or caused

11   another to use a facility in interstate commerce; (ii) "with intent

12   that a murder be committed"; and (iii) "as consideration for the

13   receipt of, or as consideration for a promise or agreement to

14   pay, anything of pecuniary value."  18 U.S.C. § 1958(a); see Ninth

15   Circuit Model Criminal Jury Instruction 16.7.  The SSI tracks those

16   precise elements.  Moreover, the SSI provides ample, further detail

17   of which facilities of interstate commerce the co-conspirators used,

18   and what specific promise was made: defendant Banks' promise of a

19   monetary reward or lucrative music opportunities with his rap label.

20   Contrary to defendant's contention, the statute plainly does not

21   require an allegation as to the precise language a defendant used in

22   making his promise or directing his co-conspirators to take certain

23   actions.[1]  See, e.g., United States v. Morlan, 756 F.2d 1442, 1445

24   (9th Cir. 1985) (bank robbery statute requiring that "any person" be

25   assaulted does not require grand jury allegation as to "which teller

26

27   _____

28       [1] As discussed below, defendant Banks has received robust
     discovery in this case, including discovery about the bounty at
     issue.

                                    6

and which employees were assaulted").

Likewise, although the conspiracy count is not required to "state the object of the conspiracy with the detail that would be required in an indictment for committing the substantive offense," the detailed object, manner and means, and 27 overt acts provide defendants with more than adequate notice of the charges against them. See, e.g., United States v. Ayers, 924 F.2d 1468, 1484 (9th Cir. 1991) (rejecting vagueness challenge where conspiracy count specified five separate means and methods and fifteen overt acts). Accordingly, Counts One and Two provide more than adequate notice to defendant of the charges against him.

Defendant's contention that the SSI "gives no specifics about Mr. Banks' conduct that amounts to 1) a bounty offer, and 2) directions in furtherance of the murder" (Mot. at 12), is factually inaccurate and, in any event, not legally required.

As to the law, the SSI is not required to outline the government's "theories or evidence upon which the government will rely to prove those facts." United States v. Mancuso, 718 F.3d 780, 790 (9th Cir. 2013). Indeed, a motion to dismiss "cannot be used as a device for a summary trial of the evidence." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002). But notwithstanding the bare minimum required to satisfy Rule 7, the SSI provides a factually detailed basis of the government's theory that, following the murder of Bennett, defendant Banks used coded language to tell, among others, defendant Wilson and additional co-conspirators identified in discovery, that he would pay a bounty to anyone who took part in the

killing of T.B.  There is nothing vague about these allegations.[2]

Every case cited by defendant in support of is argument is easily distinguishable, as they are cases where courts found indictments to be invalid because they did not include all the elements the charged crimes or they lack factual allegations in support of the elements of the offenses.  For example, in <u>United States v. Russell</u>, 82 S. Ct. 1038 (1962), the Supreme Court reversed a conviction for refusing to answer questions before Congress because the indictment did not identify the subject of the Congressional inquiry.  The failure of the indictment to identify the subject of the inquiry rendered it invalid, because "there can be criminality under the statute only if the question which the witness refused to answer pertained to a subject under investigation by the congressional body which summoned him."  <u>Id.</u> at 1042.  Here, the SSI includes the elements of the offenses, the date and place of the murder, the motive, the participants, and the actions they took leading up to, and including, the murder.  There is no missing factual allegation that precludes the finding of criminality as in <u>Russell</u>.

---

[2] As to the facts, defendant's assertions are belied by the SSI's plain text.  First, the SSI unambiguously states in multiple places that defendant Banks, using coded language, offered a bounty or monetary reward to anyone who took part in the killing of T.B. (SSI at Introductory Allegations ¶ 3; Count 1 at ¶¶ A, B.1, Overt Act 1; Count Two).  Second, the SSI unambiguously details how defendant Banks is alleged to have "directed" the murder plot.  The grand jury alleged, among other things, that: at defendant's direction, his co-conspirators traveled from Chicago to Los Angeles to murder T.B. (SSI at Introductory Allegation ¶ 4; Count One, ¶ B.2); at defendant's direction, his co-conspirators used two cars to track, stalk, and attempt to kill T.B. (<u>id.</u> at ¶ 5); and at defendant's direction, a co-conspirator obtained the cars, ski masks, and firearms that the killers used to stalk and attempt to kill T.B. (<u>id.</u> at Count One, ¶ B.3.)

In <u>United States v. Cecil</u>, 608 F.2d 1294 (9th Cir. 1979), the court reversed convictions for conspiracy to import and distribute marijuana.  The court noted that while the indictment tracked the language of the statute, it contained only "two specific allegations concerning the conspiracies," that the conspiracies occurred in Arizona and Mexico and included the names of some of the co-conspirators.  <u>Id.</u> at 1296-97.  Unlike the SSI at issue here, the indictment in <u>Cecil</u> contained no overt acts and alleged a time period for the offenses that was "open-ended in both directions."  <u>Id.</u> at 1297.  Here, to the contrary, the SSI alleges 27 overt acts setting forth specific acts in furtherance of the conspiracy on specific dates, in addition to the date of the murder, which marks the end of the conspiracy.  This case plainly does not suffer from the absence of sufficient factual allegations to inform defendant of the charges and allow him to prepare for trial as was the case in <u>Cecil</u>.[3]

What the cases cited by defendant have in common is charges that

---

[3] The other cases cited by defendant are similarly inapposite: <u>United States v. Pickett</u>, 209 F.Supp.2d 84 (D.C.C. 2002)(Count 2 of indictment dismissed because it failed to state any factual allegations and did not incorporate by reference the factual allegations set forth in Count 1); <u>United States v. Nance</u>, 533 F.2d 699 (D.C.C. 1976)(counts did not set forth factual allegations describing underlying false pretenses and failed to incorporate by reference the factual allegations of Count 1, which was found to be a "proper charge"); <u>United States v. Curtis</u>, 506 F.2d 985 (10th Cir. 1974)(mail fraud indictment dismissed that merely pled statutory language and did not describe the scheme to defraud or the false pretenses or promises); <u>United States v. Apex Distributing Co.</u>, 148 F. Supp. 365 (D.R.I. 1957)(counts of indictment dismissed that failed to allege any facts or particulars of the crimes alleged and failed to incorporate by reference the factual allegations in preceding counts); and <u>United States v. Murphy</u>, 762 F.2d 1151 (1st Cir. 1985)(indictment for threatening witness to influence testimony in official proceeding invalid for failing to identify the official proceeding).

were invalid because they omitted an element of the offense, or did not include sufficient factual allegations to inform the defendant of the charges or prepare for trial. As set forth above, that is not the case here, where the SSI names with particularity the date and place of the murder, the participants and motive, and 27 overt acts describing the actions leading up to the murder as well as the murder itself.[4]

**B.    A Bill of Particulars Is Not Warranted Because the Indictment and Discovery in This Case Are Sufficient to Allow Defendants to Prepare Their Defense, Avoid Surprise at Trial, and Avoid Double Jeopardy**

On their face, defendants' requests for evidentiary details underlying the SSI's allegations are an improper use of a bill of particulars. Specifically, defendant Banks requests the following information:

> 1.   "The language that Mr. Banks allegedly used to convey his offer of a pecuniary bounty in exchange for the murder of

---

[4] Defendant's claim that he could face double jeopardy unless he receives the evidentiary details he seeks is meritless. The test for Double Jeopardy is whether the defendant is subject to a successive prosecution for the same offense, not the same theory of prosecution. Wilson v. Belleque, 554 F.3d 816, 828 (9th Cir. 2009). The test for whether a subsequent prosecution involves a different offense is whether the elements of the offenses require proof of different elements. Id. at 829. Here any subsequent prosecution under the same statutes would be barred because the elements of the offense, as opposed to the theory of prosecution, would be the same under the same statute. In this case, the information sought by defendant --- the words he used in offering a reward to the killers of his rival or in giving directions to others --- are not elements of the offense. If defendant is acquitted, the government could not recharge him with the same offenses by offering evidence that defendant used different language in offering a reward or giving directions because the elements of the offense would still be the same.

10

1              T.B."

2    2.    "The nature of the item of pecuniary value (the monetary

3          reward or music opportunity) that Mr. Banks is alleged to

4          have offered and/or delivered in exchange for the murder."

5    3.    "The date/time, audience, and circumstances of the alleged

6          bounty offer."

7    4.    "The language used, date/time, audience, and circumstances

8          related to the 'at the direction of' allegations in the

9          Indictment."

10   (Mot. at 2.)  Defendants are not entitled to know how the government

11   will prove its case at trial, but in any event defendants have

12   already received substantial --- and organized --- discovery

13   underlying each of the four requests above.  The Court should

14   therefore deny their request for a bill of particulars.

15        1.    <u>Defendants' Requests Are Improper And, in Any Event,
              Underlying Facts Have Already Been Produced in</u>

16            <u>Discovery</u>

17        Rule 7(f) of the Federal Rules of Criminal Procedure permits a

18   defendant to "move for a bill of particulars before or within 14 days

19   after arraignment or at a later time if the court permits."  Granting

20   or denying a motion for a bill of particulars is within the sound

21   discretion of the court.  <u>United States v. Ayers</u>, 924 F.2d 1468, 1483

22   (9th Cir. 1991) (citations omitted).  The purpose of a bill of

23   particulars is to allow a defendant to obtain sufficient information

24   about the charges to (1) prepare a defense, (2) avoid prejudicial

25   surprise at trial, and (3) plead his acquittal or conviction as a bar

26   to another prosecution for the same offense when the indictment is

27   too vague and indefinite to protect him.  <u>Id.</u>

28

A bill of particulars is not appropriate where, as here, the indictment sufficiently informs defendant of the charges against him or her.  See United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979).  "[T]here is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy."  Id.  The Court should also consider "all other disclosures made by the government" in evaluating whether a bill of particulars is appropriate.  United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983).  However, a bill of particulars cannot be used to obtain more information than required by discovery rules.  See Giese, 597 F.2d at 1180.

Although defendants have a right to know the offense they are charged with, they do not have a right to "the details as to how" it will be proved.  United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987); see also United States v. Ryland, 806 F.2d 941, 942 (9th Cir. 1986) ("A defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case.")(emphasis in original); United States v. Ojeikere, 299 F. Supp. 2d 254, 261 (S.D.N.Y. 2004) (government "may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the government's evidence or legal theories.")

> 2.    Defendants' Request for a Bill of Particulars is Improper

As a threshold mater, defendants' request is essentially a fishing expedition seeking a list of witnesses and a summary of the government's expected trial evidence.  However, how the government

will prove the murder-for-hire charges in this case is beyond the scope of a bill of particulars.  See, e.g., Giese, 597 F.2d at 1180-81 (details of "when, where [or] how" for conspiracy is not proper subject of bill of particulars); United States v. Brodie, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) ("A bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence.").[5]  Particularly given the detailed allegations outlined in the SSI, defendant's request for a bill of particulars is improper.  See, e.g., United States v. Robertson, 15 F.3d 862, 873–74 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 669 (1995) (bill of particulars unwarranted when indictment "contained the names of alleged coconspirators, the approximate dates on which the alleged illegal conduct occurred, and the overt acts that comprised the illegal activity").

Moreover, while the language of the SSI itself more than satisfies the government's obligation (see Section II.A), the voluminous discovery provided by the government to defendants eliminates all doubt that the defendants are able to understand the theory of the government's case.  Giese, 597 F.2d at 1180 ("[f]ull

---

[5] Several cases cited by defendant confirm the impropriety of his claims.  See e.g., United States v. Manetti, 323 F. Supp. 683, 696 (D. Del. 1971) (a defendant "is entitled to be told the time and place of transactions giving rise to the charge, but is not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the government to fix irrevocably the perimeters of its case in advance of trial"); United States v. Rogers, 617 F. Supp. 1024, 1027 (D.C. Colo. 1985)("It is well-settled that '[a] bill of particulars may not be used to compel the Government to disclose evidentiary details or to explain the legal theories upon which is intends to rely at trial."); and United States v. Thevis, 474 F. Supp. 117 123 (N.D. Ga. 1979)(a bill of particulars "is not a discovery motion").

discovery . . . obviates the need for a bill of particulars"); see also Ayers, 924 F.2d at 1484 (upholding the denial of the motion for a bill of particulars because of the information alleged in the indictment combined with the "significant amount of discovery"). Here, the government has provided discovery supporting each of the four requests.  Cooper v. United States, 282 F.2d 527, 532 (9th Cir. 1960) (defendants not entitled to force the government to show in advance of trial that it can prove the theory).  Indeed, the government has produced Jencks materials from multiple witnesses cooperating with the government that provide the factual basis for each of defendant's requests.  An assertion to the contrary is categorically false.

Defendant's additional citations in support of his request for a bill of particulars all miss the mark.  Defendant cites to United States v. Honneus, 509 F.2d 566 (1st Cir. 1974), as "allowing particulars on where the alleged offense took place."  (Mot. at 15.) What defendant fails to acknowledge is that the indictment in Honneus did not allege where the offense took place, and defendant challenged the indictment as defective on venue on jurisdictional grounds.  Id. at 570.  The evidentiary details defendant seeks do not rise to a defect such as lack of venue.

Second, defendant's citation to United States v. Manetti, 323 F. Supp. 683 (D. Del. 1971) is also distinguishable.  Defendant cites the case for the proposition that a bill of particulars is appropriate for all "'central facts' such as the names of the participants in conversations and time and place of all transactions central to the charge."  (Mot. at 15.)  But the information defendant requests --- the specific language defendant used in ordering a

14

bounty and directing his co-conspirators --- are not "operative" or "central" facts in this case. They instead call for "disclosure comparable to civil discovery." Manetti, 323 F. Supp. at 696. Defendant's requests are the kind of "precise statement" of evidence that the court in Manetti rejected as it would require the government to "spell out its whole case." Id. at 697.

Finally, defendant's reliance on United States v. Trumpower, 546 F. Supp. 849 (E.D. Cal. 2008), is similarly misplaced. (Mot. at 15.) In that case the defendant was charged with money laundering based on uncharged mail and wire fraud scheme. Id. at 851. But there was "no pleading of the factual circumstances of the specific mail or wire fraud that produced [the] funds" that were laundered. Id. The court concluded that adequate notice was not provided by a "generic" reference to mail and wire fraud. Id. at 852. There is no corollary in this case to the failure to give adequate notice of the specified unlawful activity needed to prove a money laundering charge. The information defendant seeks is merely the details of acts in furtherance of the conspiracy. Defendant has been given notice that following the murder of Bennett in Atlanta he offered a bounty for the murder of T.B., and the persons who heard this are identified in the SSI, with additional details provided discovery.[6]

---

[6] Defendant's citation to United States v. Davis, 330 F. Supp. 899 (N.D. Ga. 1971), is not on point. In that case, the defendant was charged with "several acts [relating to marijuana distribution] but only one 'on or about' date" was stated in the indictment, which charged the acts occurred "in the Northern District of Georgia." Id. at 903. That is not the case here. The SSI states dates and locations of the acts alleged. The only instance where an exact date and location is not provided relates of defendant's offer of a bounty for the murder of T.B. That information, however, is contained in the discovery that has been produced. Likewise, defendant's citation *(footnote cont'd on next page)*

15

In sum, the evidentiary details sought by defendants are not the type of evidence subject to a bill of particulars as they go to the government's proof at trial, not any facts needed to fill an omission in the SSI.  The Motion should be denied.

**IV.  CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the SSI or for a bill of particulars should be denied.

---

United States v. Barket, 380 F. Supp. 1018 (W.D. Mo. 1974), is inapposite because it does not provide any details regarding the two indictments the defendant faced, other than to note there were inconsistencies between the two that required a bill of particulars to "fully and fairly advise" the defendant of the nature of the charges he faced.  Id. at 1022-23.  There are not two inconsistent indictments in this case.