BILAL A. ESSAYLI
Acting United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorneys
Acting Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:   ian.yanniello@usdoj.gov
               greg.staples@usdoj.gov
               daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DURK BANKS,<br><br>　　　　Defendant. | No. CR 24-621(B)-MWF-6<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT BANKS'S MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR A FRANKS V. DELAWARE HEARING<br><br>Hearing Date: November 18, 2025<br>Hearing Time: 1:30 p.m.<br>Location:　　Courtroom of the<br>　　　　　　　Hon. Michael W.<br>　　　　　　　Fitzgerald |

　　　　Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its Opposition to Defendant Banks's Motion to Suppress Evidence and Request for a Franks v. Delaware Hearing. (Dkt. 259.)

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 27, 2025				Respectfully submitted,

						BILAL A. ESSAYLI
						Acting United States Attorney

						ALEXANDER B. SCHWAB
						Assistant United States Attorney
						Acting Chief, Criminal Division


						       /s/
						IAN V. YANNIELLO
						GREGORY W. STAPLES
						DANIEL H. WEINER
						Assistant United States Attorneys

						Attorneys for Plaintiff
						UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Banks moves to suppress evidence seized from two accounts pursuant to federal search warrants: (1) the X account, @lildurk (the "BANKS X Account"), and (2) the "durkiooo@icloud.com" iCloud account (the "BANKS iCloud account").[1]

As in prior filings, defendant's motion focuses on rap lyrics contained in "Wonderful Wayne & Jackie Boy." Defendant does not dispute that he rapped those lyrics or that his lyrics are about green lighting a murder of a rival; instead, defendant asserts the lyrics were written seven months before S.R.'s killing, and thus the government's mere inclusion of the lyrics in a search warrant affidavit amounts to a material falsity requiring a Franks hearing. This argument is meritless for several reasons.

First, defendant has failed to identify any false statement or information actually contained in the Affidavit. Apparently recognizing this, defendant attempts to manufacture a misrepresentation by citing to an allegation about the lyrics contained in a prior (nonoperative) iteration of the indictment, see Mot. at 2-3, and then asks the Court to interpose falsity within the Affidavit where there is none. But other than defendant's claim the warrants contain "demonstrably false statements and/or omissions," the motion is devoid of evidence or facts that show the following

//

---

[1] As defendant notes in his motion, the affidavits filed in support of the warrants are substantially similar, and thus the government will generally refer to the affidavits as the "Affidavit" in this filing. For Exhibit A, defendant filed a version of the affidavit that contains a redacted footnote (Ex. A at 6 n.3). That footnote, however, is substantially similar to footnote 3 in Exhibit B.

factual allegation is anything but true:

> In December 2022, BANKS was featured on a song called "Wonderful Wayne & Jackie Boy." In the song BANKS raps that "It's fucked up that I'd rather get revenge instead of millions . . . Told me they got an addy (go, go). Got location (go, go). Green light (go, go, go, go, go). Look on the news and see your son, you screamin' 'No, no' (pussy)." Notably, following S.R.'s murder on August 19, [2022] bystander video captured [T.B.] screaming "No, no" when he saw S.R.'s body pulled from the ESCALADE.

(Affidavit at ¶ 13(f).) Nothing about this allegation is false or misleading. Indeed, defendant does not dispute he was featured in the song or that it was released four months after S.R.'s murder; defendant does not dispute his song explicitly referenced seeking revenge over profits and greenlighting violence after learning the location of a rival; and defendant does not dispute the lyrics are similar to a publicized video of defendant's rival, T.B. screaming "No, no" while watching sheriff's deputies remove S.R.'s dead body from a vehicle on the day he was murdered. Nor can he. Simply put, these factual allegations are true --- not false as defendant claims.

Defendant's "omission" theory similarly lacks merit. Citing to an affidavit from a sound engineer that defendant Banks filed earlier in this case,[2] defendant asserts the affidavit recklessly or intentionally failed to state that defendant wrote his lyrics before S.R.'s murder. But even assuming this is true, the government could

---

[2] The declaration was filed approximately seven months after the government obtained the warrants at issue. (Dkt. 111.) Notably, defendant failed to comply with this District's local rules in filing this motion to suppress, which requires "a declaration on behalf of the defendant, setting forth all facts then known upon which it is contended the motion should be granted." L.Cr.R. 12-1.1. Notwithstanding defendant's lack of compliance, the government reserves the right to cross examine any declarant in connection with defendant's motion. L.Cr.R. 12-1.3.

2

not have purposefully or recklessly omitted a fact it did not know.[3] And even if this standard was met (it isn't), defendant's argument also fails because it hinges on the premise that his lyrics are only relevant to the probable cause determination if he wrote them after S.R.'s murder. Not so. Defendant's lyrics (i.e., admissions) about ordering a hit and seeking revenge show defendant's modus operandi and corroborate CW-1's account that defendant ordered and financed the Los Angeles murder as set forth in the Affidavit.[4]

Although the Court can deny defendant's motion on the merits, it need not do so here. As discussed further below, defendant has standing only to challenge the seizure of evidence from the accounts that belong to him (the two accounts at issue). Because the government does not intend to introduce evidence seized from those accounts at trial, the government respectfully requests that the Court deny the motion as moot.

I. ARGUMENT

   A. Defendant's Motion is Moot

"The Fourth Amendment guarantees the right of people to be secure in their persons, houses, papers, and effects, against

---

[3] Nor does defendant's repeated contention that the government was under some duty to contact the sound engineer before using the lyrics in, for example, pre-indictment federal search warrants that were filed under seal. Especially in a case where, as here, a defendant has already demonstrated his willingness to flee the country to escape accountability, the suggestion that the government was required to disclose a covert federal investigation to one of defendant's close associates is flatly wrong. Defendant cites no legal authority that the failure to contact the engineer for fear of compromising the investigation amounts to an intentional or reckless false statement by the agent. Cf. United States v. Miller, 753 F.3d 1475, 1477-78 (9th Cir. 1985) (agent's failure to obtain defendant's rap sheet or learn of perjury conviction was not intentional or reckless false statement).

[4] ████████████████████████████████████████

3

unreasonable searches and seizures." Smith v. Maryland, 442 U.S. 735, 739 (1979) (cleaned up).  "[T]he capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1990).  It is well settled that a defendant does not have a reasonable expectation of privacy in someone else's email and/or online account.  See Alderman v. United States, 394 U.S. 165, 172, (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted," noting that "Coconspirators and codefendants have been accorded no special [Fourth Amendment] standing"); United States v. Omidi, No. CR 17-661(A)-DMG, 2021 WL 7629902, at *7 (C.D. Cal. Aug. 6, 2021) (Chief District Judge Gee ruling that defendant "lacks standing to challenge the warrant as to the three Gmail accounts that do not belong to him); United States v. Lustyik, 57 F. Supp. 3d 213, 223 (S.D.N.Y. 2014) ("A person has no expectation of privacy in another person's email account."); United States v. Nazemzadeh, No. 11-cr-5726-L, 2013 WL 544054, at *2 n.2 (S.D. Cal. Feb. 12, 2013) (same).

Here, the government has reviewed the evidence seized from the BANKS X and iCloud Accounts, and determined that it will not seek to admit in its case-in-chief any such evidence.  Defendant has failed to submit a declaration alleging a possessory interest in the other iCloud accounts searched pursuant to the warrant at issue (nor can he, because they do not belong to him), and thus defendant does not have standing to challenge the search of those accounts.  Defendant's motion is therefore moot.  United States v. Kahre, 737 F.3d 554, 565 (9th Cir. 2013) (affirming district court's determination that

defendant's motion to suppress was moot where government informed court it "was not introducing the seized evidence at trial").

### B. Even if Defendant's Motion Was Not Moot, the Affidavit Contained Significant Evidence Establishing Probable Cause to Search the BANKS X Account and the BANKS iCloud Account

Although the Court need not reach the merits, the Affidavit had ample probable cause to search both of defendant's accounts.

"Probable cause . . . is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).  Rather, probable cause is only a "fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Whether probable cause exists is based on the "totality of the circumstances" known to the officers.  United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986).  Moreover, "law enforcement may draw upon their experience and expertise in determining the existence of probable cause," United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992), and "[t]he experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause," United States v. Arrellano-Rios, 799 F.2d 520, 523 (9th Cir. 1986).

Both search warrants authorized law enforcement to search for evidence of various offenses, including violations of Murder for Hire and Conspiracy to Commit Murder for Hire, Racketeer Influenced and Corrupt Organizations ("RICO") Conspiracy, and the Violent Crime in Aid of Racketeering ("VICAR") statute.[5]  (Motion, Ex. A at vii.)

---

[5] A fundamental flaw in defendant's motion is it relies on defendant's belief that only evidence directly tying defendant to S.R.'s murder is relevant to the probable cause determination. Specifically, defendant claims that information linking defendant Banks to other violence, including a 2019 shooting and other bounties
*(footnote cont'd on next page)*

Each warrant was supported by a substantially similar 35-page sworn affidavit from an FBI Special Agent. (Id. at 1.) The Affidavit detailed the Special Agent's 14 years of training and experience in murder and other violent crime investigations. (Id. at 3-4.)

The Affidavit sets forth specific facts establishing that Chicago-based hitmen traveled to Los Angeles to murder one of defendant Banks' and OTF's rivals, and that defendant Banks ordered and financed the murder plot. Among the evidence referenced in the Affidavit is information provided by ████████████████████████████████████████████████████████████████████████████████████████.⁶ (Id. at 7 & n.3.) Based on information from CW-1 and open-source reporting,⁷ the Affidavit explains that defendant Banks placed a bounty on T.B.'s life

---

that defendant placed on rivals, is "irrelevant" and was included in the affidavit to "portray [defendant Banks] as a violent individual in an effort to prejudice the reviewing judge." (Mot. at 8.) Defendant confuses the charges that were later brought in the indictment (murder for hire and stalking resulting in death) with the broader subject offenses listed in the warrant, which include violations of the VICAR and RICO statutes. Defendant's link to other racketeering activities, including the 2019 shooting, is directly relevant to the probable cause analysis.

⁶ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

⁷ Indeed, defendant's own rap music before S.R.'s murder references bounty payments. See, e.g., "Gucci Mane – Rumors feat. Lil Durk [Official Video]", available at https://www.youtube.com/watch?v=QVn1DGgqBNo (emphasis added) (""I don't want no niggas who you catch, **I want the one I paid for** ... Trollin' ass, we shot your homie."). Additionally, numerous rap fans posted videos, articles, and blogs discussing the alleged bounty. See, e.g., "Lil Durk Putting A Bounty On Quando Rondo", @lamoolah, available at https://www.youtube.com/shorts/NqMsFCR6GJY (April 4, 2024).

6

following the murder of OTF member Dayvon Bennett aka King Von. The Affidavit further disclosed that CW-1 knew that defendant Banks placed other monetary bounties for the murder of people with whom defendant Banks was feuding, including six other individuals.

The Affidavit also listed significant evidence corroborating CW-1's account of defendant Banks' involvement in S.R.'s murder. Specifically, according to bank and flight records, an associate of defendant Banks coordinated and paid for five of the co-conspirators to fly to and from Southern California using a credit card linked to defendant Banks and OTF. (Motion, Ex. A at 9.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ And just like the funding for the hitmen's flights, records also showed that defendant Banks' credit card was used to purchase the hitmen's hotel room the night before the murder. (Id.)

To establish probable cause to search for evidence related to violations of the RICO and VICAR statues, the Affidavit also contains information about OTF's structure and history of violence. Specifically, based on the FBI Special Agent's review of law enforcement reports, conversations with other law enforcement agents, and conversations with CW-1, the Affidavit states that in addition to OTF's status as a rap collective, OTF also acts as an association-in-fact of individuals who engage in violence, including murder and assault, at the direction of defendant Banks and to maintain their status in OTF. (Id. at 7-8.) The Affidavit further stated that CW-1 provided information about shootings and other overt actions that OTF members and associates took to commit violence on behalf of OTF.

7

(Id. at 8.)  The Affidavit then provided a specific example of racketeering activity in which defendant Banks and other OTF members participated, specifically an Atlanta robbery-turned-shooting in which defendant Banks and Dayvon Bennett were both charged with attempted murder and participation in criminal street gang activity.[8]

Lastly, the Affidavit contained detailed opinions based on the Special Agent's training and experience regarding the behavior of those involved in murder-for-hire and/or racketeering offenses, and that evidence related to those offenses was likely to be found in the digital accounts to be searched.  The Special Agent opined that digital devices and/or social media accounts often contain gang members' or racketeering associates' correspondence (including text, audio and video messages) between associates, as well as items and paraphernalia sufficient to show gang organization and membership. (Id. at 18.)  The Special Agent also opined that both hitmen and their contractors maintain materials about their intended victim in digital devices, including details/communications about the whereabouts of the victim and the motive behind the hit.  (Id. at 16-17.)  Finally, the Affidavit explained that X allows users to communicate with other individuals over the platform by exchanging private messages, including photos, videos, links, and text messages. (Id. at 27.)  Likewise, the Special Agent explained that Apple's iCloud is a file hosting, storage, and sharing service that can, among other things, contain a user's text messages, photos, videos, contacts, call history, e-mails, and other documents (such as

---

[8] The Affidavit discloses that those state charges were dismissed against defendant Banks following Bennett's death.  (Id. at 8 n.4.)

8

spreadsheets), as well as backups of a user's digital devices (e.g., a cellphone that contains a user's text messages and photos). (Motion, Ex. B at 28.)  Taken together, the specific facts set forth in the Affidavit and the FBI Special Agent's training experience provide more than ample probable cause to search defendant Banks' two accounts at issue.  See, e.g., United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991) (requiring only a "reasonable nexus between the activities supporting probable cause and the locations to be searched," and that a "magistrate may rely on the conclusions of experienced police officers regarding where evidence is likely to be found"); United States v. Rubio, 727 F.2d 786, 793 (9th Cir. 1983) (explaining for a RICO search warrant, "any evidence relevant to prove any element of the RICO offense is potentially seizable, including "evidence of association" and "of the existence of the enterprise and evidence of the pattern of racketeering activity"); United States v. Pelayo, No. 21-30249, 2023 WL 4858147, at *2 (9th Cir. July 31, 2023) (rejecting argument that "an iCloud account is too broad a place to be searched" because the law does "not require warrants to specify rooms in a house nor do we require warrants to specify files on a computer").  His motion should therefore be denied.[9]

The case cited by defendant, United States v. Grant, 682 F.3d 827 (9th Cir. 2012), is not on point.  That case involved the search

---

[9] Even if the motion were not moot, and the Court found the warrants lacked probable cause, suppression would still not be warranted as the government submitted a thorough and detailed affidavit based on information derived from a collection of law enforcement sources in a cross-country investigation, and executed the facially-valid warrant issued by a federal magistrate in good faith.  See United States v. Leon, 468 U.S. 897, 907 (1984).

9

of the home belonging to the father of two gang members, one of whom was believed to be connected to a murder nine months before the search. Id. at 828. The court found that the affidavit provided no evidence that the father had any connection to the murder at issue, or that either of his sons had left the murder weapon at his home. Id. at 833-34. Those facts are not analogous to the Affidavit at issue in this case, which sets forth the details of the murder, the defendants' travel to California to commit the murder, and defendant Banks' connection the accounts to be searched. Grant is wholly inapposite.

**II.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress evidence.