DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
       marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, CA 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>DURK BANKS,<br><br>    Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' OPPOSITION TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**<br><br>**Hearing**<br><br>Date:        November 18, 2025<br>Time:        10:00 a.m.<br>Courtroom:   5A<br>Judge:       Hon. Michael Fitzgerald |

Defendant Durk Banks, by and through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this Opposition to the Government's Motion to Empanel an Anonymous Jury.

This Opposition is based on the attached memorandum, the files and records in this case, and any other such evidence or argument that the Court may permit.

Respectfully submitted,

Dated: October 27, 2025     BY:    /s/ *Jonathan M. Brayman*
                                   Drew Findling
                                   Marissa Goldberg
                                   Jonathan M. Brayman
                                   Christy O'Connor

                                   *Attorneys for Durk Banks*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

An anonymous jury would f undercut transparency and fairness in these proceedings and would be inconsistent with Mr. Banks' presumption of innocence. Such a drastic measure is justified only when there is a *strong reason* to believe that anonymity is necessary to protect jurors or the integrity of the trial, and even then, only when accompanied by reasonable safeguards to mitigate prejudice. *United States v. Shryock*, 342 F.3d 948, 971-73 (9th Cir. 2003).

The government has made no such showing here. Its motion relies not on credible evidence of any danger to jurors, but on speculation and mischaracterization. The government makes dramatic statements with broad brush strokes, and without any specific and convincing facts that would mandate such an extreme step. To find that an anonymous jury is warranted under the facts presented by the government would infer that such a measure is needed in any high-profile matter with allegations of violence. That is certainly not rooted in the law which requires an articulated threat; an impossibility in this case.

Further, the government has failed to indicate to the Court why it is necessary to keep juror information from the public, from the defendants (who are all in custody), and also from counsel. These are three separate levels of protection that each require their own analyses of necessity, which the government completely ignores. Rather, the government's filing indicates its mistaken belief that protecting jurors from potential risk is an "all or nothing" proposition. This is far from accurate.

The government's reliance and citation to 28 U.S.C. § 1863(b)(7) is misplaced. Dkt. 235 at 3, lines 14-15. The portion of the statute cited by the

3

government lays the groundwork for a district court judge to determine when to keep juror information anonymous from the public—not the parties themselves.[1] This is certainly not the same as keeping them from the accused and counsel, as the government requests here. Anonymizing juror names to the public is not unusual in high-profile matters, as such a step would alleviate the government's concerns about the media attention this case is likely to receive, would limit the possibility of outside influences, and would not be opposed by Mr. Banks.[2]

Full anonymity in this context would not protect the integrity of these proceedings—it would only serve to undermine it. Anonymity would convey to jurors that Mr. Banks is inherently dangerous, infringe upon his presumption of innocence, and prejudice the defense in the most fundamental of ways. The government's motion conflates generalized fears of publicity with actual threats of juror harm. None exist. Mr. Banks has no history of interference with the judicial process, no record of violence against witnesses or jurors, and no connection to organized crime. The record is devoid of evidence which meets the high threshold established by *Shryock* and its progeny. Mr. Banks opposes the government's request, as an anonymous jury would violate his constitutional rights under the Fifth and Sixth Amendments.

## II.   LEGAL FRAMEWORK

In light of its potential impact on an accused's constitutional rights, various federal courts of appeal have described the procedure of empaneling an

---

[1] In relevant part, 28 U.S.C. § 1863(b)(7) requires that the district court's written plan for jury selection shall include a fixed time "when the names drawn from the qualified jury wheel shall be disclosed to parties and to the public[,]" and "[i]f the plan permits these names to be made public, it may nevertheless permit the chief judge of the district court, or such other district court judge as the plan may provide, to keep these names confidential in any case where the interests of justice so require." *Id.*

[2] It also appears that, pursuant to General Order No 03-12, the Jury Plan for the Central District of California already mandates that identifying juror information is not made public pursuant to Section 13.1.

anonymous jury as "extreme," a "last resort," and "drastic." *See United States v. Mansoori*, 304 F.3d 635, 650 (7th Cir. 2002); *United States v. Edwards*, 303 F.3d 606, 613 (5th Cir. 2002); *United States v. Sanchez*, 74 F.3d 562, 564 (5th Cir. 1996). As the Seventh Circuit has instructed, "the use of anonymous juries is discouraged, and courts should be 'highly circumspect in ordering the empanelment of [them].'" *United States v. Morales*, 655 F.3d 608, 620 (7th Cir. 2011) (quoting *United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir. 1994)).

In *Shryock*, the Ninth Circuit established the controlling standard: a district court may undertake the "unusual measure" of empaneling an anonymous jury only where: (1) there is a *strong reason* to believe that anonymity is necessary to protect the jury or ensure its ability to perform its duties; and (2) the Court adopts *reasonable safeguards* to "minimize any risk of infringement upon the fundamental rights of the accused." *Id.*, 342 F.3d at 971. The *Shryock* Court also identified five non-exclusive factors:

(1) the defendants' involvement with organized crime;

(2) participation in a group with the capacity to harm jurors;

(3) past attempts to interfere with the judicial process or witnesses;

(4) the severity of the potential sentence; and

(5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

Each factor must be analyzed with record evidence, not speculation. *See United States v. Fernandez*, 388 F.3d 1199, 1244 (9th Cir. 2004).

The *Shryock* factors, however, "are neither exclusive nor dispositive, and the district court should make its decision based on the totality of the circumstances." *Shryock*, 342 F.3d at 971. The first three of the listed factors are interrelated, and they focus on two considerations. The first is, "[d]oes the

5

1 defendant, either by himself or through associates or an organization, have the
2 present or future capacity to harm jurors." *United States v. Honken*, 378
3 F.Supp.2d 880, 907 (N.D. Iowa 2004). Pertinent to this issue is "whether
4 members of [the accused's alleged] criminal organization or enterprise remain at
5 large at the time of trial, such that they might have the ability to interfere with the
6 jurors." *Id*. Thus, "the question is not just whether the defendant and his
7 'organization' have attempted to interfere with the criminal justice system in the
8 past, but whether the defendant has present ability to do so, notwithstanding his
9 incarceration, through his associates or 'organization.'" *Id*.; *accord United States*
10 *v. Darden*, 70 F.3d 1507, 1532-33 (8th Cir. 1995) (noting that "[t]he enterprise
11 has many members and associates who remained at large throughout the trial"). In
12 *Shryock*, for example, the Ninth Circuit upheld the district court's use of an
13 anonymous jury when the record contained evidence that both defendants were
14 involved in violent crimes on behalf of the Mexican Mafia, and that "[a]t the time
15 of trial, there were hundreds of Mexican Mafia members and associates still at
16 large." *Id*., 342 F.3d at 972. As such, "[c]learly, the Mexican Mafia was a group
17 with the capacity to harm jurors." *Id*.
18    Even where some legitimate concern exists, the trial court must adopt
19 "reasonable safeguards" and give jurors a *neutral explanation* to preserve
20 fairness. *See, e.g., United States v. Barragan*, 871 F.3d 689, 712-713 (9th Cir.
21 2017) (district court implemented measures where "jurors would be referred to in
22 court by numbers only" and the attorneys "would be given the names of all
23 prospective jurors in advance to do background checks, without divulging those
24 names to their clients," with the jury told that jurors' information would be
25 reviewed by the court and the attorneys, but not "released to the general public or
26 the media").

6

  Courts across circuits have echoed the Ninth Circuit's caution. The Second Circuit, in *United States v. Paccione*, described anonymous juries as an exceptional measure justified by specific threats and mitigated by voir dire safeguards. *Id.*, 949 F.2d 1183, 1192 (2d Cir. 1991) (citing *United States v. Thomas*, 757 F.2d 1359, 1364-65 (2d Cir. 1985) (defendants engaged in large-scale organized crime, who participated in several "mob-style killings," with strong evidence of defendants' past attempts to interfere with the judicial process); *United States v. Vario*, 943 F.2d 236, 240 (2d Cir. 1991) (defendants were charged with grand jury tampering); *United States v. Persico*, 832 F.2d 705, 717 (2d Cir. 1987) (anonymous jury warranted by history of violence, willingness to corrupt and obstruct justice, together with expectation of extensive publicity); *United States v. Tutino*, 883 F.2d 1125, 1132-33 (2d Cir. 1989) (defendant had a history of attempted jury tampering and a serious criminal record).

  The Seventh Circuit, in *United States v. Mansoori*, warned that "[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected," thereby potentially eroding the accused's "constitutional right to a presumption of innocence." *Id.*, 304 F.3d 635, 650 (7th Cir. 2002); *accord Shryock*, 342 F.3d at 971 (the risk of empaneling an anonymous jury is that jurors "may infer that the dangerousness of those on trial required their anonymity, thereby implicating defendants' Fifth Amendment right to a presumption of innocence.") Moreover, the use of an anonymous jury "may interfere with defendants' ability to conduct voir dire and to exercise meaningful peremptory challenges," as guaranteed by "the Sixth Amendment right to an impartial jury." *Shryock*, 342 F.2d at 971.

## III. ARGUMENT

### A. The Government Has Failed to Demonstrate a Strong Reason for Anonymity.

The government's motion rests on inference, Mr. Banks' supposed "affiliations," and speculation. It identifies no credible evidence that jurors face any threat from Mr. Banks or anyone associated with him. Instead, the government cites alleged threats made through calls and voicemails by unnamed individuals they refer to as "supporters" of Mr. Banks. Dkt. 235 at 16. In reality, the calls were made by random members of the public with no connection to any of the defendants, and the government has not shown or even alleged otherwise. The government's attempt to attribute the actions of unnamed individuals, acting of their own accord, to somehow prejudice Mr. Banks would create a miscarriage of justice and should be disregarded by this Court entirely.[3]

The five *Shryock* factors overwhelmingly weigh against empaneling an anonymous jury in this case.

#### 1. Mr. Banks has no affiliation with organized crime.

Unlike the defendants in *Shryock* and its progeny, Mr. Banks is not a member of an organized violent gang or criminal syndicate.

Here, the government uses only smoke to suggest fire. To imply that Mr. Banks is involved in organized crime, the government confoundingly invokes an

---

[3] Information regarding the threats made by unknown individuals to a United States Magistrate Judge, as well as a prosecutor involved in this case, were not disclosed by the government to the defendants until a meet-and-confer virtual conference held on October 1, 2025, in anticipation of the filing of pretrial motions. This was *over seven months* after these threats allegedly began. Mr. Banks anticipates filing, in a subsequent filing, a Motion to Dismiss the Indictment Based on Outrageous Government Conduct and a Motion for Recusal, based on the intentional suppression and nondisclosure of material information impacting Mr. Banks' constitutional rights in these proceedings. Notably, the government intentionally withheld this information from Mr. Banks and his defense team while the parties litigated substantive issues at detention hearings held May 8, 2025 and June 2, 2025. On October 23, 2025 (just four days ago), the government provided discovery relating to the law enforcement investigation into these threats, after the defense sent various correspondence and requests for information to the government.

8

unrelated criminal case against six members of the purported "O-Block" street gang, who were convicted of racketeering offenses including murder. Dkt. 235 at 6. Specifically, the government alleges:

> While OTF is in part a rap group, several of its members and associates have a history of extreme violence, including murder. For example, in 2024, six members of the O-Block street gang – including OTF associate Marcus Smart aka "Muwop" – were convicted of racketeering offenses that included the murder of Chicago rapper Carlton Weekly aka "FBG Duck."

The government has not alleged that Mr. Banks is a member or leader of the "O-Block street gang," and none of the defendants in the O-Block case are defendants in the present case. Additionally, the government cites a pending murder-for-hire case in the Northern District of Illinois against two defendants who were "allegedly motivated to kill by OTF-linked payments." Dkt. 235, at 6. The degree of attenuation makes the government's argument untenable.

Ninth Circuit case law guides us in determining what qualifies as "involvement in organized crime." In *United States v. McElhiney*, No. CR-02-938-GHK, 2007 U.S. Dist. LEXIS 104975 (C.D. Cal. Feb. 26, 2007), the defendant was allegedly involved in the Aryan Brotherhood prison gang. The Court found that since the Aryan Brotherhood has been found by three separate juries to constitute a criminal enterprise, it constituted involvement in a criminal enterprise for the purpose of necessitating an anonymous jury. *See also United States v. Griffin*, No. CR-02-938(A)-RGK, 2006 U.S. Dist. LEXIS 102790 (C.D. Cal. Oct. 3, 2006) (finding that defendants' long history with the Aryan Brotherhood weighed in favor of empaneling an anonymous jury). In *United States v. Fabel*, No. CR-06-041-RSL, 2007 U.S. Dist. LEXIS 118055 (W.D. Wash. Oct. 30, 2007), the defendants were all either present or former members of the Hells Angels Motorcycle Club, "recognized nationwide as an organization with a

long history of alleged violent conduct and involvement in drug trafficking and other illegal activity." In *United States v. Fernandez*, the defendants were members of the Mexican Mafia or "Eme," which had far-reaching "tentacles" and established systems for committing acts of violence and drug trafficking. *Id*., 388 F.3d 1199, 1215-16, 1236 (9th Cir. 2004). Generalized references to "affiliations" or "followers" are simply insufficient to order the "drastic" and "unusual measure" of empaneling an anonymous jury. *See, e.g., United States v. Martin*, No. CR 07-1205 (A) CBM, 2009 WL 453111 (C.D. Cal. 2009) (Marshall, J.) (denying government's motion to empanel anonymous jury where allegations of organized crime were "markedly vague").

      In its brief, the government (perhaps intentionally) omitted the underlying facts of *Shryock* which led the Ninth Circuit to establish guidelines under which to discern the need for an anonymous jury. In *Shryock*, the defendants were involved with the Mexican Mafia, "an extraordinarily violent organized criminal enterprise." *Id*., 342 F.3d at 972. The charged crimes included multiple murders, attempted murders, and conspiracies to commit murder of over a dozen individuals, as well as narcotics distribution and extortion. *Id*. at 962-70. Multiple murders were systematically committed in correctional institutions where defendants were serving custodial sentences. *Id*. The murders took place across multiple correctional facilities—evidencing the broad-sweeping nature of the criminal enterprise. Some victims were murdered specifically for cooperating with police. *Id*. at 963. Most troublingly, the defendants even "manipulated the justice system" by causing a victim to be subpoenaed to the Los Angeles County jail from another institution and then stabbed him twenty-six times in the attorney visitation room. *Id*. at 962.

The present case is wholly dissimilar to the facts of *Shryock* and its progeny. Here—other than the amorphous allegation that Mr. Banks is the "leader" of OTF—there is no actual evidence that the defendants are involved with an organized criminal enterprise, nor has any jury ever found that OTF is a criminal "enterprise," a street gang, or that the defendants are members of organized crime. This has never happened because, unlike in the cases cited by the government, OTF is a legally incorporated business entity involved in the legitimate recording, production, performance, and dissemination of popular music. The government attempts to gloss over this indisputable reality, "OTF is in part a rap group…" (Dkt. 235 at 6, line 8), while vastly understating the professional, artistic, and business legitimacy of OTF, and of Mr. Banks, in order to fit their distorted narrative. OTF is not just a "rap group" in the sense that some individuals who get together and attempt to make rap music can call themselves a "rap group" and publish a video on YouTube.

Mr. Banks is a Grammy Award–winning recording artist, respected businessman, and one of the most commercially successful performers of his generation. He has collaborated with some of the biggest artists in the world—including Drake, J. Cole, and Morgan Wallen—producing multiple chart-topping and Grammy-nominated songs that have collectively garnered billions of streams. His sustained achievements across genres and platforms underscore his stature as a legitimate, enterprising artist whose career is firmly rooted in professional artistry and business acumen. What the government fails to mention is that OTF is an internationally-renowned music label which has produced dozens of popular albums for multiple artists that have charted nationally and has significant mainstream and commercial success. The government also fails to mention that OTF partners with Alamo Records and Sony

Music for marketing, production, and global distribution. The government's failure to give a full picture on this issue is highly misleading.

Even if the Court were to find that some individuals who are "associated with" OTF also had a "connection" to criminality, which the government has sparsely alleged, this is not sufficient. Case law demonstrates that the defendant must actually be a member, former member, or associate of a proven criminal organization. *See, e.g., Martin*, 2009 WL 453111, at *2 ("Both of the Ninth Circuit cases upholding the district court's decision to empanel an anonymous jury involved an actual identifiable involvement with organized crime"). Additionally, the case law points out that of great concern is whether members of the organized crime group "remain at large at the time of trial, such that they might have the ability to interfere with the jurors." *United States v. Honken*, 378 F.Supp.2d 880, 907 (N.D. Iowa 2004). Here, all of the defendants are in custody, and all other individuals named as "associates" in the government's filing are currently in custody. In other words, there are no OTF "associates" who "remain at large" at this time.

Lastly, Mr. Banks has never been convicted of a violent offense, nor any offense associated with a criminal street gang. "Only the Family" is a record label and professional entity—nothing more. Characterizing Mr. Banks as the head of an organized crime family is pure fiction – especially when compared to the facts of cases where anonymous juries were empaneled. The first and second factors weigh against empanelment of an anonymous jury.

### 2. Mr. Banks poses no risk of interference with witnesses and the judicial process.

Here, the government seeks to illustrate Mr. Banks' "vocal scorn" for cooperating witnesses by citing to an interview in which Mr. Banks discussed the impact that his father's conviction, secured in part by a cooperating witness, had

12

on his life growing up. Dkt. 235 at 10, lines 16-25. The government manipulates this statement about his father's trial which occurred in 1993 when Mr. Banks was a small child to mean something sinister in the present case—which did not even exist at the time of the interview. This is a distortion of reality and does not substantiate the government's claim that "witness intimidation has already occurred and is likely to continue in this case." Dkt. 235 at 10, lines 7-10.

Further, the negative connotation surrounding individuals who are facing their own criminal penalties who cooperate to curry favor with the government is widespread and not limited to any subset of the population. Many notable figures, including the current President of the United States, have expressed their disdain for those who become cooperating witnesses (or "flip" on others).

As widely reported in the press and recorded during his August 23, 2018 "Fox & Friends" interview, President Trump famously expressed his own "vocal scorn" for cooperating witnesses and "flippers," saying:

> "I know all about flipping. For 30, 40 years I've been watching flippers. Everything's wonderful, and then they get 10 years in jail and they flip on whoever the next highest one is, or as high as you can go. It almost ought to be outlawed. It's not fair."

Meagan Flynn, Washington Post, *Trump's own federal prosecutors want his comments about 'flippers' barred from El Chapo's trial* (Sept. 26, 2018), available at: https://www.washingtonpost.com/news/morning-mix/wp/2018/09/26/trumps-own-federal-prosecutors-want-his-comments-about-flippers-barred-from-el-chapos-trial/ (last visited Oct. 27, 2025); The Hill, *Trump: 'Flipping' to take a plea deal 'almost ought to be illegal'* (Aug. 23, 2018), available at: https://thehill.com/homenews/administration/403204-trump-flipping-to-take-a-plea-deal-almost-ought-to-be-illegal/ (last visited Oct. 27, 2025).

13

Maintaining such an opinion has no relevant bearing on whether an actual threat to witnesses exists. Moreover, the question at issue here is whether jurors are in danger of actual violence—not Mr. Banks' supposed "vocal scorn" about these who cooperated against his father.

Compare this to the case law cited in the government's brief. In an analogy that stretches credulity, the government cites *United States v. Asainov*, where the defendant was "charged with recruiting and fighting for ISIS." *Id*., 618 F.Supp.3d 105, 117 (E.D.N.Y 2022). There, the Court held that an anonymous jury was appropriate given the defendant's "connection to ISIS, the breadth of ISIS's global reach, and his history of dangerous crimes and obstruction." *Id*. at 118. *Asainov* bears no resemblance—factually or legally—to the present case. The government only cites to one case in this jurisdiction, and it is inapt. In *United States v. Boyajian*, the defendant had, in a prior case, persuaded a minor victim not to testify and threatened a victim's family members. No. CR09-933(A)-CAS, 2016 WL 225724, at *6 (C.D. Cal. Jan. 19, 2016). In Mr. Banks' case, there is no such history of witness tampering, intimidation, or obstruction of the judicial process. Instead, the government can only point to song lyrics, unrelated Instagram accounts, YouTube videos, and "public speculation." Dkt. 235 at 12, line 11. Where the government alleges that online speculation and gossip blogs may create fear in jurors that their identities could be disclosed online, there exists a cure: jurors' identities may be held anonymous from the public and the media while not being anonymous to the defense (as explained below). The third factor also weighs against empanelment of an anonymous jury.

### 3. The potential penalty alone is insufficient for empaneling an anonymous jury.

While Mr. Banks faces serious charges and serious consequences if he is convicted, that prospect is par for the course in federal proceedings and cannot be

the basis for empaneling an anonymous jury. The government cites *United States v. DeLuca* to suggest that a mandatory life sentence weighs in favor of empanelment of an anonymous jury. *Id.*, 137 F.3d 24, 32 (1st Cir. 1998). In that case, the defendants not only faced a mandatory life sentence, but they also had strong ties to organized crime, had a long history of violent crimes and extortions, and their "capacity and readiness to enlist criminal confederates in jury tampering plans was supported by actual precedent." *Id.* at 31. More specifically, "Rhode Island State Police [had previously] stopped an automobile carrying several convicted felons in possession of a metal pipe, a loaded firearm, and a list identifying the individual jurors empaneled to try [Defendant Ouimette] in a pending criminal case." *Id.* at 31 n. 6. The First Circuit case is completely inapt here. The fourth factor similarly weighs against the empanelment of an anonymous jury.

### 4. Publicity is not a threat to jurors.

Media attention surrounding a criminal prosecution cannot alone justify an anonymous jury. While this case will undoubtedly garner attention from the media, it is not unique. The federal courts routinely try high-profile cases involving allegedly dangerous defendants without taking the extraordinary measure of empaneling anonymous jurors. *See*, *e.g.*, *United States v. Sean Combs*, No. 1:24-CR-00542 (S.D.N.Y) (music mogul charged with racketeering, sex trafficking, and transportation for prostitution, garnered extensive media coverage and involved a defendant with significant connections and wealth); *United States v. Tsarnaev*, No. 1:13-CR-10200 (D. Mass) (defendant charged with 30 crimes, including 17 capital offenses, after bombing at Boston Marathon, pretrial publicity was immense, including the defendant's controversial cover on *Rolling Stone* magazine); *United States v. Roof*, 1:15-CR-00095 (D.S.C.) (trial of defendant alleged to have killed nine African-American parishioners at Emanuel

AME Church in Charleston, South Carolina, media coverage focused heavily on the defendant's white supremacist ideology); *United States v. Bowers*, 2:18-CR-00278 (W.D. Pa.) (defendant accused of killing eleven people at the Tree of Life synagogue in Pittsburgh, Pennsylvania, media coverage focused heavily on defendant's antisemitic motivation).

The present case is not of sensitive or political concern. *Compare with United States v. Trump,* No. 1:23-CR-00257 (D.D.C. Aug. 1, 2023); *United States v. Cohen*, No. 18-CR-602 (S.D.N.Y. Aug. 21, 2018); *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005). It is not the subject of mass outrage or civil unrest. *See, e.g., People v. Weinstein*, 2024 Slip Op 02222 (N.Y. Ct. App. Apr. 25, 2024); *Minnesota v. Derek Chauvin*, Case No. 27-CR-20-12646 (2020). It is a murder-for-hire case in a nation that tragically bears witness to murder every day. The only factor of note here is that one of the defendants is a well-known recording artist. Any media coverage is par for the course and does not create a genuine risk to jurors, especially considering that the jurors may remain anonymous from the media without an "anonymous jury" as the government requests. The fifth prong weighs heavily against empanelment of an anonymous jury.

  **B.**  **An Anonymous Jury Would Prejudice Mr. Banks' Right to a Fair Trial.**

Empaneling an anonymous jury in this matter would send an unmistakable message that Mr. Banks is a dangerous individual who is guilty of the charges against him. *Shryock*, 342 F.3d at 971; *Mansoori*, 304 F.3d at 650. Jurors will naturally infer that anonymity exists for their protection—a conclusion incompatible with the presumption of innocence. This inference cannot be cured by a generic instruction.

16

That Mr. Banks is likely to be prejudiced by an anonymous jury is supported by social science research and scholarship as well. Two professors at Florida State University held mock trials with anonymous and non-anonymous student jurors, who were asked to render verdicts for students accused of selling drugs on campus. D. Lynn Hazelwood & John C. Brigham, *The Effects of Juror Anonymity on Jury Verdicts*, 22 Law & Hum. Behav. 695 (1998). The study concluded that the anonymous juries had a higher rate of conviction than the non-anonymous juries when presented with the exact same evidence. *Id*.

Moreover, anonymity impairs the defense's ability to conduct meaningful voir dire, undermining the right to an impartial jury under the Sixth Amendment. *Shryock*, 342 F.2d at 971. The government's request for an anonymous jury would, therefore, compromise both substance and perception: jurors would view Mr. Banks through a lens of fear, while the defense would lose essential tools for ensuring impartiality and receiving a fair trial. *Id.*

### C. Less Restrictive Measures Are Available.

Even if the Court determines that some protective measures are appropriate, wholesale anonymity remains unnecessary. The government's proposal would make the identities of jurors not only anonymous to the public and the press, but even Mr. Banks and counsel. First, the government fails to cite sufficient evidence demonstrating a strong reason to withhold this critical information from Mr. Banks. Second, the government does not even attempt to cite a reason why defense counsel having this information might be a potential threat in need of court intervention and, therefore, leaves this argument abandoned. Lastly, the Court already has means in place for shielding juror names from the public, as provided in the Jury Plan for the Central District of California. General Order No 03-12, Section 13.1. The government ignores this fact in their argument regarding publicity, the media, and potential outside influences. If the Court deems a further

17

order is necessary to protect juror information from public or media view, such an order would not be opposed by Mr. Banks.

## IV. CONCLUSION

For the foregoing reasons, Defendant Durk Banks respectfully requests that the Court deny the government's Motion to Empanel an Anonymous Jury. Only through transparency and adherence to due process can this Court safeguard the integrity of these proceedings and preserve public confidence in the fairness of Mr. Banks' trial.

18