DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>DURK BANKS,<br><br>    Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR VAGUENESS OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**<br><br><u>Hearing</u><br>Date:    November 18, 2025<br>Time:    10:00 a.m.<br>Courtroom:  5A<br>Judge:    Hon. Michael W. Fitzgerald |

    Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this reply in support of his

motion to dismiss the Indictment for vagueness, or in the alternative, for a bill of particulars.[1]

                                                Respectfully submitted,

Dated: November 10, 2025       BY:   /s/ *Christy O'Connor*
                                                        Drew Findling
                                                        Marissa Goldberg
                                                        Jonathan M. Brayman
                                                        Christy O'Connor

                                                        *Attorneys for Durk Banks*

---

[1] The Second Superseding Indictment (referred to here as the "Indictment") is filed at docket number 147. Mr. Banks' motion to dismiss (hereinafter "Motion") is filed at docket number 227. The government's opposition (hereinafter its "Opposition") is filed at docket number 270.

# INTRODUCTION

The government's Opposition was its opportunity to highlight specifics—either in the Indictment itself, or in the discovery—that clarify its basic theory with respect to two things, and two things only: (1) the alleged "bounty," and (2) the pervasive yet vague "at the direction of" accusations. But it fails to do so. Instead, the Opposition recites at great length details in the Indictment that are irrelevant to the instant Motion. It then states in conclusory fashion that the discovery fills in any missing pieces on essential elements, without explaining how or laying a record for the Court to decide whether that is true.

The Court should see through this smokescreen and decline to blindly take the government's word that the discovery puts Mr. Banks on constitutionally sufficient notice. Without the Court's intervention, this vague indictment becomes a blank check that the government has written to itself, allowing Mr. Banks' prosecution on facts that were not presented to the grand jury, that would take him by surprise at trial, and that are continually shifting as government cooperators change their stories.

# ARGUMENT

## I. THE INDICTMENT'S DETAILED TREATMENT OF OTHER SUBJECT MATTERS DOES NOT MAKE UP FOR ITS VAGUENESS ON THE "BOUNTY" AND "AT THE DIRECTION OF" ALLEGATIONS.

At the outset, it is important to clarify what Mr. Banks is and is not arguing in this Motion. In his Motion, Mr. Banks takes issue with only two deficiencies in the Indictment. The first is that the Indictment fails to allege the essential facts, with "reasonable particularity of time, place, and circumstances," related to the alleged "bounty" that is an element of the murder-for-hire charge.[2] *See United States v.*

---

[2] It alleges only that, at some point in the nearly two-year time frame between November 6, 2020 and August 22, 2022, Mr. Banks "made clear, in coded language," to "defendant Wilson and Co-Conspirators 2, 4, and 5 and others, that he would pay a bounty or monetary reward," and/or pay "money and lucrative music opportunities" to anyone who took part in killing T.B. Indictment at 2, 4-6, 13.

1  *Cruikshank*, 92 U.S. 542, 558 (1875). The second is that it fails to allege the essential
2  facts about the "directions" that Mr. Banks is alleged to have given in furtherance of
3  Counts Three through Five—directions that are his only alleged link to crimes carried
4  out by others in his absence. Mr. Banks argues vagueness on these two topics only.

5        Mr. Banks does not argue that the Indictment is fatally vague in any other way--
6  for example, with respect to motive for T.B.'s murder, the date/time/circumstances of
7  the stalking, gun possession, or the murder of S.R., what facility in interstate commerce
8  was used, or the overt acts necessary to support a conspiracy charge.

9        Yet the government wants the Court to find that the inclusion of details on these
10 other matters renders the Indictment valid across the board. Its Opposition's
11 introduction cites the Indictment's "robust allegations about the motive for the murder,
12 details about how the defendants stalked the murder victim's vehicle for hours leading
13 up to the killing (including photographs), and details about each defendant's role in the
14 murder plot." No mention of the robustness of the "bounty" or "at the direction" of
15 allegations. Gov. Opp. at 1. Over the next four pages, it regurgitates all of the
16 Indictment's allegations—including those that do not matter here—in great detail. *Id.* at
17 1-4. Of course, the government can cite to no "robust allegation"—let alone a bare-
18 bones time, place, or circumstance—about the "bounty" offer/acceptance, or the
19 directions that Mr. Banks is alleged to have given to his purported co-conspirators. The
20 reason for that omission is simple: the Indictment contains none.

21       The government then goes on to argue that these details—about matters other
22 than the "bounty" and "at the direction of" allegations—are all that are necessary to
23 pass Constitutional muster: "Here, the SSI includes the elements of the offenses, the
24 date and place of the murder, the motive, the participants, and the actions they take
25 leading up to, and including, the murder. There is no missing factual allegation that
26 precludes the finding of criminality . . ." Gov. Opp. at 8. And later, it argues that it is
27 enough that "the SSI names with particularity the date and place of the murder, the
28 participants and motive, and 27 overt acts describing the actions leading up to the

1  murder as well as the murder itself." *Id.* at 10. The Indictment could contain 1,000
2  alleged overt acts, but if it is missing any essential facts giving rise to the charges, it
3  fails nonetheless. Just like it names the date and place of the murder, it should name the
4  date and place of the "bounty" offer.

5       The government's focus on non-pertinent details is a distraction. The presence of
6  these details does not make up for the Indictment's failure to provide "reasonable
7  particularity of time, place, and circumstances" where it matters: on the alleged
8  "bounty" offer that is an essential element of the murder-for-hire charges, and on the
9  directions that are the only alleged link between Mr. Banks and the other charged
10 crimes. As to those two critical subject matters, the Indictment is void of "reasonable
11 particularity of time, place, and circumstances."

12     **II.    MR. BANKS SEEKS ONLY WHAT HE IS ENTITLED TO UNDER
13            THE LAW: THE GOVERNMENT'S CENTRAL THEORIES OF
           PROSECUTION.**

14      Even the government has to admit: a defendant is entitled to know the time,
15 place, and circumstances of a "transaction giving rise to the charge." *See, e.g.,* Gov.
16 Opp. at 13 n.5 (citing *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971)).
17 But the government nonetheless argues that the Indictment here suffices because the
18 "the information the defendant requests—the specific language defendant used in
19 ordering a bounty and directing his co-conspirators—are not 'operative' or 'central'
20 facts to the case." Gov. Opp. at 15. *See also id.* at 10 n.4 ("the information sought by
21 defendant—the words he used in offering a reward to the killers of his rival or in giving
22 directions to others—are not elements of the offense"); *id.* at 15 ("[t]he information
23 defendant seeks is merely the details of acts in furtherance of the conspiracy").

24      A bounty offer is, however, a necessary "transaction giving rise to" a murder-for-
25 hire charge. In a prosecution under 18 U.S.C. § 1958, the receipt of or
26 promise/agreement to pay something of pecuniary value as consideration for murder is
27 an essential element of the offense. And "[t]he intent to pay someone to commit murder
28

3

is . . . a critical element" as well. *See, e.g., United States v. Wicklund*, 114 F.3d 151, 154 (10th Cir. 1997). And because Mr. Banks did not himself stalk anybody, shoot anybody, or possess a gun in furtherance of that stalking, the means and manner of his alleged remote participation (*i.e.,* the directions he allegedly gave to others) are essential to the case against him on Counts Three, Four, and Five. Those directions are, in fact, the *only* transactions giving rise to those charges as it relates to Mr. Banks. Mr. Banks is entitled to know the government's essential theory—the who, what, where, when, and how—on these essential points.

The government obscures things when it argues that the "words used" themselves are not essential elements of the offense. Consider a charge that we more commonly see in federal court: wire fraud. Imagine an indictment that alleges the following: "At some point between November of 2020 and August of 2022, the defendant made material misrepresentations about investment opportunities to WILSON and others in order to cause them to part with certain valuable possessions and/or money." It would be beyond reasonable dispute that this language fails to put the defendant on notice of the charges against him. It does not enable him to prepare his defense: to assert that he never made the statements at issue, that they were not false, that they were not material, or that they were not designed to cause victims to part with money or property, among many other potential defenses. It does not protect against double jeopardy: in a subsequent prosecution, the government could argue that *these other* statements form the basis for the "new" wire fraud charge. What is more, it obliterates the important function of the grand jury and permits the government to shift its theory as the case progresses. *See, e.g., United States v. Nance*, 533 F.2d 699, 701-02 (D.C. Cir. 1976) (reversing fraud conviction where indictment failed to specify the alleged false representations because it gave the government "a free hand to insert the vital part of the indictment without reference to the grand jury"); *United States v. Curtis*, 506 F.2d 985, 990-92 (10th Cir. 1974) (reversing fraud convictions where the indictment failed to specify the allegedly false representations).

A bounty offer is as essential to a murder-for-hire charge as a material misrepresentation is to a wire fraud charge. And where Mr. Banks' alleged directions to his alleged co-conspirators are the only thing tying him to Counts Three through Five, the circumstances of those directions are essential to his prosecution as well.

To be clear, Mr. Banks is not requesting the details of the *evidence* the government will present at trial, *i.e.,* the specifics documents, text messages, emails, cell site location information, or recordings the government will introduce, or the names of the government witnesses who will testify, in support of the government's theory of the case. *See Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) (date/time and location of core transaction properly the subject of a bill of particulars, but not the "names of government witnesses" who would testify about those transactions).

Mr. Banks is only requesting the government's basic *theory*, without which he cannot adequately prepare for trial. By way of example, let's consider Mr. Banks' request for the particulars of the "coded language" he is alleged to have used to offer the "bounty" for T.B.'s murder. The issue of so-called "coded language" will loom large at this trial, with the government arguing that the jury should assign certain meanings to facially-ambiguous language, and the defense contesting those interpretations.[3] Let's imagine that Mr. Banks is kept in the dark before trial about what "coded language" he allegedly used to offer the "bounty." Then at trial (the following hypothetical is completely fictitious), a government witness testifies that Mr. Banks told him, "the eagle has landed," and in certain neighborhoods in Chicago, "the eagle has landed" means that the speaker is offering a bounty for murder. Having heard these words and this interpretation for the first time at trial, the defense would be unprepared to effectively cross-examine the witness about the meaning of those words. The defense

---

[3] The government even intends to call an expert who will testify in support of its interpretations of various terms, such as "get back" and "slide."

5

will have done no research, conducted no investigation, lined up no witness to rebut that interpretation. That is the definition of trial by surprise, and it is a primary danger posed by a vague indictment. *See United States v. Zeehandelaar*, 498 F.2d 352, 356 n.1 (2d Cir. 1974) (a danger of a vague indictment is that it does not permit a defendant "to prepare an adequate defense [or] to address himself to the relevant questions of fact and law"); *United States v. Russell*, 369 U.S. 749, 766-67 (1962); *United States v. Cecil*, 608 F.2d 1294, 1296 (1979); *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991).

The same goes for the other information Mr. Banks' requests in a bill of particulars, including the date and location of the alleged "bounty" offer. The Indictment lists no location of the alleged offer, and it alleges a nearly two-year time frame in which the "bounty" offer could have occurred. If the defense hears for the first time at trial that the "bounty" offer was conveyed, for example, in a coffee shop in Chicago on January 5, 2021, it will be scrambling to figure out whether Mr. Banks was even *in* Chicago in January of 2021. There may be a witness who would have testifed that Mr. Banks was actually in Atlanta at that time, but the defense will have been deprived of the opportunity to locate and call that witness. The Sixth Amendment guarantees Mr. Banks, and all persons charged with crimes, more notice than that.

### III. BALD ASSERTIONS THAT THE DISCOVERY FILLS IN THE BLANKS ARE NOT ENOUGH.

The government asks the Court to find that the discovery it has produced "eliminates all doubt that the defendants are able to understand the theory of the government's case." Gov. Opp. at 13. Yet it lays no record that would allow for such a finding. *Contra United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (holding that discovery obviated any need for bill of particulars based on the record of the discovery's contents, including grand jury transcripts and memoranda revealing the government's theory). It only alleges that the discovery is voluminous, that "[w]ith each production, the government also provided a detailed index listing the discovery

6

being produced" *id.* at 4, and that "additional details [have been] provided in discovery," *id.* at 15 & n.6.

If that doubt-eliminating discovery existed, the government would certainly have cited to it in its Opposition. Yet it does not. Indeed, nowhere does the discovery set forth anything resembling a fixed or coherent theory of the "time, place, and circumstances" of the "bounty" allegations or the "at the direction of" allegations. On the contrary, the discovery reveals government witnesses who are constantly changing their stories. PW-1, for example, has asserted that there was no "bounty" at all, that he did not agree to murder T.B. for monetary gain, and that he did so under duress. But as one might expect in a murder-for-hire prosecution predicated on the existence of a "bounty," he rises to meet the occasion. In one government proffer session, PW-1 recounts how Mr. Wilson allegedly stayed behind in Los Angeles, after the other participants flew out, in order to collect the "bounty" money for distribution. PW-1's story is, however, flatly contradicted by the objective evidence. The government's realization that PW-1 lied here is likely why, between the First Superseding Indictment and the Second Superseding Indictment, it deleted language alleging that Mr. Wilson paid out the bounty after S.R.'s homicide. *See* Dkt. No. 27, p. 6 at ¶ 9. When the government's witnesses are constantly changing their stories about crucial facts, as the discovery catalogs here, Mr. Banks' defense must take aim at a moving target. That is fundamentally unfair.

### IV. THIS COURT SHOULD FASHION A REMEDY THAT MOORS THE GOVERNMENT TO ITS GRAND JURY PRESENTATION.

The government should be clear, with Mr. Banks and with the Court, about its theory of prosecution. Which iteration of its witnesses' ever-changing stories will it stand behind at trial? Importantly, the government is not free to simply pick its favorite version. If the government told the grand jury (again, this scenario is completely fictitious) that Mr. Banks' "coded" bounty offer was the statement, "the eagle has landed," made in a Chicago coffee shop in January of 2021, and the grand jury indicted

7

Mr. Banks based on that theory, then the government may not switch it up simply because its witnesses' stories become more convincing over time. *See Nance*, 533 F. 2d at 701 (reversing conviction where "absent any allegation whatsoever in the indictment as to what the false pretenses were, the United States Attorney would have a free hand to insert the vital part of the indictment without reference to the grand jury. The law does not vest him with such authority.") *Cecil*, 608 F.2d at 1297 (prohibition against vague indictments serves to "ensure that the defendants [are] prosecuted on facts presented to the Grand Jury"); *Russell*, 369 U.S. at 770; *United States v. Du Bo*, 186 F.3d 1177, 1179-80 (9th Cir. 1999); *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979).

Under the case law, when an indictment is as vague as this one, it is defective and must be dismissed. In the words of the Ninth Circuit:

> If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented. Rather than the assurance that a body of fellow citizens had assessed the facts and determined that an individual should face prosecution, the prosecutor would be in a position to second guess what actually happened within the grand jury and fill in the gaps with what he assumed transpired. The protection of a significant check on the power of the courts and prosecutors would thus be lost. For similar reasons, "open file" discovery cannot cure an invalid indictment.

*Cecil*, 608 F.2d at 1296; *Russell*, 369 U.S. at 770-71 ("[i]t is a settled rule that a bill of particulars cannot save an invalid indictment").

If the Court does, in lieu of dismissal, order a bill of particulars, it should take steps to ensure that the bill of particulars reflects the essential facts that formed the basis for the grand jury's decision to indict. Namely, the Court should conduct an *in camera* review of the grand jury transcripts to ensure the government's bill of particulars reflects them faithfully. Both in its bill of particulars and down the road, at

trial, the government is not permitted to prosecute Mr. Banks on allegations other than those presented to and approved of by the grand jury. The Constitution does not permit the government—or its cooperators, eager to say what they must to try and save their own skins—to "fill in the gaps."

## CONCLUSION

For the reasons set forth in Mr. Banks' Motion and above, Defendant Durk Banks respectfully requests that the Court dismiss the Indictment against him as unconstitutionally vague. In the alternative, the Court should order the government to produce the requested bill of particulars, comparing it with the grand jury transcripts *in camera* in order to ensure that the government does not impermissibly shift its theory of prosecution.