DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
       marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>DURK BANKS,<br><br>    Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPLY TO THE GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT BANKS' MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S PROPOSED FRE 404(b) EVIDENCE**<br><br>**Hearing**<br><br>Date:         November 18, 2025<br>Time:        10:00 a.m.<br>Courtroom:  5A<br>Judge:       Hon. Michael W. Fitzgerald |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this Reply to the

i

Government's Omnibus Opposition to Defendant Durk Banks' Motion in Limine to Exclude Proposed Rule 404(b) Evidence. This Reply is based on the attached memorandum of points and authorities, as well as all other applicable statutory and constitutional law, and any argument and evidence that may be presented at any hearing on this motion.

## I. INTRODUCTION

The government's Opposition repeats *ad nauseam* that the proposed Rule 404(b) evidence, which it is now calling "inextricably intertwined," is necessary to prove core issues in this trial. The government's claim reveals the weakness of its case-in-chief. Without attenuated, unreliable "other act" evidence, the government is unable to tell a coherent story about the murder that occurred on August 19, 2022—or at least one which inculpates Mr. Banks. Irrespective of the deficiencies in the government's case, the government's *need* for the evidence does not exempt it from the Rules of Evidence.

The government hopes that this Court will disregard the necessary individualized assessment of each piece of evidence and admit the Rule 404(b) evidence in bulk as intrinsic evidence (additionally disregarding the safeguards of Rule 403). This Court should reject that invitation.

## II. LEGAL STANDARD

Federal courts have admitted "other act" evidence when it: a) constitutes part of the transaction that serves as the basis for the criminal charge; or b) is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). This exception to Rule 404(b) "is most often invoked in cases in which the defendant is charged with being a felon in possession of a firearm," particularly in the context of a self-defense claim. *Id.* But "[t]here must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Id.*

For example, in *United States v. Ruiz*, No. 22-50041, 2023 U.S. App. LEXIS 28173 (9th Cir. Oct. 24, 2023), the government used evidence that Ruiz threatened border patrol officers as they subdued him after an assault to show that he had the intent to harm the officers. *Id*. at 3. The Court held that the testimony was "necessary to put the illegal conduct into context and to rebut his claims of self-defense." *Id.* (citing

1

*United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992)). Even then, the evidence is still subject to the balancing test under Rule 403.

The government fails to meaningfully differentiate between the evidence it believes is properly admissible under Rule 404(b) and the evidence which it believes is "intrinsic," and, thus, excluded from Rule 404(b) analysis. The evidence at issue here is either not intrinsic, does not satisfy the requirements of Rule 404(b), or both.

### III. THE GOVERNMENT'S PROPOSED "OTHER ACT" EVIDENCE SHOULD BE EXCLUDED.

**A. Evidence of Defendant Banks' Alleged Rivalry with T.B.**

The government misunderstands Mr. Banks' argument that most of the government's proposed evidence does not properly fall within the purview of Rule 404(b). Gov. Opp. at 6. That is not because the evidence is intrinsic—it's because the evidence is not an "other act." The "act" that the government seeks to admit to show Mr. Banks' motive is an act that someone else committed—specifically, Timothy Leeks, who shot and killed Mr. Bennett on November 6, 2020 outside a hookah lounge in Atlanta.

Mr. Banks was not there, or even in the State of Georgia, at the time. So there was no "act" that Mr. Banks committed for the government to use as "motive-related evidence." Gov. Opp. at 6. What the government really seeks to admit is a historical fact—perhaps, the fact that Mr. Leeks killed Mr. Bennett after Bennett and T.B. were involved in a physical altercation, or that Bennett was killed at all. But even Mr. Bennett's death bears little meaningful relevance to this case. Mr. Banks is not alleged to have ordered violence against Mr. Leeks. The fact that Mr. Leeks killed Mr. Bennett in 2020 does not bear on Mr. Banks' purported motive in this case, where Mr. Leeks is not a victim.

Additionally, the government seeks to admit evidence of "public pressure" on Mr. Banks to "slide for Von" or avenge the killing of Mr. Bennett ("Von"). But the

pressure to seek revenge for Bennett's death does not show motive in this case because Mr. Banks is not charged with seeking violence against Mr. Bennett's killer. The evidence does not satisfy the requirements of Rule 404(b) nor is it inextricably intertwined with the facts of the present case.

### B. May 2021 Shooting Incident in Blackshear, Georgia

The government suggests that a May 2021 shooting incident, in Blackshear, Georgia, where T.B. was present—perpetrated by persons unknown—is "inextricably intertwined with all charges in this case, but is also direct evidence of the stalking charge." Gov. Opp. at 10. The government omits the fact that there is no evidence which shows that Mr. Banks, or any other co-defendant in this case, was involved in the shooting, save for the shaky narrative of one cooperating witness, who is facing a potential life sentence. Moreover, the 2021 shooting cannot reasonably be taken as inextricably intertwined with the alleged stalking and shooting that occurred on August 19, 2022 in Los Angeles, as the facts, people, and context are entirely dissimilar.

The government cites to *United States v. Serang*, 156 F.3d 910 (9th Cir. 1998) to suggest that prior unsuccessful attempts to kill T.B. at Mr. Banks' supposed request explain the nature of the conspiratorial relationship and the contours of the alleged "murder plot" in this case. Gov. Opp. at 10. But in *Serang*, where the defendant was charged with arson, the cooperator's testimony regarding two previous failed arson attempts was admitted as inextricably intertwined because it "explained the nature of their conspiratorial relationship and how and why the fire was set in the manner that it was." *Id.* at 916. Specifically, the cooperator's testimony regarding the two previous attempts explained why the fire was started in a unique way to avoid fire suppression systems and with a key given to him by the defendant. *Id.* The testimony showed how, through the two failed attempts, the conspirators learned how to better avoid the fire suppression system and, put simply, how to more effectively burn a building. *Id.*

The facts of the 2021 shooting incident in Blackshear, where T.B. was present, are as follows: a group of men allegedly shot at T.B. at a gas station in Georgia. The

3

investigation into this shooting was conducted by the Georgia Bureau of Investigation and they were unable to identify any suspects. PW-2 is the only source of information for the government regarding any context or participants in this shooting. Further, even PW-2's statements are vague regarding the participants in this act: he named only two individuals, only one of whom could arguably have any affiliation with OTF or Mr. Banks, and some of whom PW-2 did not even know and could not identify. No other defendants in this case were alleged to be involved. The only similarity between the two acts is that it allegedly occurred at a gas station and T.B. was present. The 2021 Blackshear shooting incident bears no unique resemblance to, and has no meaningful impact on, the 2022 shooting of S.R. in Los Angeles—they are entirely unrelated. The evidence does not satisfy the requirements of 404(b) nor is it inextricably intertwined with the facts of the present case.

### C. Evidence Related to OTF's Structure and Defendant Banks' Control Over OTF

To establish the structure of "OTF," which the government concedes is a legitimate business entity, the government intends to admit two text threads and a voice memo, addressed in part below.

#### 1. Text thread including the message "I got them hunting you up..."

The government claims that this nearly unintelligible "threat" is evidence that Mr. Banks has control over other people who are willing to act on his behalf—even though there is no evidence that "threat" was ever acted upon by Mr. Banks or any other person over whom he allegedly exercised control. Gov. Opp. at 11. The government cannot show that the recipient of that message was ever killed, accosted, or in any way harmed by anyone at the behest of Mr. Banks. Moreover, the recipient of the "threat" is in no way affiliated with this case. Through this message, the government is attempting to bolster its case with the impermissible inference that Mr. Banks is the type of person who would threaten someone else, in other words, a person

4

with a violent character and propensity for violence. It has no bearing on this case, does not satisfy the requirements of Rule 404(b), and would certainly run afoul of Rule 403.

### 2. Text thread in which Mr. Banks told "OTF members" he was going to "pipe it up."

Here, the government cherry-picks one comment from a long group text thread allegedly between Mr. Banks and multiple other people discussing a variety of topics. If this piece of evidence were admitted, the defense would invoke Federal Rule of Evidence 106, the Rule of Completeness, to argue that the rest of the text thread should also be admitted to provide context. Fed. R. Evid. 106 (where a party "introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time.").

The conversation, in its entirety, includes a portion where the thread members discuss a phone call that seemingly diffused tension with a rival, one portion of the conversation about a basketball game, and one portion where a member writes: "just for today, choose guidance over misguidance; and choose humility over pride" to which others respond "peace and blessings." Specifically, the text where Mr. Banks allegedly says "I'm finna pipe it up" is later clarified in another text where he says "That's all . . . Letting y'all know I'm finna speak up." If the government believes these texts to be party admissions then another text clarifying the meaning of Mr. Banks' alleged words should dispel any belief that "I'm finna pipe it up" meant anything other than an intention to "speak up." Additionally, with the inclusion of the greater messages, the relevance of the proposed message is nil and it should be excluded. The messages fail to satisfy the requirements of Rule 404(b) and are not inextricably intertwined with any part of this case.

### 3. Voice memo from unindicted "OTF affiliate" to PW-1.

The voice memo at issue here is so unreliable that it actually cuts against the government's argument. A thorough review of the voice recording and the text

5

messages surrounding it reveal that the speaker is talking about somebody named "Unk"—not Mr. Banks—giving money to people and dictating how other people run their business. Because it is so unclear whether the speaker is referring to Mr. Banks or somebody else named "Unk," the voice memo cannot reasonably be viewed as material to a disputed issue in this case, cannot pass the Rule 404(b) test, and is in no way inextricably intertwined with the facts of this case.

**D. Lyrics**

The government's position that lyrics are party admissions by Mr. Banks underscores its own inability to grasp the nature of rap music, and more broadly, art. *See* Gov. Opp. at 16. The government has multiple cooperating witnesses with insider knowledge, cross-country intelligence regarding the murder of S.R. and all that led to it, and 20 terabytes of phone data to rely on as evidence in this case. If the government cannot prove its case without the use of Mr. Banks' unreliable, fictitious, and imaginative rap lyrics, then the government has bigger problems than the subject of this motion.

The government states plainly that "to the extent defendants ascribe meaning to defendants' [lyrics] that differs from the government's interpretation, that is the purpose of a jury trial." Gov. Opp. at 2. But this ignores the Federal Rules of Evidence and the role of the Court in admitting only evidence that comports with the Rules and notions of justice. The government cannot simply present its own subjective translation of rap lyrics to jurors, throw its hands up, and say "it's for the jury to decide"—the evidence is still subject to the Federal Rules of Evidence.

The government cites *United States v. Stuckey*, 253 F. App'x 468, 482-83 (6th Cir. 2007), where the defendant was charged with shooting someone, wrapping his body in blankets, and then dumping it in the road. In that case, the Sixth Circuit properly admitted rap lyrics where the defendant rapped explicitly about killing someone, wrapping the body in blankets, and dumping it in the road. For the government to even feign similarity here is disingenuous. This is not a case where Mr.

6

Banks' rap lyrics explicitly depict the crime that he is alleged to have committed. The government previously took that ill-fated approach, when it included Mr. Banks' lyrics from his featured verse on "Wonderful Wayne & Jackie Boy" in its grand jury presentation and in the text of the First Superseding Indictment itself. The government's fundamental misunderstanding of this category of "evidence," and their reliance on "fan edit" videos, ultimately led to the government going back to the grand jury to attempt to cure the issue and reindict the case, which they did.

Rather, the government seeks to admit a menagerie of snippets from various songs by Mr. Banks to paint one broader picture of him as a violent person who has his enemies killed. The government suggests that the lyrics "show intricate knowledge of the Los Angeles murder that only those involved would likely know" and then points to lyrics in which Mr. Banks is seemingly addressing widespread online comments, which are, quite literally, known to millions of people. Gov. Opp. at 18.

As stated in Defendant Banks' Motion in Limine, if the government were to admit Mr. Banks' rap lyrics as evidence against him, it would undoubtedly result in a mini-trial on the reliability of rap lyrics as evidence in a criminal case. This would add significant time to what will already be a lengthy trial, as the government would need to elicit expert testimony authenticating and translating the lyrics for the jurors. Of course, the defense would similarly call an expert in rap music who will testify to the lyrics themselves as well as the hyperbolic, imaginative, and often fictitious nature of rap music, as well as the sound engineers and writers who took part in the collaborative process of creating the music which the government now calls criminal "admissions."

### E.  2022 Chicago Murder

Stephon Mack's homicide in Chicago on January 27, 2022 has nothing to do with Mr. Banks and is entirely irrelevant to these proceedings. The government's suggestion that because the alleged murderers mentioned Mr. Banks in a text message two weeks after the commission of the crime that somehow inculpates Mr. Banks in the Chicago case is misplaced and dangerous. Gov. Opp. at 19. Even more concerning, the

government believes that an image posted by the alleged shooter in that case holding money while a Lil Durk song plays in the background is "highly probative of defendant Banks' identity as the contractor for the hit on T.B." Gov. Opp. at 19. To be clear—the victim in the Chicago case was not T.B., nor anyone affiliated with him. And, as Mr. Banks is one of the most widely-celebrated artists from Chicago, it is commonplace that someone in Chicago would post on social media with his song in the background.[1]

Moreover, the "act" at issue here is a text message sent by and received by people who are in no way affiliated with this case. That is not an "other act" as contemplated under the Rules of Evidence to be used against Mr. Banks, a distinction the government ought to recognize.

## IV. CONCLUSION

None of the evidence proposed by the government satisfies the requirements of Rule 404(b) nor is it inextricably intertwined with the facts of this case. Rather, the government's attempt to admit irrelevant evidence through Rule 404(b), or to evade the requirements of Rule 404(b) altogether by calling the evidence "inextricably intertwined," is a transparent effort to bolster its case with impermissible character evidence. The evidence should be excluded from trial in this case.

Respectfully submitted,

Dated: November 10, 2025        BY:   /s/ Drew Findling

/s/ Marissa Goldberg

/s/ Jonathan M. Brayman

/s/ Christy O'Connor

*Attorneys for Durk Banks*

---

[1] Chicago Defender, Lil Durk Honored with Keys to the City, Hosts Prayer Event, and Near-Sellout Concert, Oct. 22, 2024, https://chicagodefender.com/lil-durk-honored-with-keys-to-the-city-hosts-prayer-event-and-near-sellout-concert.

8