DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
       marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>      Plaintiff,<br><br>v.<br><br>DURK BANKS et al.,<br><br>      Defendants. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT BANKS' REPLY TO GOVERNMENT'S OPPOSITION TO JOINT MOTION TO DISQUALIFY AND DISMISS INDICTMENT**<br><br>Date:     TBD<br>Time:    TBD<br>Courtroom: TBD |

      Defendants Durk Banks, Deandre Dontrell Wilson, David Brian Lindsey, and Asa Houston, by and through their respective counsel, hereby file this Reply to the Government's Opposition to Joint Motion to Disqualify and Dismiss Indictment. Defendants request a hearing on the matter.

      This Joint Reply is based on the attached memorandum and exhibits, the files and records in this case, and any other evidence or argument that the Court may permit.

Respectfully submitted,

BY: /s/ *Drew Findling*          /s/ *Tillet J. Mills II*

/s/ *Jonathan M. Brayman*      *Attorney for David Brian Lindsey*

/s/ *Marissa Goldberg*         /s/ *Shaffy Moeel*

/s/ *Christy O'Connor*         *Attorney for Asa Houston*

*Attorneys for Durk Banks*

## NOTICE OF MOTION

Defendants Durk Banks, Deandre Dontrell Wilson, David Brian Lindsey, and Asa Houston, by their respective undersigned counsel, filed a Joint Motion to Disqualify Under 28 U.S.C. § 455; Dismiss Indictment; Vacate Scheduling Order; Reopen Pretrial Hearings; And for An Evidentiary Hearing on November 13, 2025. Dkt. 290. The government filed its Opposition on December 8, 2025. Dkt. 319. The defendants hereby file this reply to the government's Opposition.

## MEMORANDUM OF POINTS AND AUTHORITIES

The government's Opposition, although it visibly bristles with indignation and incredulity, is blatantly lacking as to one important issue. The question that they refuse to answer, barely even acknowledge, leaves a dark gaping hole in their Response that should deeply concern the Court. The question is - *why not just tell the defense?* Why did they withhold this information for seven months? Why did they secret away the fact that the assigned magistrate judge had been subjected to multiple threatening messages, even when they knew that the same judge would be presiding over subsequent hearings? Why not give the defense a heads-up when the assigned lead prosecutor to the case also received a threatening phone call just days before they presented to the grand jury on the Second Superseding Indictment? The lack of a direct response to any of these questions is glaring.

The government references this issue without providing justification and only from a defensive posture, "defendants cite no rule, statute, or case showing 'a clear basis in fact and law' that the prosecutors in this case committed any misconduct by deciding to disclose the threats on October 1, 2025....the government disclosed the threats when they became relevant to this case --- i.e., when the government relied on the threats in support of its motion for an anonymous jury." Dkt. 319 at 12.

When the government becomes aware of credible death threats directed at a presiding judge or lead prosecutor in a pending criminal case, it has an affirmative duty, as an officer of the court, to disclose that information to the defense before pretrial hearings, especially substantive ones dealing with the accused's liberty. Even where the magistrate judge personally received the threats, undisclosed threats against a judicial officer create an objective appearance-of-impartiality concern that defendants are entitled to raise and litigate contemporaneously, because due process protects not only against actual bias but against procedures that undermine public confidence in judicial neutrality. *See, e.g., Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803–04

1  (1987); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). By withholding notice of the threats while litigating detention and other pretrial matters, the government deprived defendants of the opportunity to seek recusal or other protective relief at the moment judicial discretion was exercised, a structural due process violation that cannot be cured after the fact. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *United States v. Holland*, 519 F.3d 909, 913–15 (9th Cir. 2008). To make matters worse, this suppression of relevant information and non-disclosure was not limited to a single prosecutor like in *Williams*, but instead was institutional in scope. This conduct strikes at the heart of the fairness of these proceedings and warrants dismissal. *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008); *United States v. Kojayan*, 8 F.3d 1315, 1324-25 (9th Cir. 1993).

The government attempts to recast the defense's position as one that asserts the government was "required to provide the defense with ***immediate updates*** about investigations into threats and/or improper attempts to influence individuals connected to this case[.]" The defense has never made such a cavalier suggestion that there was an immediate duty. Instead, at the very least, the government had a duty to disclose this information to the defense *prior to substantive hearings* concerning defendants' liberty and pretrial motion hearings. Instead, rather than disclose as required, the government suppressed this information from the defendants for several months, allowing bail hearings and other substantive motions to go forward without so much as a word about literal death threats to the tribunal, the courthouse, and the lead prosecutor (who was responsible for making tactical, strategic, and charging decisions in this case).

After unknown individuals made violent threats to both the presiding magistrate and the lead Assistant United States Attorney overseeing this case, seemingly in connection with the defendants, the government ostensibly had concerns for the safety and wellbeing of its employees and court personnel. The government's exhibits to its

1  Opposition make clear that, after the threats were received, the government sprung into
2  action notifying others and initiating an investigation. Critically, and with no regard for
3  the safety, wellbeing, or due process rights of the accused and their attorneys, the
4  government failed to notify the defense. Thereafter, unbeknownst to the defense, the
5  presiding magistrate and district court judges oversaw two different hearings where the
6  courts were tasked with addressing the dangerousness of the defendants – and
7  potentially made those determinations partially, based on the violent threats made to the
8  magistrate judge and others. The defense had no recourse, because due to the
9  government's withholding of information, they had no knowledge of the harm. Only
10 months later, when it was convenient for the government to use the threats in support of
11 its argument for an anonymous jury, did the government choose to inform the defense
12 about the threats and subsequent investigation. The government's intentional failure to
13 inform the defense of the threats caused irreparable and prejudicial harm to the
14 defendants in this case and the integrity of the judicial process. Confoundingly, the
15 government calls this harmless.

16 **I.    ARGUMENT**
17    **A.    The USAO's failure to disclose the threats prejudiced the defendants.**
18       The government's attempt to minimize the impact of the threats is belied by the
19 government's own actions and characterizations of them as violent and/or "improper
20 attempts to influence individuals connected to this case." Dkt. 319 at 12. Moreover, the
21 government's repeated attempt to minimize the threats fails when one considers the
22 plain reality of the situation: an anonymous caller seemingly tied to the defendants in
23 this case threatened to "shoot up" the prosecutor and "burn down" the courthouse if the
24 defendants were sentenced to life. With that in mind, the magistrate judge made
25 material rulings in this case, and the prosecutors argued that the defendants were
26 dangerous.

3

1     The question of whether the magistrate judge's partiality was impacted by the threats could have been answered through an evidentiary hearing at the time that it occurred, but due to the government's withholding of information, the defense was unable to raise the issue when it mattered. The defense was also prevented from making tactical and strategic decisions about seeking recusal and/or disqualification of the court or counsel at the time. While the government suggests that there is "no basis to conclude that [the] court failed to evaluate its ethical duties under Section 455 throughout this case" –it has not been found that the court did in fact evaluate those obligations, or consider its own impartiality, because defendants were never able to raise the issue at the proper time. Dkt. 319 at 13. The government, by its own argument, highlights precisely the rub. Questions have been raised due to outside influences creating the possibility of a conflict; however, there is no record in this case that resolves those questions favorably or otherwise. The government is satisfied by their hypothetical "might have happened" or even "probably happened" scenario, but assumptions don't protect against Constitutional violations. Even if the magistrate judge was not made partial by the threats, as the government contends, the issue still should have been resolved through briefing and/or an evidentiary hearing at that time with firm findings on the record. Without that opportunity, all we know is that the defendants were subject to determinations made by a judicial officer who may have perceived them as more violent or dangerous, even implicitly and without any conscious intent to do so, after receiving violent threats.

    In the government's fifteen-page Response, it refuses to directly acknowledge and attempts to minimize the reality that it intentionally withheld relevant information from the defense – a fact that cannot be denied. The government is avoiding all responsibility for its own failures and hopes this Court will similarly close its eyes to the irreparable harm done to the defendants. At the very least, the prosecutors overseeing this case should be disqualified.

**B.  Dismissal of the indictment is warranted and appropriate under this Court's supervisory powers.**

The government admits it plainly: this Court has supervisory powers to dismiss an indictment when dismissal is warranted. Dkt. 319 at 14. A district court may dismiss an indictment under its inherent supervisory powers: (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1045 (citing *United States v. Struckman,* 611 F.3d 560, 574 (9th Cir. 2010)). The court's exercise of its supervisory powers protects the integrity of the federal courts and prevents "making the courts themselves accomplices in willful disobedience of law." *McNabb v. United States*, 318 U.S. 332, 345 (1943). A district court can dismiss an indictment even if the conduct does not rise to the level of a due process violation, but when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available. *United States v. Barrera-Moreno*, 951 F.2d (9th Cir. 1991).

The government's failure to inform the defense of the violent threats constitutes "flagrant misbehavior" resulting in "substantial prejudice" to the defendants. *United States v. Kearns*, 5 F.3d 1251 (9th Cir. 1993); *United States v. Jacobs*, 855 F.2d 655 (9th Cir. 1988). No other remedy exists to right the wrong that has been done to the defendants in this case. The indictment should be dismissed.

**C.  An Evidentiary Hearing is Required**

The government suggests that there are no facts in dispute, after disputing the facts that the defendants raised in their Motion. At the very least, the question of whether or not the magistrate judge was impermissibly biased, when she made her rulings on May 8 and May 14, 2025, warrants an evidentiary hearing. Additionally, the

5

question of whether the government had *ex parte* communications with the Court – and to what extent those communications were substantive or material to the case – must be explored.

## II. CONCLUSION

The defendants in this case are charged with serious crimes for which they face potential life sentences. The integrity of the prosecution and the judicial process is of utmost importance in order to safeguard the defendants' constitutional rights to due process. The government has failed in ways that undeniably prejudice the defendants, and potentially cause the validity and fairness of these proceedings to be undermined.

For the foregoing reasons, this Court should, at the very least, hold an evidentiary hearing on the violations alleged in defendants' Joint Motion, whereafter this Court should disqualify the United States Attorney's Office for the Central District of California from prosecuting this case and should dismiss the current indictment against defendants.