# Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-435 |
| *Plaintiff - Appellee*, | D.C. No. 8:20-cr-00171-JVS-FWS-5 |
| v. | |
| JESUS RAMIRO GOMEZ, AKA Hunter, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, Senior District Judge, Presiding

Argued and Submitted En Banc September 9, 2025
San Francisco, California

Filed January 13, 2026

Before: Mary H. Murguia, Chief Judge, and Ronald M.
Gould, Milan D. Smith, Jr., Jacqueline H. Nguyen, Ryan D.
Nelson, Eric D. Miller, Daniel P. Collins, Lucy H. Koh,
Jennifer Sung, Holly A. Thomas, and Ana de Alba, Circuit
Judges.

Opinion by Judge H.A. Thomas;
Concurrence by Judge Collins

2                        USA v. GOMEZ

## SUMMARY[*]

### Criminal Law

The en banc court affirmed the district court's judgment in a case in which the district court found that Jesus Ramiro Gomez, who pleaded guilty to distribution of methamphetamine, was subject to a career offender enhancement under U.S.S.G. § 4B1.1(a) because his prior conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) was a crime of violence—a classification Gomez did not challenge until his opening brief on appeal.

The government argued that Gomez's unpreserved challenge should be reviewed only for plain error under Federal Rule of Criminal Procedure 52. In a long series of decisions, this court previously held that where the appeal presents a pure question of law and there is no prejudice to the opposing party, this court may review de novo rather than for plain error. Applying this exception, a three-judge panel reviewed de novo whether a conviction under Section 245(a)(1) constitutes a crime of violence and concluded that it did not.

The en banc court overruled the precedent recognizing a "pure question of law" exception to Rule 52 and held that unpreserved claims of legal error may be reviewed only for plain error.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The en banc court further held that, in light of the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021), a conviction under California Penal Code § 245(a)(1) does not qualify as a crime of violence, given that Section 245(a)(1) does not require the intentional application of force against another. The en banc court therefore overruled this court's pre-*Borden* decisions holding that Section 245(a)(1) is a crime of violence under Section 4B1.1(a) and held that the district court erred when it ruled to the contrary in Gomez's case.

But the en banc court concluded that the district court's error was not plain. In so concluding, the en banc court noted that in the years since *Borden*, this court continued to rely upon pre-*Borden* decisions to reject arguments that Section 245(a)(1) is not a crime of violence, and that the decision the en banc court reaches today is a close and difficult one. The en banc court therefore affirmed the district court's judgment.

Judge Collins concurred in part and concurred in the judgment. He agreed with the court's decision to overrule its precedent recognizing unwritten exceptions to the plain error standards set forth in Federal Rule of Criminal Procedure 52(b). He also agreed with the majority's ultimate judgment affirming Gomez's sentence, but he reached that conclusion by a different route. He wrote that the court should adhere to its precedent holding that a conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) qualifies as a "crime of violence," because that caselaw is not inconsistent with the Supreme Court's decision in *Borden*. Consequently, he would hold that the district court did not err at all, and not merely that it did not commit a plain error.

4                          USA v. GOMEZ

## COUNSEL

Alexander P. Robbins (argued), Assistant United States Attorney, Deputy Chief; Bram M. Alden and David R. Friedman, Assistant United States Attorneys, Chiefs; Criminal Appeals Section; Mack E. Jenkins, Assistant United States Attorney, Chief, Criminal Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; Robert J. Keenan, Assistant United States Attorney, Santa Ana Section, Office of the United States Attorney, United States Department of Justice, Santa Ana, California; for Plaintiff-Appellee.

Todd W. Burns (argued), Burns & Cohan Attorneys at Law, San Diego, California, for Defendant-Appellant.

Kara Hartzler, Appellate Attorney; Vincent Brunkow, Chief Appellate Attorney; Kasha Castillo, Executive Director; Federal Defenders of San Diego Inc., San Diego, California; Fidel Cassino-DuCloux, Federal Public Defender, Office of the Federal Public Defender, Portland, Oregon; Colin Fieman, Federal Public Defender, Office of the Federal Public Defender, Seattle, Washington; Andrea George, Executive Director, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington; Rachel Julagay, Executive Director, Federal Defenders of Montana Inc., Great Falls, Montana; Salina M. Kanai, Federal Public Defender, Office of the Federal Public Defender, Honolulu, Hawaii; Jodi Linker, Federal Public Defender, Office of the Federal Public Defender, San Francisco, California; Leilani V. Lujan, Federal Public Defender, Office of the Federal Public Defender, Mongmong, Guam; Jamie McGrady, Federal Public Defender, Office of the Federal Public Defender, Anchorage, Alaska; Cuauhtemoc Ortega, Federal

Public Defender, Office of the Federal Public Defender, Los
Angeles, California; Nicole Owens, Executive Director,
Federal Defender Services of Idaho, Boise, Idaho; Jon M.
Sands, Federal Public Defender, Office of the Federal Public
Defender, Phoenix, Arizona; Rene L. Valladares, Federal
Public Defender, Office of the Federal Public Defender, Las
Vegas, Nevada; Heather Williams, Federal Public Defender,
Office of the Federal Public Defender, Sacramento,
California; for Amici Curiae Ninth Circuit Federal Public
and Community Defender Offices.

---

# OPINION

H.A. THOMAS, Circuit Judge:

Jesus Ramiro Gomez pleaded guilty to distribution of
methamphetamine. At sentencing, the district court found
that he was subject to a career offender enhancement and
sentenced him to 188 months' imprisonment. In applying the
enhancement, the district court determined that Gomez's
prior conviction for assault with a deadly weapon under
California Penal Code § 245(a)(1) was a crime of violence—
a classification Gomez did not challenge until his opening
brief on appeal.

The government argued that Gomez's unpreserved
challenge should be reviewed only for plain error under
Federal Rule of Criminal Procedure 52. In a long series of
decisions, however, we had previously held that "where the
appeal presents a pure question of law and there is no
prejudice to the opposing party," we may review de novo
rather than for plain error. *United States v. Gonzalez-*

*Aparicio*, 663 F.3d 419, 426 (9th Cir. 2011). Applying this exception, a three-judge panel of our court reviewed de novo whether a conviction under Section 245(a)(1) constitutes a crime of violence and concluded that it did not. *See United States v. Gomez*, 115 F.4th 987, 999 (9th Cir. 2024), *vacated and reh'g en banc granted*, 133 F.4th 1083 (9th Cir. 2025).

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Sitting en banc, we now overrule our precedent recognizing a "pure question of law" exception to Rule 52 and hold that unpreserved claims of legal error may be reviewed only for plain error. We further hold that, in light of the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021), a conviction under California Penal Code § 245(a)(1) does not qualify as a crime of violence. But because the district court's error in concluding otherwise was not plain, we affirm the district court's judgment.

I.

Pursuant to the Sentencing Reform Act and the United States Sentencing Guidelines ("U.S.S.G."), the "career offender" enhancement applies when a defendant is sentenced for a controlled substance offense or a "crime of violence" and has two prior such convictions. U.S.S.G. § 4B1.1(a) (U.S. Sent'g Comm'n 2018); *see also* 28 U.S.C. § 994(h) (directing the Sentencing Commission to include such a provision in the Guidelines). For purposes of this enhancement, a crime of violence is defined in part as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). This portion of the definition is known as the

"elements clause." *United States v. Davis*, 588 U.S. 445, 451–52 (2019) (referring to the corresponding clause of multiple similar statutory definitions of violent crimes as the "elements clause").

Courts employ the "categorical approach" to determine whether a conviction constitutes a qualifying offense under Section 4B1.2(a). *See United States v. Prigan*, 8 F.4th 1115, 1118–19 (9th Cir. 2021); *see also Borden*, 593 U.S. at 424 (plurality opinion) (applying categorical approach to the comparable elements clause in § 924(e)(2)(B)(i)); *Taylor v. United States*, 495 U.S. 575, 602 (1990) (describing categorical approach). Under this approach, a court must examine whether a conviction "fits within the scope of a generically defined crime, such as . . . a 'crime of violence.'" *United States v. Ellsworth*, 456 F.3d 1146, 1152 (9th Cir. 2006); *see also Borden*, 593 U.S. at 424 (plurality opinion) ("The focus is . . . on whether the elements of the statute of conviction meet the federal standard."). When applying the categorical approach, "the facts of a given case are irrelevant." *Borden*, 593 U.S. at 424 (plurality opinion). Instead, courts focus only on "whether the elements of the statute of conviction meet the federal" crime of violence definition. *Id.* If, when conducting this examination, a court determines that the statute of conviction makes unlawful any conduct less culpable than that required to constitute a crime of violence, then there is "not a categorical match." *United States v. Begay*, 33 F.4th 1081, 1091 (9th Cir. 2022) (en banc).

In 2022, Gomez pleaded guilty to distribution of methamphetamine. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). At sentencing, the district court applied a career offender enhancement because, in addition to Gomez's latest conviction for distribution of

methamphetamine and a previous conviction for possession
of cocaine for sale, he had also previously been convicted of
assault with a deadly weapon under California Penal Code
§ 245(a)(1), which the court determined was a "crime of
violence" under Section 4B1.1(a). The application of the
career offender enhancement increased Gomez's adjusted
offense level from 27 to 34[1] and his advisory sentencing
range from 130–162 to 262–327 months' imprisonment. The
district court sentenced Gomez to 188 months'
imprisonment.

Gomez did not object to the district court's finding that
his Section 245(a)(1) conviction was a crime of violence. He
raised this challenge for the first time on appeal. Reviewing
that challenge, the three-judge panel vacated Gomez's
sentence and remanded the case to the district court for
resentencing. *See Gomez*, 115 F.4th at 999. Applying our
"pure question of law" exception to plain error review, the
panel exercised its discretion to review Gomez's
unpreserved legal challenge de novo. *See id.* at 990–92; *see
also United States v. Eckford*, 77 F.4th 1228, 1231 (9th Cir.
2023). The panel held that a Section 245(a)(1) conviction is
not a crime of violence and thus could not serve as a
predicate offense for the career offender enhancement.
*Gomez*, 115 F.4th at 992–99. We vacated that decision after
a majority of the nonrecused active judges on our court voted
to rehear this matter en banc. *See Gomez*, 133 F.4th at 1083.

---

[1] The district court applied a three-level downward adjustment to the
base offense level for Gomez accepting responsibility. *See* U.S.S.G.
§ 3E1.1(a), (b).

II.

We first address the applicable standard of review for an unpreserved claim of error.

Under Federal Rule of Criminal Procedure 52(a), "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). But under Rule 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention." Fed. R. Crim. P. 52(b).

The import of Rule 52 could hardly be clearer: if an error is not plain or does not affect substantial rights, it must be ignored if it was not raised below. Although this concept has gone more or less unchanged since the Federal Rules of Criminal Procedure were put into place in 1944, beginning in the late 1970s, our court created an exception to plain error review. In 1978, relying on several decisions in non-criminal cases, we held in *United States v. Patrin* that although "[a]s a general rule, 'a federal appellate court does not consider an issue not passed upon below,'" there nevertheless existed a "narrow exception to the general rule" for situations where "the issue conceded or neglected in the trial court is purely one of law and . . . does not affect or rely upon the factual record developed by the parties." 575 F.2d 708, 712 (9th Cir. 1978) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Our decision in *Patrin* did not mention Rule 52(b). *See generally id.*

A series of conforming decisions followed. *See, e.g.*, *Guam v. Okada*, 694 F.2d 565, 570 n.8 (9th Cir. 1982), *opinion amended on denial of reh'g*, 715 F.2d 1347 (9th Cir. 1983); *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir. 1983); *United States v. Rubalcaba*, 811 F.2d 491, 493

(9th Cir. 1987); *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990). By the early 1990s, we had clearly delineated a category of criminal appeals presenting "pure questions of law" to which we could apply de novo review, which existed alongside those to which plain error applied. For instance, in *United States v. Flores-Payon*, we held that our "narrow exceptions to the general rule against review on appeal of issues not raised below" included situations where "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court," and observed that "[f]urther exception may be made when plain error has occurred and an injustice might otherwise result." 942 F.2d 556, 558 (9th Cir. 1991) (first citing *Carlson*, 900 F.2d at 1349; *United States v. Smith*, 905 F.2d 1296, 1302 (9th Cir. 1990); then citing *Whitten*, 706 F.2d at 1012; Fed. R. Crim. P. 52).

By the early aughts, however, the Supreme Court had made clear that appellate courts have limited authority to review unpreserved legal issues. First, in *Jones v. United States*, the Court rejected the argument that the Federal Death Penalty Act of 1994 created an exception to Rule 52(b)'s plain error review. *See* 527 U.S. 373, 388–89 (1999). Then, in *United States v. Vonn*, the Court held that "a defendant who lets Rule 11 error pass without objection in the trial court . . . has the burden to satisfy the plain-error rule," despite the expression of a harmless error standard in Rule 11(h). 535 U.S. 55, 58–59 (2002). The Court emphasized that to hold otherwise would "amount to finding a partial repeal of Rule 52(b) by implication"—a "disfavored" result. *Id.* at 65.

In 2009, the Court further "cautioned that '[a]ny unwarranted extension' of the authority granted by Rule 52(b) would disturb the careful balance it strikes between

judicial efficiency and the redress of injustice, and that the creation of an unjustified exception to the Rule would be '[e]ven less appropriate.'" *Puckett v. United States*, 556 U.S. 129, 135–36 (2009) (alterations in original) (citation omitted) (first quoting *United States v. Young*, 470 U.S. 1, 15 (1985); and then quoting *Johnson v. United States*, 520 U.S. 461, 466 (1997)). Holding that "a forfeited claim that the Government has violated the terms of a plea agreement is subject to the plain-error standard of review," the Court noted that the "real question in this case is not *whether* plain-error review applies . . . , but rather what conceivable reason exists for disregarding its evident application." *Id.* at 131, 136 (emphasis in original). The Court underlined that while the breach of a plea agreement was "undoubtedly a violation of the defendant's rights, . . . the defendant has the opportunity to seek vindication of those rights in district court; if he fails to do so, Rule 52(b) as clearly sets forth the consequences for that forfeiture as it does for all others." *Id.* at 136 (citation omitted).

After *Puckett*, it should arguably have been beyond debate that our application of a "pure question of law" exception to plain error review could not survive. What, after all, could "all others" have referred to if not the remainder of forfeited errors that a defendant might raise on appeal? Indeed, as at least one of our colleagues has observed, "our sister circuits routinely review pure questions of law for plain error."[2] *United States v. Zhou*, 838 F.3d 1007, 1016 (9th Cir. 2016) (Graber, J., concurring).

---

[2] *See, e.g.*, *United States v. Bennett*, 469 F.3d 46, 50 (1st Cir. 2006); *United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam); *United States v. Henderson*, 64 F.4th 111, 116–17 (3d Cir. 2023); *United States v. Carthorne*, 726 F.3d 503, 509 (4th Cir. 2013); *United States v.*

To be sure, our application of a "pure question of law" exception to Rule 52(b) has not gone unquestioned. *See, e.g.*, *Begay*, 33 F.4th at 1090 n.3 ("The government did not ask us to revisit our precedent allowing the application of de novo review to pure questions of law where we are satisfied the government will not be prejudiced. And because the outcome is the same regardless of what standard we apply, we need not consider whether that precedent can be reconciled with the Supreme Court's cases interpreting Federal Rule of Criminal Procedure 52(b)." (citations omitted)); *United States v. Castillo*, 69 F.4th 648, 653 (9th Cir. 2023) ("[T]he assumption that de novo review applies to purely legal questions that have not been argued below has been called into question both by our court and by the Supreme Court."). Nevertheless, we have as a court continued to reaffirm and reapply the principle that we "are not limited to [plain error] review when we are presented with [1] a question that is purely one of law and [2] where the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Eckford*, 77 F.4th at 1231 (alterations in original) (quoting *United States v. McAdory*, 935 F.3d 838, 841–42 (9th Cir. 2019)); *see also, e.g.*, *United States v. Garcia-Lopez*, 903 F.3d 887, 892 (9th Cir. 2018).

The time has come for us to right our course. We "creat[ed] out of whole cloth" a pure question of law

---

*Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012); *United States v. Woodruff*, 735 F.3d 445, 448 (6th Cir. 2013); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005); *United States v. Ellis*, 127 F.4th 1122, 1126 (8th Cir. 2025); *United States v. Gonzalez-Jaquez*, 566 F.3d 1250, 1251 (10th Cir. 2009); *United States v. Laines*, 69 F.4th 1221, 1233 (11th Cir. 2023); *United States v. Williams*, 358 F.3d 956, 966 (D.C. Cir. 2004).

exception to Rule 52(b)—an exception that is incompatible
with Supreme Court precedent and the plain language of the
Rule. *See Johnson*, 520 U.S. at 466. We now overrule our
precedent establishing such an exception. Because Gomez
did not object in the district court to the classification of his
Section 245(a)(1) conviction as a crime of violence, his
claim is reviewable only for plain error. *See* Fed. R. Crim. P.
52(b). To prevail in this appeal, Gomez must therefore
demonstrate that the district court (1) committed an error
(2) that is plain and that (3) affects his substantial rights. *See
Greer v. United States*, 593 U.S. 503, 507–08 (2021). If
those three requirements are satisfied, we have discretion to
remedy the error if it "seriously affect[s] the fairness,
integrity or public reputation of judicial proceedings."
*Puckett*, 556 U.S. at 135 (alteration in original) (quoting
*United States v. Olano*, 507 U.S. 725, 736 (1993)).

### III.

Applying the standard set forth above, we turn next to
whether the district court erred in determining that assault
with a deadly weapon under California Penal Code
§ 245(a)(1) is a crime of violence.

### A.

We have observed that, under the categorical approach,
the least culpable act criminalized under the statute of
conviction must involve the level of force described in the
federal crime of violence definition. *See Begay*, 33 F.4th at
1091. If the statute criminalizes any conduct less culpable
than the federal definition's requirement, "the statute is not
a categorical match," and a conviction under that statute does
not qualify as a crime of violence. *Id.* Gomez argues that
assault with a deadly weapon under Section 245(a)(1) does
not match the "elements clause" of U.S.S.G. § 4B1.2(a)(1)

because Section 245(a)(1) criminalizes a lesser mens rea than the federal definition. We agree.

In *Borden*, the Supreme Court determined that a defendant's conviction for reckless aggravated assault under Tennessee law did not satisfy the elements clause because that clause requires the statute of conviction to have a mens rea greater than recklessness. *See* 593 U.S. at 445 (plurality opinion). The plurality concluded that the mens rea requirement stems from the language in the elements clause requiring that force be used "against the person of another." *Id.* at 429. The plurality relied on the Model Penal Code's mens rea definitions, noting that a person acts recklessly when he "consciously disregards a substantial and unjustifiable risk." *Id.* at 427 (quoting Model Penal Code § 2.02(2)(c) (1985)). The Model Penal Code defines the most culpable mens rea—purpose—as when a person "'consciously desires' a particular result." *Id.* at 426 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). The plurality concluded that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id*. at 429. Because "[r]eckless conduct is not aimed in that prescribed manner," it does not satisfy the elements clause. *Id.*

Justice Thomas, concurring in the judgment, agreed that reckless crimes do not satisfy the elements clause. *See id.* at 446 (Thomas, J., concurring). His analysis, however, relied on a different phrase in the statute: "use of physical force." *Id.* In Justice Thomas's view, the use of physical force "has a well-understood meaning applying only to intentional acts designed to cause harm." *Id.* (quoting *Voisine v. United States*, 579 U.S. 686, 713 (2016) (Thomas, J., dissenting)). Because the reckless aggravated assault statute at issue

"could be violated through mere recklessness," it did not satisfy the elements clause. *Id.*

As we held in *United States v. Davis*, "when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other," the opinion is binding. 825 F.3d 1014, 1021–22 (9th Cir. 2016) (en banc); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining that the holding of the Court in a plurality opinion is the narrowest ground agreed upon by at least five Justices). In *Borden*, the four-justice plurality and Justice Thomas agreed that a mens rea of recklessness is insufficient to satisfy the elements clause. The plurality opinion is narrower than Justice Thomas's opinion because Justice Thomas would have held that the elements clause encompasses only "intentional acts designed to cause harm." *Borden*, 593 U.S. at 446 (Thomas, J., concurring) (quoting *Voisine*, 579 U.S. at 713 (Thomas, J., dissenting)). Even if we had not articulated the plurality's reasoning in our decision in *Begay*, *see* 33 F.4th at 1092–94, it would therefore be binding upon us. And, indeed, the government now agrees that the plurality opinion must be treated as controlling.

Following *Borden*, the elements clause is satisfied only by crimes that require uses of force with a mens rea more culpable than recklessness. Stated differently, if a person can be convicted under a criminal statute by using force against another with only the "conscious[] disregard[]" of a "substantial and unjustifiable risk," then the crime is not a

crime of violence. **³** *Borden*, 593 U.S. at 427 (plurality opinion).

### B.

Gomez was convicted under California Penal Code § 245(a)(1) for assault with a deadly weapon that is not a firearm. In California, assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. The assault statute does not, on its face, require a specific mens rea. *See id.* We thus look to the California Supreme Court's interpretation of the statute to determine the requisite mens rea requirement. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) (explaining that while interpreting the elements clause is a question of federal law, we are bound by the state court's "interpretation of state law, including its determination of the elements" of the relevant crime).

The California Supreme Court has held that the requisite mens rea for a conviction under Section 245(a)(1) is "an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." *People v. Williams*, 29 P.3d 197, 204 (Cal. 2001). Section 245(a)(1), therefore, does not require an intent to apply force, knowledge that an action will cause force to be applied to another, or even subjective awareness of a risk that such force will result.

---

³ Our holding in *Begay* is consistent with this conclusion. *See* 33 F.4th at 1093–95. In *Begay*, we held that crimes committed with "extreme recklessness" or a "depraved heart" satisfy the elements clause because they require sufficient awareness of the risk to constitute active uses of force against another person. *Id.*

"A person acts purposefully when he 'consciously desires' a particular result." *Borden*, 593 U.S. at 426 (plurality opinion) (quoting *Bailey*, 444 U.S. at 404). Under *Williams*, Section 245(a)(1) does not require an intent to cause harm; it merely requires an intent to do an act that results in harm. A defendant need not have "specific intent to cause injury or a subjective awareness of the risk that an injury might occur." *Williams*, 29 P.3d at 204; *see also People v. Wyatt*, 229 P.3d 156, 158 (Cal. 2010) ("[T]he criminal intent required for assault is 'the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another.'" (quoting *People v. Rocha*, 479 P.2d 372, 376–77 (Cal. 1971))). The "intentional act" requirement in Section 245(a)(1) requires only that the act in question be volitional. *See Williams*, 29 P.3d at 201 ("The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm." (quoting *People v. Colantuono*, 865 P.2d 704, 712 (Cal. 1994))). It does not require the intentional application of force against another.[4]

---

[4] Our decision in *Gutierrez v. Garland*, 106 F.4th 866 (9th Cir. 2024), is consistent with this conclusion. In *Gutierrez*, we held that carjacking under California Penal Code § 215 is not categorically a crime of violence. *See id.* at 871–77. Even though carjacking under California law necessarily involves the act of taking a vehicle with the intent to deprive its owner of that vehicle, we reasoned that the elements clause also requires a sufficiently culpable mens rea as to the use of force. *See id.* at 874–77. Our decision in *Gutierrez* demonstrates that when a state statute does not assign a sufficiently culpable mens rea to the use of force—as opposed to other elements of the crime—it fails to satisfy the elements clause. *See id.* at 876 ("That California courts do not consider a defendant's *mens rea* as to [the use of force] element [of carjacking]

A person "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Borden*, 593 U.S. at 426 (plurality opinion) (alteration in original) (quoting *Bailey*, 444 U.S. at 404). The government argues that Section 245(a)(1) requires, at the very least, a knowing use of force. But such a reading is incompatible with the California Supreme Court's holding, recited above, that assault "does not require . . . a subjective awareness" of the risk of injury the defendant has created. *Williams*, 29 P.3d at 204. While it is true that—as the government emphasizes—the California Supreme Court requires knowledge of the facts that make the action the type of act likely to result in harm, this does not equate to a subjective awareness that harm "is practically certain" to result. *Borden*, 593 U.S. at 426 (plurality opinion). Rather, as the California Supreme Court has explained, even "a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to [the] defendant, would find that the act would directly, naturally and probably result in a battery." *Williams*, 29 P.3d at 203 n.3. This falls far short of *Borden*'s definition of knowledge.**5** Indeed, "knowledge of [the] . . . facts sufficient to establish that the act by its nature will probably" result in force, *id.* at

---

further suggests that a defendant can be convicted for accidental or reckless use of 'force . . . .'").

5 The government also points to a single sentence in *Williams* stating that "mere recklessness or criminal negligence" is insufficient to satisfy California's assault statute. 29 P.3d at 203. But the California Supreme Court explained that the quoted language uses the term recklessness "in its historical sense as a synonym for criminal negligence, rather than its more modern conception as a subjective appreciation of the risk of harm to another." *Id.* at 203 n.4.

204, is less culpable even than *Borden*'s definition of recklessness, which requires conscious disregard of a substantial risk, 593 U.S. at 427 (plurality opinion).

Our concurring colleague disagrees, writing that the requisite mens rea for a conviction under Section 245(a)(1) is "a significantly more demanding mental state than the sort of recklessness rejected in *Borden*." Concurrence at 31. Our colleague emphasizes that "a defendant who violates § 245(a)(1) must be shown to have *intentionally* committed an act with actual *subjective knowledge of circumstances* that objectively establish that a battery *will directly occur* as a result." *Id.* But, as explained, Section 245(a)(1) "does not require . . . a subjective awareness of the risk that an injury might occur."[6] *Williams*, 29 P.3d at 204. Awareness of the facts that would cause a reasonable person to "find that the act would directly, naturally and probably result in a battery," *id.* at 203 n.3, does not equate to awareness of the risk. And a defendant who lacks a subjective awareness of any risk cannot "consciously disregard[] a substantial and unjustifiable risk." *Borden*, 593 U.S. at 427 (plurality opinion).

Accordingly, we overrule our pre-*Borden* decisions holding that a conviction under Section 245(a)(1) is a crime of violence under Section 4B1.1(a). *See, e.g.*, *United States*

---

[6] Our colleague writes that recklessness under *Borden* "did not require that the risk of a battery 'come anywhere close to a likelihood,' *Borden*, 593 U.S. at 427 (plurality), whereas the *Williams* standard affirmatively requires that a battery will be the 'probabl[e] and direct[] result.' *Williams*, 29 P.3d at 204." Concurrence at 31. But the probability of the risk of harm—even assuming that *Williams* requires a higher probability than a substantial and unjustifiable risk—is not relevant to the mens rea because *Williams* does not require a defendant to have any awareness of that risk.

*v. Grajeda*, 581 F.3d 1186, 1189–97 (9th Cir. 2009); *United States v. Jimenez-Arzate*, 781 F.3d 1062, 1064–65 (9th Cir. 2015) (per curiam); *United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1065–68 (9th Cir. 2018). And we hold that the district court erred when it ruled to the contrary in Gomez's case.**[7]**

## IV.

We next consider whether the district court's error was plain. "[T]he Supreme Court has made clear that whether an error is 'plain' for purposes of Rule 52(b) is judged 'at the time of review' by the appellate court and *not* at the 'time of error.'" *United States v. Irons*, 31 F.4th 702, 713 (9th Cir. 2022) (emphasis in original) (quoting *Henderson v. United States*, 568 U.S. 266, 273 (2013)). "The question, then, is whether the district court's [determination], 'even if now wrong (in light of the new appellate holding),' should . . . be characterized as 'questionabl[y]' wrong rather than '*plainly* wrong.'" *Id.* (second alteration and emphasis in original) (quoting *Henderson*, 568 U.S. at 278). This requires us to assess "whether our analysis reveals the question at issue to have a 'plain' answer or whether that analysis confirms that we have instead answered a close and difficult question." *Id.*

---

[7] The government argues that, even if Section 245(a)(1) does not satisfy the elements clause, it still meets the definition of a crime of violence contained in the enumerated offenses clause. *See* U.S.S.G. § 4B1.2(a)(2) (specifying that "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm" constitute crimes of violence). Aggravated assault under the enumerated offenses clause, however, requires a mens rea greater than extreme recklessness. *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085 (9th Cir. 2015). For the reasons explained above, Section 245(a)(1) does not meet that standard.

Undertaking that analysis, we conclude that the decision we have reached today is a "close and difficult" one. *Id.*

Both before and after *Borden*, we have consistently held that Section 245(a)(1) qualifies as a crime of violence. First, in *Grajeda*, we held that Section 245(a)(1) was a crime of violence because it requires "'violent' and 'active'" force and "not merely accidental" uses of force. 581 F.3d at 1195. We were thus satisfied that the assault statute did not criminalize merely "reckless" conduct. *Id.*

Next, in *Jimenez-Arzate*, we considered whether two California cases undercut *Grajeda*'s holding and determined that they did not. 781 F.3d at 1064–65. We explained that in *People v. Aznavoleh*, 210 Cal. App. 4th 1181 (2012), the California Court of Appeal upheld a conviction under Section 245(a)(1) when the defendant "intentionally ran a red light while racing another car down the street even though he saw a car entering the intersection on the green," and made "no effort to stop despite a passenger warning him that he needed to stop." *Jimenez-Arzate*, 781 F.3d at 1064 (citing *Aznavoleh*, 210 Cal. 4th at 1185, 1189). And we noted that in *Wyatt*, the California Supreme Court upheld a conviction for manslaughter and assault on a child causing death because "substantial evidence established that [the] defendant knew he was striking his young son with his fist, forearm, knee, and elbow, and that he used an amount of force a reasonable person would realize was likely to result in great bodily injury." *Id.* (quoting *Wyatt*, 229 P.3d at 157). We held that these decisions did not demonstrate that Section 245(a)(1) criminalizes conduct less culpable than the elements clause requires. *Id.* at 1064–65. We observed that the defendant in *Aznavoleh* "heedlessly disregard[ed] a perceived likelihood of death or grave injury to others," and

that in *Wyatt* "a reasonable person would have recognized the dangers" of the defendant's actions. *Id.*

In our most recent pre-*Borden* decision on this issue, we held that Section 245(a)(1)'s "intentional act" requirement establishes that it is an intentional crime, which satisfies the elements clause. *Vasquez-Gonzalez*, 901 F.3d at 1068. Although we quoted the California Supreme Court's conclusion in *Williams* that "recklessness or criminal negligence" is insufficient under the assault statute, we did not identify that, as discussed earlier, recklessness here was a synonym for criminal negligence rather than a separate mental state. *See id.* at 1067.

In the years since the Supreme Court decided *Borden*, we have continued to rely upon these earlier decisions to reject defendants' arguments that Section 245(a)(1) is not a crime of violence. Although these decisions are unpublished, they demonstrate that we did not identify *Borden* as being irreconcilable with our prior precedent. *See, e.g.*, *United States v. Morton*, No. 21-10291, 2022 WL 17076203, at *1 (9th Cir. Nov. 18, 2022) ("Morton argues that *Borden v. United States* . . . abrogates [our] precedent. . . . We previously held that section 245 offenses are crimes of violence precisely because the statute requires a mens rea greater than recklessness. *Borden* requires nothing more." (citations omitted)); *United States v. Man*, No. 21-10241, 2022 WL 17260489, at *1 (9th Cir. Nov. 29, 2022) (same); *Paz-Negrete v. Garland*, No. 16-73889, 2023 WL 4404348, at *1 (9th Cir. July 7, 2023) ("Paz-Negrete argues that § 245(a)(1) is broader than § 16(a) because its elements can be satisfied by an offensive touching or reckless or negligent conduct, but our court rejected both those arguments in *United States v. Grajeda* . . . and *United States v. Vasquez-Gonzalez* . . . . Because *Grajeda* and *Vasquez-Gonzalez* are

binding authority, we conclude the IJ correctly determined that Paz-Negrete's § 245(a)(1) conviction constituted an aggravated felony."). And in *Amaya v. Garland*, we rejected the argument that a crime of violence requires proof of specific intent after *Borden*. 15 F.4th 976, 983 (9th Cir. 2021).

Given these decisions—and the analysis we have undertaken above—we cannot conclude that the answer we have reached today is plain. *Cf. Irons*, 31 F.4th at 713 (concluding that the "textual analysis" at issue there was "sufficiently one-sided, and sufficiently dictate[d] the answer" that it was plain error for the district court to reach a different conclusion). Gomez has therefore not satisfied his burden of showing that the district court committed plain error when it applied the career offender enhancement to his sentence. And, in light of that conclusion, we need not answer whether the error affected Gomez's substantial rights.

V.

For the reasons discussed above, we overrule our precedent recognizing a "pure question of law" exception to Rule 52 and hold that forfeited claims of legal error are subject to plain error review. We further conclude that convictions under California Penal Code § 245(a)(1) are not crimes of violence and cannot serve as the predicate for the application of the career offender enhancement. But because the district court's error in concluding otherwise was not plain, its judgment stands **AFFIRMED**.

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the court's decision to overrule our precedent recognizing unwritten exceptions to the plain error standards set forth in Federal Rule of Criminal Procedure 52(b). I therefore join section II of the court's opinion. I also agree with the majority's ultimate judgment affirming Jesus Ramiro Gomez's sentence, but I reach that conclusion by a very different route. Contrary to what the majority concludes, I believe that we should adhere to our precedent holding that a conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) qualifies as a "crime of violence," because that caselaw is not inconsistent with the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021). Consequently, I would hold that the district court did not err at all, and not merely that it did not commit a plain error. I therefore respectfully concur in part and in the judgment.

**I**

In determining Gomez's sentencing range under the sentencing guidelines, the district court applied the career offender enhancement contained in U.S.S.G. § 4B1.1(a). That ruling rested dispositively on the district court's conclusion that Gomez's prior conviction for assault with a deadly weapon, in violation of California Penal Code § 245(a)(1), constituted a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a). That conclusion was dictated by our precedent holding that § 245(a)(1) is categorically a crime of violence under the various comparable definitions of that phrase in federal criminal law. *See United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1065–68 (9th Cir. 2018); *United States v. Jimenez-Arzate*,

781 F.3d 1062, 1064–65 (9th Cir. 2015); *United States v. Grajeda*, 581 F.3d 1186, 1189–97 (9th Cir. 2009). Gomez claims for the first time on appeal that this settled precedent is no longer good law in light of *Borden*, and I agree with the majority that we review this contention under the plain error standards of Federal Rule of Criminal Procedure 52(b). Under those standards, Gomez must first show that (1) there was an error; (2) the error is plain; and (3) the error affects Gomez's "substantial rights, which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (simplified). "If those three requirements are met, [we] may grant relief if [we] conclude[] that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id*. at 508 (simplified). In my view, Gomez fails at the first step, because there was no error.

## II

### A

In evaluating whether our § 245(a)(1) precedent is inconsistent with *Borden*, we must first determine what the binding holding of *Borden* is.

In *Borden*, the defendant had previously been convicted of "recklessly committing an assault" in violation of a Tennessee statute, *see Borden*, 593 U.S. at 424–25 (plurality) (simplified), and he argued that this offense did not qualify as a "violent felony" for purposes of the sentencing enhancement provided under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The relevant definition of "violent felony" in the ACCA, like that of "crime of violence" in U.S.S.G. § 4B1.2(a), applies to any offense that has as an element the "use, attempted use, or

threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see also* U.S.S.G. § 4B1.2(b) (same). In *Borden*, the plurality framed the question presented there as whether this "elements clause" of the definition "includes offenses," like the Tennessee statute, that "criminaliz[e] reckless conduct." 593 U.S. at 429 (plurality). The plurality answered that question in the negative, holding that the definition "covers purposeful and knowing acts, but excludes reckless conduct." *Id*. at 432. The plurality reasoned that the phrase "use of physical force *against* the person of another" denotes a *targeted* use of force, and thereby "sets out a *mens rea* requirement—of purposeful or knowing conduct." *Id*. at 432, 434 (emphasis added). Reckless conduct, which "is not opposed to or directed at another," therefore does not suffice under the plurality's view. *Id*. at 432.

Justice Thomas concurred in the judgment, agreeing that the Tennessee offense was not a violent felony under the ACCA. *Borden*, 593 U.S. at 445 (Thomas, J., concurring in the judgment). However, his reasoning differed from the plurality's. He concluded that "a crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase has a well-understood meaning applying only to *intentional* acts designed to cause harm." *Id*. (emphasis added) (additional quotation marks omitted).

In these circumstances, in which there is no majority opinion for the Court, the binding holding of the decision is the "position taken by those [Justices] who concurred in the judgment[] on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). As the majority notes, the narrowest ground of decision between the plurality and Justice Thomas in *Borden* is their agreement that an offense

that may be committed with a *mens rea* of recklessness does not satisfy the "elements clause" of the definition of "violent felony" in the ACCA. *See* Opin. at 15. *Borden* therefore establishes that if a particular statutory offense may be committed merely by showing that the person acted with "conscious[] disregard[]" of a "substantial and unjustifiable risk . . . in gross deviation from accepted conduct"—which the plurality described as "the most common formulation" of recklessness—then that offense does not satisfy the elements clause. *Borden*, 593 U.S. at 427 (plurality); *id*. at 446 (Thomas, J, concurring in the judgment) (relying on the reasoning in his prior dissent in *Voisine v. United States*, 579 U.S. 686 (2016)); *see also Voisine*, 579 U.S. at 709 (Thomas, J., dissenting) (asserting that the "standard for recklessness"—*viz*., disregard of "a substantial and unjustifiable risk"—does not satisfy the *mens rea* required by the elements clause).

Because (1) the plurality's and Justice Thomas's rejection of a *mens rea* of recklessness is the least common denominator that defines the holding of *Borden* in construing the elements clause; (2) there is no overlap between the *Borden* plurality opinion and Justice Thomas's concurring opinion as to the extent to which a *mens rea* of *knowledge* would be sufficient; and (3) it is generally inappropriate to combine portions of a plurality or concurring opinion "with a *dissent*" to try to form a majority rationale that would be binding under *Marks*, *see Johnson v. City of Grants Pass*, 72 F.4th 868, 913 (9th Cir. 2023) (Collins, J., dissenting), *rev'd*, 603 U.S. 520 (2024), *Borden* does not establish a standard for the *minimum mens rea*, above recklessness, that would be needed to satisfy the elements clause. Instead, it simply holds that recklessness does not suffice.

Indeed, even if the *Borden* plurality opinion were construed as a binding majority opinion in all respects, I do not think that that opinion is fairly read as purporting to articulate exactly what the requisite minimum level of *mens rea* is.   On the contrary, in describing the holding that resulted from the combination of the plurality opinion and Justice Thomas's concurrence in the judgment, the plurality itself described that holding exactly as I have:

> Four Justices think that the "use" phrase, as modified by the "against" phrase, in ACCA's elements clause excludes reckless conduct. One Justice thinks, consistent with his previously stated view, that the "use" phrase alone accomplishes that result.  *See post*, at 446 (THOMAS, J., concurring in judgment). And that makes five to answer the question presented.    Q: Does the elements clause exclude reckless conduct?  A: Yes, it does.

593 U.S. at 437 n.6 (plurality).

Moreover, the notion that the *Borden* plurality opinion establishes a minimum level of *mens rea* seems impossible to square with the plurality's insistence, in a footnote, that it was *not* addressing whether "mental states (often called 'depraved heart' or 'extreme recklessness') *between* recklessness and knowledge" satisfied the elements clause. *Borden*, 593 U.S. at 429 n.4 (emphasis added).  And we have previously explicitly recognized, in a prior en banc decision, that "the Supreme Court's decision in *Borden* stopped short of deciding whether offenses that may be committed with mental states *between* ordinary recklessness and knowledge . . . qualify as crimes of violence."  *United States v. Begay*,

33 F.4th 1081, 1086 (9th Cir. 2022) (en banc).  Put simply, if the *Borden* plurality expressly declined to address whether any *mens rea* standard "between" recklessness and knowledge satisfies the elements clause, then the plurality's opinion cannot be read to define what the requisite minimum *mens rea* is.  *Borden* merely holds that, whatever the exact line is, "ordinary recklessness" does not meet it.  *Borden*, 593 U.S. at 429 n.4 (plurality).

In my view, the majority therefore errs in extracting from *Borden* a minimum standard as to the level of knowledge that must be included in an offense's elements in order for that offense to satisfy the elements clause.  According to the majority, *Borden* restricts the qualifying offenses to those that include a knowledge requirement that meets or exceeds the particular definition of knowledge set forth in the Model Penal Code and a few other sources.  Thus, under the majority's view, an offense suffices *only* if its *mens rea* element requires knowledge in the sense of a defendant's subjective "aware[ness] that [a] result is *practically certain* to follow from his conduct."  *See* Opin. at 18 (quoting *Borden*, 593 U.S. at 426 (plurality) (emphasis added)); *see also* Model Penal Code § 2.02(b)(ii) ("A person acts knowingly with respect to a material element of an offense when: . . . if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.").

But in referencing this particular definition of knowledge, the *Borden* plurality did not suggest that it was the *only* one that would be acceptable under the elements clause.  Rather, the *Borden* plurality invoked this formulation in order to underscore just how sharply the concept of knowledge contrasts with that of recklessness.  As the plurality explained, recklessness is very different from

knowledge because the "substantial and unjustifiable risk" that, if disregarded, establishes recklessness "need not come anywhere close to a *likelihood*," much less the practical certainty required under the Model Penal Code formulation of knowledge. *Borden*, 593 U.S. at 427 (plurality) (emphasis added); *see also id*. (noting that recklessness covers "low-probability events" and "possible consequence[s]"). Furthermore, the Supreme Court authority on which *Borden* relied on this point did not itself consistently enunciate a "practical certainty" standard. In discussing the *mens rea* of knowledge, *Borden* cited *United States v. United States Gypsum Co.*, 438 U.S. 422 (1978), which in turn interchangeably referenced both knowledge that a result was "practically certain" to occur and "knowledge that the proscribed effects would *most likely follow*." *Id*. at 444–45 (emphasis added) (citations omitted); *see also id*. at 444 (referencing "action undertaken with knowledge of its *probable* consequences" (emphasis added)). Nothing in *Borden* required the Court to settle upon an *exact* line as to what *mens rea* above recklessness would suffice for purposes of the elements clause, and the Court did not do so.

Accordingly, the binding holding of *Borden* is that an offense with a *mens rea* of recklessness, as described in *Borden*, does not satisfy the elements clause.

**B**

The question, then, is whether California Penal Code § 245(a)(1) permits a conviction based on the sort of recklessness that was rejected by *Borden*. The answer is no.

As definitively construed by the California Supreme Court, the "assault" offense set forth in § 245(a)(1) requires, *inter alia*, "[1] an intentional act and [2] actual knowledge of those facts sufficient to establish that the act by its nature

will probably and directly result in the application of physical force against another." *People v. Williams*, 29 P.3d 197, 204 (Cal. 2001) (emphasis added). In other words, § 245(a)(1) requires subjective knowledge of those facts that, in turn, *objectively* establish that a battery is *likely* to occur as the *direct* result of the defendant's intentional act, but the statute does not require subjective knowledge that the battery itself will occur.

This distinctive *mens rea* is a significantly more demanding mental state than the sort of recklessness rejected in *Borden*. The latter standard, as the plurality explained, did not require that the risk of a battery "come anywhere close to a likelihood," *Borden*, 593 U.S. at 427 (plurality), whereas the *Williams* standard affirmatively requires that a battery will be the "probabl[e] and direct[] result." *Williams*, 29 P.3d at 204; *see also id*. at 202 (explaining that "the mental state for assault incorporates the language of probability, *i.e.*, direct, natural and probable consequences"). Moreover, in contrast to a defendant acting with ordinary recklessness, who merely "pay[s] insufficient attention to the potential application of force," a defendant who violates § 245(a)(1) must be shown to have *intentionally* committed an act with actual *subjective knowledge of circumstances* that objectively establish that a battery *will directly occur* as a result. *Borden*, 593 U.S. at 432 (plurality). And because § 245(a)(1) thus requires an intentional act and subjective knowledge of the facts that make the battery likely to directly result from that act, a § 245(a)(1) violation involves a "targeted" use of force "against" another person in a way that ordinary recklessness does not. *Id*. Although *Williams*'s *mens rea* standard falls short of the Model Penal Code's knowledge standard (because it does not require *subjective* knowledge that the

battery itself is *practically certain* to occur), it is more demanding than the sort of mere recklessness rejected in *Borden*.

The majority does not dispute that, as compared to ordinary recklessness, the nuanced *mens rea* element described in *Williams* requires a much greater likelihood that a battery will result from the act that the defendant intentionally commits with knowledge of the associated objectively-risk-creating circumstances.  But the majority says that this difference does not matter because there is another difference that cuts the other way: in contrast to the "most common formulation" of recklessness, which requires a showing that the defendant "*consciously disregard[ed]* a substantial and unjustifiable risk," *Borden*, 593 U.S. at 427 (plurality) (emphasis added), the *Williams* standard "does not require . . . a *subjective awareness of the risk* that an injury might occur," *Williams*, 29 P.3d at 204 (emphasis added).  Given this latter difference, the majority argues, the much higher probability of the risk required by *Williams* is "not relevant," and the *Williams* standard is "*less culpable* even than *Borden*'s definition of recklessness." *See* Opin. at 18–19 & n.6 (emphasis added).  The majority's reasoning is flawed.

There are good reasons to doubt the majority's conclusion that an aggravated assault under § 245(a)(1) is "less culpable" than the reckless assault offense at issue in *Borden*, but that issue is ultimately beside the point.**[1]**  The

---

[1] Culpability is the focus of *other* provisions, such as the provision of the Immigration and Nationality Act declaring "inadmissible" certain persons who have committed a "crime involving moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I).  *See Safaryan v. Barr*, 975 F.3d 976, 985–88 (9th Cir. 2020) (holding that § 245(a)(1) is categorically a crime

relevant question here is not relative culpability in the
abstract but whether the elements of the offense establish the
requisite *targeting* of force *against* another person. *See
Borden*, 593 U.S. at 429 (plurality). There is no such
directing of force at another when, as with ordinary
recklessness, the risk created by the defendant "need not
come anywhere close to a likelihood." *Id*. at 427. But when
the defendant's intentional actions make it likely that force
will be applied against another person as the direct
consequence of those actions, and the defendant knows the
facts that create that direct likelihood, he has "used force
'against' another person in the targeted way that [the
elements] clause requires." *Id*. at 432.**[2]** The fact that the

_____

involving moral turpitude, because its combination of aggravating
factors and *mens rea* makes the offense sufficiently turpitudinous under
the applicable "sliding scale," which considers the combined culpability
of both "a sufficiently reprehensible *actus reus* and a sufficiently
culpable *mens rea*"). The much greater likelihood of bodily harm
inherent in an aggravated assault under § 245(a)(1) as opposed to the
reckless assault offense at issue in *Borden* significantly augments the
former offense's culpability, and that substantially increased culpability
outweighs the relatively modest countervailing distinction in culpability
"between (1) someone who is subjectively aware of the facts that create
[an] obvious risk versus (2) someone who is subjectively aware of [the]
risk." *Id*. at 987. Nonetheless, I do not discern anything in the majority's
decision that calls into question *Safaryan*'s holding that § 245(a)(1) is
categorically a crime involving moral turpitude. *See id*. at 988 (noting
that, under the sliding scale that governs the distinct analysis applicable
to a "crime involving moral turpitude," even "recklessness is an adequate
*mens rea* for assault if combined with additional aggravating factors").

[2] The panel opinion was therefore wrong in contending that § 245(a)(1)
would cover the hypothetical described in *Borden* in which "a driver . . .
'decides to run a red light, and hits a pedestrian whom he did not see.'"
*United States v. Gomez*, 115 F.4th 987, 995 (9th Cir. 2024) (quoting
*Borden*, 593 U.S. at 432 (plurality)). Because *Williams* makes clear that
a defendant cannot be convicted based on "facts he did not know but

defendant may not subjectively perceive the obvious direct consequence of what he knows he is doing does not negate the "directedness or targeting," *id*. at 430, that inheres in the close connection between his known actions and their direct consequence.

Viewed in this fuller context, § 245(a)(1)'s *mens rea* requirement is somewhere "*between* ordinary recklessness and knowledge" as defined in the Model Penal Code provisions quoted in *Borden*. *Begay*, 33 F.4th at 1086. Because § 245(a)(1) does not allow conviction based on the sort of recklessness rejected in *Borden*, our existing caselaw holding that § 245(a)(1) satisfies the elements clause is not inconsistent with the binding holding of *Borden*. Absent further guidance from the Supreme Court, I therefore would adhere to our precedent on *stare decisis* grounds and hold that § 245(a)(1) is a crime of violence for purposes of the elements clause.

---

should have known" and must be shown to have known "the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct," *Williams*, 29 P.3d at 788, § 245(a)(1) does not apply to a defendant who actually thinks the crosswalk is clear when he runs the red light. *Cf. People v. Yorba*, 2008 WL 727693, at *6 (Cal. Ct. App. 2008) (upholding a § 245(a)(1) conviction because a jury could reasonably find that the defendant knew the facts making a collision likely when he "was speeding through a red light" and he saw "another car whose driver was proceeding legally with the left-turn arrow and who had looked both ways before entering the intersection," even though "defendant was honking his horn while approaching the intersection, was being chased by police cars with their sirens on, and had illegally driven through other traffic-light-controlled intersections while evading the police at unsafe speeds well in excess of the posted speed limits without being involved in other collisions").

## C

As I have noted, the majority's contrary view is based on the premise that *Borden* requires that the knowledge element must meet or exceed the knowledge required under the Model Penal Code formulation. I agree with the majority that its conclusion properly follows from that assumption, but for the reasons I have explained, I do not think that *Borden* requires us to adopt that premise. Beyond that, I have one final concern about the majority's approach. Specifically, despite the majority's insistence to the contrary, *see* Opin. at 16 n.3, the reasoning in its opinion today cannot be reconciled with our en banc decision in *Begay*.

I agree that *Begay*'s holding—*viz.*, that "crimes committed with 'extreme recklessness' or a 'depraved heart' satisfy the elements clause"—is logically "consistent" with the rule that "if a person can be convicted under a criminal statute by using force against another with only the conscious disregard of a substantial and unjustifiable risk, then the crime is not a crime of violence" under *Borden*. *See* Opin. at 15–16 & n.3 (simplified). Stated differently, I agree with the majority that the statute at issue in *Begay* requires more than the recklessness rejected in *Borden*, and in that sense *Begay* is consistent with *Borden*. *See supra* at 30 (explaining that the binding holding of *Borden* is simply that "an offense with a *mens rea* of recklessness, as described in *Borden*, does not satisfy the elements clause").

The problem with the majority's approach is that the "extreme recklessness" and "depraved heart" standards discussed in *Begay* do *not* satisfy the Model Penal Code's knowledge standard, which the majority later deploys as a sufficient basis for its conclusion that § 245(a)(1) fails the

elements clause under *Borden*. *See* Opin. at 18–19. Indeed, we expressly acknowledged in *Begay* that the "mental states" that were "at issue" there fell "between recklessness and knowledge" as described in *Borden*. *Begay*, 33 F.4th at 1093. If, as the majority insists, the Model Penal Code standard of knowledge *must* be met in order for a particular offense to satisfy the elements clause, then *Begay* was wrongly decided and cannot stand. The majority seems unwilling to accept that conclusion, but it does not explain how the statute at issue in *Begay* satisfies the majority's test while § 245(a)(1) fails that test.

\*        \*        \*

*Borden* held that ordinary recklessness does not suffice under the elements clause, and that holding is consistent with our existing caselaw addressing § 245(a)(1). Because *Borden* does not disturb that precedent, I would adhere to it unless and until the Supreme Court further refines its understanding of the elements clause. I would therefore hold that the district court correctly concluded that § 245(a)(1) is a crime of violence. Accordingly, the district court did not err, much less plainly err, by applying the career offender enhancement. On that basis, I respectfully concur in part and in the judgment.