DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
        marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>       Plaintiff,<br><br>    v.<br><br>DURK BANKS et al.,<br><br>       Defendants. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT BANKS' JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE PROPOSED 404(B) EVIDENCE**<br><br>Date:     February 9, 2026<br>Time:    1:30 pm<br>Courtroom: 5A<br>Judge:   Hon. Michael W. Fitzgerald |

Defendants Durk Banks and Deandre Wilson hereby file this Joint Supplemental Brief in Support of its Motion to Exclude Proposed 404(b) Evidence. Defendants request a hearing on the matter. This Brief is based on the attached memorandum and exhibits, the files and records in this case, and any other evidence or argument that the Court may permit.

Respectfully submitted,


BY:   /s/ *Drew Findling*

      /s/ *Marissa Goldberg*              /s/ *Craig A. Harbaugh*

      /s/ *Christy O'Connor*              *Attorney for Deandre Dontrell Wilson*

      /s/ *Jonathan M. Brayman*
      *Attorneys for Durk Banks*


## NOTICE OF MOTION

Defendants filed a Motion in Limine to Exclude Proposed 404(b) Evidence on October 7, 2025. Dkt. 258. The government filed its Opposition on October 27, 2025. Dkt. 274. Defendant banks filed a Reply thereto on November 10, 2025. Dkt. 289. On January 2, 2026, the government filed a Supplemental Opposition (Dkt. 328) and a pretrial hearing was held on January 7, 2026, at which time the Court directed the government to file a particularized Notice of 404(b) evidence (Dkt. 335). The government sent the defense a renewed Notice on January 16, 2026. Undersigned Counsel met and conferred with counsel for the government on January 23, 2026, and did not come to an agreement regarding the substance of this motion. Defendants Banks and Wilson hereby file this Joint Supplemental Brief in support of their original Motion to Exclude Proposed 404(b) Evidence, in light of the most recent Notice, and request that all rap lyrics evidence be excluded from evidence in this case.

# **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................. 1

   **I.**   **BACKGROUND** ............................................................................................ 1

     **a.**  **Rap's Historical Roots and Modern Influence** ...................................... 1

     **b.**  **The Purported 404(b) Evidence** .......................................................... 7

   **II.**  **FACTS** ........................................................................................................... 8

   **III.**   **ARGUMENT** ............................................................................................ 12

     **a.**  **The Government Has Once Again Failed to Meet its Notice Obligation
Which Compels Exclusion of All Lyric Evidenc**e. ................................. 12

        i.   The Government Fails to Establish that Rap Songs and Videos Are
Inextricably Intertwined with the Charged Offense(s) ......................... 12

            *(a)*  *Same Transaction.* .................................................................. 15

            *(b)*  *Coherent Story.* ...................................................................... 16

        ii.  The Government Does Not Even Bother to Meet Its Strict Notice
Requirement Under 404(b). ................................................................. 17

     **b.**   **Even if the Government Did Meet its Notice Obligation, The Evidence is
Inadmissible Under Rule 403.** ........................................................... 20

        i.   Despite this Court's Directive, the Government Has Still Failed to Provide
The Entire Basis of Its Lyric Evidence, Precluding The Court's 403 Analysis. 20

            *(a)*  *The Inherently Inflammatory Nature of the Rap Videos and Lyrics Will
Unduly Prejudice the Jury.* ................................................... 22

            *(b)*  *The Probative Value is Low* .................................................. 27

(c)    The Interpretation of The Lyrics and Their Significance Will Necessitate

a Trial Within a Trial.................................................................28

(d)    This Court Should Hold an Evidentiary Hearing Before Admitting Any

Rap Music Evidence. ...............................................................29

**IV.  CONCLUSION** .................................................................29

# TABLE OF AUTHORITIES

**Cases**

*New Jersey v. Skinner*, 218 N.J. 496, 95 A.3d 236 (2014)..............................................29

*United States v. Anderson*, 741 F.3d 938 (9th Cir. 2013) .............................................16

*United States v. Bey*, 2017 WL 1547006 (E.D. Pa. Apr. 29, 2017) ..............................28

*United States v. Brooks*, 2020 U.S. Dist. LEXIS 1733 (W.D. Wash. 2020)...........18, 19

*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) ......................................23,24,25

*United States v. Fiore*, 2024 U.S. Dist. LEXIS 167844 (D. Nev. 2024).......................17

*United States v. Heafner*, 2025 U.S. Dist. LEXIS 47241 (D. Mont. 2025) ..................16

*United States v. Jimenez-Chaidez*, 96 F.4th 1257 (9th Cir. 2024). ...............................22

*United States v. Johnson*, 469 F.Supp.3d 193 (S.D.N.Y. 2019)....................................28

*United States v. Johnson*, 2020 U.S. Dist. LEXIS 226981 (W.D. Pa. 2020 .................20

*United States v. Ledesma*, 2020 U.S. Dist. LEXIS 226900 (E.D. Mich. 2020). ...........21

*United States v. Lewis*, 2025 U.S. Dist. LEXIS 119766 (D. Mont. 2025) ....................17

*United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016)...................................................15

*United States v. Luna*, 21 F.3d 874 (9th Cir. 1994)........................................................22

*United States v. McElmurry,* 776 F.3d 1061 (9th Cir. 2015) .........................................24

*United States v. Miguel*, 87 Fed. Appx. 67 (9th Cir. 2004)............................................31

*United States v. Moore*, 2023 U.S. Dist. LEXIS 149323 (E.D. Cal. 2023) .........16,18,19

*United States v. Nikulin*, 2020 U.S. Dist. LEXIS 86957 (N. D. Cal. 2020).........16,17,19

*United States v. Perkins*, 937 F.2d 1397 (9th Cir. 1991)................................................22

*United States v. Stephenson*, 550 F.Supp.3d 1246 (M.D.Fla. 2021)..............................27

*United States v. Thompson*, 606 F. Supp. 3d 1066 (W.D.Wa. 2022).............................15

*United States v. Vizcarra-Martinez*, 66 F.3d 1006 (9th Cir. 1995)....................16,17,19

*United States v. Waters*, 627 F.3d 345 (9th Cir. 2010) ..................................................24

*United States v. Williams*, 663 F. Supp. 3d 1085, 1101 (D. Ariz. 2022). .......................8

*United States v. Wolfenbarger*, 2020 U.S. Dist. LEXIS 22041 (D. Nev. 2020) ...........18

1
2

**Articles**

3
*51 Hip Hop Slang Terms That Went Mainstream*, REVOLT (2026) https://www.revolt.tv/article/51-hip-hop-slang-terms-that-went-mainstream (last visited Jan. 23, 2026). ........................................................................................ 6
4

5
Adam Dunbar, Charis E. Kubrin & Nicholas Scurich, *The Threatening Nature of "Rap" Music*, 22 PSYCHOL., PUB POL'Y & L. 280 (2016), https://doi.org/10.1037/law0000093 ............................................................... 27
6

7
Alex Dudov, *Dr. Dre Net Worth: How the Hip-Hop Legend Built His $500 Million Fortune,* THE TRADABLE (Jan. 22, 2026), https://www.thetradable.com/stories/dr-dre-net-worth-how-the-hiphop-legend-built-his-500-million-fortune. ............................... 7
8

9
Andrew Flanagan, *Kendrick Lamar's 'DAMN.' Wins Historic Pulitzer Prize in Music,* NPR (Apr. 16, 2018) ................................................................................ 7

10
Carrie B. Fried, *Bad Rap for Rap: Bias in Reactions to Music Lyrics,* 26 J. APPLIED SOC. PSYCHOL. 2135 (1996) ............................................................................ 26
11

12
Christopher Homes Smith, *Methods in the Madness: Exploring the Boundaries of Identity in Hip-Hop* Performativity, 3 SOC. IDENTITIES 345 (1997) ........................... 4

13
*Current Legislation,* RAP ON TRIAL (last visited Jan. 22, 2026), https://www.rapontrial.org/current-legislation. ............................................................. 8
14

15
*Drake as Global Ambassador of the Toronto Raptors*, LIVEMUSICBLOG (2025) https://livemusicblog.com/blog/music-blog/power-players-musicians-who-own-sports-teams-and-atheletes-who-run-music-labels/; *see also* Alexis Petridis, *Drake's Love Affair with the NBA*, THE GUARDIAN (Jan. 30, 2022) ........................................ 6
16

17
Erik Nielson and Andrea Dennis, *Rap on Trial: Race, Lyrics and Guilt in America* (2019) ................................................................................................................ 4,8
18

19
*Geraldo Rivera on Kendrick Lamar: "Hip-hop Does More Damage to African-Americans Than Racism,"* Salon.com (June 30, 2015) ............................................. 5

20
Gregory S. Parkes & Frank Rude Cooper, eds., *Fight the Power: Law and Policy through Hip-Hop Songs* (2022) ....................................................................................... 5
21

22
Imani Perry, *Prophet of the Hood: Politics and Poetics in Hip Hop* (2004). ................. 5

23
Ice Cube – IMDb, IMDB, https://www.imdb.com/name/nm0001084 (last visited Jan. 23, 2026) ............................................................................................................ 6

24
Justin Grome, *The Importance of Social Media Branding For Musicians*, FORBES (Mar. 5, 2024), https://www.forbes.com/forbesbusinesscouncil/2024/03/05/the-importance-of-social-media-branding-for-musicians. ............................................................. 7
25

26
Natalie Robehmed, *Phantom Rappers: Inside the Business of Ghostwriting*, FORBES (Sep. 22, 2015),
27

28

https://www.forbes.com/sites/natalierobehmed/2015/09/22/phantom-rappers-inside-the-business-of-ghostwriting. .................................................................... 7

Ronald Weitzer & Charis E. Kubrin, *Misogyny in Rap Music: A Content Analysis of Prevalence and Meanings*, 12 MEN & MASCULINITIES 3, 25 (2009 .......................... 5

Samantha Dorisca, *50 Cent Once Revealed That He Earned Around $80 M Throughout the Court of His Reebok Deal*, YAHOO! FINANCE (Dec. 6, 2022), https://finance.yahoo.com/news/50-cent-once-revealed-earned-181856987.html. ..... 6

Stuart P. Fischoff, *Gangsta' Rap and a Murder in Bakersfield*, 29 J. APPL. SOC. PSYCHOL. 795 (1999). ............................................................................... 26

*The Threatening Nature of "Rap" Music*, 22 PSYCH. PUB. POLY'S & L. 280, 281 (2016) 4

*Tyler, the Creator's Best Fashion Moments Prove Why He's on Every Mood Board*, W MAGAZINE, (Dec. 18, 2025), https://www.wmagazine.com/fashion/tyler-the-creator-best-fashion-red-carpet-style ........................................................... 6

Yohance Kyles, *Lil Durk's "All My Life" Feature J. Cole Wins Grammy Award for Best Melodic Rap Performance,* ALLHIPHOP (Feb. 5, 2024), https://www.allhiphop.com/new/lil-durk-j-cole-grammy-award-best-melodic-rap-performance. ............................................................................................. 9

**Statutes**

Fed. R. Evid. 404 advisory committee's note to 2020 amendment. .............................. 21

Fed. R. Evid. 404(b)(3)(B) ................................................................................ 20

H.R. 8531, Restoring Artistic Protection (RAP) Act, 118th Cong. (2024 ....................... 9
https://www.theguardian.com/music/2020/jan/30/drake-nba-love-affair-basketball-championships (discussing Drake's influence on the NBA and relationship with Lebron James). ...................................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND

### a.  Rap's Historical Roots and Modern Influence

Scholars posit that rap music began as an outgrowth of the slave trade, originating from a tradition of African storytelling, often used to express economic frustration in post-industrialized America. Adam Dunbar, Chris E. Kubrin & Nicholas Scurich, *The Threatening Nature of "Rap" Music*, 22 PSYCH. PUB. POLY'S & L. 280, 281 (2016); *see also* Erik Nielson and Andrea Dennis, *Rap on Trial: Race, Lyrics and Guilt in America* (2019).  In its early days, rap provided an artistic outlet for a marginalized group of Americans, specifically black Americans, experiencing poverty and systemic oppression. *See* Christopher Homes Smith, *Methods in the Madness: Exploring the Boundaries of Identity in Hip-Hop* Performativity, 3 SOC. IDENTITIES 345 (1997). And to this day, rap functions as both political commentary and social reporting.[1]

---

[1] "Rap is the CNN of Black America" – Chuck D of Public Enemy, a New York rap group which rose to prominence in the 1980's. Gregory S. Parkes & Frank Rude Cooper, eds., *Fight the Power: Law and Policy through Hip-Hop Songs* (Cambridge Univ. Press 2022) (noting that Chuck D once declared that "Rap is the CNN of Black America.").

1

To some, rap music is perceived as offensive, sexist, materialist, and low-brow.[2] *See e.g.,* Ronald Weitzer & Charis E. Kubrin, *Misogyny in Rap Music: A Content Analysis of Prevalence and Meanings*, 12 MEN & MASCULINITIES 3, 25 (2009). Though rap has been adopted by many communities and across racial and cultural lines, rap is uniquely a black art form: "[t]he manner in which the music became integrated into the fabric of American culture was a black American cultural product, through an overwhelmingly black American audience, and using black American aesthetics as signature features of the music." Imani Perry, *Prophet of the Hood: Politics and Poetics in Hip Hop* (2004). Rap is many things: artistic expression, a symptom of systemic oppression, political and social commentary, and more. One thing rap is not: reliable evidence.

---

[2] "Hip-hop has done more damage to young African Americans than racism in recent years." – Geraldo Rivera, in response to Kendrick Lamar's 2015 BET performance. Scott Eric Kaufman, *Geraldo Rivera on Kendrick Lamar: "Hip-hop Does More Damage to African-Americans Than Racism,"* Salon.com (June 30, 2015).

The impact of rap music can be felt in almost every facet of American culture: advertising[3], film[4], fashion[5], language[6], social media[7], sports[8], and business[9]. For many in the younger generations, rap music is the default musical language, not a niche genre. Through rap music and the music industry, young black Americans have reached levels of immense success: Jay-Z began his career rapping about life in the projects of

---

[3] Rap artist and mogul, 50 Cent, once earned $80 million in an advertising deal with Reebok, one of the highest advertising deals in hip-hop history. Samantha Dorisca, *50 Cent Once Revealed That He Earned Around $80 M Throughout the Court of His Reebok Deal*, YAHOO! FINANCE (Dec. 6, 2022), https://finance.yahoo.com/news/50-cent-once-revealed-earned-181856987.html.

[4] Ice Cube, who started as a member of groundbreaking rap group N.W.A. (of "F the Police" fame), has brought black voices from hip-hop into mainstream film and TV through films like Friday, Barbershop, 21 Jump Street, and more. *See* Ice Cube – IMDb, IMDB, https://www.imdb.com/name/nm0001084 (last visited Jan. 23, 2026).

[5] Kyle Munzenrieder, *Tyler, the Creator's Best Fashion Moments Prove Why He's on Every Mood Board*, W MAGAZINE, (Dec. 18, 2025), https://www.wmagazine.com/fashion/tyler-the-creator-best-fashion-red-carpet-style.

[6] See "bling," "dope," "beef," "flex," "drip," "GOAT," "twerk," "baller," "turn up," "lit," "fresh," "whip," "wack," "ratchet," "floss," "fly," and more. *51 Hip Hop Slang Terms That Went Mainstream*, REVOLT (2026) https://www.revolt.tv/article/51-hip-hop-slang-terms-that-went-mainstream (last visited Jan. 23, 2026).

[7] For example, in early 2020, hip hop artist Doja Cat released "Say So" which inspired a viral dance challenge on Tik Tok, racking up over 20 million video creations and contributing to the song's meteoric rise on the Billboard Hot 100. Katlyn Wylde, *Why Doja Cat Songs Keep Going Viral On TikTok*, BUSTLE (Feb. 20, 2024), https://www.bustle.com/p/why-doja-cat-songs-keep-going-viral-on-tiktok-22836116.

[8] Drake, for example, has served as an official global ambassador for the Toronto Raptors since 2013. *Drake as Global Ambassador of the Toronto Raptors*, LIVEMUSICBLOG (2025) https://livemusicblog.com/blog/music-blog/power-players-musicians-who-own-sports-teams-and-atheletes-who-run-music-labels/; *see also* Alexis Petridis, *Drake's Love Affair with the NBA*, THE GUARDIAN (Jan. 30, 2022) https://www.theguardian.com/music/2020/jan/30/drake-nba-love-affair-basketball-championships (discussing Drake's influence on the NBA and relationship with Lebron James).

[9] Jay-Z has built a $2.5 billion empire spanning music, liquor, sports, and venture capital. *See* Omokolade Ajayi, *25 Companies behind Jay-Z's $2.5 billion fortune,* BILLIONAIRES.AFRICA (Feb. 28, 2025), https://www.billionares.africa/2025/02/28/25-companies-behind-jay-zs-5-billion-fortune/.

Brooklyn and is now "hip-hop's first billionaire;"[10] Kendrick Lamar won a Pulitzer Prize;[11] and Dr. Dre has transformed himself from a groundbreaking California rapper into a bona fide business mogul.[12]  Put plainly, rap music is wildly profitable, and its popularity and mainstream success only continues to grow. As the industry has become more commercialized, so too has the process of creating rap: any given song might be the product of multiple collaborators in writing, producing, and engineering[13]; music videos are often subject to a system of checks and balances from corporate ownership; even social media posts and interviews are utilized as mechanisms of branding.[14]

For young men and women, particularly those living in marginalized communities, rap music can be a shining beacon of hope – a vehicle that can potentially catapult them into generational wealth.

---

[10] Zack O'Malley Greenburg, *Jay-Z,* FORBES (last updated Apr. 1, 2025), https://www.forbes.com/profile/jay-z/.

[11] Andrew Flanagan, *Kendrick Lamar's 'DAMN.' Wins Historic Pulitzer Prize in Music,* NPR (Apr. 16, 2018), https://www.npr.org/sections/therecord/2018/04/16/602948758/kendrick-lamars-damn-wins-historic-pulitzer-prize-in-music.

[12] Alex Dudov, *Dr. Dre Net Worth: How the Hip-Hop Legend Built His $500 Million Fortune,* THE TRADABLE (Jan. 22, 2026), https://www.thetradable.com/stories/dr-dre-net-worth-how-the-hiphop-legend-built-his-500-million-fortune.

[13] Natalie Robehmed, *Phantom Rappers: Inside the Business of Ghostwriting*, FORBES (Sep. 22, 2015), https://www.forbes.com/sites/natalierobehmed/2015/09/22/phantom-rappers-inside-the-business-of-ghostwriting.

[14] Justin Grome, *The Importance of Social Media Branding For Musicians*, FORBES (Mar. 5, 2024), https://www.forbes.com/forbesbusinesscouncil/2024/03/05/the-importance-of-social-media-branding-for-musicians.

As a function of black artistic expression in America, it should come as no surprise that rap music is also heavily impacted by law and law enforcement. Historically, rap music has utilized lyrical devices depicting outlaw characters, the underworld, pimps, hustlers, and illegal activities. Erik Nielson and Andrea Dennis, *Rap on Trial: Race, Lyrics and Guilt in America* (2019). While the genre itself is certainly not homogenous, modern rap lyrics are commonly sexually explicit, depict violence, contain profanity, and depict illicit activity. *United States v. Williams*, 663 F. Supp. 3d 1085, 1101 (D. Ariz. 2022). Violence, specifically gun violence, is a recurrent theme in rap music. *Id.* At 1097.

Despite its cultural impacts on the American zeitgeist, rap music is heavily policed – especially when compared to all other music genres. In courtrooms across America, prosecutors have utilized and twisted this otherwise valuable mode of artistic expression by presenting it as evidence of criminality. In recognition of the increasing and dangerous use of rap lyrics as evidence, both California and Louisiana have passed legislation banning or limiting the practice, and similar legislation has been introduced in Illinois, New York, New Jersey, Missouri, and Maryland.[15] At the Federal level,

---

[15] *Current Legislation,* RAP ON TRIAL (last visited Jan. 22, 2026), https://www.rapontrial.org/current-legislation.

5

H.R. 8531, the Restoring Artistic Protection (RAP) Act, was introduced in 2022, aiming to limit the admissibility of artistic expression in criminal prosecutions.[16]

Rising from the background of more than fifty years of hip-hop precedent, one of the defendants accused in this case, harnessed his musical talent to catapult himself from his difficult upbringing to undeniable commercial success. Mr. Banks is an internationally-acclaimed, Grammy-winning recording artist and an icon to young people in his hometown of Chicago, Illinois, and across the world.[17] As is typical of successful musicians regardless of genre, Mr. Banks was figuratively (and sometimes literally) surrounded by industry professionals consulting and advising on music decisions, including lyrics and visuals at all times relevant to this case; a framework that is wholly ignored by the government in every respect.

Despite the growing and widespread criticism of the practice of using rap lyrics as evidence, and the glaring issues related to reliability, authenticity, and more, the government seeks to use the defendants' rap lyrics – their artistic and commercial expressions – as evidence of criminality. From the very inception of this case, the government has weaponized the defendants' lyrics inaccurately and recklessly to

---

[16] H.R. 8531, Restoring Artistic Protection (RAP) Act, 118th Cong. (2024).
[17] Yohance Kyles, *Lil Durk's "All My Life" Feature J. Cole Wins Grammy Award for Best Melodic Rap Performance,* ALLHIPHOP (Feb. 5, 2024), https://www.allhiphop.com/new/lil-durk-j-cole-grammy-award-best-melodic-rap-performance.

6

bolster an otherwise weak case[18] – their purported 404(b) evidence is, confoundingly, more of the same. This Court should not allow any more improper governmental manipulation of this kind to further taint the case.

### b.  The Purported 404(b) Evidence

The government seeks to introduce twelve rap music videos, audio recordings, and lyric excerpts against the defendants.[19] The evidence carries an extraordinary risk of unfair prejudice and is precisely the kind of character inference material that Rules 404(b) and 403 are designed to exclude. Despite three separate attempts to provide proper notice, the government has still not met the basic requirements of Rule 404(b). Rather than articulate a specific non-propensity purpose and the reasoning that supports it, the government has labeled the material as "inextricably intertwined" in what appears to be an effort to avoid the rule's mandatory notice obligations. The Court should reject that approach and bar the evidence.

The government's Supplemental Notice dated January 16, 2026, asserts that the music evidence is "direct evidence" and "inextricably intertwined" with the charges, yet provides no explanation of how rap lyrics created at unknown times by unidentified

---

[18] In its First Superseding Indictment (Dkt. 27), the government included lyrics which it suggested were admissions related to the murder alleged in this case. In actuality, the song was written seven months before the murder in this case occurred. The government then re-indicted the case without that portion of the indictment.

[19] The Government's January 16, 2026 Supplemental Notice is attached hereto as Exhibit C.

7

authors could possibly form part of the charged conduct or be necessary to tell a coherent story. The government identifies the release dates of several videos, but does not identify when any lyrics were written or when the songs were produced. The government does not identify authorship, does not connect specific lyrics to any particular fact in dispute, and does not attempt to address the substantial prejudice that any such material would cause. The government also states that it reserves the right to supplement its notice and introduce additional excerpts without identifying what those materials might be. This repeated assertion of reservation of rights is contrary to this Court's order from the January 7th, 2026 hearing, it impairs the defense's ability to prepare, and prevents the Court from performing its gatekeeping duties.

The government has now made three separate Rule 404(b) submissions and still has not provided the required information. The evidence is not inextricably intertwined, the government has not satisfied Rule 404(b), and the Court cannot conduct Rule 403 balancing without a complete record. Because each of these deficiencies is independently sufficient to warrant exclusion, the Court should bar all lyric and video evidence.

## II.    FACTS

The government has served three separate disclosures identifying evidence it seeks to use at trial. In each, the purported "music evidence" has changed. In its initial notice dated September 1, 2025, the government identified two broad categories of

8

proposed evidence—Banks' rivalry with Tyquian Bowman and Banks' alleged direction of violence against rivals—and concluded with a generic statement that all listed acts were admissible "to show defendant Banks' motive, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident," without explaining how any particular piece of evidence served any particular purpose.[20] Exh. A at 5.

The government's Revised Notice dated November 17, 2025 asserted that the evidence described in Sections I and II is "direct evidence of and inextricably intertwined with the charges in the Second Superseding Indictment and allows the government to present a complete story to the jury. It is therefore not subject to notice pursuant to Rule 404(b)."[21] Exh. B. at 2. The Revised Notice then stated: "To the extent any of the listed evidence does fall within the scope of Rule 404(b), the government gives notice of its intent to use such evidence pursuant to this letter." *Id.* The Revised Notice provides no articulation of reasoning, permitted purposes, or logical connection between the evidence and any non-propensity use. Only at the end of Section I did the government include a fallback provision stating that, "[t]o the extent the Court determines these acts are neither direct evidence of or intertwined with the charges," they are admissible "to show the co-conspirators' (most of whom were members or associates OTF) motive, intent, preparation, plan, knowledge, identity, absence of

---

[20] The Government's Initial Notice dated September 1, 2025 is attached hereto as Exhibit A.

[21] The Government's Revised Notice dated November 17, 2025 is attached hereto as Exhibit B.

9

mistake, and lack of accident." Exh. B at 3. Section II similarly stated the evidence is

"admissible both as direct and inextricably intertwined evidence, and pursuant to Rule

404(b)," but provided no articulation of reasoning or permitted purposes. Exh. B at 4.

On January 7, 2026, this Court held a status hearing where it directed the

government to specify "which words and which medium is being proposed in order [for

the Court] to make an intelligent 403 ruling." Dkt. 341 at 19-20. In response to that

directive, the government sent the defense a new 404(b) notice on January 16, 2026,

which, confoundingly, includes entirely new evidence. Exh. C.

The government's Supplemental Notice dated January 16, 2026, identifies twelve

separate music videos, audio recordings, and lyric excerpts that it characterizes as

"music admissions." The government asserts that this evidence is "direct evidence of

and inextricably intertwined with the charges in the Second Superseding Indictment"

and therefore "not subject to notice pursuant to Rule 404(b)." Exh. C at 2-3. It then

states: "[t]o the extent any of the listed evidence does fall within the scope of Rule

404(b), the government gives notice of its intent to use such evidence pursuant to this

letter." *Id*. Unlike the Revised Notice, the Supplemental Notice provides no articulation

whatsoever of any reasoning, permitted purposes, or logical connection between the

music evidence and any non-propensity use. The Supplemental Notice merely

summarizes the purported significance of the music evidence by grouping it into six

broad categories of "admissions" and asserts that "Music Admissions evidence is

10

admissible against all defendants" as co-conspirator statements. *Id. at 3–4 & n.3*. The notices do not identify who authored the lyrics, when they were created, whether the defendants adopted them, or how the government connects each specific excerpt to any particular fact in dispute. The government does not acknowledge the potential prejudice that would result from the admission of the videos and songs, much less suggest a way to lessen any such prejudice. The government explicitly reserves the right to "supplement this notice and/or provide additional proposed exhibits" up to the April 21, 2026 trial date and further reserves the right to "introduce additional excerpts of music videos depicting defendants together with charged and uncharged co-conspirators," without any indication of what those songs might be. *Id.*; *see also id.* at 11 ("We reserve the right to supplement this notice as necessary before trial.").

Despite this being the government's third attempt at notifying the defense of intended 404(b) evidence, it still fails to meet the required notice obligations. The government's notice is non-committal, non-specific, and fails to apprise this Court of the information necessary to even conduct a proper 403 analysis (despite this Court and the defense repeatedly requesting the specifics). Even if it did satisfy the notice requirements, the rap lyrics and accompanying music videos are irrelevant, prejudicial, cumulative, misleading, and would cause significant delay in this trial. The purported evidence must be excluded.

11

### III.    ARGUMENT

### a.    The Government Has Once Again Failed to Meet its Notice Obligation Which Compels Exclusion of All Lyric Evidence.

The government's showing fails at the threshold. First, the music evidence is not inextricably intertwined with the charged offense because it is neither part of the charged transaction nor necessary to present a coherent story of the alleged conspiracy. Second, the government has not come close to meeting Rule 404(b)'s heightened notice requirements. Each failure independently requires exclusion.

> i.    The Government Fails to Establish that Rap Songs and Videos Are Inextricably Intertwined with the Charged Offense(s)

The Ninth Circuit recognizes two narrow categories of "other act" evidence that may be deemed "inextricably intertwined" with the charged crime and thus exempt from Rule 404(b): when the act "constitutes a part of the transaction that serves as the basis for the criminal charge," or is *necessary . . .* to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Loftis*, 843 F.3d 1173, 1177–78 (9th Cir. 2016) (internal citation omitted) (emphasis added); *United States v. Thompson*, 606 F. Supp. 3d 1066, 1070 (W.D.Wa. 2022) (considered inextricably intertwined "where it is *necessary* to admit the evidence

'to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime").

To satisfy the "same transaction" category, the conduct must not be "too temporally distant." *United States v. Moore*, No. 2:22-po-00289-KJN, (E. D. Cal. August 24, 2023) (finding prior conduct was not inextricably intertwined because it did not "serve[ ] as a basis for the pending criminal charge" and occurred fifteen months earlier); *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (evidence "which occurred six months after the charged conduct took place, is arguably too far removed in time to constitute a part of the charged transaction."). But "[c]oincidence in time is insufficient. . . There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995); *see, e.g., United States v. Heafner*, No. CR-23-109-BLG-SPW, 2025 U.S. Dist. LEXIS 47241, at 9–11 (D. Mont. Mar. 17, 2025) (excluding prior-act evidence occurring just a month prior to the charged offense as not inextricably intertwined where it did not "put [the defendant's] illegal conduct into context"); *United States v. Nikulin*, 2020 U.S. Dist. LEXIS 86957, *3 (N. D. Cal. May 18, 2020) (concluding the prior conduct did not satisfy the "inextricably intertwined" exception because despite "similarities" between the past conduct and current offense, the government failed to

13

"demonstrate[d] the evidence . . . goes directly to an element of the underlying charged crimes").

To meet the "coherent story" category,[22] the government must demonstrate that the evidence is not merely helpful but "necessary" to the presentation of its case. *Vizcarra-Martinez*, 66 F.3d at 1013 (finding evidence that "the prosecution would encounter little difficulty in presenting the evidence relevant to its case against the defendant - his possession of hydriodic acid and the circumstances surrounding the commission of that crime - without offering into evidence the personal-use amount of methamphetamine the police discovered in the defendant's pocket upon arrest."). Unless "the overall story would be incomprehensible or incoherent without the . . . evidence," the "inextricably intertwined" exception does not apply. *United States v. Nikulin*, 2020 U.S. Dist. LEXIS 86957, *3; *see, e.g., United States v. Lewis*, 2025 U.S. Dist. LEXIS 119766, *6–7 (D. Mont. Jun. 24, 2025) (evidence not inextricably intertwined where it did not "bear directly on the charged crime" and was unnecessary to tell a coherent story); *United States v. Fiore*, 2024 U.S. Dist. LEXIS 167844, at 12 (D. Nev. Sept. 18, 2024) (excluding evidence of alleged falsification of campaign-finance reports because "[t]he prosecution has not shown that such evidence is required to tell a coherent story of Fiore's misuse of funds"); *United States v. Moore*, 2023 U.S.

---

[22] The coherent story category is generally limited to felon-in-possession cases. *Vizcarra-Martinez*, 66 F. 3d at 1012*; see Heafner*, 2025 U.S. Dist. LEXIS 47241, *9 ("The second exception to Rule 404(b) is most often invoked in cases where the defendant is being charged with being a felon in possession of a firearm").

14

Dist. LEXIS 149323, *14 (E.D. Cal. 2023) (rejecting inextricably intertwined theory where government "nowhere asserts that it would be difficult to establish its case" without the other acts); *United States v. Wolfenbarger*, 2020 U.S. Dist. LEXIS 22041, *5 (D. Nev. Feb. 4. 2020) (finding "the evidence is not inextricably intertwined with the charged conduct" because "the government does not assert that it could not establish its case against Defendant as to the charged conduct without reference to this evidence."). *United States v. Brooks*, 2020 U.S. Dist. LEXIS 1733, at *10–11 & n.1 (W.D. Wash. Jan. 6, 2020) (holding that stolen mail was "other acts" evidence—not inextricably intertwined with charged bank fraud—because it could relate to "any number of criminal schemes" unrelated to the charged offense).

The government cannot satisfy either of the two narrow categories of "inextricably intertwined" evidence. The music evidence is not part of the charged transaction, and it is not necessary for the government to tell a coherent story.

(a) *Same Transaction.*

At the outset, the government cannot rely on the same criminal transaction theory because they fail to identify when any lyrics were written or when the songs were produced. Although the government identifies the premiere dates of multiple music videos, a music video's premiere date or song release does not establish when the content was created. A song could be in development for years before its release. Without this basic information, the Court cannot determine whether the music evidence

15

is temporally connected to the charged conspiracy or "too temporally distant" to qualify as part of the same transaction. *Moore*, 2023 U.S. Dist. LEXIS 149323, at *13.

Even if the lyrics were created close in time to the alleged conduct, "[c]oincidence in time is insufficient." Vizcarra-Martinez, 66 F.3d at 1013. The Government must show a substantive or contextual connection between each specific lyric and the charged offense. It has not done so. The Supplemental Notice groups the music evidence into broad categories of "admissions" but does not explain how any particular lyric "goes directly to an element of the underlying charged crimes." Nikulin, 2020 U.S. Dist. LEXIS 86957, at *3. On the current record, the music evidence could relate to any number of unrelated stories, narratives, or creative themes. Brooks, 2020 U.S. Dist. LEXIS 1733, at *10-11 & n.1.

(b) *Coherent Story.*

The government has not shown that the music evidence is necessary to tell a coherent story of the charged conspiracy. The government does not assert that it would be unable to present its case without the lyrics or videos; merely that the evidence "allows the government to present a complete story to the jury." Exh. C at 2. Unless "the overall story would be incomprehensible or incoherent without the evidence," the "coherent story" exception does not apply. Nikulin, 2020 U.S. Dist. LEXIS 86957, at *3. Nothing in the Supplemental Notice indicates that the government needs rap lyrics to explain the alleged conduct. What is particularly telling that this evidence is not

16

needed by the government to "tell the story" is that the specific songs referenced by the government in their notices has changed from one notice to the next. If the song was so important, they wouldn't abandon it and replace another at each opportunity.  It is as if the government sifted through the hundreds of songs of the defendants and just said, "we can make this one fit our narrative, let's use it."

Because the music evidence is neither part of the charged transaction nor necessary for the government to tell a coherent story, it is "other acts" evidence subject to Rule 404(b).

ii.      The Government Does Not Even Bother to Meet Its Strict Notice Requirement Under 404(b).

Rule 404(b)'s 2020 amendment heightened the government's notice obligations in criminal cases. The Rule now requires the prosecutor to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence *and the reasoning that supports the purpose*."  Fed. R. Evid. 404(b)(3)(B) (emphasis added). The amendment "principally imposes additional notice requirements on the prosecution" and eliminated the prior requirement that defendants request notice. *United States v. Johnson*, No. 20-CR-163, 2020 U.S. Dist. LEXIS 226981, at *3 (W.D. Pa. Dec. 3, 2020). Under the prior rule, courts understood the "general nature" standard to permit the government to satisfy its obligation "without describing the specific act" or "explaining the relevance of the evidence for a non-propensity purpose."  Fed. R.

17

Evid. 404 advisory committee's note to 2020 amendment. The amendment "makes clear what notice is required"—the government must do "more than provide the 'general nature' of the evidence" and must instead "articulate a non-propensity purpose" and "the basis for concluding that the evidence is relevant in light of this purpose." *United States v. Ledesma*, No. 19-20216, 2020 U.S. Dist. LEXIS 226900, at *5 (E.D. Mich. Dec. 3, 2020). This heightened requirement ensures fair notice, prevents trial by ambush, and ensures that courts can evaluate admissibility based on the government's actual theory rather than post-hoc rationalizations.

The Supplemental Notice does not even attempt to satisfy the heightened requirements that Rule 404(b) has imposed since the 2020 amendment. The government has not identified any specific permitted purpose, much less explained the reasoning that connects each lyric and each music video to any non-propensity inference.

The prior notices fare no better.  They rely on blanket invocation of every possible ground under 404(b) without discernment or discussion. The Supplemental Notice is surprisingly even worse, not even endeavoring to identify any permissible purpose, let alone its reasoning. Although some of the purported "admissions," hint at potential grounds under 404(b), these passing references still fail to meet the notice requirement.  For example, the Supplemental Notice contends that "the admissions and visuals show[ ] the structure of OTF, the defendants' knowledge of OTF's involvement

in violence, and the relationship and connection between defendants and uncharged Co-Conspirators, including the identity of those involved in the murder of S.R."  Exh. C at 3.  The government's apparent reliance on "knowledge" and "identity" betrays a fundamental understanding of Rule 404(b).

To use other act evidence to demonstrate knowledge, "the government must show a 'logical connection' between the defendant's knowledge obtained from commission of the prior acts and the knowledge at issue in the current case." *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1265 (9th Cir. 2024). The government's invocation of "knowledge" does little more than repackage propensity as proof. The lyrics and videos show, at most, generalized awareness of violence or association with others, not the kind of specific, case-linked knowledge Rule 404(b) requires.

"When the other acts evidence is introduced to prove identity, . . . 'the characteristics of the other crime or act [must] be 'sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue.'" *United States v. Luna*, 21 F.3d 874, 878-879 (9th Cir. 1994) (quoting *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991)).  The government's claim that the lyrics and videos establish "the identity of those involved in the murder of S.R." extends the identity exception far beyond what Rule 404(b) permits. To satisfy the identity exception, the evidence must reflect a distinctive, signature pattern that links a

particular defendant to the charged offense, not broad references to violence, group association, or creative expression that could apply to numerous individuals.

The government's express reservation of its intent to introduce additional excerpts further exacerbates the notice problem.

### b. Even if the Government Did Meet its Notice Obligation, The Evidence is Inadmissible Under Rule 403.

The government's notice is woefully vague as to which specific lyrics it hopes to introduce at trial – at times it seemingly intends to admit songs and videos in whole, and at other times it cherry-picks specific lines which support the government's narrative. However, the lyrics that it included in its notice cannot survive a balancing test under Rule 403.

### i. Despite this Court's Directive, the Government Has Still Failed to Provide The Entire Basis of Its Lyric Evidence, Precluding The Court's 403 Analysis.

The Ninth Circuit has established that a court "does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate all that it must weigh." *United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc). The court noted that "reliance on an offer of proof simply is not enough" and that "[o]ne cannot evaluate in a Rule 403 context what one has not seen or read." *Id.* at 957–58. Accordingly, the district court was "required to

20

have read every word" of the evidence when exercising Rule 403 balancing discretion. *Id.* at 957.

This requirement has been applied consistently across different categories of evidence. In *United States v. Waters*, the court held that the "district court had the responsibility to read every page of the articles" to properly conduct Rule 403 analysis. 627 F.3d 345, 356–57 (9th Cir. 2010) (holding that the district court's admission at trial of the folder of anarchist literature where the defendant was charged with arson constituted an abuse of discretion). Similarly, in *United States v. McElmurry*, the court stated that a district court "cannot properly exercise its discretion" under Rule 403 "without examining the evidence." 776 F.3d 1061, 1071 (9th Cir. 2015) (reserving conviction under Rule 403 where the district court did not review the defendant's prior confession and letter prior to admission because "the government's motion in limine did not attach a transcript or copy of the 2006 interview clips or the 2010 letter." 776 F.3d 1061, 1068). These decisions establish that Rule 403 balancing must be grounded in the court's personal review of the complete content of the evidence, rather than relying on counsel's characterizations or summaries. *Curtin*, 489 F.3d at 957–58; *Waters*, 627 F.3d at 356–57; *McElmurry*, 776 F.3d at 1070–71.

The Ninth Circuit requires that the Court personally examine the evidence before conducting Rule 403 balancing. *Curtin* makes clear that "one cannot evaluate in a Rule

21

403 context what one has not seen or read" and that the Court is "required to have read every word" of the proffered material. *Curtin*, 489 F.3d at 957-58.

The government has not provided the complete content of the songs, the full videos, or the information needed to evaluate them in context. The Supplemental Notice identifies premiere dates for some videos, but does not identify when the lyrics were written or when the songs were produced. The government also does not identify who authored the lyrics or explain how each specific excerpt is connected to a particular fact in dispute. It also does not specify whether the lyrics it included in its notice are the entirety of the lyrics it seeks to introduce or if it seeks to introduce additional portions, excerpts or, in many cases, music video(s). Without the complete content and the government's full proffer, the Court cannot place on the scales the true probative value of what the government seeks to offer. *Curtin*, 489 F.3d at 958.

The government also reserves the right to supplement its notice and introduce additional excerpts without identifying what those excerpts will be. That prevents meaningful Rule 403 balancing and increases the risk of unfair surprise. The Court cannot evaluate the prejudicial impact of evidence that has not been disclosed. Because the government has not provided the complete basis necessary for Rule 403 analysis, the evidence should be excluded.

(a) *The Inherently Inflammatory Nature of the Rap Videos and Lyrics Will Unduly Prejudice the Jury.*

22

Comprehensive scholarship demonstrates the prejudicial impact of rap lyrics – more than any other musical genre – on the American public.

In response to public outcry regarding Ice-T's violent rap song "Cop Killer," a 1996 study was the first of its kind to test the prejudicial impact of rap music. Carrie B. Fried, *Bad Rap for Rap: Bias in Reactions to Music Lyrics,* 26 J. APPLIED SOC. PSYCHOL. 2135 (1996). Participants were given two identical sets of violent lyrics, but one group was told that they were from a rap group, while the other group was told the lyrics came from a country/folk song. *Id.* Those who believed the lyrics were rap music found them more offensive, threatening, and in need of government regulation compared to when the same lyrics were labeled as country/folk. *Id.*

In 1999, one study explored the biasing effect of rap lyrics on subject perceptions of a murder trial defendant's personality. Stuart P. Fischoff, *Gangsta' Rap and a Murder in Bakersfield*, 29 J. APPL. SOC. PSYCHOL. 795 (1999). Participants were shown violent rap lyrics and told that they were authored by a defendant in a murder trial. Another group was only given a description of the defendant in a murder trial. The study revealed that the participants who were shown the violent rap lyrics judged the defendant as more untruthful, uncaring, sexually aggressive, and likely to commit murder, even when there was no actual evidence tying the lyrics to behavior. *Id*. The study also found that being associated with rap lyrics (in this case, as the author) was *at least as damaging* as being charged with murder. *Id*.

23

In 2016, the 1999 study was replicated and found the same results – the lyrics were judged as more threatening, literal, offensive, and in need of government regulation when they were labeled as rap rather than country (or no genre label). Adam Dunbar, Charis E. Kubrin & Nicholas Scurich, *The Threatening Nature of "Rap" Music*, 22 PSYCHOL., PUB POL'Y & L. 280 (2016), https://doi.org/10.1037/law0000093.

Courts around the nation are coming to acknowledge the prejudicial impact, particularly along racial lines, of rap music as evidence. For instance, in *United States v. Stephenson,* the U.S. District Court for the Middle District of Florida excluded rap lyrics from evidence, finding that the depictions of violence, opulence, misogyny and profanity created a significant likelihood of prejudice to the defendant:

> [T]he Court finds that the likely prejudice to Defendant from admitting these [rap lyrics and videos] greatly outweigh any probative value.  Again, the lyrics purportedly depict drug related activities and incorporate profane, offensive, and racially insensitive words and violent and sexual imagery . . . . [including] Defendant handling a large amount of cash . . . . and in possession of and handling various firearms.  These lyrics and depictions of Defendant create a significant risk that the jury will . . . . find him guilty of the charged offenses for improper reasons. . . .

*United States v. Stephenson*, 550 F.Supp.3d 1246, 1253 (M.D.Fla. July 23, 2021).  The court found that no limiting instruction could cure the unfair prejudice that would result, and that the trial within a trial to be triggered by admission of the evidence (regarding the meaning of the music and the conventions and background of the rap scene) would confuse jurors:

> The YouTube videos the United States seeks to present . . .  will overshadow the acts giving rise to the charges here.  For example, the parties have each identified expert witnesses they intend to call in this case if the videos are admitted in evidence:  Defendant, Professor Charis

24

Kubrin, who will provide background information about rap music and discuss the genre's artistic conventions . . . ; United States, federal inmate Devante Moreno smith, who will interpret the lyrics and images in the videos. This presents a great risk of jurors having difficulty separating the issues and according the limited weight to the videos. In essence, the YouTube videos will become a feature of the trial. The likely curative effect of any limiting instruction will be minimal at best."

*Id.*

In *United States v. Bey*, the United States District Court for the Eastern District of Pennsylvania was influenced by similar considerations regarding the inflammatory art at issue. Noting the empirical data on prejudicial impact, the court concluded the evidence should be excluded:

The lyrics at issue contain language and imagery related to drugs, gun crime, . . . and other potentially offensive themes. Admitting them into evidence presents a serious risk of inflaming the jurors and influencing them to convict Bey on impermissible grounds.

*United States v. Bey*, No. CR 16-290, 2017 WL 1547006, *7 (E.D. Pa. Apr. 29, 2017) The explained in a note:

Empirical data suggests that the introduction of rap music can have a powerful prejudicial effect on jurors, who, despite all efforts, may become more disposed to and confident in a guilty verdict what with the added weight of the negative personality trait associations conjured up by …inflammatory lyrics.

*United States v. Bey*, No. CR 16-290, 2017 WL 1547006, *9 n. 3 (E.D. Pa. Apr. 29, 2017) (internal quotation marks and citations omitted). *See also United States v. Johnson*, 469 F.Supp.3d 193, 221-22 (S.D.N.Y. 2019) (denying's government motion in limine to admit rap videos, finding "the lyrics appear to have little to no probative

25

value, [but] the references to violence and possible allusions to police misconduct, and the use of profanity, present a risk of unfair prejudice to the Defendants."); *State v. Skinner*, 218 N.J. 496, 95 A.3d 236 (2014) (excluding rap lyrics which would create a prejudicial effect where the music suggested "a propensity toward committing, or at the very least glorifying, violence and death.").

Here, the lyrics the government seeks to introduce are objectively offensive in almost every way. The lyrics contain depictions of violence, murder, and shooting. Nearly every passage includes the "N-word" and/or other profanities, including some which are sexually aggressive and demeaning to women. The lyrics glorify and normalize the proliferate use of firearms -already a divisive political topic in mainstream America. The lyrics refer to pills and other illicit substances. Some of the lyrics are gruesomely explicit in their descriptions of death and harm: "Them bullets ate his face;" "[H]e got clapped, they couldn't even find his teeth;" "[L]eft him leakin' like some hot sauce." And some lyrics seemingly demonstrate disrespect towards law enforcement and the judicial system: "[T]ell the judge to suck a dick."

The lyrics the government hopes to present will undoubtedly prejudice the jury – potentially in innumerable ways – allowing the defendants to be convicted not on fact and reason but on inferences of bad character and propensity. Under Rule 403, the lyrics should be excluded entirely.

*(b) The Probative Value is Low*

On the other side of the scale, the probative value of the rap lyrics is extremely

low, as it is impossible to differentiate between fact and fiction between the lines of

song. The Supreme Court of New Jersey's holding in *State v. Skinner* resonates

squarely here:

> The difficulty in identifying probative value in fictional or other forms
> of artistic self-expressive endeavors is that one cannot presume that,
> simply because an author has chosen to write about certain topics, he
> or she has acted in accordance with those views.  One would not
> presume that Bob Marley, who wrote the well-known song "I shot the
> Sheriff," actually shot a sheriff, or that Edgar Allan Poe buried a man
> beneath the floorboards, as depicted in his short story "The Tell-Tale
> Heart," simply because of their respective artistic endeavors on those
> subjects.[23]  Defendant's lyrics should receive no different treatment.

*Id.*

What the government calls "evidence" is undoubtedly art, made for particular

audiences and profit: it follows that they cannot be relied upon as credible evidence of

fact. This truth is crystallized by the fact that the lyrics at issue here are actually

commonplace for the rap genre: the boasting, the violence, the use of firearms, the

displays of guns, money, and drugs, the belittling of cooperators or "opps," the

territorialism – even the references to rivalries, "beefs",  and shootings – are all

standard rap tropes and hence, do not shed any light on any facts of this case. *See*

---

[23] This analogy could be expanded *ad nauseum*: nobody believes that Freddy Mercury actually "put a gun against [someone's head], pulled the trigger, and now he's dead" or that the Dixie Chicks actually killed an abusive man named Earl.

27

Declaration of Erik Nielson.[24] Indeed, even if the conventions of the genre and imitative hyperbole were ignored, what would the government place before the jury? Poetry. Non-declarative, non-linear, and almost nonsensical. This is precisely the harm that Rule 403 is meant to prevent.

Additionally, the evidence the government seeks to admit is cumulative. Rule 403's cumulative evidence provision permits courts to exclude cumulative evidence when it has little incremental value. *United States v. Miguel*, 87 Fed. Appx. 67, 68 (9th Cir. 2004). Here, the government hopes to admit various lyrics and music videos to show "the relationship between co-conspirators" – but this can and will be achieved in a number of different ways – through the testimony of (likely) multiple witnesses and/or publicly available information (i.e. pictures from social media etc.). To show that Mr. Wilson and Mr. Banks were associated, for example, the government need not present an entire music video of them together, it can merely present the fact that Mr. Wilson was featured on an album with Mr. Banks, or show a photo of the two men together. The evidence is cumulative and a thinly-veiled attempt at admitting propensity evidence. It should be excluded entirely.

*(c) The Interpretation of The Lyrics and Their Significance Will Necessitate a Trial Within a Trial.*

---

[24] Declaration of Erik Nielson is attached hereto as Exhibit D.

28

The government is hoping to introduce large swaths of evidence – some in audio, some in visual form – to convict the defendants. This ensures that both the defense and the government will heavily litigate the validity, reliability, meaning and authorship of the lyrics, likely through multiple expert witnesses and days of testimony – all to prove or disprove nothing. The government cannot and has not specified what material point any of this evidence goes to, and to inject this distraction into this trial would waste the Court's time and resources, cause undue delay in this trial, and prejudice the defendants with improper character evidence.

### (d) This Court Should Hold an Evidentiary Hearing Before Admitting Any Rap Music Evidence.

The parties have submitted multiple rounds of briefing on this issue and both parties have raised multiple evidentiary-based arguments. Accordingly, this Court should hold an evidentiary hearing in order to thoroughly review the issues to come to an informed decision. The importance, novelty, and potential impact this Court's decision as to these contested facts will have on the trial on this case weigh heavily towards allowing evidence as to this issue at the upcoming motions hearing.

## IV.   CONCLUSION

Despite multiple attempts, the government has not met the required threshold to admit their purported 404(b) evidence – i.e., the defendants' rap lyrics and music

29

videos. The government has failed to show how the lyrics and videos are inextricably

intertwined with the facts of this case, has not satisfied Rule 404(b)'s notice

requirements, and has not provided information necessary for the court to conduct a

proper Rule 403 balancing analysis. Even if the government were able to meet the

notice requirement, analysis under Rule 403 would require the exclusion of this

evidence, as it is highly prejudicial, minimally probative (if at all), and would cause

undue delay in the trial. For these reasons, this Court should exclude all lyric and video

evidence.