DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>    v.<br><br>DURK BANKS,<br><br>    Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' RESPONSE TO GOVERNMENT'S SECOND SUPPLEMENT REGARDING HIS MOTION FOR A BILL OF PARTICULARS** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Jonathan M. Brayman, and Christy O'Connor, hereby files this response to the

//

//

//

government's second supplement regarding his motion for a bill of particulars, which was filed on January 23, 2026. Dkt. No. 349.

                          Respectfully submitted,

Dated: February 3, 2026       BY:   /s/ *Christy O'Connor*
                                      Drew Findling
                                      Marissa Goldberg
                                      Jonathan M. Brayman
                                      Christy O'Connor
                                      *Attorneys for Durk Banks*

## I. INTRODUCTION.

The Supreme Court has warned that a vague indictment "[leaves] the prosecution free to roam at large -- to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States*, 369 U.S. 749, 768 (1962); *accord United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (with a vague indictment, "the United States Attorney would have a free hand to insert the vital part of the indictment without reference to the grand jury. The law does not vest him with such authority"); *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (warning against prosecutors who are permitted to "fill in the gaps").

This prosecution is indeed "roaming at large," and at the very least, a bill of particulars is necessary to put that roaming to an end. The clearest example of the prosecutors' "free hand," and one that we see unfolding in real time, is with respect to the nature of the quid pro quo that allegedly motivated the murder. Not one government witness has ever said that Mr. Banks paid for or offered to pay for the charged murder with music videos or rap lyrics. Not one government witness has ever said that his motive to commit murder was to be featured in music videos or rap songs. *See United States v. Chong*, 419 F.3d 1076, 1083 (9th Cir. 2005) (reversing conviction where there was no evidence that cash paid by solicitor to murderer was the motive for the murder). Yet these prosecutors have decided, on their own and in the absence of corroboration, that any musical collaboration between Mr. Banks and any alleged co-conspirators post-dating August 19, 2022 was quid-pro-quo for murder. The timing of this development exacerbates its prejudicial effect: either the prosecutors just invented this theory two-and-a half weeks ago, or they have purposely hidden this theory from the defense until then. Either way, it is not fair, and it cannot stand.

If the Court does not dismiss this Indictment as vague,[1] it should at least take

---

[1] Under the law, an indictment that tracks the language of the charging statute may still be vague. *See, e.g., Cecil*, 608 F.2d at 1297 (reviewing caselaw and

firm measures to guard against the constant shifting of the government's quid-pro-quo theory. The Court should order a bill of particulars, and review the grand jury transcripts *in camera* to ensure that the theory presented at trial is tied to what was presented to the grand jury. At the very least, the Court should constrain the government's theory to what is contained in the discovery it relied upon in response to the Court's November 18 order. *See* dkt. no. 293 (six exhibits, filed under seal). That filing contained no evidence that the music videos and rap lyrics upon which the government now relies were consideration for the murder, and for good reason: no such evidence exists. In lieu of evidence, we have the very thing that higher courts have repeatedly cautioned against: prosecutors who "fill in the gaps" in order to win convictions.

## II. THE DANGERS OF A VAGUE INDICTMENT REALIZED.

A real danger created by this Indictment's vagueness is that at trial, the government could point to any instance of Mr. Banks' generosity with an alleged co-conspirator, or any time that an alleged co-conspirator receives a benefit from his proximity to Mr. Banks' success, and the government will cite it as "bounty," or a "downstream benefit" of the murder. If Mr. Banks picks up a dinner tab, if Mr. Banks buys somebody a gift, if Mr. Banks allows somebody to accompany him on a private flight, if somebody collaborates with him on a musical project, the government may decide that is the murder quid pro quo.

This is problematic for several reasons. One reason is that a pecuniary benefit paid by the solicitor of a murder to the murderer does not satisfy the statute's quid pro quo requirement in the "absence of any overt agreement or understanding" between the solicitor and the murderer that the pecuniary benefit is in exchange for the murder,

---

concluding that tracking the language of the statute will not render an indictment valid if it omits a statement of "facts and circumstances" that would inform the accused of the specific offenses with which they were charged).

2

1  instead of for some other purpose. *Chong*, 419 F.3d at 1082-83. In *Chong*, the Ninth
2  Circuit reversed the defendant's conviction because "the evidence [did] not support the
3  government's claim that this money was promised to [the murderer] in exchange for
4  murdering [the victim]." *Id.* at 1082. *See also United States v. Frampton*, 382 F.3d 213
5  (2d Cir. 2004) (holding that a promise of a "favor" does not satisfy the statute in the
6  absence of an "understanding as to the form it would actually take"); *United States v.*
7  *Phillips*, 929 F.3d 1120 (9th Cir. 2019) (holding that a legally unenforceable promise to
8  forgive a loan satisfies the statute as long as there is a "clear mutual agreement between
9  the solicitor and hitman of payment in exchange for murder"). Absent any evidence that
10 Mr. Banks' purpose in bestowing benefits on others is to induce a murder, then, those
11 benefits are irrelevant.

  Another class of problems is that described by the seminal long line of cases on the dangers of a vague indictment.[2] Without clarity (what did Mr. Banks allegedly pay or promise to pay as quid pro quo for the murder?), Mr. Banks is not permitted the opportunity to prepare an adequate defense or to address himself to the relevant questions of fact and law. The government's theory at trial strays from what was presented to the grand jury. The vagueness permits the government to shift its legal theory as the case progresses, as the government has been doing here. And it creates the risk that a defendant will be deprived of the protection against double jeopardy. In this prosecution, we see these dangers unfolding, as outlined below.

### III. THE GOVERNMENT'S QUID-PRO-QUO THEORY CONTINUES TO SHIFT.

In the last several weeks, the government's theory of guilt with respect to the murder quid-pro-quo (what it colloquially calls the "bounty") has taken a turn. The government for the first time articulates the theory that certain listed music video and rap song features are the bargained-for consideration for the charged murder. In other

---

[2] *See* Dkt. No. 227 at 6 (citing cases).

3

words, the opportunity to rap a verse or appear in a certain music video is now, for the first time, alleged to be the payment exchanged for the murder.

### a. THE FIRST TWO 404(B) NOTICES CONTAIN NO ALLEGATION THAT ANY RAP LYRICS OR VIDEOS ARE CONSIDERATION FOR MURDER.

The government's first 404(b) notice contains no allegation that any lyrics or videos were payment in exchange for the charged murder. The notice, dated September 15, 2025, lists four songs. Its proffered purpose for admitting one of the songs is that it is an admission that Mr. Banks was under pressure to avenge King Von's death. As to the other three songs, the government proffered that they are admissions by Mr. Banks that he ordered violence and paid bounties.

Similarly, the government's second 404(b) notice does not advance the theory that Mr. Banks paid for this murder with rap song and music video features. The notice, dated November 17, 2025, adds two songs by Mr. Banks to its previous list, allegedly as admissions by Mr. Banks that he pays for bounties and directs violence (reasons contained in the first notice), and also for the new purpose of showing Mr. Banks' relationships with his OTF co-conspirators. The second notice also lists four new songs as proposed 404(b) against Mr. Wilson. Again, the government's stated purpose in introducing those songs into evidence is that they are admissions, not that the rap verses or videos themselves were conferred upon Mr. Wilson as quid pro quo for murder.

### b. THE GOVERNMENT FAILS TO IDENTIFY ANY EVIDENCE THAT SUPPORTS THE THEORY THAT RAP LYRICS AND MUSIC VIDEOS ARE QUID PRO QUO FOR THE MURDER.

At the November 18 hearing, the Court directed the government to file those portions of the discovery that "encompass" its theory as to bounty. "So here, are you telling me that those hundred pages [filed at docket entry 293] encompass, then what it is that the Government would argue as to either bounty, on one hand, or the means by

4

1  which, allegedly, Mr. Banks directed the crime occur?" Dkt. No. 317 at 30. And later,
2  "What I'm going to do is tell the Government that if the Government – the Government
3  can rest on what its already done, which is, as I was told, was in document number 293.
4  The Government may supplement that between now and Friday." *Id.* at 36.
5        In response, the government informed the Court that it rested on docket entry
6  293. That filing contains no evidence to support the government's current theory that
7  Mr. Banks conferred features in rap songs or music videos to his alleged co-
8  conspirators as a mutually-understood payment for the murder.

      **c.   THE GOVERNMENT DISCLOSES A NEW THEORY.**

10       The government's January 16, 2026 404(b) notice, its third, marks the first time
11 it articulates the theory that these rap lyrics and music videos are the items of pecuniary
12 value exchanged as consideration for the murder. The notice again adds two new songs
13 to the list in addition to those listed in the first two notices, for a grand total of 12
14 songs. More importantly, it adds a new theory as to an essential element of murder-for-
15 hire, that the listed 12 songs are

> admissions and visuals showing the downstream benefits received by Co-
> Conspirators involved in the murder-for-hire scheme, including defendants' and
> uncharged C-Conspirators' participation and prominent placement in music
> videos following S.R.'s murder.

20 Dkt. No. 350, Ex. C at 3. The government's January 30 filing on the 404(b) issue
21 echoes the argument that the songs and videos contained in its third notice "prove[] the
22 downstream benefits rewarded to the conspirators involved in the murder scheme,
23 including prominent placement in music videos following S.R.'s murder." Dkt. No.
24 367, p. 9.
25       In its January 23 filing, the government argues that the Indictment, coupled with
26 the discovery, "provide clear notice to defendants of the government's murder-for-hire
27 theory." Dkt. No. 349 at 4. It claims that "[t]he government has alleged . . . the

straightforward theory that . . . [Mr. Banks] rewarded co-conspirators by, among other things, featuring many of the direct participants in the murder in music videos and rap lyrics in the months following the murder." *Id.* at 4-5.

On the contrary, the government never alleged, before mid-January, that these (or any) music videos or rap lyrics were the consideration that Mr. Banks promised or paid in exchange for the murder, or that the expectation of these features were the motivation to commit the murder. The Second Superseding Indictment merely names vague "lucrative music opportunities," which could mean many things, from rap verses to concerts to record deals and beyond.

In the wake of the Second Superseding Indictment, the government has had every chance to make its theory clear. Instead, it has taken advantage of the Indictment's vagueness, a carte blanche to continually disguise and reinvent its case. At the November 18 hearing, defense counsel articulated this danger and foreshadowed the current situation:

> Last night, we got a discovery production from the Government, and I won't get into details, because it's subject to a protective order, but it was an FBI 302, and it listed about 15 different music videos. And those videos involve, or depict some permutation of Mr. Banks and Mr. Wilson, or Mr. Banks and Protected Witness 1, some permutation of the three of those people. . . .
> And so I get this 302, and the first thing I think is, oh, there is obviously these vague allegations in the Indictment that as a bounty, Mr. Banks provided lucrative music opportunities to conconspirators, offered those, provided those lucrative music opportunities. *But we are left to wonder what lucrative music opportunities is the Government alleging related – were related to bounty? So I'm looking at these music videos, and I'm thinking, okay, is the Government going to present these to the jury in such a way that the jury could draw an inference that Mr. Banks featuring Mr. Wilson or PW1 in a music video is a*

6

> *payment of a bounty? . . .*
>
> *And, you know, one of the problems with a vague indictment, is that it gives the prosecutor free hand to fill in the facts, and to fill in the gaps about which facts it wants to use to satisfy – to meet the elements. . . .*
>
> *And it also illustrates the Government's shifting theory*, because we have a statement that there was never any music opportunity that was a bounty, and then maybe kind of there was a fear of a loss of a music opportunity that was a bounty. And now, are these new music videos going to be presented to the jury in such a way that they could draw the inference that those were a bounty?
>
> And so this is not just theoretical case law, this is something that prevents us from doing our job, as the Constitution requires.

Dkt. No. 317 at 22-25 (emphasis added). This was an opportunity for the government to clear up any ambiguity about what its bounty allegations actually are. Instead, it chose obfuscation:

> [T]he fact of the music videos that some of the defendants or protected witnesses are in together, doesn't necessarily just have to be about bounty, it can be about motive. It can be about relationships between coconspirators. It can be about the formation and organization of Only the Family. All of these points, as the Government addressed in its opposition as to 404(b) evidence, are relevant. So music videos, and presence within music videos, is not just about bounty.

*Id.* at 27. Either the government had not yet come up with the theory, on November 18, that music videos and rap lyrics were consideration for the murder, or it wanted to keep the defense in the dark about its quid-pro-quo theory in order to secure a tactical advantage--a concealment that would offend the Constitutional principles of due

7

process and notice.

## IV. THE NEW THEORY IS A GOVERNMENT INVENTION AND THREATENS TO WARP WITNESS TESTIMONIES.

The government's newly-articulated theory is its own invention, unsupported by the evidence. The government incorrectly asserts that "its discovery clearly supports . . . the straightforward theory that [Mr. Banks] rewarded co-conspirators by, among other things, featuring many of the direct participants in the murder in music videos and rap lyrics in the months following the murder." Dkt. No. 349, p. 5. In actuality, the discovery contains nothing in support of that theory. This is why, in response to the Court's order that the government file any discovery that would "encompass" its bounty theory and obviate the need for a bill of particulars, the government filed nothing that touched on this music-features-as-quid-pro-quo allegation. *See* Dkt. No. 293. Indeed, no witness has ever told the government that Mr. Banks offered or awarded features in songs or videos as payment for the murder. No witness has ever told the government the murder was motivated by the promise of a music video or rap feature. *See Chong*, 419 F.3d at 1083 (affirming that "it is the motive of the murderers that is relevant to whether the murder occurred in return for a promise to pay something of pecuniary value"). Not one witness. Not ever. In the place of actual evidence, the government appears to have searched the internet for every musical collaboration between Mr. Banks and the alleged co-conspirators that post-dates the charged shooting. It then constructed its own inference that these collaborations are the murder's quid-pro-quo.

To reiterate: no witness, to date, has told the government that Mr. Banks paid for this murder with the music video and song features the government lists in its third 404(b) notice (or with any music opportunities, for that matter), or that the murder was motivated by the promise or expectation of such. It thus appears that these newfangled allegations are the inventions of the prosecutors' imaginations. The danger going

8

forward is that the government's witnesses will change their stories to meet the requirements of the government's new theory. We have seen it happen already over the course of this investigation: for example, a witness who admits to the murder but denies that he did it for pay changes his tune in response to repetitive and suggestive government questioning about payment. If it happens here, and if at trial, any of the government's current cooperators testifies that he was motivated to participate in this murder by the understanding that he would be featured in music videos or rap songs, then it will be a downstream repercussion of this vague Indictment, and it will be an unconstitutional miscarriage of justice.

## V.   CONCLUSION.

Mr. Banks continues to seek dismissal of this dangerously vague Indictment. Short of that, however, he requests that the Court require the government to file a bill of particulars that is tied to the theory it presented to the grand jury. When the United States government seeks to charge somebody with a crime, it should be willing and able to inform him of what he has done that is alleged to have violated the law. The government should not be permitted to change its story along with the vicissitudes of the case, as it has done here.