DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
         marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>    v.<br><br>DURK BANKS et al.,<br><br>        Defendants. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT BANKS' JOINT REPLY TO THE GOVERNMENT'S RESPONSE TO ITS BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE PROPOSED 404(B) EVIDENCE**<br><br>Date:        February 9, 2026<br>Time:       1:30 pm<br>Courtroom: 5A<br>Judge:       Hon. Michael W. Fitzgerald |

Defendants Durk Banks and Deandre Wilson hereby file this Joint Reply to The Government's Response to Their Supplemental Brief in Support of Their Motion to Exclude Proposed 404(b) Evidence. Defendants request a hearing on the matter. This Brief is based on the attached memorandum and exhibits, the files and records in this case, and any other evidence or argument that the court may permit.

Respectfully submitted,

BY: /s/ *Drew Findling*

/s/ *Marissa Goldberg*  /s/ *Craig A. Harbaugh*

/s/ *Christy O'Connor*  Attorney for Deandre Dontrell Wilson

/s/ *Jonathan M. Brayman*

*Attorneys for Durk Banks*

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **The Government's Assertions That the "Music Admissions" "Go to the Heart of the Trial" is Neither Factually Accurate nor is it a Legally Cognizable Basis for Admissibility**

The government's most recent letter regarding their proposed music evidence (Dkt. 350, Exhibit C) begins with the conclusory statement that the proposed music evidence is inextricably intertwined with the charges in this indictment; presumably, this is to circumvent the notice and specificity obligations under FRE 404(b). In response to this letter, the defendants filed their supplemental motion (Dkt. 350) and detailed the two-prong test the court should use to determine whether evidence should be considered "inextricably intertwined" under the law. Specifically, if the act "constitutes a part of the transaction that serves as the basis for the criminal charge," or is "*necessary* . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Loftis*, 843 F.3d 1173, 1177–78 (9th Cir. 2016) (internal citation omitted) (emphasis added). The proposed evidence meets neither prong of this test.

In the government's response to the supplemental motion (Dkt. 367), they completely fail to address how any of the proposed evidence fits under the proper legal framework to determine whether something is inextricably intertwined. In fact, they seem to abandon that language altogether and shift into a new argument. In its response, the government now relies on non-legally cognizable phrases, asserting that

1

this evidence "go[es] to the heart of the trial" (Dkt. 367, page 2) and that these commercial recordings of performative art are relevant to unspecified "core" issues. This is the third theory the government has advanced to justify dragging these music videos into the case[1]. The fact that the government failed to address whether this proposed evidence is inextricably intertwined should result in this court finding that they have abandoned that argument.

## II.  The Government Cites no Binding Caselaw and the Persuasive Cases Cited Do Not Support Admissibility

In their response, the government stated the following, "defendants do not credibly dispute the relevance of the Music Admsisions nor meaningfully address or distinguish any case the government has cited …[n]or could they." (Dkt. At pages 1-2). This is patently wrong. As for the first part, the defendants attached the declaration of the leading expert in the country on rap music lyrics, Erik Nielson. (Dkt. 350, Exhibit D). He stated that the lyrics the government claimed were relevant and probative were neither, as they are generic and commonplace within the industry. The government offered no counter-argument to this fact nor a declaration by an expert to the contrary.

---

[1] First, the government claimed that the lyrics were FRE 404(b) evidence, then claimed they were inextricably intertwined, now has said neither analysis should be had and that this evidence should be treated like any other central to the material elements of the case. The government's use of "shifting theories" has been systemic in this case and will be also addressed in Mr. Banks' Reply to the Government's Response to his request for a bill of particulars which will be filed contemporaneously to this motion. Specifically, and relevant to this motion, the claim that these music videos constituted "downstream benefits rewarded to co-conspirators involved in the murder scheme" is not supported by any witness or credible evidence, however, that assertion is continually repeated in the government's response.

2

The unqualified attempts by prosecutors or agents to ascribe a particular meaning to lyrics to make them relevant does not make them so. The government wants this court (and eventually this jury) to believe that the use of terms like "opps" or even references to shooting "opps" or firearms, evading law enforcement, and paying cash are specific references to allegations in this case. The government cited some of those lyrics alongside general allegations in a chart in their response. (Dkt. 367, pages 6-7). The only fact that can be gleaned from the cited lyrics is that they are entirely non-specific: they reference neither the alleged victims nor any circumstances of this case, yet contain highly prejudicial statements that pose a substantial risk of jury confusion by being misconstrued as relating to these proceedings[2]. And if not these allegations, is the jury meant to assume the lyrics refer to some other uncharged and unidentified incident, left deliberately ambiguous by the government? Such tactics are improper and should be barred by this court before irreparable prejudice occurs.

The government addresses very few of the arguments raised by the defendants and instead relies heavily on three cases that are not binding and easily distinguishable from the instant matter. Each will be addressed in turn. First, the government cited an 11th Circuit case, *U.S. v. Belfast*, 611 F.3d 783 (11th Cir. 2010). This case involved the

---

[2] For example, the lyrics, "I don't want no n**** who you catch, I want the one I paid for….Trollin' ass, we shot your homie." (Dkt. 367, pages 6-7) could easily be construed by the jury as containing as semi-confession to the allegations that Mr. Banks participated in a murder for hire scheme as alleged on this case with the incident date of August 19, 2022. This would be both misleading and extremely prejudicial as the lyrics in this song were recorded nearly a year before the incident date of this case. It would be factually impossible for those lyrics to have anything to do with the charged incident. The government provides no such context in their response and this is inherently misleading.

3

son of the former president of Liberia who was accused of spearheading a government-sanctioned group that tortured their adversaries with gruesome and extreme measures including maiming and decapitating individuals, these methods described in great detail in the opinion of the court. In relevant part, the defendant was found with a notebook in his suitcase at the time of his arrest with his handwritten "rap lyrics.[3]" The court, without engaging in much analysis, found the writing was admissible because the defendant's reference to a particular organization showed that he was still connected to it at the relevant time and it contradicted statements made by the defendant post-arrest. (See Id. at 820).

This case is distinguishable on many fronts. First, Mr. Banks did not make a post-arrest statement for which these lyrics could contradict. Second, the statements in *Belfast* were found in the defendant's possession, were hand-written and even signed by him, made specific references to the names of groups that were part of the case, and directly contradicted post-arrest statements made by the defendant. The categorization of this case having anything to do with "rap" or "rappers" is really misleading. *Belfast* is much better categorized as dealing with the admissibility of journal entries or poems. There were no industry professionals vetting those statements. The notebook was not run through a legal department. There were no ghost writers or collaboration lyrics

---

[3] There is no reasoning given by the court for why these written lines were referred to as "rap lyrics" as opposed to prose or journal entries as there is no evidence that the defendant was a performer or musician of any kind.

4

involved. They were not produced and edited by third parties before being released on commercial platforms in response to industry demands and norms. Further, and probably most importantly, the level of prejudice the statements involved could have caused within the context of allegations in a case such as *Belfast* would have been *de minimis* as the facts regarding the torture and murders of many people were extraordinarily gruesome. That is not so here.

The second case the government cites is a Sixth Circuit case, *United States v. Stuckey*, 253 Fed. Appx. 468 (6th Cir. 2007). This case is informative as to exactly why the lyrics should be inadmissible here. In *Stuckey* the court notes how the handwritten (by the defendant) "rap" lyrics were so specific as to the allegations in the case that they were tantamount to a detailed confession, as "fact-autobiographical statements of acts relevant to the case." (*Id*. at 483). They were written by the defendant after the alleged incident occurred and described matching details of the incident including wrapping the body of a witness in a blanket and putting it on the side of the road. Despite the obvious similarities, the court still conducted an analysis under FRE 404(b) and noted the prejudicial nature of the lyrics, but ultimately held that the probative value of these lyrics were high enough to overcome any potential prejudice.

The generalized and generic statements proffered by the government in this case are exactly the type of lyrics that the court in *Stuckey* would have precluded. Even more telling is that the government cites this case and then argues that this court should not

5

do an analysis under 404(b) which is what the court did there. This case is clearly distinguishable.

The last case cited by the government is *United States v. Pierce*, 785 F.3d 832 (2nd Cir. 2015). The defendant in that case made a specific reference to the group he was alleged to have associated with in a RICO allegation and another specific reference to another group his group was allegedly feuding with. The government offered one rap video to show evidence of that association and feud. Here, there are no specific references to individuals or groups with which the defendants have a "beef." Amongst the whopping 12 songs the government seeks to introduce, there is not one name of an opponent mentioned. Further, this is not a RICO case and there will not be any problem for the government showing that several of the defendants and witnesses in this case were associated with one another through a publicly incorporated business and rap label.

### III. The Government Does Not Seem to Understand its Own Proposed Evidence

It is clear from the above caselaw that despite the government's assertions to the contrary in trying to shift the burden of admissibility on to the defendants (Dkt. 367, page 2), that questions of the admissibility of lyrics are viewed by the courts under the lens of FRE 404(b). As set forth in the defendants' Supplemental Motion, the government has failed to provide sufficient notice to either the defendants or the court

6

to permit the requisite analysis. In its Response, the government repeatedly relies on the term "premiered" to identify the purported timing of the music evidence. That term is vague and is not a recognized or meaningful marker within the music industry.

Commercial music released through a major label typically undergoes an extensive, multi-stage process well before public distribution, including writing, recording, editing, label review, legal review, music video production, post-production, and additional rounds of label and legal approval. As a result, a so-called "premiere" date—without further explanation—provides no reliable indication of when the content was created, finalized, or distributed.

The government has previously misunderstood or misrepresented the timing of musical works it sought to introduce in this case, an error that contributed to the Second Superseding Indictment. That same deficiency is repeated in its Response. Rather than conducting a meaningful investigation, the government appears to rely on undefined "open-source" information while ignoring the realities of the music production process. Accordingly, the court should require the government to identify the sources it relies upon to determine these purported "premiere" dates and to explain what that term is intended to signify in this context.

### IV. The Attempt at Inadmissible Propensity Evidence is Apparent

The clearest indication that the government seeks to use this music evidence to invite improper propensity inferences is its reliance on a lyric attributed to Mr. Banks, "I'm the *type* to hop on a flight with a warrant, you gotta catch me" as purported evidence that he attempted to flee the country at the time of his arrest two years later (Dkt. 367, page 9). The government's position would require the court to accept that Mr. Banks was somehow predicting future events. These lyrics are not factually specific statements of the type deemed arguably probative by the *Stuckey* court.

Nor is there any evidence that Mr. Banks ever engaged in the conduct suggested by the lyric. There was no known warrant at the time of his arrest, and when Mr. Banks was previously on pretrial supervision in Georgia, he was found to be fully compliant until that case was dismissed. Absent any factual nexus, the lyrics have no relevance beyond inviting the jury to draw improper propensity or character inferences.

To preserve fairness and to prevent injustice, the court should not permit such use of this evidence.

8