DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, CA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>         Plaintiff,<br><br>    v.<br><br>DURK BANKS,<br><br>         Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPLY IN SUPPORT OF HIS MOTION TO SEVER COUNTS OR, IN THE ALTERNATIVE, TO DISMISS ON SPEEDY TRIAL GROUNDS** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this Reply in support of His Motion to Sever Counts or, in the Alternative, to Dismiss on Speedy Trial Grounds. Dkt. No. 446.

This Reply is based upon the attached memorandum of points and authorities and attached exhibits, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated: July 10, 2026                        BY:   /s/ *Christy O'Connor*
                                            Drew Findling
                                            Marissa Goldberg
                                            Brian Steel
                                            Christy O'Connor
                                            *Attorneys for Durk Banks*

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**……………………………1

I.    **The Government's Actions Have Endangered the Trial Date**……………………………………………………………………1

II.   **The Government Fails to Show Diligence in Bringing Mr. Banks to Trial**……………………………………………………...……..3

    a.  **The Chicago Case: No Material New Developments**………………..4

    b.  **PW-2 and PW-3: Long-Running Cooperation, Yet Little to Add to the VICAR Charges**………………………...…………………….......6

    c.  **The Government Cites its Review of Voluminous Discovery without Identifying When that Review Occurred**……………….……..……..8

    d.  **The Government Cannot Tie its Generalized Allegations of Attempts to Evade Detection or Conviction to the Delays at Issue**…………………10

    e.  **Tactical Advantage: the Chicago Incident**……………………..10

III.  **Any Delay of the Current Trial Date Would Be Significant, Especially Combined with Past Delays**…………………………….………....11

IV.   **Prejudice is Presumed, Actual, and Continues to Unfold**………………...12

V.    **Mr. Banks Continues to Assert his Rights**………………………......14

VI.   **Conclusion**………………………………………………………14

# TABLE OF AUTHORITIES

*Barker v. Wingo*, 407 U.S. 514, 532 (1972) ...................................................................13

*Crawford v. Washington*, 541 U.S. 36, 5052 (2004) ..........................................................5

*Doggett v. United States*, 505 U.S. 647, 656-57 (1992) ...................................................13

*McNeely v. Blanas*, 336 F.3d 822, 826-27 (9th Cir. 2003) .........................................3, 14

*United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) ...............................3, 12

*United States v. Chong*, 419 F.3d 1076, 1081 (9th Cir. 2005) ..........................................8

*United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999)..........................................4, 12, 14

*United States v. Henry*, 984 F.3d 1343 (9th Cir. 20219)..................................................14

*United States v. Messer*, 197 F.3d 330, 338 (1999)..........................................................12

*United States v. Ofray-Campos*, 534 F.3d 1, 23 (1st Cir. 2008) ........................................5

*United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993)................................................8

*United States v. Rojas-Pedroza*, 716 F.3d 1253 (9th Cir. 2013).......................................5

*United States v. Wicklund*, 114 F.3d 151, 154 (10th Cir. 1997)........................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

Whether a purposeful dilatory tactic or a lack of diligence, or both, the government's actions in this case have endangered Mr. Banks' speedy trial rights. Those actions include bringing last-minute, wide-ranging charges that were equally available months ago. They include massive, belated discovery productions related to those new charges. They include the government's refusal to abide by the pretrial schedule to which it previously committed.

In its Opposition,[1] the government does not (and cannot) provide any good explanation for why it has intentionally impeded Mr. Bank's impending trial date. Instead, it scatters a constellation of vague excuses but fails to connect the dots. What material new developments explain the Third Superseding's delayed timing? Why is the government just now turning over volumes of discovery that it has had in its possession for months? The government is banking on a continuance, behaving as if Mr. Banks has waived his speedy trial rights and the August 20 trial date is already off calendar. Not so. Its unfair dilatory tactics are a transparent attempt to delay justice. But for Mr. Banks, who remains incarcerated and eager to go to trial, justice delayed is justice denied. This Court should restore the fairness the government attempts to strip from Mr. Banks and sever the Los Angeles Counts for an August 20 trial.

## I.      The Government's Actions Have Endangered the Trial Date.

It is beyond dispute that the timing of the government's actions here have imperiled the August 20 trial date. The government sought a hefty superseding indictment just eleven weeks before trial. It has withheld discovery-- for example, it refused comply with Mr. Banks' October 17, 2025 request for the Chicago case file, and then misrepresented to the Court that it had turned it over when it had not. *See* Mot.

---

[1] Filed at docket entry 464, the Government's Opposition to Defendant Banks' Motion to Sever Counts or in the Alternative, to Dismiss the Third Superseding Indictment on Speedy Trial Grounds will be referred to in this Reply as the "Opposition" and cited as "Gov. Opp." Filed at docket entry 446, Mr. Banks' Motion will be referred to as the "Motion" and cited as "Mot."

at 5-6. Large portions of that Chicago discovery (nearly 10,000pages) were produced as recently as Monday, July 6, just a month and a half before the scheduled trial date[2]. Another large production occurred on May 29, but with errors that were not fixed until June 26. This is despite the fact that the government has always had access to it.

Further endangering the trial date, the government shirks its responsibilities under the pretrial schedule to which it previously agreed. For example, after extracting a promise from all defendants that they would not seek to continue the current August 20 trial date any further, the government committed to producing draft exhibit and witness lists 10 days in advance of the motions in limine deadline. Ex. J. This, the parties recognized, was necessary so that the defendants could intelligently file motions tailored to the true evidentiary issues at trial. But once the government filed the Third Superseding, it behaved as if the August 20 trial date was automatically off calendar, and all dates keyed to it vacated. The initial June 19 witness/exhibit list disclosure deadline (keyed to the June 29 motions date) came and went. After agreeing, over email, to move the motions in limine due date to July 6, a date which triggered a June 26 exhibit/trial list disclosure deadline, the government again failed to follow through. And finally, after the Court set an August 13 motion in limine date, Mr. Banks' defense counsel reached out in an attempt to confirm the government's intentions to comply with an exhibit and witness disclosure deadline, to set a motion in limine schedule, and to find time to meet and confer. Ex. K. As of the date of this filing, the government has failed to meaningfully respond. It remains unclear whether it will provide a draft exhibit and witness list by tomorrow, July 11, whether it will meet and confer with

---

[2] As there were no direct witnesses who could identify the suspects in that incident, the Chicago case was built on circumstantial evidence. Therefore, this discovery includes complex records including expert reports, phone records, DNA reports, and device downloads. This was the precise reason undersigned counsel requested these reports back in October of 2025.

defense counsel regarding motions, and whether it will file its own motions on the proposed date, July 21.

Pretrial schedules are designed to keep a trial date on track. Yet, as its behavior demonstrates, since it filed the Third Superseding so late, the government is not interested in keeping this trial date on track. Quite the contrary, it seems to consider a trial continuance a given.

## II. The Government Fails to Show Diligence in Bringing Mr. Banks to Trial.

The government's bizarre over-confidence in the inevitability of another continuance is in stark contrast to its obligations under the law. The Constitution imposes upon it a duty of diligence in bringing a defendant to trial. For that reason, the government bears the burden of justifying a pretrial delay. *McNeely v. Blanas*, 336 F.3d 822, 826-27 (9th Cir. 2003) (placing the burden on the government and dismissing case with prejudice where it could not demonstrate the defendant's responsibility for the delays). In accordance with this, the government's Opposition correctly recognizes, both implicitly (in its primary focus) and explicitly, the particular importance of the second *Barker* factor: the reason for the delay.[3] *See, e.g.,* Gov. Opp. at 20 (distinguishing between a legitimate, good-faith investigative delay and a delay for tactical reasons); Gov. Opp. at 17 (recognizing that a defendant is required to show actual prejudice only where "the government can show that the delay was wholly justifiable because it proceeded with reasonable diligence"). *United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) (calling the second *Barker* factor the "focal inquiry"); *United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999) (holding that

---

[3] Although this is the second listed *Barker* factor, we consider it here first, because if the government's negligent or intentional actions are responsible for delaying Mr. Banks' trial date, that affects the Court's consideration of the other factors-- in particular, the length of delay that is acceptable, and the prejudice showing that is required.

where the delay was for tactical advantage, it was unconstitutional despite its 77-day length).

The government fails, in its Opposition or elsewhere, to carry its burden of showing diligence in bringing Mr. Banks to trial-- a duty that includes abstaining from negligently or purposefully imperiling the current trial date. In its 22-page opposition, the government waxes on about many things-- the volume of discovery, what evidence exists to support the new charges, the Chicago case, even Mr. Banks' flights to Dubai-- hoping that the Court won't notice that none of these things are a valid reason for the timing of the Third Superseding Indictment, for its failure to timely provide discovery, or to abide by the pretrial schedule.

We consider and debunk each category of vague excuses in turn.

### a. The Chicago Case: No Material New Developments.

The government's Opposition seems to argue that "material developments" in the Chicago case caused the delayed timing of the Third Superseding. It reads: "defendant's argument that the government took 'the Chicago incident off the table' when it withdrew its motion to admit it under Rule 404(b) breezes past material developments in that case, which contributed to the government's decision to include it as direct evidence (not under Rule 404(b)) in the TSI." Gov. Opp. at 15. But there are no "material developments" which have occurred since then; the "material developments" to which it points are not material and/or are not new developments.

*Guilty Pleas*: The government relies heavily (both in its Opposition and in its oral representations to the court on July 1) on the recent guilty pleas of Mr. Montgomery-Wilson and Mr. Powell in their prosecution of the Chicago incident in the Northern District of Illinois. (Case No. 23-cr-546 (N. D. Ill.)). Gov. Opp. at 6, 15; Ex. L (transcript of July 1 hearing) at 34-35. In both defendants' plea agreements and colloquies, they admit to committing the charged murder in exchange for pay. Even if those admissions represented some sort of significant "development" in that case (which is debatable, since the defendants have been accused of committing a murder

4

for pay since 2023), they have absolutely no bearing on Mr. Banks' prosecution or trial. First, the defendants there did not say, either in their plea agreements or at their changes of plea, *who* paid them in exchange for the murder. In order to be pertinent to Mr. Banks' case (including, as the government now argues *ex post facto*, to bolster to reliability of Mr. Montgomery-Wilson's *Perkins* recording), the statements would have to be about Mr. Banks. They are not. Second, any statement in a plea agreement or at a change of plea would be inadmissible in any other criminal prosecution under the Sixth Amendment's Confrontation Clause.[4] And finally, there is no indication that either Mr. Montgomery-Wilson or Mr. Powell is cooperating with the government to provide additional information or admissible, in-court testimony. The guilty pleas are a red herring, neither material nor true developments that would explain the Third Superseding's timing.

*Other Alleged Chicago Evidence*: Next, the government points to alleged evidence from regarding the Chicago incident that has been available to them all along. *See* Gov. Opp at 15 & Ex. A (citing text messages, photographs and video files, and an alleged jailhouse confession). These offerings are not "developments" that would warrant the Third Superseding's timing, just three months before trial. On the contrary, they are part of the case file in the Northern District of Illinois prosecution. These prosecutors have long had access to that file, and at least since October of 2025, have denied Mr. Banks' defense team that same access. *See* Banks' Mot. at 5 (detailing Mr. Banks' October 17 request for that file, and the government's October 31 refusal to

---

[4] The Supreme Court has identified a "core class of testimonial statements" that are subject to the Confrontation Clause, including "ex parte in-court testimony or its functional equivalent . . . that declarants would reasonably expect to be used prosecutorially." *Crawford v. Washington*, 541 U.S. 36, 5052 (2004). *See also United States v. Rojas-Pedroza*, 716 F.3d 1253 (9th Cir. 2013); *United States v. Ofray-Campos*, 534 F.3d 1, 23 (1st Cir. 2008) ("[I]t is generally accepted that absent agreement, courts and prosecutors generally are forbidden from mentioning that a co-defendant has either pled guilty or been convicted.") (internal quotation omitted.)

produce it). In fact, much of that file was just produced to the defense team on Monday, July 6, 2025. If the government had been acting diligently, it would have evaluated that case file promptly, made reasonably-timed charging decisions based upon that review, and turned the case file over to the defense either when it was requested, or as soon as it became apparent that it could potentially be an issue in Mr. Banks' case.

The government's handling of the Chicago incident is not diligent investigation. On the contrary, it is an example of its pervasive hide-the-ball tactics.

### b. PW-2 and PW-3: Long-Running Cooperation, Yet Little to Add to the VICAR Charges.

The government also attempts to blame the delay in the Third Superseding on its acquisition of new, material information from cooperators with "first-hand knowledge" of the Chicago murder and the Atlanta shooting. At the July 1 hearing on Mr. Wilson's motions to sever counts and for bail, Mr. Wilson's counsel pointed out the unfairness in the Third Superseding's timing. In response, the government first proffered the Chicago guilty pleas discussed above, assuring the court that it "moved swiftly" to indict after those April and May changes of plea (implying the guilty pleas were dispositive in the government's decision to bring the VICAR charges). Ex. L at 12. Later in the hearing, after the admissibility of the guilty pleas in this trial was correctly called into question, government counsel did not counter that they matter because they bolster the *Perkins* statement's admissibility. *Contra* Gov. Opp. at 15-16 n. 16. Instead, counsel offered a second, separate reason for the Third Superseding's delay, explaining:

> [A]gain, we dispute Mr. Harbaugh's claim that there is just simply nothing new. What the defendants will see in discovery, if they haven't already, there are cooperating witnesses that we will – with personal knowledge of both of those events . . .

Ex. L at 35.

On Monday, July 6, the government produced more than 20,000 pages of discovery (the vast majority of which they have had in their possession for many

6

months), which included the 302s to which the government apparently referred. Exs. M (PW-2), N (PW-3).

Neither of those 302s justify the Third Superseding's delayed timing.

. If the government had been acting diligently to respect Mr. Banks' speedy trial rights-- a diligence that includes avoiding unnecessarily delaying charges that carry the potential to dislodge a trial date-- it could and would have asked its cooperators about his supposed gang-related racketeering activities from the start. The government wants the Court to believe that it never thought to inquire about these specific incidents until April 21 (PW-3) and May 21 (PW-2), despite previously having noticed them as FRE 404(b) evidence. If it can even be believed, that is not diligent investigation, and does not justify the government's poorly-timed charging decision.

Putting aside the timing of the interviews, though, the substance of these 302s is not groundbreaking or revelatory. Hardly do they establish the PW-3's "personal knowledge" of the "Chicago murder," as was the government's representation to the Court on July 1. Ex. L at 34-35. According to the 302,

[5] PW-3 has no "first-hand knowledge" of the Chicago murder at all. His recent statements add nothing to the government's investigation

. Ex. N at 3. Nor does PW-2's recent 302

---

[5] A person's expectation of the receipt of a benefit in exchange for committing a murder is insufficient to satisfy the statute, which requires bargained-for consideration and a payor's intent to pay someone in exchange for the murder. *See United States v. Chong*, 419 F.3d 1076, 1081 (9th Cir. 2005); *United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993); *United States v. Wicklund*, 114 F.3d 151, 154 (10th Cir. 1997).

establish that he had "personal knowledge"[6] of an attempted murder in Atlanta.

### c.  The Government Cites its Review of Voluminous Discovery without Identifying When that Review Occurred.

The government attempts to create the impression that the volume of data it has collected and reviewed somehow created the delay in filing the new VICAR charges. It cites to the fact that its "investigation involved robust legal process and the review of voluminous digital records, with 59 digital devices and accounts seized --- including 38 following the defendants' arrests." Gov. Opp. at 1. Later, it recounts:

> Following the arrests, the government continued to investigate uncharged co-conspirators and other criminality linked to the Banks Gang Enterprise, including through proffering multiple cooperating co-conspirators, and by seeking additional warrants to search for and seize evidence related to RICO and VICAR (hereafter, 'enterprise evidence'). As the government continued its investigation --- including its review of voluminous electronic records --- it found significant gang enterprise evidence.

Gov. Opp at 8.

That the government, at various points after Mr. Banks' arrest, collected what they characterize as "enterprise evidence" is irrelevant to this Motion unless the timing of that collection and review justifies the delays here. In other words, the question is not whether there is evidence to justify the Third Superseding. The question is whether

---

[6] "Personal knowledge" requires that a witness who testifies to a fact has actually observed that fact. Fed. R. Evid. 602, Advisory Committee Notes.

the *timing* of the Third Superseding is excused as a product of diligent government investigation. In that regard, the government's narrative falls short and seems to purposefully obscure the timing of their efforts. In most places, it describes evidence that we know has been in the government's possession for a year or more[7]. To disguise this reality, the government's narrative of its evidence collection largely lacks dates. Gov. Opp. at 1; 4-7 (timeline of events that omits when the government received and reviewed evidence supporting Third Superseding); 7-9 (narrative of evidence collected with few specific dates of collection and review). In the few places where the Opposition does recount dates, those dates do not account for the Third Superseding's eleventh-hour timing. For example, the government recounts how in February of 2025, it sought and obtained rollback warrants to search for enterprise evidence. Gov. Opp. at 8 n.7. That was 15 months before the Third Superseding. It also recounts how, in September 2025, it obtained a warrant to search Mr. Banks' social media account and two contraband devices apparently smuggled into MDC. *Id.* That was nine months before the Third Superseding. These dates do not bolster the government's case for its own diligence.

Nor has the government been diligent in producing this voluminous discovery to the defense. For example, on June 8, 2026, the government produced a large amount of evidence that included a Forensic Examination Report of alleged Co-Conspirator 4's iCloud. That report, which is 7,307 pages long and contains a plethora of *Brady* and *Giglio*, was generated on December 15, 2025, nearly six months before it was produced in discovery. Ex. O. This is but one example of many.

For the government to carry its burden to show its diligence in bringing Mr. Banks to trial, it cannot just point to the volume of evidence collected. It must explain

---

[7] For example, the vast majority of the phones and other devices that were seized were done so at or even before the time of the arrests in this case, in October of 2024.

9

what key evidence was only discovered very late in the day, despite its exercise of reasonable investigative diligence. It does not do so.

### d. The Government Cannot Tie its Generalized Allegations of Attempts to Evade Detection or Conviction to the Delays at Issue.

The government contends: "To the extent defendants believe the investigation could have proceeded faster, defendants' own conduct significantly contributed to the investigation's complexity." Gov. Opp. at 14. It lists various ways that Mr. Banks has allegedly attempted to evade arrest or conviction, including by using coded language, instructing others to delete texts, attempting to intimidate witnesses, and even by attempting to fly to Dubai the day of his arrest. *See* Gov. Opp. at 1; 3-4, 14.

But what does a flight to Dubai nearly two years ago have to do with the last-minute timing of the Third Superseding Indictment, or with the government's delays in producing discovery in its possession? The same question remains unanswered as to the use of coded language (which the government has always claimed to decipher, with the help of its long-time cooperators), the instruction to delete texts (which were clearly not followed), or alleged attempts to intimidate witnesses. What coded language, for example, was difficult to understand up until last month, when the government brought sweeping new charges? Unless the government can tie any of these allegations to its delay, they are immaterial distractions.

### e. Tactical Advantage: the Chicago Incident.

None of the government's vague excuses stand up to scrutiny. On the contrary, the timing of the government's decisions here were used to gain tactical advantage. It took Chicago off the table as proposed 404(b) evidence in order to defeat Mr. Wilson's severance motion. Mr. Banks was also induced to put down his pencil as to that issue, so to speak. The government then reintroduced it at the last moment when Mr. Banks had been deprived of the ability to prepare his defense regarding that very complex and circumstantial case in the interim.

**III.    Any Delay of the Current Trial Date Would Be Significant, Especially Combined with Past Delays.**

The government plays coy when it pretends not to understand "what, if any, delay is relevant to the *Barker* analysis, particularly because [Mr. Banks] has not asserted what length of delay would be required should the Court deny this motion." Gov. Opp. at 18. As the government well knows, it has consistently been difficult to find trial dates in this case that work for all the lawyers involved. If no severance is granted and the Court continues this trial date, the earliest that Mr. Wilson's counsel, for example, could try this case would be August of 2027. And that is just one of the eleven lawyers whose schedules the Court would potentially have to consider in order to set a new trial date. Mr. Banks would thus be forced to wait *at least* another whole year for his trial (in the absence of a severance), despite his repeated and vigorous assertions of his speedy trial rights. If the government's actions here succeed in pushing out the current trial date, the future delay will be lengthy indeed.

Compounding the general scheduling conflicts that trials with multi-defendants and many lawyers commonly face, this Court is acutely aware that defendant Houston was recently appointed new counsel who have indicated that they need substantial time to review the voluminous discovery. The government does not indicate that it has conferred with his counsel to determine what the actual length of delay is anticipated to be. Is it a few months? A year? More? An answer to those questions must be satisfactorily answered by the government, but instead, in its Opposition, the government ignores this issue and pretends that the delay is only 21 months. That is a falsehood. It cannot go unmentioned that the government was intimately involved in the litigation that led to the necessity for Mr. Houston to get new counsel. This again, is a delay that cannot be attributed to Mr. Banks and lays squarely at the feet of the government.

It is this likely future delay, combined with the past delays, that are problematic on speedy trial grounds. The government's attempts to isolate past periods of pretrial

11

delay in order to defeat them fail. It is true that the Speedy Trial Act contains an exclusion for period of time, "when the defendant is joined for trial with a codefendant as to whom the time of trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). That exclusion only applies, however, to a "reasonable period of delay." *Id; United States v. Messer*, 197 F.3d 330, 338 (1999). As the courts have recognized, there comes a time when the cumulative amount of co-defendant-related excludable time becomes unreasonable and thus unconstitutional. A delay that might seem reasonable in the abstract or in isolation can be rendered unreasonable by the cumulative effect of other delays. *Id.* at 339*; See also United State v. Hall*, 181 F.3d 1057 (1999) (holding that the trial court "has a responsibility" to determine the reasonableness of "carrying [a defendant] along" in a co-defendant's continuance).

And so, even if the Court believes that the delay between October of 2025 and August 2026 was excusable (Mr. Banks believes that it was not), it becomes unreasonable when considered in conjunction with the delay that is likely happen in the future. And that delay falls at the feet of the government alone—not the codefendants.

## IV.    Prejudice is Presumed, Actual, and Continues to Unfold.

When the government fails to demonstrate its own diligence in bringing a defendant to trial, prejudice is presumed. *United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) (per curiam); Gov. Opp at 17. In other words, a defendant need not make a specific showing of actual prejudice where the government "intentionally delayed or negligently pursued the proceedings." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 656-57 (1992)). Along the same lines, the Supreme Court has emphasized that "consideration of prejudice is not limited to the specifically demonstrable," and "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. "*Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because times erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). Thus, the Supreme Court

12

reasons that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or, for that matter, identify." *Id.* Because the government failed to act with diligence, Mr. Banks need not demonstrate any concrete prejudice.

Even if prejudice were not presumed, though, serious prejudice has already demonstrably unfolded since the October 2025 trial date that Mr. Banks demanded. If Mr. Banks had gone to trial in October, as was his demand, it would have been only on the Los Angeles Counts, with what evidence the government had gathered then. To the extent the government believes it has, since that date, acquired additional witnesses or evidence against Mr. Banks that it would not have had in October, Mr. Banks has been prejudiced by the delay.

Further, in the words of the Supreme Court: "If witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532. Here, Co-Conspirator 6 passed away on October 26, 2025, after what should have been the October 14 start of Mr. Bank's trial. According to the government, Co-Conspirator 6 is a central figure in both Atlanta shooting incident, the Blackshear, Georgia shooting, and these new allegations surrounding an alleged car theft ring. In fact, according to the 302 of PW-2 produced just this past Monday, Co-Conspirator 6's alleged after-the-fact hearsay statements provide the bulk of PW-2's "personal" knowledge of the Atlanta incident. Ex. M at 5-6. But since he is now deceased, Mr. Banks can no longer interview him or call him to the stand. The government's Opposition ignores this completely. *See McNeely*, 336 F.3d at 832 ("the defense has been hindered by the passage of time, particularly given the nature of the charges which are most likely proved or rebutted through testimonial evidence").

Importantly, though, what prejudice will unfold during the period of any future delay remains to be seen. That is a question that the parties could be asking the Ninth Circuit to evaluate in three years' time if this trial date is pushed back. What we know at this point is that the government is currently attempting to take tactical advantage of

13

the continuance upon which it relies. For example, the government makes much of the recent guilty pleas of Mr. Montgomery-Wilson and Mr. Powell. Upon information and belief, as recently as late May and early June, the government contacted their lawyers attempting to solicit their cooperation in the case against Mr. Banks. It bears emphasizing: the government did not reach out to these lawyers a year or six months ago, as it should have in the exercise of good-faith investigative diligence; instead, it did so within days of their presentation to the grand jury in the Third Superseding. If the August 2026 trial is continued to 2027, and if either of these people (or anyone else, for that matter) decide to take the government up on its recent offer to cooperate, that is a massive tactical advantage that the government will have acquired because of a delay that it caused.  Only time will tell all the ways that the government will use the delay to the detriment of Mr. Banks' defense. It clearly intends to do so in any way it can. [8]

### V.       Mr. Banks Continues to Assert his Rights.

Mr. Banks' multiple, explicit past assertions of his speedy trial rights are clear from the record and need not be re-hashed here. However, the government's Opposition seems to suggest that Mr. Banks has made the decision to ask for a future continuance. *See* Gov. Opp. at 2 ("Following the return of the TSI, the defendants indicated they will require additional time to prepare for a trial.") To clarify: at no time has Mr. Banks agreed to continue this August 20 trial date. He continues to assert his speedy trial rights at this time.

### VI.      Conclusion.

The government has endangered Mr. Banks' constitutional rights with its lack of diligence and its purposeful choices. For the reasons set forth above and in his Motion, Mr. Banks respectfully requests that the Court sever the Los Angeles Counts from the

---

[8] In assessing the reasonableness of a delay, the Ninth Circuit considers whether the purpose of the delay was to secure the testimony of a co-defendant or a jailhouse informant. *E.g., United States v. Henry*, 984 F.3d 1343, 1353-54 (9th Cir. 2021); *Hall*, 181 F.3d at 1063.

VICAR Counts so that he may receive the trial he has been preparing for and consistently demanding.

15