DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, GA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>     v.<br><br>DURK BANKS,<br><br>        Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' MOTION TO SUPPRESS FRUITS OF UNLAWFULLY SEIZED AND SEARCHED TELEPHONE; EXHIBITS [FILED UNDER SEAL]**<br><br>**Hearing Date/Time: August 13, 2026 at 10:00 a.m.** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this motion to suppress the fruits of an unlawfully seized and searched cellular telephone. Mr. Banks also seeks to exclude this evidence as late-disclosed.

This motion is based upon the attached memorandum of points and authorities and attached exhibits, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated:  July 27, 2026          BY:  /s/ *Christy O'Connor*
                               Drew Findling
                               Marissa Goldberg
                               Brian Steel
                               Christy O'Connor
                               *Attorneys for Durk Banks*

2

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

I.   Introduction and Summary of the Argument.......................................................1

II.    Timeline.................................................................................................................2

III.    Argument ..............................................................................................................4

   a.    The Court has Authority to Exclude Late-Disclosed Evidence ...............4

   b.    The Digital Device in Question was Outside the Scope of the Gwinnett County Warrant.................................................................................................5

   c.    The Rockdale Warrant was Invalid on its Face .........................................6

   d.    The GBI's Seizure of the Digital Data was Overbroad, and the Data was Not Returned/Destroyed as the Law Requires........................................................7

   e.    The FBI's Delay in Obtaining and Executing a Search Warrant was Unreasonable under the Fourth Amendment....................................................11

IV.    Conclusion..........................................................................................................13

**Table of Authorities**

*Andreson v. Maryland*,
   427 U.S. 463 (1976) ................................................................................... 7,12

*Comprehensive Drug Testing*,
   621 F.3d 1162 (9th Cir. 2010) (en banc) (per curiam) ........................... 11,12

*Dalia v. United States*,
   441 U.S. 238 (1979) ...................................................................................... 13

*Illinois v. Caballes*,
   543 U.S. 405 (2005) ...................................................................................... 13

*In re Grand Jury Investigation Concerning Solid State Devices, Inc., 130 F.3d 853 (9th Cir. 1997)*
   ....................................................................................................................... 7

*Marron v. United States*,
   275 U.S. 192 (1927) ........................................................................................ 7

*Marvin v. United States*,
   732 F.2d 669 (8th Cir. 1984) ....................................................................... 12

*Maryland v. Garrison*,
   480 U.S. 79, 107 S. Ct. 1013 (1987) ............................................................. 7

*Segura United States*,
   468 U.S. 796 (1984) ...................................................................................... 13

*Stanford v. Texas*,
   379 U.S. 476 (1965) ........................................................................................ 7

*Steagald v. United States*,
   451 U.S. 204 (1981) ........................................................................................ 9

*Terry v. Ohio*,
   392 U.S. 1 (1968) .......................................................................................... 13

*United States v. Abrams*,
   615 F.2d 541 (1st Cir. 1980) ........................................................................ 10

*United States v. Florence*,
   802 F.3d 1028 (9th Cir. 2015) ........................................................................ 9

*United States v. Grace,*
    526 F.3d 499 (9th Cir. 2008) .......................................................................... 6

*United States v. Hill,*
    459 F.3d 966 (9th Cir. 2006) .......................................................................... 14

*United States v. Hillyard,*
    677 F.2d 1336 (9th Cir. 1982) ........................................................................ 10

*United States v. Jacobsen,*
    466 U.S. 109 (1984) ........................................................................................ 13

*United States v. Mitchell,*
    565 F.3d 1347 (11th Cir. 2009) .............................................................. 14,15

*United States v. Place,*
    462 U.S. 696, 707-710 (1983) ................................................................. 13,14

*United States v. Ramirez,*
    523 U.S. 65 (1998) .......................................................................................... 13

*United States v. Rettig,*
    589 F.2d 418 (9th Cir. 1978) ........................................................................... 7

*United States v. Santerelli,*
    778 F.2d 609 (11th Cir. 1985) ........................................................................ 12

*United States v. Sullivan,*
    797 F.3d 623 (9th Cir. 2015) .......................................................................... 14

*United States v. Tamura,*
    694 F.2d 591 (9th Cir. 1982) .................................................................. 7,10,11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction and Summary of the Argument.**

On July 19, 2026, the government disclosed to the defense its draft trial exhibits. Among those exhibits was a text message, marked as government exhibit 200, that was produced to the defense for the first time. [1] The text should be excluded from the trial in this case for the following reasons:

*First*, the Court should exclude exhibit 200 under its inherent authority and Rule 403 because it was late-disclosed, produced to the defense for the first time just one month before trial, after almost two years of diligent defense preparation. This phone had been in the Georgia Bureau of Investigation's ("GBI") custody since July of 2021, when it was seized from Mr. Banks' home after he was the victim of a home invasion and robbery attempt. With reasonable diligence, the government could and should have requested it earlier, and thus, produced it earlier.

*Second*, the digital device was outside the scope of the Gwinnett County, Georgia warrant pursuant to which it was seized. Exhibit B (Gwinnett County warrant). Under the warrant, law enforcement officers were permitted to seize electronic devices belonging to the *perpetrators* of the home invasion, not its victims. Ex. B at 6. A law enforcement premises search reasonably tailored to the warrant's authority would have included attempting to ascertain the digital devices' owners before seizing them. If the devices were seized by mistake, upon learning that they belonged to Mr. Banks, law enforcement was dutybound to return them to him. Yet they did not-- instead, retaining it without lawful authority to do so.

*Third*, after unlawfully seizing and retaining the digital device, the GBI obtained a second warrant out of Rockdale County, Georgia. Exhibit C (Rockdale County warrant). This warrant was to search Mr. Banks' digital device, ostensibly for the

---

[1] Government's Exhibit 20 is attached to this Motion as Exhibit A. The government believes that this screenshot was produced on July 15, 2026, in discovery production 25, but the defense was unable to see it in that production. In any event, whether it was produced July 15 or four days later on July 19, that still constitutes late disclosure.

purpose of determining what other subjects "may want to harm and/or steal from him." The warrant, on its face, falls short of the Fourth Amendment's probable cause and nexus requirements.

*Fourth*, even if that Rockdale County warrant were valid, law enforcement failed to promptly segregate the electronic data that was seizable from that which was not. It then failed to promptly return/destroy copies of data that were not responsive to the warrant. The warrant thus became a vehicle for the government to gain access to data that there was no probable cause to collect.

*Fifth*, as the digital data unlawfully languished in GBI custody, the FBI waited until approximately two years (maybe more) into this case before applying for a warrant. This is an unreasonable and unlawful delay.

## II.    Timeline.

- July 11, 2021: Mr. Banks and his wife contact law enforcement to report the sound of glass breaking as multiple unidentified subjects make unauthorized entry into their home. *See* Ex. C at 6, ¶ 2.

- Jul 11, 2021: The GBI obtains a search warrant to examine Mr. Banks' residence. Ex. B. The scope of the search warrant includes "electronic devices and any other personal belongings the perpetrators may have left behind that would aid in the identification of the perpetrators." Ex. B at 6. During the execution of the warrant, several devices are seized. Ex C at 7, ¶ 7. Once the GBI realized that the digital device in question did not belong to the perpetrators of the home invasion and was thus outside the scope of the warrant, they failed to return it to Mr. Banks.

- August 19, 2021: GBI obtains a search warrant to examine the electronic devices seized pursuant to the July 11 warrant. Ex. C. The stated purpose of the search is as follows:

    15. Due to DURK BANKS reportedly being a member of the BGD'S and his association with various other factions of the gang, it is feasible that

2

there are a lot of subjects that may want to harm and/or steal from DURK BANKS and COX. This circumstance is compounded by DURK BANKS status as a nationally renowned entertainer/rapper. Also, with the information provided by Special Agent CARTER, it is possible that people are seeking to do harm and/or steal from DURK BANKS due to the amount of money being offered for retaliatory actions against DONTAY'S killer(s). . . Ex. C at 8.

17. The electronic devices that were collected from the scene could assist with the identification of potential subjects who may want to harm and/or steal from DURK BANKS and COX. Due to the training and experience of your affiant, it is known that electronic devices can be used for a variety of activities to include electronic communications i.e. text messages, photos, videos and voice recordings; social media application communications, global positioning system (GPS) information. The devices could assist in the identification of suspects through various forms of electronic messages, the identification of social media profile(s)/communication(s). Ex. C at 9.

- Once a reasonable amount of time for the search has elapsed, the digital devices are not returned to Mr. Banks and Ms. Cox; nor are the digital copies destroyed. Instead, they remain in the GBI's custody for five years and counting.

- October 24, 2024: Mr. Banks is charged by complaint in this case. Dkt. No. 1.

- November 7, 2024: Mr. Banks is charged by First Superseding Indictment. Dkt. No. 27.

- July 8, 2026: The government obtains a warrant to search a "hard drive containing the forensic image of two iPhones seized from a residence associated with Durk BANKS in Braselton, Georgia, by the Georgia Burau of Investigation in July 2021." Exhibit D (7.8.26 warrant application); Exhibit E (7.8.26 warrant).

- July 15, 2026: The government produces to the defense Production 25. The defense is unable to view exhibit 200, although the government has represented that it is contained in the production.
- July 19, 2026: the government produces exhibit 200 to the defense among its draft trial exhibits.
- July 20, 2026: The government obtains a second search warrant, this time to search the iPhone itself. Exhibit F (7.20.26 warrant application); Exhibit G (7.20.26 warrant).

## III.    Argument

Exhibit 200, produced to the defense just over a month before trial, should be excluded under the Court's inherent authority to manage its docket and under Federal Rule of Evidence 403. It should also be suppressed because it was seized, and that seizure prolonged, in violation of Mr. Banks' Fourth Amendment right against unreasonable searches and seizures.

### a.  The Court has Authority Exclude Late-Disclosed Evidence.

"There is a well established principle that district courts have inherent power to control their dockets." *United States v. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (internal citation and brackets omitted). "Further, judges exercise substantial discretion over what happens *inside* the courtroom." *Id.* (internal citation omitted) (emphasis in original). Further, a trial court has the authority to exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice. Fed. R. Evid. 403.

The government has been investigating this crime for approximately two years or more. Mr. Banks has been in custody in this case for 21 months. During this time period, Mr. Banks' defense team has been preparing for trial and developing a trial strategy based on discovery timely produced. There is no good reason that the government should have waited until one month before trial to seek a warrant for evidence that has been in law enforcement's custody since 2021. In fairness to the defense, the Court should exclude Government's Exhibit 200 from this trial.

4

**b. The Digital Device in Question was Outside the Scope of the Gwinnett County Warrant.**

To protect against general warrants, the Fourth Amendment requires that a seizure is limited by a particular description of what is to be seized-- also called the particularity requirement. First, the warrant must describe the things to be seized with sufficiently precise language so that it tells the officers how to separate the items properly subject to seizure from irrelevant items. *See Marron v. United States*, 275 U.S. 192, 296 (1927) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."); Second, the description of the things to be seized should be limited to the scope of the probable cause established in the warrant. *See In re Grand Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853, 857 (9th Cir. 1997).

Taken together, the elements require officers to conduct narrow seizures that attempt to "minimize[] unwarranted intrusions upon privacy," *Andreson v. Maryland*, 427 U.S. 463, 482 n.11 (1976). The particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another." *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (internal citation omitted); *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013 (1987) (the requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit"); *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) ("As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized.") (internal citations omitted); *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (where a search is not confined in good faith to the objects of the warrant and where officers substantially exceed any reasonable interpretation of the warrant's provisions, the warrant becomes an instrument for conducting a general search prohibited by the Fourth Amendment).

The Gwinnitt County warrant, obtained July 11, 2021, authorized law enforcement officers to seize electronic devices belonging to the *perpetrators* of the home invasion and attempted robbery of Mr. Banks and his wife. Ex. B at 6. It did not permit law enforcement to seize digital devices belonging to the *victims* of those crimes. This is not (in the words of the *Tamura* court) the "comparatively rare instance[]" where off-site examination of the devices was necessary to determine whether they contained materials described by the warrant. Before seizing the digital devices, law enforcement could and should have taken modest, reasonable measures to ascertain the devices' owner(s), in keeping with the warrant's plain terms. They could have simply asked Mr. or Mrs. Banks whether the devices belonged to them, for example. Once law enforcement realized the devices did not belong to the perpetrators (and they should have realized that onsite), they were dutybound to refrain from seizing them. Yet they did not-- instead, seizing and retaining vast amounts of data without lawful authority to do so. This seizure and search were not confined in good faith to the objects of the warrant.

### c.  The Rockdale Warrant was Invalid on its Face.

The Warrant Clause of the Fourth Amendment explicitly mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.[2] To satisfy these constitutional requirements, a search warrant

---

[2] The Supreme Court has recognized that "it was the abusive use of the warrant power, rather than any excessive zeal in the discharge of peace officers' inherent authority, that precipitated the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 608 (1980). The Fourth Amendment grew out of opposition to the "infamous general warrants known as writs of assistance," which lacked specificity in time and place: they "did not specify where searches could occur and they remained effective throughout the sovereign's lifetime." *Id.* (internal citations omitted). *See also Maryland v. King*, 569 U.S. 435, 466 (2013) (describing that "[a]t the time of the founding, Americans despised the British use of the so-called 'general warrants,'" which were "not limited in scope and application"); *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)

6

application must establish two distinct elements of probable cause. First, there must be probable cause to believe that a crime has been committed (the "commission" element). Second, there must be probable cause to believe that the enumerated evidence of that specific offense will be found at the place to be searched (the "nexus" element). *See Steagald v. United States*, 451 U.S. 204 (1981); *United States v. Florence*, 802 F.3d 1028, 1043 (9th Cir. 2015).

The Rockdale County Warrant here fails in both regards. There is no authority for obtaining a warrant to search a person's phone in order to protect that person from future crimes. That is true regardless of whether the person is suspected to have gang affiliations, whether the person is a "nationally renowned entertainer/rapper," and whether it is suspected that the person will be targeted due to his wealth. *See* Ex. C at 8, ¶ 15. This warrant fails on its face to satisfy the Fourth Amendment.

### d. The GBI's Seizure of the Digital Data was Overbroad, and the Data was Not Returned/Destroyed as the Law Requires.

Even if the Rockdale Warrant were initially valid, how law enforcement handled the digital data after its seizure violates the Fourth Amendment. Under the law, when law enforcement "over-seizes" data described by a warrant—that is, they seize both responsive and nonresponsive materials due to the impracticability of onsite sorting—it is required to promptly return and/or destroy nonresponsive materials. Failure to do so converts a warrant into the abhorred general warrant and violates the Constitution.

In executing a warrant-- especially to search a digital device-- it is sometimes necessary for law enforcement to inspect a larger class of materials in order to determine what materials are within the warrant's scope. In such a case, "a search warrant may direct inspection of the entire class or all of the goods if there are

(reasoning that the warrant requirement was targeted at the "specific evil" of the "'general warrant' abhorred by the colonists," which authorized a "general, exploratory rummaging in a person's belongings").

objective, articulated standards for the executing officers to distinguish" between seizable and non-seizable items. *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982). "A search warrant authorizing inspection will not be a general warrant if such standards reasonably guide the officers in avoiding seizure of protected property, and if upon return of the warrant the magistrate may review the search to determine whether the instructions were followed and legitimate property and privacy interests were protected." *Id.*

The Ninth Circuit cautions, though, that in contrast to this on-site sorting, the "wholesale *seizure* for later detailed examination of records not described in a warrant is significantly more intrusive, and has been characterized as the kind of investigatory dragnet that the *fourth amendment* was designed to prevent." *Tamura*, 694 F.2d at 595 (citing *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980)). Even so, in those instances "where on-site sorting is infeasible and no other practical alternative exists," law enforcement is permitted to "apply for specific authorization for large-scale removal of material" in order to sort divide materials that are responsive to a warrant from those that are not. *Id.* at 595-96; *see Hillyard*, 677 F.3d at 1340 ("[i]f comingling prevents on-site inspection, and no other practical alternative exists, the entire property may be seizable, at least temporarily").

Because digital devices contain such vast quantities of often-intermingled data[3],

---

[3] "Laptop computers, iPads, and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential business documents, medical records and private emails. This type of material implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their 'papers.'" *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (internal citations omitted); *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006) (noting "heightened specificity concerns in the computer context, given the vast amount of data they can store"); *Comprehensive Drug Testing*, 621 F.3d at 1175 (recognizing that "electronic files are generally found on media that also contain thousands or millions of other files among which the sought-after data may be stored or concealed"); Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev.

"over-seizing is an inherent part of the electronic search process" and is "far more common than in the days of paper records." *Comprehensive Drug Testing*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam); *compare Tamura*, 694 F.2d at 595 (describing the over-seizure of physical documents for off-site sorting, in 1982, as "comparatively rare"). To prevent rampant Fourth Amendment violations in large-scale seizures of electronic data, the Ninth Circuit has made clear that its *Tamura* opinion governs situations where the materials that are over-seized for off-site review are electronic as well as non-electronic. "*Tamura* has provided a workable framework for almost three decades . . . We have updated *Tamura* to apply to the daunting realities of electronic searches." *Comprehensive Drug Testing*, 621 F.3d at 1177. The Court summarized its holding in *Tamura*: "We disapproved the wholesale seizure of the documents and particularly the government's failure to return the materials not the object of the search once they had been segregated." *Id.* at 1169. And it reiterated that the "point of the *Tamura* procedure is to maintain the privacy of materials that are intermingled with seizable materials, and to avoid turning a limited search for particular information into a general search of office file systems and computer databases," *id.* at 1170. The Court cautions that the over-seizure inherent in digital review and the "pressing need of law enforcement for broad authorization to examine electronic records . . . creates a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *Comprehensive Drug Testing*, 621 F.3d at 1162.

> This calls for greater vigilance on the part of judicial officers in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures. *The process of segregating electronic data that is seizable from that which is not must not*

531, 569 (2005) (explaining that computers have become the equivalent of "postal services, playgrounds, jukeboxes, dating services, movie theaters, daily planners, shopping malls, personal secretaries, virtual diaries, and more").

*become a vehicle for the government to gain access to data which it has no probable cause to collect.*

*Id.* at 1177 (emphasis added). Applying *Tamura*'s principles to the facts of *Comprehensive*, the Court concluded that the government had no "independent basis to retain" data that was outside the scope of the warrant. *Id.* at 1171.

Indeed, to prevent a seizure for off-site sorting from becoming an unconstitutional "investigatory dragnet," once law enforcement has sorted the responsive from the nonresponsive materials, the government must return the seized documents not described in the warrant without unnecessary delay. *Tamura*, 694 at 596-97 (reasoning that retaining nonresponsive documents for at least six months after sorting them off-site was "improper," "unreasonable," and "therefore unconstitutional"). The Ninth Circuit reasoned that "law enforcement officials generally can avoid violating *fourth amendment* rights" by handling the seized material "in accordance with the procedures set forth in the American Law Institute's Model Code of Pre-Arraignment Procedure." *Id.* at 595-96. The opinion cites Model Code Section SS 220.5, subsection (3) of which is entitled "Return of Intermingled Documents," which reads, in part: ". . . at the conclusion of the search all documents other than those covered by the warrant, or otherwise subject to seizure, shall be returned or released from impoundment." *Id.* at 596 n.3. *Accord Andreson v. Maryland*, 427 U.S. 463, 482 n.11 (1976) (stating that searches must be "conducted in a manner that minimizes unwarranted intrusions upon privacy" and observing that to the extent that seized papers "were not within the scope of the warrants or were otherwise improperly seized, the State was correct in returning them voluntarily and the trial judge was correct in suppressing others"); *United States v. Santerelli*, 778 F.2d 609, 616 (11th Cir. 1985) (noting no undue privacy infringement in off-site examination "so long as any items found not to be relevant were promptly returned"); *Marvin v. United States*, 732 F.2d 669, 676 (8th Cir. 1984) (ordering the return of seized documents and copies falling outside of the scope of the warrant).

10

Assuming the Rockdale Warrant were valid on its face (which it is not), law enforcement would have been justified in seizing the entirety of Mr. Banks' digital device for off-site sorting for a period of time reasonably necessary to determine what data was and was not responsive to the warrant. However, once law enforcement concluded that sorting process with reasonable diligence, it was required to return nonresponsive data to Mr. Banks and to destroy its own copies. It did not do so here. Instead, it retained the entirety of the digital data for five years until finally handing it over to the FBI. This is the very "investigatory dragnet" the Fourth Amendment was designed to prevent.

### e. The FBI's Delay in Obtaining and Executing a Search Warrant was Unreasonable under the Fourth Amendment.

*Tamura*'s requirement that seized materials deemed non-responsive to a search warrant be returned is in accord with the long-standing general principle that a seizure becomes unreasonable "if it is prolonged beyond the time reasonably required to complete th[e] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Segura v. United States*, 468 U.S. 796, 812 (1984) (stating that "a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons"); *United States v. Jacobsen*, 466 U.S. 109, 125 (1984): ("[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'") (citing *United States v. Place*, 462 U.S. 696, 707-710 (1983)); *Terry v. Ohio*, 392 U.S. 1, 20 (1968) (reasoning that the Fourth Amendment does not only ask "whether the officer's action was justified at its inception," but also "whether it was reasonably related in scope to the circumstances which justified the interference in the first place"). As with any search, "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia v. United States*, 441 U.S. 238, 258 (1979); *United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness which

11

governs Fourth Amendment analysis … governs the method of execution of the warrant."); *United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006) ("reasonableness of the officer's acts both in executing the warrant and in performing a subsequent search of seized materials remains subject to judicial review"). In assessing governmental delay in the Fourth Amendment context, courts balance a person's possessory interests in the item seized against the government's interests that allegedly justify the intrusion. *See United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). In evaluating the government's conduct, the Court should "take into account whether the police diligently pursue[d] their investigation." *United States v. Place*, 462 U.S. 696, 709 (1983).

The digital data in this case languished in GBI custody for five years before the FBI applied for a warrant to search it in July of 2026. For at least 21 months of that time period, Mr. Banks was being criminally prosecuted in this case. Yet the government waited until a month and a half before trial to obtain a warrant to search the device.

In *Dass*, a delay of just 23 days in obtaining a search warrant to search a package in law enforcement custody violated the Fourth Amendment. *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988). The Ninth Circuit emphasized that the government failed to justify its delay beyond citing an unanticipated onslaught of suspicious packages. *See id.* at 414-16. Similarly, in *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), the Eleventh Circuit found a 21-day delay in obtaining a warrant unreasonable. It rejected as a "compelling reason" for the delay the Agent's schedule, noting that he had two and one-half days after seizing the hard drives before left town for training in which to apply for a warrant, and that another Agent could have applied for the warrant in his stead. *Id.* at 1351. The Court reasoned that

> [t]he purpose of securing a search warrant soon after a suspect is dispossessed of a closed container reasonably believed to contain contraband is to ensure its prompt return should the search reveal no such incriminating evidence, for in that

event the government would be obligated to return the container (unless it had some other evidentiary value. In the ordinary case, the sooner the warrant issues, the sooner the property owner's possessory rights can be restored if the search reveals nothing incriminating. If anything, this consideration applies with even greater force to the hard drive of a computer, which is the digital equivalent of its owner's home, capable of holding a universe of private information.

*Id.* at 1352.

The delay in this case was more egregious than those in both *Dass* and *Mitchell*. The federal government was investigating Mr. Banks' involvement in this case at least as early as October 2024, when he was charged by complaint, but more likely earlier than that. During that time, Mr. Banks was continually dispossessed of his property interest and privacy rights in the telephone and digital data. The government has offered no justification for its delay in obtaining its warrant here. Given the extent of the intrusion upon Mr. Banks' privacy and property, and given the disruptive effect that the delay has had on his trial preparation, it is difficult to imagine one that would suffice.

## IV.  CONCLUSION.

For the reasons set forth above, the Court should suppress and exclude from this trial all fruits from the search of the digital data seized by GBI in July of 2021 and searched by the federal government in July of 2026.

13