DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, GA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>    v.<br><br>DURK BANKS,<br><br>    Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPONSE TO GOVERNMENT MOTION IN LIMINE NO. 2 TO EXCLUDE IRRELEVANT EVIDENCE AND ARGUMENTS PURSUANT TO 403**<br><br>**Hearing Date/Time: August 13, 2026 at 10:00 a.m.** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this response to the government's motion in limine to exclude irrelevant evidence and arguments pursuant to Federal Rule of Evidence 403. Dkt. No. 492.

This response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated:                                    BY:   /s/ *Christy O'Connor*
                                                 Drew Findling
                                                 Marissa Goldberg
                                                 Brian Steel
                                                 Christy O'Connor
                                                 *Attorneys for Durk Banks*

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    The Parties Agree: Jury Nullification is Impermissible.

The government moves to preclude Mr. Banks from engaging in jury nullification. The government is correct, and Mr. Banks agrees, that jury nullification has no place in a federal trial. In other words, both parties agree that irrelevant evidence is inadmissible. The defense does not intend to introduce evidence about Mr. Banks' endorsements, fan support, celebrity business and/or music collaborations, his charitable contributions and philanthropic activities, his potential punishment, his family, or any other "personal factor" unless that evidence has some bearing on a fact at issue. If one of these topics becomes relevant at trial in the defense's good-faithed judgment, and the government disagrees with that assessment, then it can object at trial, as the defense will do in turn when the shoe is on the other foot. Despite the parties' agreement on this, Mr. Banks responds only to point out what the government's motion does get wrong.

### II.    The Charging Documents Touch Upon Issues Related to Mr. Banks' Defense.

The case against Durk Banks exists only because the government has over-relied on the word of dubious cooperators, failing to sufficiently scrutinize their stories. It also exists because the government insists upon conflating art with literal self-incrimination. That is the truth, and as such, it will be at the heart of Mr. Banks' defense at trial. As described below, when the government seeks to preclude any reference to any former charging instruments, it seeks to dampen Mr. Banks' ability to explore these themes at trial, as is his right under the Fifth and Sixth Amendments. The "lyrics issue" that the government now seeks to exclude from trial, along with one facet of what makes the government's "bounty" theory so problematic, are illustrated in the various charging documents and speak directly to Mr. Banks' defense. He is entitled to explore them at trial. The government may not use the happenstance that these themes appear in charging documents to shoe-horn in otherwise-inadmissible VICAR evidence.

### a. The "Lyrics Issue."

By now, the Court is well aware of what Mr. Banks will refer to as the "lyrics issue." In sum, for a significant portion of the government's investigation in this case, it was under the false impression that Mr. Banks' song, "Wonderful Wayne & Jackie Boy," was a literal confession about the charged murder of S.R. and attempted murder of T.B. [1] Of course, as even the government must now admit, this song could not have been a confession to an August 2022 murder because it was recorded in *January* 2022. *See* dkt. No. 135-1. As the government must also now admit, although there is a fan-created version of the song on YouTube that references audio from the news clip taken shortly after S.R.'s murder, Mr. Banks is not responsible for what his fans create.

The government's misimpression was born in PW-1's lies, per government-produced discovery. It survived because of the government's failure to subject PW-1's word to any sort of meaningful scrutiny. It led to the presentation of false evidence to a grand jury and an indictment based on that false evidence.[2] It also led to multiple search warrants predicated in part on that lie. And it iterates each time that the government attempts to cast Mr. Banks' music as literal confession, as it will continue to do during this trial. For these reasons, the lyrics issue is fair game.

### b. The False Allegation Regarding Bounty Issue.

This lyrics issue has a fraternal twin. In the first superseding indictment, the government alleged that Mr. Wilson paid out Mr. Banks' bounty to co-conspirators for

---

[1] The indictment reads: "Following the attempted murder of T.B. and the murder of S.R., defendant Banks sought to commercialize S.R.'s death by rapping about his revenge on T.B. with music that explicitly references audio from the news clip taken shortly after S.R.'s murder where T.B. screamed 'no, no!' after seeing S.R.'s body." Dkt. No. 27 at 3.

[2] Dkt. No. 17 at 3:11-19 (first superseding indictment); Dkt. No. 135 (Mr. Banks' motion to dismiss based on false evidence presented to grand jury); Dkt. No. 147 (second superseding indictment removing falsity regarding the song lyrics). Mr. Banks' request for grand jury materials related to government and government witness misstatements to the grand jury remains pending. *See* Dkt. Nos. 136, 166.

S.R.'s killing: "At the direction of defendant BANKS, defendant WILSON would pay the bounty or monetary reward, and/or cause payment to be made for the killing of S.R., on behalf of co-conspirators known and unknown, to the conspirators hired to kill T.B." Dkt. No. 27 at 6. The second superseding indictment notably omits this allegation. *Compare* Dkt. No. 147 at 5-6.

Like the lyrics issue, the lie about Mr. Wilson paying out this bounty originated with PW-1, per government-produced discovery. Before inducing the grand jury to charge based in part upon it, the government failed to scrutinize PW-1's word. As was the case with the lyrics issue, it turns out that the allegation that Mr. Wilson stayed behind in Los Angeles to collect and pay out Mr. Banks' alleged bounty proved to be demonstrably false, contradicted by flight records showing that he did not. The government's murder-for-hire charges necessitate proof of bargained-for-consideration. This sequence demonstrates that the government has failed to properly scrutinize its witness' stories on that point-- an example of its bias in favor of its unreliable witnesses-- believing what it wants to believe instead of what the evidence corroborates.

### III.  Mr. Banks is Entitled to Undermine the Reliability of the Government's Investigation and Witnesses.

A defendant is entitled to elicit at trial details of an investigatory process that potentially affects an agent's credibility and, "perhaps more importantly, the weight to be given to evidence produced by his investigation." *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (plain error and abuse of discretion to prevent jury from analyzing the quality of the government's investigation, which illogically removes from the jury potentially relevant information); *Kyles v. Whitley*, 514 U.S. 419, 446 n.15 (1995) ("when . . . the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will

diminish it"); *id.* at 442 n.13 (discussing the utility of attacking police investigations as "shoddy").

Further, it should go without saying that the Sixth Amendment right of confrontation includes the right to undermine the credibility of government witnesses through cross-examination. *Davis v. Alaska*, 415 U.S. 308 (1974). This includes attacks on witness credibility directed towards revealing possible biases, prejudices, or ulterior motives of the witnesses. "The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." *Id.* at 316 (citation modified).

## IV. Cross-Examination on the Government's Shoddy Investigation and Witness Credibility Does Not Open the Door to Severed Counts.

The government seems to argue that any mention of a non-operative charging document at trial would open the door to counts that the Court recently severed, or "other bad act" VICAR evidence. Dkt. No. 492 at 2-3. But if this is true, there was never much of a door in the first place. This could not have been the Court's intention when it ordered a severed trial. Reading between the lines of the government's motion, it seems that the real danger at trial will be that the government will take any opportunity to attempt to introduce VICAR-related evidence. It is that danger, not the imagined specter of jury nullification, against which the Court should protect.

## V. Conclusion.

For the reasons set forth above, the Court should deny the government's motion in its entirety. The defense does not intend to seek the introduction of irrelevant evidence or engage in jury nullification. In fairness and under the Constitution, the defense is entitled to probe the government's shoddy investigation, even where that shoddiness is evidenced by an inoperative charging instrument.

4