BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division (Cal. Bar No. 265481)
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/0813/7367
     Facsimile: (213) 894-0142
     E-mail:    ian.yanniello@usdoj.gov
              michael.morse@usdoj.gov
              daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>        v.<br><br>DURK BANKS, et al.,<br><br>     Defendants. | No. CR 24-621(D)-MWF-1<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT BANKS' MOTION TO SUPPRESS FRUITS OF UNLAWFULLY SEIZED AND SEARCHED TELEPHONE; DECLARATION OF GBI ASAC LISA VORRASI, EXHIBIT 1; DECLARATION OF FBI SA JARRON FAMRBY; EXHIBITS 2-3 |

     Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby files its opposition to defendant Banks' Motion to Suppress Fruits of Unlawfully Seized and Searched Telephone.

//

//

This opposition is based upon the attached memorandum of points and authorities, the attached declarations of GBI ASAC Lisa Vorrasi and FBI SA Jarron Farmby and related exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 7, 2026            Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division


    _/s/_____
IAN V. YANNIELLO
MICHAEL J. MORSE
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                 PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   FACTUAL BACKGROUND.............................................4

      A.    The Braselton County Shootout on July 11, 2021...........4

      B.    GBI Seizes Defendant Banks' Phone Pursuant to the July 11, 2021 Gwinnett County Warrant (i.e., the Georgia Home Warrant)...............................................4

      C.    GBI Obtains a Warrant to Search Defendant Banks' Phone....8

      D.    The FBI Obtains the Forensic Extraction of the Phone on July 6, 2026 from the GBI and Searched it Pursuant to a Federal Warrant......................................10

III.  ARGUMENT......................................................12

      A.    GBI Agents Lawfully Seized Defendant's Phone in July 2021 and Subsequently Obtained a Valid Warrant to Search the Device......................................12

            1.    The Georgia Home Warrant Authorized the Seizure of the Cellphone to Investigate the Crime of Reckless Conduct....................................12

            2.    The Temporary Detention of Defendant's Phone Was Also Justified Because Investigators Acted in Good Faith Based on Probable Cause Pursuant to the Plain View Doctrine and to Prevent the Destruction of Evidence.............................14

      B.    GBI Retained the Digital Extraction in Good Faith Reliance on the Georgia Phone Warrant....................17

      C.    The FBI's Seizure of the Digital Extraction is Wholly Attenuated from the GBI's Original Seizure...............18

      D.    The Drastic Remedy of Exclusion is Not Warranted, as the Inevitable Discovery and the Good Faith Exception Apply to Investigators' Conduct.........................20

IV.   CONCLUSION....................................................22

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**Federal Cases**

Herring v. United States,
  555 U.S. 135 (2009) ................................................ 20

Kaley v. United States,
  571 U.S. 320 (2014) ............................................ 12, 13

Nix v. Williams,
  467 U.S. 431 (1984) ................................................ 21

Riley v. California,
  573 U.S. 373 (2014) .......................................... 14, 15, 16

United States v. Daniels,
  549 F.2d 665 (9th Cir. 1977) ...................................... 18

United States v. Dass,
  849 F.2d 414 (9th Cir. 1988) ...................................... 19

United States v. Henry,
  827 F.3d 16 (1st Cir. 2016) ....................................... 16

United States v. Hunt,
  153 F.4th 858 (9th Cir. 2025) ..................................... 22

United States v. Johnson,
  469 U.S. 478 (1985) ............................................... 17

United States v. Leon,
  468 U.S. 897 (1984) ............................................... 20

United States v. McGill,
  8 F.4th 617 (7th Cir. 2021) ........................... 14, 16, 21, 22

United States v. Medina,
  181 F.3d 1078 (9th Cir. 1999) ..................................... 19

United States v. Ramirez,
  473 F.3d 1026 (9th Cir. 2007) ..................................... 15

United States v. Ruckes,
  586 F.3d 713 (9th Cir. 2009) ...................................... 21

United States v. Sessions,
  2024 WL 194190 (9th Cir. Jan. 18, 2024) .......................... 19

ii

United States v. Tamura,
  694 F.2d 591 (9th Cir. 1982) ................................. 17, 18

United States v. Wardlow,
  951 F.2d 1115 (9th Cir. 1991) ..................................... 18

United States v. Winn,
  811 F. App'x 1011 (9th Cir. 2020) ................................ 16

United States v. Wong,
  334 F.3d 831 (9th Cir. 2003) ..................................... 14

**State Cases**

Beaton v. State,
  255 Ga. App. 901 (2002) ......................................... 13

Horowitz v. State,
  243 Ga. 441 (1979) .............................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Following a shootout at defendant Banks' home in July 2021[1] --- where law enforcement seized multiple guns and 11 cartridge casings, six of which were found near a balcony where defendant admitted to firing his gun "into the air" --- the Georgia Bureau of Investigation ("GBI") searched defendant's residence pursuant to a search warrant (the "Georgia House Warrant").[2]  During the search, investigators seized multiple guns and boxes of ammunition, spent shell casings, and defendant's cellphone to aid their investigation into the gunfight, among other items.

While defendant's phone was seized pursuant to the initial warrant, GBI did not search the phone until it obtained a subsequent warrant that authorized the seizure of data related to multiple crimes, including felon in possession of firearms (the "Georgia Phone Warrant").[3]  Based on the second warrant, the GBI created the forensic extraction of the device, which they maintained in their possession pursuant to the express terms of the Georgia Phone Warrant.

After the grand jury returned additional charges against defendants in this case, including VICAR murder, the government obtained a copy of the forensic extraction from the GBI on July 6, 2026.  Within days, a federal magistrate judge in Los Angeles

---

[1] This occurred approximately two months after the co-conspirators' first attempt to ambush and kill T.B. in Blackshear, Georgia on May 2, 2021.

[2] This warrant was authorized by a Georgia magistrate judge in Gwinnett County, Georgia.

[3] This warrant was authorized by a Georgia magistrate judge in Rockdale County, Georgia.

1

authorized a warrant to search the forensic extraction for evidence related to this case.  Material evidence was found on the device, including text messages about locating T.B. and T.B.'s associate T.L. --- the individual who shot Dayvon Bennett aka "King Von" on November 6, 2020.

Defendant Banks moves to suppress the evidence, raising numerous legal issues in an attempt to justify suppressing the incriminating evidence found on the device.  However, the motion boils down to three narrow issues:

(i) whether state investigators lawfully seized defendant's phone pursuant to the Georgia House Warrant on July 11, 2021;

(ii) whether the *temporary detention* of defendant's phone from July 11, 2021 until state investigators obtained a warrant to search the phone (i.e., the Georgia Phone Warrant) was independently permissible under the Fourth Amendment; and

(iii) whether on these facts --- Georgia investigators good faith conduct seizing the phone while investigating a shootout and then obtaining a second warrant to search the phone, coupled with the attenuation between a wholly separate federal investigation years later --- the drastic remedy of exclusion of the highly relevant evidence is warranted.

While all three issues should be resolved in the government's favor, the Court can deny the motion based on any of the below:

*First*, the Georgia Home Warrant authorized the seizure of defendant Bank's phone.  All parties agree the Georgia House Warrant authorized state law enforcement to lawfully enter and search the Banks' residence.  Based on the plain language of the warrant, it authorized the seizure of defendant's phone because the affidavit

established probable cause that defendant Banks --- who claimed he fired a gun multiple times "into the air" in a residential neighborhood --- was a suspected perpetrator of at least Reckless Conduct, in violation of Georgia Code § 16-5-60(b).

*Second*, Georgia investigators learned additional information *before the seizure of defendant's phone* that independently justified a temporary detention of the phone to preserve evidence while investigators sought and obtained a warrant to search the phone. Indeed, before investigators seized the phone on July 11, 2021, they learned that defendant was a twice-convicted felon when he possessed and fired his weapon, and that defendant was a suspected member of the Black Disciples gang.  Given those facts and defendant's conduct set forth in the affidavit, investigators had a good faith basis to seize the phone to investigate the gunfight, including determining the identity of the shooters and motive.  Investigators subsequently obtained a warrant to search the phone, which is based on ample probable cause.

*Finally*, the facts before the Court simply do not warrant the drastic and extreme remedy of suppression.  Georgia investigators acted in good faith obtaining multiple warrants to seize and search defendant's phone to investigate a shootout that occurred in a residential neighborhood.  Likewise, the federal prosecution team diligently obtained a federal search warrant days after receiving the digital extraction of defendant's phone from the GBI.  Because the FBI was not involved in the seizure of the phone from the Banks' residence, nor did it possess the extraction or the physical phone at any point prior to July 2026, suppression and exclusion is not justified here.  The Court should deny the motion in full.

## II.    FACTUAL BACKGROUND

### A.    The Braselton County Shootout on July 11, 2021

On the morning of July 11, 2021, local law enforcement responded to a suspected home invasion of defendant's home in Braselton County, Georgia.  When officers arrived, defendant was not at the residence.  Officers conducted a protective sweep where they found evidence that multiple firearms had been used in what amounted to a shootout at the home.  Specifically, officers found spent shell casings in and around the house, and suspected narcotics near a large bag of money on a bed.  (Mot., Ex B., Affidavit ¶ 3; Declaration of GBI ASAC Lisa Vorrasi ("Vorrasi Dec."), ¶ 3(c).)  As set forth below, law enforcement did not believe defendant was being forthcoming during the investigation --- including defendant's claim that he merely shot his firearm "into the air" as the home invasion suspects fled --- and officers learned additional information that warranted additional investigation of defendant's conduct.

### B.    GBI Seizes Defendant Banks' Phone Pursuant to the July 11, 2021 Gwinnett County Warrant (i.e., the Georgia Home Warrant)

Later that morning investigators from the GBI, including ASAC Lisa Vorrasi, were contacted by Braselton law enforcement regarding the suspected home invasion.  (Vorrasi Dec., ¶ 3(a).)  At that time, ASAC Vorrasi was a veteran with the GBI, with extensive experience working on violent crime and firearms offenses, including gang-related crime.  (Vorrasi Dec., ¶ 2.)

As part of the investigation, the GBI assigned two gang investigators to the case given defendant Banks' known membership in the Black Disciples criminal street gang, including SA LaMonte Bynum.

4

(Vorrasi Dec., ¶ 3(e).)  During investigators' initial investigation and protective sweep of the property, investigators learned that there was a gunfight between defendant Banks and Family Member 1 (who lived with defendant Banks at the home), on the one hand, and multiple suspected home intruders on the other.  (Vorrasi Dec., ¶ 3(b).)  Law enforcement also learned that both defendant Banks and Family Member 1 admitted to firing their weapons --- including defendant Banks' admission that he fired his weapon "into the air" five to six times as the suspected intruders fled --- and investigators saw multiple firearms in the backyard of the residence and multiple spent cartridge casings inside the home.  (Vorrasi Dec., ¶ 3(c).)

At approximately 11:00 a.m. that morning, ASAC Vorrasi received a criminal history for defendant Banks, which identified that he was a two-time convicted felon.  (Vorrasi Dec., ¶ 3(d), Ex. 1 (email received by ASAC Vorrasi at 11:00 a.m. on 7/11/2021 with defendant Banks' criminal history attached [under seal].)

At approximately 12:00 p.m. that afternoon, GBI SA Jason Leach obtained a Georgia state search warrant to search the Banks' residence in furtherance of their investigation into the gunfight (i.e., the Georgia Home Warrant).[4]  (Mot., Ex. B at 7.)  Relevant here, the warrant authorized the seizure of "electronic devices and any other personal belongings the perpetrators may have left behind that would aid in the identification of the perpetrators" for the following subject offenses in violation of Georgia law: (1) Home

---

[4] The affidavit filed in support of the warrant did not reference defendant Banks' criminal history.

Invasion – 1st Degree; (2) Armed Robbery; and (3) Reckless Conduct[5]. (Id. at 5-6.)

In support of the warrant, SA Leach submitted an affidavit that set forth the following facts, among others, learned from other investigators assigned to the case:

(i)    that Braselton police responded to an alarm call regarding shots fired at the residence (id., Affidavit ¶ 3);

(ii)   when officers responded, nobody was present at the residence (id., ¶¶ 4, 6);

(iii)  during a protective sweep, officers saw multiple cartridge casings inside multiple areas of the home (id., ¶ 4);

(iv)   that defendant Banks and Family Member 1 had left the scene following the shooting (id.);

(v)    that defendant Banks and Family Member 1 did not immediately call 9-1-1 to report the exchange of gunfire or home invasion (id.);

(vi)   that defendant Banks admitted to firing his weapon "into the air" from a balcony as the alleged intruders fled the scene (id., ¶ 5);

(vii)  that defendant Banks and Family Member 1 were reluctant to allow investigators to search the home and their car for evidence related to the crime (in which one of the

---

[5] As described below, Georgia Code Section 16-5-60(b) criminalizes reckless conduct, defined as "consciously disregarding a substantial and unjustifiable risk [an] act [] will cause harm or endanger the safety of the other person."

firearms used during the gunfight was stored) (id., ¶ 8);

(viii)   that defendant Banks and Family Member 1 claimed they did not know why they would be targets of a home invasion (id.,); and

(ix)   that there was a large amount of money on a bed in the home (id., ¶ 3).

SA Leach concluded the affidavit by stating that investigators sought the warrant to "determine the scope, or location extent (sic), for the crimes which were committed inside of the residence; identify the perpetrators involved; and to help establish a motive for why the listed crimes were committed that resulted in an exchange of gunfire" at the home.  (Id. at Affidavit ¶ 8.)

During a search of the residence, law enforcement seized approximately 10 firearms and numerous rounds of different caliber ammunition from the Banks' home.  (Vorrasi Dec., ¶ 3(g).)  Cartridge casings were found in multiple locations within the house, including multiple casings near where defendant Banks stated he fired multiple shots "into the air."

Based on the magistrate judge's authorization to seize digital devices to search for evidence relating to Reckless Conduct and/or evidence related to the motive of the gunfight, ASAC Vorrasi understood that law enforcement had the authority to seize the digital devices from the Banks' bedroom.  (Vorrasi Dec., ¶ 3(h).) Moreover, based on the facts known to ASAC Vorrasi and other GBI investigators at the time of the search --- i.e., defendant Banks' felony status, his membership in the Black Disciples gang, his evasiveness and reticence to assist law enforcement, and the firing

of his weapon --- ASAC Vorrasi believed that law enforcement had a good faith basis to seize the phone to preserve evidence and prevent the destruction of evidence related to the gunfight. (Vorrasi Dec., ¶ 3(i).)

### C.    GBI Obtains a Warrant to Search Defendant Banks' Phone

Based on the initial warrant, GBI merely seized defendant's cell phone --- there was no warrantless search of the device.  (Vorrasi Dec., ¶ 3(j).)  GBI SA Bynum subsequently obtained a Georgia state warrant to search the phone from Rockdale County, Georgia (i.e., the Georgia Phone Warrant).[6]  (See Mot., Ex. C [Rockdale County Warrant].)  At the time, SA Bynum had been employed as a gang investigator with the GBI for approximately 10 years, specializing in complex gang, drug, and violent criminal organization investigations. (Mot., Ex. C at 4.)

The Georgia Phone Warrant authorized investigators to search the cell phone for evidence related to the following violations of Georgia law: (1) Home Invasion, (2) Possession of Firearm by a Convicted Felon, (3) Violation of the Georgia Criminal Street Gang Act, and (4) Conspiracy to Commit a Crime.  (Id. at 3.) Specifically, the warrant identified multiple categories of information that investigators could seize, including: "[d]ata that may identify the perpetrators of the home invasion [and] gang activity;" media and its metadata, and communications (including text messages and social media) related to the crimes identified in the affidavit.  (Id. at 1-2.)

---

[6] While the warrant authorized the search of four digital devices seized from the Banks' residence, the only device at issue is defendant Banks' cell phone, which is identified in the warrant as a blue iPhone with property tag CC14400.

In support of the search warrant, SA Bynum authored an affidavit that included the following facts that clearly establish probable cause to search the phone:

(i)     that defendant Banks and Family Member 1 told investigators they both fired weapons during the alleged home invasion (id., Affidavit ¶ 4);

(ii)    that defendant Banks had been previously convicted of at least two felonies (id., ¶ 5);

(iii)   that SA Bynum obtained information from other investigators that defendant Banks was a member of the "Lamron" set of the Black Disciples gang in Chicago, Illinois (id., ¶ 11);

(iv)    that defendant Banks had a monetary bounty to reward the killers of his brother, who were suspected to be members of the rival gang the Gangster Disciples (id., ¶ 11, 13).

(v)     SA Bynum concluded that based on defendant Banks' gang membership and association with factions of the Black Disciples gang, "it is feasible that there [are] a lot of subjects that may want to harm and/or steal from" defendant Banks and Family Member 1.  (Id., ¶ 15.) Accordingly, based on his training and experience investigating gang-related crimes, he determined that evidence on the seized devices could assist with identifying the outstanding suspects of the gunfight, including text messages, photographs, and social media messages.  (Id., ¶ 17.)

9

Finally, the affidavit also set forth that "[d]igital copies of the [device's] data recovered will be created and retained as evidence for further proceedings and made available to the proper authorities.  After completion of the case, the evidence copies will be sealed and retained in evidence storage for later discovery and trial purposes. None of the contents of the evidence copies, other than those which may be required for prosecution or otherwise by law, will be displayed to any person or otherwise disclosed, used or copied."  (Id., Affidavit ¶ 19.)

> **D.    The FBI Obtains the Forensic Extraction of the Phone on July 6, 2026 from the GBI and Searched it Pursuant to a Federal Warrant**

On May 26, 2026, the government informed defense counsel that it would be filing a Third Superseding Indictment that alleged the August 19, 2022 murder of S.R. as murder in aid of racketeering (VICAR murder).  As part of the government's ongoing investigation into defendant Banks' and his co-conspirators suspected cross-country racketeering activity, the FBI contacted investigators in Georgia on June 25, 2026 to inquire whether the GBI could provide the FBI with a copy of the forensic extractions of the cell phones seized from the Banks' residence.  (Declaration of FBI SA Jarron Farmby ("Farmby Decl.") at ¶ 2.)  In response, the GBI shipped via mail a hard drive containing the two extractions (one for defendant Banks' phone and one for Family Member 1's phone), which the FBI received on July 6, 2026.  (Id. at ¶ 2.)  Two days later, the FBI obtained a federal search warrant to seize evidence from the digital extractions related to the August 19, 2022 murder and the suspected racketeering activities of defendant Banks' and his alleged enterprise

confederates.  (Mot., Ex. C.)  The following week, the government produced the extractions to the defense.[7]

During a search of the extraction of defendant Banks' phone, law enforcement identified and seized multiple images related to seeking revenge against T.B. and T.L. --- T.B.'s close associate who shot and killed Bennett on November 6, 2020.  Those images included: (i) screenshots of messages discussing T.L.'s release from state custody on bond and getting the "address" where he will be on house arrest with metadata showing the screenshot was taken around the time of T.L's release from state custody; (ii) screenshots of a poster advertising T.B.'s concert on May 1, 2021 --- i.e., the concert after which multiple co-conspirators are alleged to have ambushed T.B. at a gas station in Blackshear, Georgia; and (iii) a screenshot of a social media post from May 3, 2023 documenting that T.B. was shot at in Blackshear, Georgia.  (Mot., Ex. A.; see also attached **Exhibit 3** (images found of defendant's phone with associated metadata [under seal].)[8]

---

[7] Defendant's motion misleadingly states that the government "believes" it produced the forensic extraction of the phone on July 15.  (Mot. at 1, n. 1.)  What defendant's motion omits are the communications in which: (i) the government identified for defense counsel the path to download and view the data; and (ii) the government's invitation to assist counsel via videoconference in viewing the data and/or for an in-person inspection whenever was convenient for defense counsel.  Defense counsel, however, did not respond to the government's message.  For transparency, the government has attached those communications as **Exhibit 2** [under seal].

[8] Based on law enforcement's review of the extraction report for the cellphone at issue, investigators determined that the phone was in a "before first unlock" state at the time it was extracted, which may result in an extraction that contains limited data for review, including partial multimedia and system metadata.  (Mot., Ex. F.)  Indeed, the extraction for the cellphone did not appear to contain text messages between the user of the phone and others, but did contain numerous images seized related to the stalking of T.B. and

*(footnote cont'd on next page)*

11

**III.   ARGUMENT**

    **A.   GBI Agents Lawfully Seized Defendant's Phone in July 2021 and Subsequently Obtained a Valid Warrant to Search the Device**

        1.   <u>The Georgia Home Warrant Authorized the Seizure of the Cellphone to Investigate the Crime of Reckless Conduct</u>

As a threshold matter, defendant Banks does not challenge the validity of the Georgia Home Warrant to enter and search his residence (nor can he, given the ample probable cause to enter the home).  The first narrow issue for the Court is whether the Georgia Home Warrant authorized the initial seizure (<u>i.e.</u>, the temporary detention) of defendant's cellphone.

Seizure of the phone was supported by probable cause and fell within the scope of the Georgia Home Warrant.  As the Supreme Court has set forth, "[p]robable cause is not a high bar" and "requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."  <u>Kaley v. United States</u>, 571 U.S. 320, 338 (2014).

Here, following the shootout at the Banks' residence, GBI investigators --- including from the gang task force --- responded to investigate who committed participated in the invasion, the resulting gunfight, and why the event occurred.  In furtherance of that investigation, the GBI sought a warrant that sought information related to not only the home invasion, but the crime of Reckless

---

T.L. as described above.  (<u>Id.</u>)  Accordingly, the FBI requested that GBI send the physical phone to the FBI on July 9, 2026, which the FBI subsequently received on July 20, 2026.  (Farmby Decl., ¶ 3.)  On July 20, 2026, the government obtained a warrant to search that phone in an attempt to re-extract the data and obtain additional potentially relevant material.  (Mot., Ex. F.)

Conduct in violation of Georgia Code Section 16-5-60(b).  As explained above and below, the affidavit to the warrant provided sufficient probable cause to establish that defendant Banks' cellphone may lead to evidence related to a violation of that offense and/or evidence related to the motive of the gunfight.

The Georgia offense of Reckless Conduct criminalizes any "person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation . . ."  Ga. Code Section 16-5-60(b).  The affidavit to the Georgia Home Warrant set forth sufficient probable cause that defendant Banks' conduct in firing his gun into the air falls within the scope of the Reckless Conduct statute.  See, e.g., Beaton v. State, 255 Ga. App. 901, 903 (2002) (evidence sufficient to support reckless conduct conviction when defendant intentionally fired shot through front door knowing that multiple people were outside the house); see also Horowitz v. State, 243 Ga. 441, 441 (1979) (speeding through residential neighborhood with sports car).  Indeed, although law enforcement was skeptical that defendant fired into the air --- rather than at the individuals in his backyard --- defendant's admission that he fired multiple gunshots into the air in a residential neighborhood clearly establishes a "fair probability" that defendant violated the recklessness statute.  Kaley, 571 U.S. at 338.  Accordingly, the magistrate's authorization to seize digital devices that could identify the perpetrators of Reckless Conduct authorized the seizure of defendant's cellphone.

Likewise, given the affidavit's demonstration that defendant Banks' was hesitant and less-than-forthcoming regarding the shootout, the warrant authorized the seizure of the cellphone to search for evidence that could identify the shooters (and their motive) with whom defendant Banks' engaged in a gunfight.  Accordingly, the Georgia Home Warrant itself authorized the seizure of defendant's phone.

> 2.    The Temporary Detention of Defendant's Phone Was Also Justified Because Investigators Acted in Good Faith Based on Probable Cause Pursuant to the Plain View Doctrine and to Prevent the Destruction of Evidence

Even if the Georgia Home Warrant did not authorize the seizure of defendant's cellphone, Georgia investigators lawfully seized the phone in good faith to preserve the status quo pending the later-obtained warrant to search the phone (i.e., the Rockdale County Warrant).

Under the "plain view" doctrine, a search warrant is not required for a seizure if three requirements are met: "(1) the officer must be lawfully in the place where the seized item was in plain view; (2) the item's incriminating nature was 'immediately apparent'; and (3) the officer had a 'lawful right of access to the object itself." United States v. Wong, 334 F.3d 831, 838 (9th Cir. 2003); see Riley v. California, 573 U.S. 373, 388 (2014) (officers may seize and secure cell phones "to prevent destruction of evidence while seeking a warrant"); United States v. McGill, 8 F.4th 617, 622 (7th Cir. 2021) (officer lawfully present in probationer's home lawfully seized probationer's cellphone under plain view exception to the warrant requirement given officer's knowledge that probationer

14

previously violated terms of release using a cellphone and his "odd explanation" about the phone and "nervous" demeanor, among other facts).

All three elements are met here given the Georgia investigators were lawfully present inside the home pursuant to the Georgia Home Warrant and investigators believed seizure of the phone was necessary to preserve relevant evidence. Specifically, as set forth in ASAC Vorrasi's declaration, based on her extensive training and experience in investigating violent offenses, gang-related activity, and firearms-related offenses, "seizure of the phone was necessary to preserve evidence and prevent the destruction of relevant evidence." (Vorrasi Dec. ¶ 3(i).) That determination was based on ASAC Vorrasi's and the GBI's collective knowledge[9] that defendant Banks was "a felon, that he was a suspected member of the Black Disciples gang, that he admitted to firing his weapon into the air multiple times as the suspected intruders fled, and given [his] evasiveness towards investigators and his hesitance to assist law enforcement in the investigation." (Id.)

Accordingly, because the GBI was lawfully present in the Banks' residence and had sufficient facts to support probable cause that there would be evidence of Reckless Conduct and/or motive-related evidence on defendant Banks' cellphone, the GBI lawfully seized the device to preserve the status quo before obtaining the Georgia Phone Warrant to search the device. See, e.g., Riley, 573 U.S. at 388

---

[9] Where, as here, collective knowledge may be imputed among law enforcement where "agents are working together in an investigation but have not explicitly communicated the facts each has independently learned." United States v. Ramirez, 473 F.3d 1026, 1032 (9th Cir. 2007).

15

(seizure of phone justified "to prevent destruction of evidence while seeking a warrant"); United States v. Winn, 811 F. App'x 1011, 1014 (9th Cir. 2020) (affirming denial of suppression motion, noting police "would have inevitably seized [defendant's] cell phone" incident to arrest and "would have been entitled to secure the phone 'to prevent destruction of evidence while seeking a warrant.'" (citing Riley, 573 U.S. at 388).

Indeed, in United States v. Henry, the Court addressed the plain view doctrine where, as here, officers temporarily detained cell phones based on probable cause and then obtained a warrant to search them.  827 F.3d 16 (1st Cir. 2016).  The Court affirmed the district court's denial of defendant's suppression motion, reasoning, *inter alia*, that "Riley's concerns about the warrantless search of digital data stored within a smart phone are not implicated here ... because by the time the phones were searched, a warrant had been obtained." Id. at 28.

United States v. McGill, 8 F.4th 617 (7th Cir. 2021) is also directly on point.  There, officers --- who were lawfully present in McGill's home --- seized defendant's cellphone under the plain view doctrine after developing probable cause to believe the phone likely contained relevant evidence, including McGill's "odd explanation" about the phone and "nervous" demeanor, among other facts.  Id. at 622-623.[10]

--------

[10] In McGill, the Court went on to explain that even if the phone was illegally seized, suppression was not warranted under both the good faith exception and inevitable discovery exception to the exclusionary rule. McGill, 8 F.4th at 624. As discussed below, both exceptions would also apply here.

16

Because the temporary seizure of defendant's phone was justified until Georgia investigators obtained a warrant to search the device, defendant's motion should be denied.

**B.     GBI Retained the Digital Extraction in Good Faith Reliance on the Georgia Phone Warrant**

Suppression is also unwarranted based on the GBI's retention of the forensic extraction from its creation August 2021.  Indeed, the Georgia Phone Warrant specifically authorized investigators to retain digital copies of the data recovered from defendant's cell phone. (See Mot., Ex. C at 9 ¶ 19 ("Digital copies of the data recovered will be created and retained as evidence for further proceedings and made available to the proper authorities.  After completion of the case, the evidence copies will be sealed and retained in evidence storage for later discovery and trial purposes.").)

Defendant's reliance on United States v. Tamura, 694 F.2d 591 (9th Cir. 1982) for his assertion that the GBI's retention requires suppression is misplaced.  In Tamura, the Ninth Circuit held that both the unauthorized seizure of voluminous material not specified in the warrant and the retention of the seized documents violated the Fourth Amendment.  Id. at 595, 597.  Unlike here, the officers in Tamura seized for off-site review records that the warrant did not authorize them to seize, and retained those records after their return was requested.  The opposite is true here: the Georgia Home Warrant specifically authorized the seizure of the cell phone and the retention of forensic copy of the cell phone.  Moreover, defendant did not request return of his cell phone or destruction of the forensic images.  See, e.g., United States v. Johnson, 469 U.S. 478,

17

487 (1985) (defendant's failure to request the return of seized property undermined his argument of unreasonable delay).[11]

But even assuming GBI should have returned defendant's cell phone and/or destroyed digital copies of the data after the initial search, any improper retention of the items seized does not justify suppression here because the items were retained in good faith reliance on the Georgia Phone Warrant.  See Tamura, 694 F.2d at 597 ("[T]he exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well."); United States v. Daniels, 549 F.2d 665, 668 (9th Cir. 1977) ("The exclusionary rule does not require the suppression of otherwise legal seizures merely because they were part of the same search in which an illegal seizure occurred.").

C.   **The FBI's Seizure of the Digital Extraction is Wholly Attenuated from the GBI's Original Seizure**

Even if the GBI agents' retention of defendant's cell phone and the forensic copies of his phone violated the Fourth Amendment, defendant has not established that the federal agents in *this case* violated his Fourth Amendment rights.  Accordingly, given the

---

[11] Indeed, defendant has failed to file a declaration in violation of the Central District's Local Rules, including any sworn testimony establishing his ownership and/or privacy interest in the phone.  See Local Criminal Rule 12-1.1 ("A motion to suppress **shall be supported by a declaration on behalf of the defendant**, setting forth all facts then known upon which it is contended the motion should be granted. The declaration shall contain only such facts as would be admissible in evidence and shall show affirmatively that the declarant is competent to testify to the matters stated therein.") (emphasis added); see also United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (finding no abuse of discretion in denying a hearing because the defendant "forfeited his right to a hearing by not properly submitting a declaration" under an applicable local rule identical to Local Criminal Rule 12-1.1).

attenuation of the federal agents in this case from any purported Fourth Amendment violation by GBI (which the government contends there was none), suppression is unwarranted here.

Here, the federal prosecution team investigating this murder and racketeering case was not involved in the GBI's investigation into the Braselton shootout, nor GBI's decision to retain a copy of the forensic extraction in GBI's custody.  Accordingly, under clear Ninth Circuit law, there is no basis to apply the exclusionary rule in *this federal proceeding*.  See United States v. Medina, 181 F.3d 1078, 1082 (9th Cir. 1999) (holding that "there is no appreciable deterrent purpose in suppressing evidence" where there is "no threshold showing of a connection or 'nexus' in time, place, or purpose between the searches [by one agency] and the subsequent prosecution [by another]"); see also United States v. Sessions, 2024 WL 194190, at *2 (9th Cir. Jan. 18, 2024) (applying Medina and holding that even if the prolonged retention of defendant's cell phone was unreasonable, exclusion of the evidence obtained from it was unwarranted where entirely different officers from those who initially seized the phone (and who were investigating a different crime) sought and obtained a valid warrant to search the phone after discovering it was in LAPD custody).[12]

---

[12] Defendant primarily relies on United States v. Dass, 849 F.2d 414 (9th Cir. 1988), to support his claim of unreasonable delay. (Mot. at 12-13.)  Dass does not apply here, as Dass involved the officers responsible for the prolonged seizure; by contrast, the federal warrants here were obtained by investigators who were not responsible for the seizure or retention of defendant's phone, who acted diligently, and who obtained search warrants based on a full disclosure of relevant facts before they examined the contents of the phone.  In other words by investigators who did nothing "sufficiently
*(footnote cont'd on next page)*

**D.    The Drastic Remedy of Exclusion is Not Warranted, as the Inevitable Discovery and the Good Faith Exception Apply to Investigators' Conduct**

Finally, the Court should not suppress the evidence from the digital extraction because there would be no "appreciable deterrence," particularly given the "substantial social cost" here. Id.  Those costs include "letting guilty and possibly dangerous defendants go free," and interfering with "truth-seeking and law enforcement objectives."  Id.  Indeed, the Supreme Court is clear that the exclusionary rule is an "extreme sanction."  United States v. Leon, 468 U.S. 897, 926 (1984).

First, the good faith exception to the exclusionary rule applies here.  Only four circumstances limit the good faith exception: (1) where the "judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where "a warrant may be so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid."  Leon, 468 U.S. at 923. None of those circumstances applies here.  Defendant does not allege (nor can he) that any warrant included any false information, or that any magistrate abandoned his

---

culpable that . . . deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 140.

judicial role.  Moreover, as explained above, officers had a good faith basis to seize the phone pursuant to the Georgia Home Warrant or based on their collective knowledge of the evidentiary value of the phone at the time of the search.  See  McGill, 8 F.4th at 624 ("Because Officer Williams acted with objective good faith in seizing the cell phone, the evidence need not be excluded").  And particularly given the complete attenuation between the FBI's federal warrant from the GBI's original seizure and retention of the extraction, penalizing the fact-finding process in this federal prosecution is unwarranted.

Second, suppression is also unwarranted under the inevitable discovery exception.  "The inevitable discovery doctrine is an exception to the exclusionary rule."  United States v. Ruckes, 586 F.3d 713, 718 (9th Cir. 2009) (citation omitted).  This "doctrine permits the government to rely on evidence that ultimately would have been discovered absent a constitutional violation."  Id. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, then the deterrence rationale for the exclusionary rule has so little basis that the evidence should be received." Id. (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).

Here, the GBI sought a second warrant to search the device (i.e., the Georgia Phone Warrant), which was supported by ample probable cause that the phone would have evidence of multiple crimes. Specifically, the warrant authorized the search of the phone for evidence related to Home Invasion, Possession of a Firearm by a Convicted Felon, a violation of the Criminal Street Gang Act, and Conspiracy to Commit a Crime.  And among other things, the affidavit

set forth sufficient probable cause to search for those offenses given defendant's felony status, his gang affiliation, his alleged bounty seeking revenge for his brother's gang-related murder, and a potential motive for the July 11 shootout --- i.e., gang members with whom defendant and/or the Black Disciples may be fighting.[13] Accordingly, the discovery of evidence on the phone pursuant to the Georgia Phone Warrant was inevitable since Georgia investigators would have seized the device regardless of the initial warrant. Exclusion and exclusion is unwarranted.  See, e.g., McGill, 8 F.4th at 622 (inevitable discovery exception applied where officer seized probationer's cellphone without a warrant based on officer's knowledge of facts supporting incriminating nature of cellphone, and later sought a search warrant for the device).

**IV.   CONCLUSION**

For the reasons set forth above, the Court should deny defendant Banks' motion to suppress.

---

[13] Despite defendant Banks' citationless contention that the affidavit improperly referenced seeking information about a crime from a potential victim's device, it is black letter law that law enforcement may lawfully seize information from an uncooperative victim to investigate a crime.  Cf., United States v. Hunt, 153 F.4th 858, 869 (9th Cir. 2025) (phone dropped by shooting victim lawfully seized given the "proximity [of the phone] to the site of Hunt's shooting," which "gave police a basis to suspect the iPhone could help identify the shooter, an accomplice, or a witness").

# EXHIBITS 1-3

## [UNDER SEAL]