TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
        1400/1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3667/3535/0813
        Facsimile: (213) 894-0142
        E-mail:    ian.yanniello@usdoj.gov
                   michael.morse@usdoj.gov
                   daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(D)-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT BANKS' MOTION TO EXCLUDE GOVERNMENT'S PROPOSED GANG EXPERT |
| v. | |
| DURK BANKS, et al., | |
| Defendants. | Hearing Date: August 13, 2026<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the Hon. Michael W. Fitzgerald |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby files its Opposition to Defendant Banks' Motion *in Limine* to Exclude the Government's Proposed Gang Expert.

//

//

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 7, 2026                    Respectfully submitted,

                                         TODD BLANCHE
                                         Acting Attorney General

                                         BILAL A. ESSAYLI
                                         First Assistant United States
                                         Attorney

                                         IAN V. YANNIELLO
                                         Assistant United States Attorney
                                         Chief, National Security Division


                                         _____/s/_____
                                         IAN V. YANNIELLO
                                         MICHAEL J. MORSE
                                         DANIEL H. WEINER
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendant Banks' motion to exclude the government's gang expert makes clear there is a material disagreement between the parties as to the origin and nature of the co-conspirators' relationship and motives.  On the one hand, the government will argue that the conduct and motivations of the OTF-related co-conspirators must be explained through their Chicago-gang-related connections.  On the other, defendant Banks has asserted that there is no "logical nexus" between the facts in this case and "Chicago-based gangs, their evolution, and rivalries among them," and that defendant Banks' connections with his fellow members of OTF is solely musical.  But while the murder of S.R. has been referred to as the "Los Angeles murder," it is in reality a Chicago-gang-style murder that was brought to the streets of Beverly Hills.  The government must be able to provide expert testimony that explains the tradecraft and slang of the Chicago gang members and affiliates who conspired to commit this murder.  This testimony will help the jury understand why the co-conspirators' first reaction after Bennett's death was not to seek law enforcement assistance; it was to immediately start planning revenge and "get back," consistent with the gang "code" the co-conspirators lived by. The government's expert will provide critical testimony about Chicago gang structure to help the jury understand why the co-conspirators flew from Chicago with just the shirts on their backs to commit the murder, at Banks' direction.  The expert will help the jury understand why a famous rapper would use his resources and power to seek revenge for a friend.  The Court should deny the motion in full.

**II.    FACTUAL BACKGROUND**

As set forth in the government's Omnibus Opposition to Defendants' Motion to Exclude Evidence, the origin and nature of the relationship between the OTF-related co-conspirators in this case (e.g., defendant Banks, Dayvon Bennett, PW-1, PW-2, and Co-Conspirators 3, 4, and 5) is material to proving who ordered the murder, who committed the charged conduct, and crucially, why.

**A.    The Co-Conspirators' Gang-Based Relationship**

At trial, the government will prove that the OTF-related co-conspirators' primary motivation for committing this murder was to "get back," or seek revenge, against those deemed responsible for the death of Bennett, at the direction of defendant Banks.  In order for the jury to understand the nature and materiality of this "get back" motive, the government must be able to establish the Chicago-gang-related origin, development, and tradecraft of the conspiracy.

Specifically, that defendant Banks was a self-admitted Black Disciples member from the "Lamron" set of the gang.  Like defendant Banks, the other OTF members who participated in the murder were Chicago gang members or affiliates, primarily Black Disciples (including PW-1 and defendant Wilson).  Testimony from cooperating witnesses will establish that the co-conspirators formed their relationship of trust from a young age and through their gang association, including living by their gang "code".

As set forth in the government's expert disclosure,[1] CPD Detective Kilroy will provide material testimony about: (1) the meaning of relevant terms and expressions used in text communications

---

[1] See Mot, Exhibit 1.

2

admitted at trial; (2) explain the rules and "code" applicable to Chicago gang members;[2] and (3) Chicago gang structure and tradecraft, including gang members use of social media and rap lyrics to disrespect murdered rivals.[3]

**III. ARGUMENT**

**A.    Detective Kilroy's Testimony Will Provide Critical Context to the Defendants' Motive, Intent, Method and Means**

Defendant's contention that there is no "logical nexus between [] Kilroy's proposed gang expertise and the alleged facts in this case" only highlights the materiality of this expert testimony.[4] Detective Kilroy has decades of experience investigating and

---

[2] For example, Detective Kilroy will testify that Chicago gang members must achieve "get back" by avenging acts of violence against other members or associations of their gang or they will lose respect and their reputation in the gang community. Detective Kilroy will also testify about the role of "respect" and "disrespect" within Chicago gang culture, including the need for gang members to act in response to rivals or "opps" disrespecting them.

[3] For example, Detective Kilroy will testify that Chicago gang members obtain notoriety, money, and fame as rap artists and elevate to leadership roles within their respective gang, enabling such gang member rap artists to issue directives to Chicago gang members by leveraging financial influence over Chicago gangs and individual gang members.  Detective Kilroy will also testify about gang "tradecraft" used by Chicago gang members, including using social media and music to taunt, disrespect and assert their dominance over rivals, especially by disrespecting murdered members of rival gangs; advertise their membership verbally, musically, and through gang signs and symbols; using stolen vehicles to commit violent acts; multiple vehicles to ambush gang rival targets; using modified machine guns or "switches" during acts of gang violence; and criminally associating with members of other gangs.

[4] Banks also makes much of the location of the murder (Los Angeles), and that Kilroy's expertise relates to Chicago street gangs. Mot. at 5. But as discussed, Banks and almost all of his co-conspirators and criminal associates in this case have ties to Chicago street gangs.  Moreover, Kilroy will testify that he has investigated Chicago gang member who relocate or otherwise commit crimes in other states.  Indeed, Kilroy has been called upon to assist in such interstate investigations, including investigations involving Banks, Bennett, and other OTF affiliates accused of committing crimes in other states.

3

interviewing Chicago gang members, and thus has significant expertise in gang terminology, rules, and tradecraft.  That expertise will help the jury understand the gang-related methods, means, and tradecraft used by the co-conspirators to murder S.R.

The Ninth Circuit has long recognized that "[i]f specialized knowledge will assist the trier of fact in understanding the evidence or determining an issue, a qualified expert witness may provide opinion testimony on the issue in question."  United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997) (citing Fed. R. Evid. 702), abrogated on other grounds.  Consistent with this, federal courts have allowed the admission of gang expert testimony in cases where, as here, an understanding of gang politics and structure was material to the government's case-in-chief.  Indeed, expert testimony on gangs helps the jury because "the average juror is unlikely to be familiar with the operations of [] street gangs."  United States v. Mansoori, 304 F.3d 635, 654 (7th Cir. 2002).[5]

Detective Kilroy's testimony about gang structure, the need to seek revenge when a rival harms or disrespects a fellow gang member, and gang members' use of social media and rap lyrics to taunt rivals will help the jury understand the co-conspirators' respective roles in S.R.'s murder, and why defendant Banks and other OTF members pursued a murderous conspiracy.  See Padilla, 387 F.3d at 1094; Mansoori, 304 F.3d at 654.  Detective Kilroy's testimony about the

---

[5] See also United States v. Padilla, 387 F.3d 1087, 1094 (9th Cir. 2004) (gang expert was qualified and reliable, and testimony "concerning gang punishment for junior members who fail to support senior members" was relevant); United States v. Holguin, 51 F.4th 841, 853-54 (9th Cir. 2022), (expert testimony on the gang's operations, membership, territories, criminal activity, and revenue streams involved 'specialized knowledge' beyond the common knowledge of the jury").

4

meaning of relevant terms used by the co-conspirators will similarly assist the jury in this case.  See United States v. Vera, 770 F.3d 1232, 1241 (9th Cir. 2014) (interpreting "[d]rug jargon is well established as an appropriate subject for expert testimony").

Defendant's motion seeks to exclude Detective Kilroy's testimony, which as explained above --- and in further detail in the expert disclosure --- provides critical context to understanding the defendants' motive, intent, gang methods and means, and the criminal relationship of the killers and Banks.  For example, absent Detective Kilroy's testimony, the jury will understandably question why a successful musician would seek revenge through murder.  The answer is simple: despite being a successful musician, defendant Banks was and is a Black Disciple who assembled a "gang of gangs," which he financially supported and eventually deployed to avenge a fallen gang member's death.  Banks' association with other defendants, co-conspirators and cooperating witnesses was born out of a criminal street gang relationship, as was his response to Bennett's death.  His OTF and Black Disciple members and associates carried out the conspiracy to stalk and murder T.B. using Chicago street gang methods, means, and tradecraft.  Defendant Banks cannot at once argue that OTF was a "legitimate" music collective, and seek to exclude relevant evidence from the jury that undermines his claim.  Such a ruling would not only unfairly prejudice the government, but would also undermine the core truth finding function of a criminal jury trial.  This Court should deny his motion.