DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, CA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>DURK BANKS,<br><br>Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REPLY IN SUPPORT OF MOTION TO SUPPRESS FRUITS OF UNLAWFULLY SEIZED AND SEARCHED TELEPHONE** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this reply in support of his motion to suppress the fruits of an unlawfully seized and searched telephone.

//

//

This reply is based upon the attached memorandum of points and authorities and attached exhibits, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated: August 14, 2026

BY: /s/ *Christy O'Connor*
Drew Findling
Marissa Goldberg
Brian Steel
Christy O'Connor
*Attorneys for Durk Banks*

## I. The Phone's Unlawful Seizure is Not Saved by a Warrant Exception or by the Later Rockdale Warrant.

The seizure of Mr. Banks' cell phone was outside of the scope of the Gwinnett County warrant. *See* Dkt. No. 481, Ex. B at 6 (authorizing seizure of "electronic devices and any other personal belongings the perpetrators may have left behind that would aid in the identification of the perpetrators"). Mr. Banks' phone was therefore seized in violation of his constitutional rights. *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (the Fourth Amendment's particularity requirement "prevents the seizure of one thing under a warrant describing another"). No exception to the warrant requirement applies, and the subsequent Rockdale warrant does not cure the seizure's unlawfulness.

*Plain view*: The government contends that the plain view exception to the warrant requirement applies. *See* Dkt. No. 537 at 14. But the plain view doctrine only applies to items if the item's incriminating nature is readily apparent. *United States v. Wong*, 334 F.3d 831, 838 (9th Cir. 2003). There is nothing apparently incriminating about a cell phone found on the bedside table of a homeowner. The plain view justification fails.

*Seizure necessary to preserve evidence*: The government also argues that even if it was outside of the scope of the warrant, the seizure of the phone was necessary to preserve evidence and prevent its destruction while officers sought a warrant. Dkt. No. 537 at 15-16. The problem with this argument is that the exception applies to an "officer's reasonable steps to secure a scene to preserve evidence *while they awaited a warrant*." *Riley v. California*, 573 U.S. 373, 391 (2014) (citing *Illinois v. McArthur*, 531 U.S. 326, 331-333 (2001)). *See McArthur*, 531 U.S. at 331 ("the restraint at issue was tailored to [the law enforcement] need, being limited in time and scope"). Here, cell phone was not secured while an officer obtained or awaited a warrant that would justify its seizure and search. On the contrary, it was five weeks before any officer sought an additional warrant that, on its face, covered the cell phone. Such seizure is neither tailored nor reasonably limited in time and scope.

*Inevitable Discovery*: The government argues that even if the Gwinnett County warrant did not authorize the phone's seizure, that the Rockdale warrant was ultimately obtained (five weeks later) saves the seizure under the "inevitable discovery" doctrine. Dkt. No. 537 at 21-22.

The Supreme Court has warned that when seized goods are kept in the police's possession, it "may well be difficult to establish" that a later, lawful seizure is genuinely independent of an earlier, tainted one. *Murray v. United States*, 487 U.S. 533, 542 (1988). Indeed, the inevitable discovery case law is aimed at items that would inevitably be discovered by a lawful process already underway at the time of the unlawful seizure, not one initiated five weeks into a continuous, unconstitutional possession, during which time the defendant has repeatedly demanded the return of his property[1]. *See Nix v. Williams,* 467 U.S. 431 (1984) (although suspect's statements directing officers to child's body were unlawfully obtained, a systematic search of the area by 200 volunteers had already been initiated at the time of the statement); *United States v. Ruckes*, 586 F.3d 713, 718-19 (9th Cir. 2009) (where driver of the car was placed under arrest and car would be lawfully impounded, inventory search was inevitable); *United States v. Saelee*, 51 F.4th 327, 335 (9th Cir. 2022) (finding that suppression was unwarranted because before the unlawful search occurred, agent "had already prepared a near-complete warrant application"). Officers were five weeks away from seeking the second warrant when the cell phone was unlawfully seized. The exception does not apply here.

*The Five-Week Delay in Obtaining the Second Warrant is Unreasonable*: The five-week delay in obtaining the Rockdale warrant is indeed damning. Under controlling Ninth Circuit case law, waiting five weeks to obtain the warrant-- especially when Mr. Banks' attorney contacted GBI multiple times demanding the phone's return-- is unreasonable under the Fourth Amendment. *United States v. Dass*, 849 F.2d 414,

[1] *See* Exhibit H attached to Motion.

415 (9th Cir. 1988) (23-day delay in seeking warrant for package in law enforcement custody was unreasonable); *United States v. Mitchell*, 565 F.3d 1247 (11th Cir. 2009) (21-day delay). *See also United States v. Song Ja Cha*, 597 F.3d 995, 999-1000 (9th Cir. 2010) (although police officers had probablyecause and were allowed to deprive the defendant of his possessory interest in his residence while they obtained a warrant, a 26.5 hour delay was unreasonable). Because officers took so long to obtain the Rockdale warrant, and because, during that five-week period, Mr. Banks was deprived despite his explicit protestations of a substantial property interest,[2] the Rockdale warrant cures nothing.

## II. The FBI's Search and Seizure is Not Saved by Attenuation or Good Faith.

The Constitutional violations in this case continued well beyond July and August of 2021. *Tamura* imposes upon law enforcement a duty to sort and segregate, reasonably promptly, responsive from non-responsive seized materials. *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) That did not happen here: there is no evidence that any GBI Agent made any effort to determine what data which data was

[2] "Laptop computers, iPads, and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential business documents, medical records and private emails. This type of material implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their 'papers.'" *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (internal citations omitted); *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006) (noting "heightened specificity concerns in the computer context, given the vast amount of data they can store"); *Comprehensive Drug Testing*, 621 F.3d at 1175 (recognizing that "electronic files are generally found on media that also contain thousands or millions of other files among which the sought-after data may be stored or concealed"); Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531, 569 (2005) (explaining that computers have become the equivalent of "postal services, playgrounds, jukeboxes, dating services, movie theaters, daily planners, shopping malls, personal secretaries, virtual diaries, and more").

responsive to the warrant and what data was not.[3] Instead, all of the data extracted from the phone was retained, intermingled, in the GBI's possession, so that it could be made available for all future criminal investigations. The Rockdale warrant, in essence, became a general warrant, unbounded by the Fourth Amendment particularity and reasonableness requirements.

Despite the compounding constitutional violations, the government invokes two doctrines to skirt the exclusionary rule: attenuation under *Medina*, and good faith. Neither does the trick.

**a. *Medina* and Attenuation: The Common Purpose Nexus.**

In the seminal *United States v. Elkins*, the Supreme Court abolished the "silver platter doctrine," under which evidence obtained by state agents in an unreasonable search and seizure was admissible in a federal criminal trial as long as no federal agents participated in the search and seizure and the state officers did not act on behalf of the United States. 364 U.S. 206, 223-24 (1960) (holding that "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial").

The government attempts to avail itself of a limited exception to *Elkins*, as outlined in *United States v. Medina*, 181 F.3d 1078 (9th Cir. 1999). In *Medina*, the Court held that "absent any threshold showing of a connection of 'nexus' in time, place, or purpose between the searches [by one agency] and the subsequent prosecution [by another]," the district court did not err in refusing to hold an evidentiary hearing on the

[3] Before the Court admits any data from the digital device, Mr. Banks requests an evidentiary hearing on what efforts, if any, the GBI made to sort responsive from non-responsive documents, and when, and if such sorting happened, which of the data was deemed responsive. In the absence of any such evidence, it should not be presumed that the sorting mandated by *Tamura* and the Fourth Amendment happened at all.

lawfulness of the state officers' searches before admitting evidence into a federal trial. *Id.* at 1082. The *Medina* exception to *Elkins* is so rarely invoked that the Ninth Circuit has had occasion to address it just three times in twenty-seven years. In only one of those cases did the Ninth Circuit cite *Medina* attenuation and uphold the admission of evidence unlawfully seized by state authorities. *United States v Session*, 2024 U.S. App. LEXIS 1150 (9th Cir. 2024). The government cites this unpublished case in its brief, explaining its import: "even if the prolonged retention of defendant's cell phone was unreasonable, exclusion of the evidence obtained from it was unwarranted where entirely different officers from those who initially seized the phone (and who were investigating a different crime) sought and obtained a valid warrant to search the phone after discovering it was in LAPD custody." Dkt. No. 537 at 19.

The same cannot be said here. The purpose of the Rockdale warrant overlaps significantly with this current prosecution. The affidavit describes a multi-jurisdictional investigation into gang-related violence and murder-for-hire. It describe Mr. Banks' alleged gang affiliation (both OTF and Black Disciples), the murder of his brother, and the rumored bounty that Mr. Banks put out in order to avenge his brother's death, a.k.a., the "Chicago Incident" that has been so frequently discussed during this prosecution. There is more than a threshold nexus of time, place, and purpose between the 2021 seizure of Mr. Banks' cell phone and the current case; the state authorities were actually investigating largely the same criminal activity as the federal authorities do now. Because of this, under *Medina*, this Court must hold an evidentiary hearing before admitting evidence unlawfully seized by state authorities. At that hearing, it is the government's burden to show the evidence's admissibility. *Accord Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1056-57 (9th Cir. 2018) (where first law enforcement agency has a policy of sharing information with the second agency and shares the information for the purpose of spurring the second agency's action, *Medina* does not render evidence admissible).

**b. The Good Faith Doctrine Does Not Apply When a Reasonably Well-Trained Officer Would Have Known the Search or Seizure was Illegal Under Binding Case Law.**

The exclusionary rule is a “prudential doctrine,” *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363 (1998), created in order to “compel respect for the constitutional guarantee.” *Elkins v. United States*, 364 U.S. 206, 217 (1960). The rule’s purpose is to defer future constitutional violations. *United States v. Leon*, 468 U.S> 897, 916 (1984). The “good faith” exception to the exclusionary rule applies when exclusion would not serve to deter police misconduct. It has been applied, for example, when the police obtain evidence in reasonable reliance on a warrant later found to be technically defective. *See Massachusetts v. Sheppard*, 468 U.S. 981, 990-91 (1984). However, in a case involving the execution of a search warrant, the good faith exception applies only when an officer’s reliance on the warrant is objectively reasonable: "the good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.” *Leon*, 468 U.S. at 922 & n.23. In answering this question, the court should consider all of the circumstances and assume that the executing officers have a “reasonable knowledge of what the law prohibits.” *Id.* at 919 n.20.. *E.g.*, *United States v. Crozier*, 777 F.2d 1376, 1379 (9th Cir. 1985) (officer’s reliance on warrant was not reasonable because warrant was overbroad on its face); *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) (same); *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986) (“the overbroad sections of the . . . warrant are so facially deficient that any evidence obtained in reliance upon either of them must be suppressed”); *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988) (no good faith exception when warrant was facially overbroad and seizure exceeded the scope of an investigation that could have been supported by probable cause).

If an officer's actions are based on an unreasonably incorrect understanding of the law, the good faith exception does not apply. *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000) (good faith exception not applied because officer had mistaken belief about another state's license plate requirement); *United States v. Washington*, 455 F.3d 824, 828 (8th Cir. 2006) (good faith exception not applied because officer acted upon unreasonable understanding of state statute). *Compare, e.g., United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (good faith exception applied when "no court in this Circuit had held that retention of mirrored hard drives while investigation was ongoing was unconstitutional").

The FBI warrant cannot be saved by the good faith exception. An officer reasonably apprised of the law in the Ninth Circuit would know that the digital data was in the custody of the GBI unlawfully. *Tamura* had been the law of the land since 1982. To the extent its application to computer seizures and searches was initially ambiguous, the Ninth Circuit clarified in 2010 that *Tamura* applied to electronic data as well. *Contrast United States v. Brunette*, 256 F.3d 14, 19-20 (1st Cir. 2001) (holding that the "uncertain state of the law at the time made reliance on the warrant objectively reasonable"). Under Supreme Court precedent, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). In order for the good faith exception to apply, an officer's reliance on a warrant must be based on a reasonable understanding of the law, including the case law. *E.g. United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2006). *See also United States v. Wanless*, 822 F.2d 1459, 1466 (9th Cir. 1989) (reaffirming that the good faith exception does not apply, regardless of completeness of disclosure to magistrate, where search warrant is issued on basis of illegally-obtained evidence); *United States v. Vassey*, 834 F.2d 782, 289 (9th Cir. 1987) (the fact of unconstitutional search prior to issuance of warrant precludes good faith exception); *United States v. Mowatt*, 513 F.3d

395, 405 (4th Cir. 2008) (declining to apply exception where officers violated defendant's rights preceding the magistrate's involvement); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (holding that the exception is not a "magic lamp for police officers to rub whenever they find themselves in trouble . . . the police must reasonable believe that the warrant was based on a valid application of the law to the known facts").

**III. Conclusion.**

Constitutional violations pervade the more-than-five years since this telephone was taken from Mr. Banks' home. For the foregoing reasons, he requests that all evidence obtained from the unlawfully seized and searched cell phone be suppressed.