DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, GA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br>v.<br>DURK BANKS,<br>Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' REQUEST TO ADMIT RECORDED OUT-OF-COURT STATEMENTS UNDER FED. R. EVID. 106 AND 803 (1) and (3)** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this request to admit additional portions of Mr. Banks' interview with DJ Akademiks. Mr. Banks' statements in the recordings are admissible for two, independent and distinct non-hearsay purposes: the first is under Rule of Evidence 106, to avert misunderstanding and distortion caused by the government's selectively-tailored evidence; the second is under Rule 803(1) and (3),

because some of the proposed recordings are present sense impressions and statements of Mr. Banks' then-existing state-of-mind—i.e., his motive, intent, plan, and mental feeling.

This request is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated: August 30. 2026

BY: /s/ *Christy O'Connor*
Drew Findling
Marissa Goldberg
Brian Steel
Christy O'Connor
*Attorneys for Durk Banks*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction: The Proposed Clip.

Mr. Banks seeks the introduction of a clip of recorded statements he made in a podcast interview with DJ Akademiks.[1] In the clip, DJ Akademiks asks Mr. Banks about the Tekashi69 "beef," which got personal after King Von's death. Mr. Banks explains:

> I just don't take [Tekashi69] serious. . . It's just, n***as like that, like, I don't take, I don't take serious, like . . . See they gon' do that, they gon' troll. It's called clickbait. Everybody is gon' talk shit. Everybody wanna sell records. Everybody want a name. Everybody want to stay poppin.

Akademiks then asks him, "How did you feel" about Tekashi's disrespect of him. Mr. Banks answers, "I never gave a fuck. I never ever gave a fuck. . . It's like, what I'm gon' do?" He explains that when he catches him, he will "knock [him] the fuck out," but that he now just sits back and plays mindgames and watches. And when somebody posts something about him, he doesn't address it, but posts about his wife or about shoes instead of the beef. "I'm not falling for that shit." Akademiks asks him why he does not engage. He says that everybody tries to use the internet to get things "poppin." He explains that instead, he tries to "stay out the way."

> The people I got behind me, the knowledge I got behind me, the leaders I got behind me, I try not to get into it with people. I'm trying to turn all the hate into love. . . .

This clip is not hearsay, for two reasons. First, it is admissible for the non-hearsay purpose of offering an alternative explanation for the one-sided snippets the government has introduced into evidence, and from which it is asking the jury to deduce that the public pressure on Mr. Banks to "Slide for Von" so aggravated him that

---

[1] This clip is from the same podcast interview from which Government Exhibit 169 derives. The full interview can be found at https://www.youtube.com/watch?v=b92PfcokiYI&t=8915s. The portion Mr. Banks seeks to admit is between **43:45 and 46:33**.

it caused him to attempt to murder Quando Rondo. The proffered clip provides an alternative explanation for how the "Slide for Von" campaign affected Mr. Banks, and is thus admissible under Federal Rule of Evidence 106.

Second, some (but perhaps not all) statements in the proposed clip are admissible under the hearsay exceptions for present sense impressions and/or for a declarant's then-existing state of mind. Fed. R. Evid. 803(1), (3). In some of the statements, Mr. Banks is explaining his current approach to trollers. In others, he is making statements about his motive, intent, plan and feelings: about his feelings towards Tekashi69, and about he reacts to public "trolling."

## II. The Recorded Statements Introduced by the Government Create the Misimpression that the "Slide for Von" Public Pressure Campaign Drove Mr. Banks to Murder.

The government's theory of Mr. Banks' guilt is that the public pressure to "Slide for Von" drove him to stalk and attempt to kill Quando Rondo. Public statements by Tekashi69, along with incessant comments on his social media, they claim, so aggravated him that he put a bounty on Quando Rondo's head.

To create this impression in the jury's mind, the government has introduced and intends to introduce a multitude of written and recorded statements. Government exhibit 170 is a podcast interview where Tekashi69 mocks Mr. Banks for failing to avenge King Von's death. Exhibits 136, 137, 138, 139, and 140 are each lengthy exhibits containing countless "Slide for Von" related comments posted to Mr. Banks' social media. Exhibit 169 is an excerpt from Mr. Banks' podcast with DJ Akademiks interview (the same interview from which our proposed excerpt is taken). In that clip, Akademiks asks Mr. Banks if he is triggered by the "Slide for Von" comments. In response, Mr. Banks says cryptically, "For some reason, I just don't see those comments no more. For some odd reason, I don't know. Might be the water. . . . You seen them comments a lot?" Akademiks answers, "They've kind of chilled out," to which Mr. Banks retorts, "We different in the 'Raq." Exhibit 397 is an excerpt of one

of Mr. Banks' verses on a song called "Who Wants Smoke," in which he acknowledges that the public is "trolling" him to "Slide for Von."

The government's opening statement drove its interpretation of this evidence home: Mr. Banks was receiving pressure from his fans to slide for Von, and he was "consumed with getting revenge." So did the testimony of the government's star witness Kacey Hester, who testified in response to government questioning that the public pressure to "slide for Von" got under Mr. Banks' skin so much that it caused him to hatch a plan to murder. Mr. Hester testified:

- "He hated it. He didn't – he ain't like that. People was trolling him, like say he only would like Von a lot. Because people come out "Slide for Von," and it was getting to him. He didn't like it. . . . It was basically like nobody doing nothing. He just tired of hearing it. You know, that was his homie. That was his little ace and shit." (8.26.26 transcript at 247-48.)
- "I don't know who – I can't remember who initially brought up the trolling stuff, but Blood got to talking about it. And he got talking about what the rapper 6ix9ine doing, trolling stuff, and people stating on the Internet and talking about slide for Von, and how people not doing what they rap about. You know, he basically let us know, like, if a motherfucker catch Quando Rondo or Lil Tim, they going to be straight. Ain't going to worry about nothing." (8.26.26 transcript at 249.)
- When asked about the "Who Wants Smoke" lyrics, Mr. Hester said the following: "Just basically doing – everybody always – that's their first comment to say, 'Slide for Von. Slide for Von.' That was – like they bullying type of way, like to get under skin." When asked what the lyrics "got it back in blood" meant, Mr. Hester explained that the phrase meant "Like revenge. Like somebody bleed when they get shot. Somebody bleed when they get shot up and get killed . . . Like when somebody do something to you or somebody you care about, they kill them or shoot them or something, basically you just

> doing the same thing back to them. And, you know, that's a part of – that's part of the gang. That's how it's – where we from. Like, that's what we lay by, get it back in blood." (8.26.26 transcript at 252-53.)

**III. Rule 106 Allows for Admission of a Second Recorded Statement Where it is Explanatory of and Relevant to the First.**

Federal Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part *or any other writing or recorded statement* which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106 (emphasis added). The Supreme Court has interpreted Rule 106 to embody the "obvious" proposition that "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material requirement for completeness is ipso facto relevant and therefore admissible under Rules 401 and 402." *Beach Aircraft Corp. v. Raine*, 488 U.S. 153, 171 (1988) (district court committed reversible error by allowing defendant's attorney to admit a portion of the plaintiff's out-of-court written statement, without allowing the plaintiff's attorney to elicit the remainder of the statement, because the excerpt admitted by the defense gave a misleading impression that the plaintiff himself did not believe in his own theory of the case, while the remainder of the statement made clear that his statement was fully consistent with that theory). *See also United States v. Castro-Cabrera*, 534 F.Supp. 2d 1156 (C.D.Cal. 2008) ("the Rule of Completeness was designed to prevent the Government from offering a 'misleadingly tailored snippet' and thus "warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements.") (quoting *United States v. Collicot*, 92 F.3d 973, 983 (9th Cir. 1996)).

Judge Pregerson's opinion in *Castro-Cabrera* is instructive. 534 F.Supp. 2d 1156 (C.D.Cal. 2008). There, the Court found that "reading the statements in context results in one set of possible meanings, whereas reading the latter statement in isolation tends

to create a different meaning. There is a serious risk that presentation of only the latter answer, separate and apart from the one before it, would distort, misrepresent, or confuse the meaning of the Defendant's statement." *Id.* at 1160.

More recently, in *United States Lopez*, the Ninth Circuit summarized its Rule 106 jurisprudence:

> Portions of a document or recording are admissible under Rule 106 notwithstanding the bar on hearsay evidence when offered to correct a misleading impression in the edited statement introduced by an opposing party. In the interrogation context, for example, we have held that Rule 106 provides for the admission of additional portions of a defendant's statements when the prosecution offers a redacted version that distorts the meaning of the statement, excludes information substantially exculpatory of the declarant, or excludes portions of a statement that are . . . explanatory of [or] relevant to the admitted passages.

*Lopez*, 4 F.4th 706, 715 (9th Cir. 2021) (citations and quotation marks omitted). In *Lopez*, an enticement of a minor prosecution, the district court abused its discretion by categorically excluding the entirety of the defendant's interrogation footage, where the prosecutor had introduced only portions. For example, the district court admitted the defendant's affirmative answer to the agent's statement, "You're 29. 29 and a 13-year old," as if it were an admission. But in fact, the exchange took place during a colloquy in which Lopez attempted to explain why he believed the person he was talking to was a law enforcement agent. *Id.* at 716. The context for that statement should have, in fairness been admitted, because the "excluded footage contained information directly qualifying statement which the Government's editing cut off . . ." *Id.* at 717.

And although our proposed clip comes from the same recorded interview as Government's Exhibit 169, even if it did not, it would not matter. The plain text of the Rule applies to a proffered statement whether it is part of the same statement, or is from a wholly separate written or recorded statement. See Fed. R. Evid. 106 (". . . an adverse

party may require the introduction at that time of any other part *or any other writing or recorded statement* which ought in fairness to be considered contemporaneously with it . . .") (emphasis added). The second recording is admissible if it is "explanatory or [or] relevant to the admitted passages." *See Lopez*, 4 F.4th at 715.

**IV. Portions of the Proffered Statement are Admissible Under Fed. R. Evid. 803(1) and (3).**

Federal Rule of Evidence 803(1) and 803(3) are closely related. According to the Advisory Committee Notes, Rule 803(3) is essentially a specialized application of Rule 803(1) that is classified separately solely to enhance its overall usefulness and accessibility. 803(1) creates a hearsay exception for present sense impressions, in which a declarant describes an event or condition made while or immediately after the declarant perceived it. 803(3) creates an exception to the hearsay rule for a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . ." Fed. R. Evid. 803(3). Statements that meet three foundational factors are admissible under the rule: contemporaneousness, lack of a chance for reflection, and relevance. *Wagner v. County of Maricopa*, 747 F.3d 1048, 1052-53 (9th Cir. 2013) (statements expressing declarant's sense of humiliation and mental feeling following a jail incident). *See also United States v. Astorga-Torres*, 682 F.2d 1331 (9th Cir. 1982) (statement that co-conspirator "intended to bring guards with him" to a drug sale were admissible to establish intent, from which the jury could draw proper inferences regarding his actions).

Much of the proffered recording falls under one or both of these exceptions, with the potential exception of statements that describe feelings or events that occurred purely in the past. The statements that are admissible describe his current feelings, plans, and intentions, and describe current events as they are occurring. For example, he says that he does not take Tekashi69 or trollers seriously, that he is "not falling for

that shit," that he tries not to get into it with people but that his approach is to sit back and watch, and that he is trying to turn the hate into love.

**V. Conclusion.**

For the foregoing reasons, Mr. Banks respectfully requests that the Court admit, under Rule 106, 803(1) and/or 803(3), some or all of the proffered recording.