DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, GA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>DURK BANKS,<br><br>Defendant. | Case No. 2:24-cr-00621-MWF<br><br>**DEFENDANT DURK BANKS' PROPOSED THEORY OF DEFENSE INSTRUCTION AND CLARIFICATION OF OBJECTION TO PINKERTON JURY INSTRUCTIONS** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files the following memorandum regarding jury instructions. By this memorandum, we propose our theory of defense instruction, and we clarify our objection to the *Pinkerton* instructions.

This memorandum is based on the below authorities, the file and records in this case, and any other evidence or argument that the Court may permit.

Respectfully submitted,

Dated: September 5, 2026

BY: /s/ *Christy O'Connor*

Drew Findling
Marissa Goldberg
Brian Steel
Christy O'Connor
*Attorneys for Durk Banks*

## Memorandum of Points and Authorities

Below, Mr. Banks proposes a theory of defense instruction, to be included with the jury instructions in a place the Court deems appropriate and convenient. [1]

Further, Mr. Banks files this memorandum, on behalf of himself and co-defendants Mr. Lindsey and Wilson, to clarify an objection to two of the jury instructions as drafted: number 48, which purports to apply *Pinkerton* liability to the stalking resulting in death of *Mr. Robinson* if a defendant was a member of the conspiracy to stalk *Mr. Bowman*; and number 54, which purports to apply *Pinkerton* liability to the murder-for-hire if a defendant was a member of the conspiracy to stalk Mr. Bowman. The defendants failed to adequately articulate these objections in court, but do so now.

### I. Mr. Banks' Theory of Defense Instruction.

"'A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence.'" *United States v. Escobar de Bright*, 742 F.2d 1196, 1198 (9th Cir. 1984) (quoting *United States v. Winn*, 577 F.2d 86, 90 (9th Cir. 1978)). Failure to give such a requested instruction is reversible error. *Id.* Because the Court has to determine whether Mr. Banks' theory of defense instruction "has some foundation in the evidence," Mr. Banks had to wait until after the close of evidence to determine whether his theory of defense instruction would be properly submitted for inclusion. *Escobar de Bright*, 742 F.2d at 1198. His Theory of Defense instruction relies on the model instruction from O'Malley, Grenig, and Lee, *Fed. Jury Practice and Instr.* § 19:01 (6th ed.). It is as follows:

> Mr. Banks has pleaded "Not Guilty" to the charge contained in each count of the indictment. This plea of Not Guilty puts in issue each of the essential elements of the offense as described in these instructions and imposes on the

[1] Defense counsel has discussed with the government its intent to propose an instruction before closing arguments. To avoid an inconvenient renumbering of every instruction, the parties discussed inserting the theory of defense instruction last.

government the burden of establishing each of these elements by proof beyond reasonable doubt.

Mere knowledge that others are planning to commit, are committing, or have committed a crime does not make Mr. Banks guilty of those crimes. That is so even if you find that he should have but did not stop the crime from happening. That is also so if you find that he benefitted by others' commission of the crime, if he hoped that others would commit the crime, or if he was happy that others committed the crime.

To be guilty of murder-for-hire or conspiracy to commit murder-for-hire, you must find that Mr. Banks agreed and intended to offer money or other economic benefits in exchange for the murder. If you find that others purported to offer money or economic benefits in exchange for the murder, that is not enough to make Mr. Banks guilty. If you find that the hitmen expected or hoped to receive money or economic benefits from Mr. Banks, that is not enough to make Mr. Banks guilty.

## II. Instructions 48 and 54: *Pinkerton* Liability for Mr. Robinson's Stalking/Death and the Murder-For-Hire Count Based on Conspiring to Stalk Mr. Bowman.

Preserving the objection to the *Pinkerton* instruction generally and as applied to this case, the defendants' request, consistent with Model Instruction 11.6, was that the court should give a separate *Pinkerton* instruction for each *conspiracy* charged—that is for Count 1 (conspiracy to stalk Mr. Bowman) and for Count 4 (conspiracy to commit murder-for-hire against Mr. Bowman). Ninth Circuit Model Crim. Jury Instr. 11.6 cmt. ("[G]iven the potential for ambiguity where more than one conspiracy is charged, the court should consider giving separate *Pinkerton* instructions for each conspiracy charged"). By that request, the defendants contemplated that the *Pinkerton* instruction for Count 1, conspiracy to stalk Mr. Bowman, would create liability only as to the substantive stalking of Mr. Bowman using a dangerous weapon, and that the *Pinkerton*

instruction for Count 4, conspiracy to commit murder-for-hire, would create liability only as to the substantive murder-for-hire. It was not the defendants' intention to agree that if a defendant enters into a conspiracy to stalk Mr. Bowman, *Pinkerton* would make him liable for the stalking and death of Mr. Robinson. Nor was it the defendants' intent to agree to instruction that would allow a jury to find that if a defendant entered into a conspiracy to stalk Mr. Bowman, he could be held liable for the substantive murder-for-hire count. *See* Ex. A (counsel's 9/4/26 email to the Cour).

At yesterday's charge conference, the Court suggested a separate *Pinkerton* instruction for every substantive count—that is, Count 2 (stalking Mr. Bowman), Count 3 (stalking Mr. Robinson), and Count 5 (murder for hire). In the moment, the defendants failed to recognize the difference between what they had suggested (a separate instruction for every conspiracy count) and what the Court intended to do (a separate instruction for every substantive count, all tied to the conspiracy to stalk Mr. Bowman). We write to clarify the objection: there should be no *Pinkerton* liability for the stalking and death of Mr. Robinson, nor for the murder-for-hire, based on a defendant's membership in the conspiracy to stalk Mr. Bowman. Neither the stalking and death of Mr. Robinson, nor the murder-for-hire are within the scope of the agreement encompassed by Count 1. Further, since stalking is a specific intent crimes, requiring an intention directed at a particular victim, *Pinkerton* liability should not apply at all in the absence of an intention directed at Mr. Robinson.

For *Pinkerton* to apply, the offense must fall within the scope of the unlawful project. *Pinkerton* attributes a substantive offense only where it was committed in furtherance of, and within the scope of, the agreement the defendant joined. *Pinkerton v. United States*, 328 U.S. 640, 645-48 (1946); *United States v. Fonseca-Caro*, 114 F.3d 906, 908 (9th Cir. 1997). Where the evidence supports more than one agreement, the instruction must identify which agreement supplies the attribution, and it must be the agreement the substantive offense furthers. *United States v. Lapier*, 796 F.3d 1090, 1096-97 (9th Cir. 2015); Ninth Circuit Model Crim. Jury Instr. 11.6 cmt.

The government charged two conspiracies with two objects. If the Count One agreement already encompassed an agreement to kill for pay, Count Four would charge the same agreement twice. Having charged them as distinct, the government cannot attribute the Count Five offense through the conspiracy that did not have murder-for-hire as an object. As written, Instruction No. 54 permits a conviction for murder-for-hire on a finding that the defendant joined an agreement to stalk, with no finding of the intent regarding a pecuniary exchange. *United States v. Chong*, 419 F.3d 1076, 1081-83 (9th Cir. 2005) ("it is the motive of the murderers that is relevant" to the pecuniary-value element). It also omits the rule that a conspirator is not liable for substantive offenses committed before he joined. *United States v. Garcia*, 497 F.3d 964 (9th Cir. 2007) (quoting *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992)); *United States v. Long*, 301 F.3d 1095, 1103-04 (9th Cir. 2002) (per curiam).

Further, stalking under 18 U.S.C. § 2261A is a specific intent crime. That is, one can only be found guilty under the statute if he possessed an intent directed towards a particular individual. As drafted by the government, though, instruction 48 would impose liability for the stalking and death of Mr. Robinson (Count Three) upon any person involved in the conspiracy to stalk Mr. Bowman (Count One). Under the *Pinkerton* doctrine, co-conspirator liability should only attach to a specific intent crime if that substantive offense was the original goal of the conspiracy. However, if the specific intent crime was not the original object of the conspiracy, the constitution prohibits the application of *Pinkerton* liability. *See United States v. Cherry*, 217 F.3d 811, 818 (10th Cir. 2000) (rejecting *Pinkerton* liability for first-degree murder).[2]

---

[2] On this last point, whether there can be *Pinkerton* liability for specific intent crimes, the defense acknowledges that the Ninth Circuit has upheld *Pinkerton* liability for such crimes, but urges the Court to adopt the reasoning articulated in *Cherry*. *See United States v. Bingham*, 653 F.3d 983 (9th Cir. 2011).