DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, GA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br>v.<br>DURK BANKS,<br>Defendant. | Case No. 2:24-cr-00621-MWF<br>**DEFENDANT DURK BANKS' RENEWAL OF HIS REQUEST REGARDING RULE 106 IN LIGHT OF CLOSING ARGUMENT** |

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this application renewing his request to admit additional portions of Mr. Banks' statements to DJ Akademiks, filed at docket entry 628, in light of the government's misleading arguments in its rebuttal closing. In the alternative, Mr. Banks requests a curative instruction, directing the jury's attention to the government's arguments and reminding the jury that its verdict may be based on the

government's failure to bring it complete evidence of Mr. Banks' statements in that interview. Mr. Banks requests an immediate hearing and ruling on this request so that corrective action may be taken before the jury reaches a verdict.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

The government does not agree to the requested relief.

Respectfully submitted,

Dated: September 9, 2026

BY: /s/ *Christy O'Connor*
Drew Findling
Marissa Goldberg
Brian Steel
Christy O'Connor
*Attorneys for Durk Banks*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Background.

On August 31, 2026, Mr. Banks moved for the admission of additional portions of his statements to podcaster DJ Akademiks that would have corrected the misimpression created by the government's misleadingly tailored snippets. Dkt. No. 628. In the proposed portions, Mr. Banks explains that he has never taken Tekashi 69 seriously, and that he has never let the "Slide for Von" comments get to his head. He also explains that because of the professional organization of people he has behind him, he stays out of "beefs" like that, and that his approach is to "turn hate into love." The Court denied Mr. Banks' request. *Id.*

In its rebuttal closing, which Mr. Banks of course did not have a chance to address, the government made arguments that compounded the misleading nature of its misleadingly tailored snippets. The government argued:

> Before Mr. Banks is blaming his team for sliding for Von and the way that he had demanded that they slide, before he was arrested, before this case, in 2023, Mr. Banks was interviewed by a podcaster named DJ Akademiks. This is a person who knew exactly the facts of the death of King Von as well as all the beef that had been going on with Quando Rondo.
>
> Remember, this is the interviewer who interviewed the other rapper named 6ix9ine who was yelling and screaming at the top of his lungs, saying "Slide for Von." That is the person, according to Justin Gibson, who really pissed off -- in the defendant's words -- pissed him off and was really drudging up the Slide for Von. Same podcaster.
>
> Now we are in 2023. Murder is over, Saviay'a Robinson is gone, and that podcaster, having interviewed 6ix9ine, seeks to ask Mr. Banks, "Hey, what about this Slide for Von movement? And this is what he says. . .
>
> (Thereupon, the video was played.)

The look on that podcaster's face who knows the facts that you know says it all. From the moment that Mr. Banks begins responding in that brazen, incredible way, essentially admitting that he was involved with the murder of Mr. Robinson, this podcaster can't even look him in the eye --

MR. STEEL: Your Honor, I'm going to pose an objection.

THE COURT: The objection is overruled.

MR. MORSE: Can't even look him in the eye because he knows what you know. He knows what Mr. Banks is saying. Mr. Banks was more subliminal in his songs, but oh, he's a lot less subliminal here. He says, "I haven't been hearing those 'slide for Von' comments, have you? You be hearing them? I wonder why. Must be something in the water."

You can cut the awkward shock that is in the a with a knife. And in case it wasn't already absolutely clear that he was admitting to his involvement in the murder of Saviay'a Robinson, admitting that he had a part in silencing his trolls and critics who were posting incessantly telling him to slide for Von, as if that wasn't clear from "must be something in the water," he says, "We here, though, we different in the raq.

What is the raq got to do with the "slide for Von" comments chilling out?

You heard testimony from Cody Burke, Special Agent Cody Burke. He told you that Chicago colloquially is – the South Side of Chicago specifically, where Mr. Banks is from, is colloquially referred to as "Chiraq," meaning that the murder rate in Chicago on the South Side is comparable to the death rate in the war in Iraq. And Chiraq -- the "raq" is short for Chiraq.

So he's citing the murder rate in Chicago, and he says, "We different in the raq." It doesn't get much more clear than that. The boldness, the brazenness, is exactly what you saw in the murder of Saviay'a Robinson. To take a machine gun in Beverly Hills at rush hour and mow that young man down in front of everybody is the same brazenness, brashness, that you see in this clip from Mr. Banks.

> And for some reason, he thought that he would just get away with saying that. You know, there has been a lot said by the defense. They've gone out of their way to characterize Mr. Banks as this international superstar. And he was a prominent rapper, but he ain't Jay-Z, respectfully. A lot of people didn't know the facts of Quando Rondo and King Von. They didn't know. So he must have thought that he could just go on this podcast and make this incredible statement of responsibility and that would just fly under the radar.

Transcript, 169-172.

After characterizing this snippet as a brazen confession to murder spurred by rage over Tekashi 69 and calls to "Slide for Von," the government goes on to dismiss the importance of context, suggesting to the jury that they may not based a verdict on a lack of evidence, contrary to the law:

> Let's set murder aside for a second, okay? Let's talk about marriage. Spouse says to other spouse, "I have to work late tonight. I'll be back at midnight."
> Spouse leaves, spouse comes home -- we'll make it a husband. He goes straight to the bathroom, leaves his phone on the counter. Wife looks at phone.
> Notification comes up, "Baby, I had so much fun tonight. I love you. I can't wait until you are done with your marriage." Husband comes back. Wife says, "What is this? You are cheating on me." Husband says, "Oh, the context, you need the context. You haven't seen the whole text message string." Does she need to see the whole text message string? And you have text message strings. You don't have text messages in isolation. It's clear and obvious. The only thing they can say is, "Oh, there is other stuff out there. You never know."
> Your verdict is to be based on the evidence, not on speculation, not on fanciful speculation. And the evidence is clear.

Transcript, p. 199.

## II. Argument.

The decision of whether to allow the reopening of a criminal case after the close of evidence lies within the sound discretion of the trial court. *United States v. Ramirez*, 608 F.2d 1261, 1267 (9th Cir. 1979). *See, e.g., United States v. Kelm*, 827 F.2d 1319 (9th Cir. 1987) (trial court allowed party to introduce letters into evidence belatedly).

The Ninth Circuit recognizes that the timing of a prosecutor's improper remarks during closing rebuttal arguments is a critical factor in evaluating prejudice. Presenting improper or misleading material at the very end of a trial "magnifies" its prejudicial effect because the statements are "freshest in the mind of the jury when [it] retire[s] to deliberate." *Zapata v. Vasquez*, 788 F.3d 1106, 1122-23 (9th Cir. 2015). Under this analysis, the risk that an inflammatory or improper statement will influence the jurors is heightened when it is delivered during the rebuttal closing argument rather than earlier in the proceedings. *Id. See also United States v. Sanchez*, 659 F.3d 1252, 1261 (9th Cir. 2011) (observing that improper prosecutorial comment in a closing rebuttal was particularly problematic because "it was the last argument the jury heard before going to the jury room to deliberate," thus "increas[ing] the risk that the inflammatory statement would improperly influence the jurors").

Given the contents of the remainder of the DJ Akademiks podcast interview, the prosecution's arguments in its rebuttal closing were indeed misleading. As the additional proposed snippets make clear, Mr. Banks' statements to DJ Akademiks were not a "brazen confession" that he murdered Mr. Robinson or that Tekashi 69 got to his head. Quite the opposite. And DJ Akademiks' response to those statements were not a recognition that "[h]e knows what Mr. Banks is saying."[1] The government did not call

[1] In fact, since the prosecutor's rebuttal, DJ Akademiks has publicly denied the government's characterization of his state of mind. "Yo, Morse, my n***a, I'm testifying, I swear to the truth the whole truth nothing but the truth like this and swear me in. . . 'Look at the podcasters eyes? He knows what you know? You could cut the awkward shock with a knife?' I don't know nothing! What are you talking about? N***a, that was a script! That was a script! That was a script, hey! Put this in the

DJ Akademiks as a witness. It never even attempted to interview DJ Akademiks. It is improper for the prosecutor to assert what is in his mind, especially when the remainder of the interview makes it clear that a reasonable juror could have understood that Mr. Banks' statement was not a brazen confession.

**III. Conclusion.**

Mr. Banks requests that the Court reopen evidence to allow for the admission, under Rule 106, of the additional portions of the same conversation with DJ Akademiks that the government misleadingly spliced to its advantage. In the alternative, Mr. Banks requests that the Court call attention to the government's exhibit and explain that in evaluating whether there is reasonable doubt, the jury may consider the government's failure to provide it with evidence the jury believes it needs, i.e., the lack of evidence.

---

appeal. I gotta tell everyone the truth. Gotta tell the truth. I act surprised, hey, put this in the appeal. Just to let you know, I'm sorry, I'm sorry, Morse. You could have asked me. That was a script. That was a script. Dramatic effect. That was scripted. Yeah, Smurk been told me. We playing around on that shit, what the fuck is you talking about? This shit is all cap. I played into you know, Oh, shit, I'm shocked. Listen, we know how to promote. I'm the biggest promoter in music. I'm the number one promoter of music in hip hop. Smurkio had an album coming out. That's it. What the fuck is y'all talking about? Talking about "Oh, look at the podcaster's eyes? He knows what you know." N**ga, I don't know nothing! I'm promoting an album! What are these guys talking about? What are these guys talking about? No! Me and Smurk, we rehearsed this. You see, if the feds did their homework they would have hit me up and be like, 'Yo Ak, yo what's up with the interview?' 'Oh, we was just playin.' I'm disheartened that the prosecutors really trynna – the look on my face? That's a troll! That's a troll!" *Available at* https://www.instagram.com/p/DdDK3ZljdG5/?img_index=3&stkn=MTV1MHgzaGZvbHNjdw==.